**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

MARTIN CHARLES FLYNN, JR.,

Debtor.

Case No. 6:26-bk-00399-LVV
Chapter 11

## MOTION TO DISMISS OR CONVERT BANKRUPTCY CASE

Creditor and Movant, Pedixon, LLC, a Florida limited liability company ("**Movant**" or "**Pedixon**"), by and through undersigned counsel, hereby files the Motion to Dismiss or Convert Bankruptcy Case (the "**Motion**"), and in support of the Motion, respectfully states:

## BACKGROUND

### A.   The Tiered Trust

1.   Pedixon and ZPD, LLC ("**ZPD**") made several loans to entities affiliated with the above captioned debtor ("**Debtor**"). Pedixon also made a loan in the principal amount of $125,000 to Debtor, which is secured by his residence.

2.   As of September 2023, each of the loans were in default. The borrowers sought to reinstate their respective loan obligations, and related entities and individuals sought additional funding. On September 14, 2023, Pedixon, ZPD, and Debtor and a company that he owns an interest Tiered Capital, Inc. ("**Tiered Capital**") among others, entered into a Loan Agreement the "**Tiered Loan Agreement**"). A copy of the Loan Agreement is attached hereto as **Exhibit "A"**.

3.   By way of the Loan Agreement, Pedixon agreed to make a loan in the principal amount of $750,000 to Tiered Capital, Inc. (the "**TC Loan**"). Debtor, along with Horton Johnson, and a trust that Frank Amodeo is the beneficiary of, own interest in Tiered Capital. To induce

6363290.v1

Pedixon to make the TC Loan and due to the defaults of the prior loans, the parties, among other things, guaranteed all prior loan accommodations and the TC Loan (the "**Tiered Guaranty**"). **Exhibit "B".**The reason for the TC Loan is that Debtor, his related entities and business partners had business interests in a condominium and townhome development called Cape Crossing in Brevard County. The business was to improve the development and generate short term rental income. Debtor's company, Sherwood Construction, was the builder. Tiered Capital has been referred to as the "umbrella organization" for the entirety of the Cape Crossing project.

4.    By way of the Loan Agreement, the parties agreed that upon the closing of the Tiered Guaranty, the outstanding indebtedness under the Tiered Guaranty totaled Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000) and the defaulted notes reflecting the debt were reinstated.

5.    In connection with the TC Loan and Tiered Guaranty, it was agreed the parties establish a land trust (the "**Tiered Trust**"). Cresent Sound, Ltd., as Trustee of the Tiered Land Trust u/t/d/ 9/13/2023 (the "**Trustee**") was appointed as the Trustee for the Tiered Trust.

6.    All of the notes relating to the Tiered Guaranty fell into default.

**B.    The First Bankruptcy Case**

7.    On May 5, 2025, a Chapter 11 bankruptcy case was filed on behalf of Homemakers Real Estate, LLC ("**Homemakers**"), before this Court commencing case number 6:25-bk-02685-GER (the "**First Bankruptcy Case**"). Homemakers owned multiple condominiums and townhomes at Cape Crossing and is a party to the Loan Agreement and the Tiered Guaranty.

8.    On May 8, 2025, Pedixon and ZPD filed a Motion to Dismiss Bankruptcy Case for Lack of Corporate Authority (1st Bk Case Doc. No. 12) (the "**First Motion to Dismiss**"). The primary basis for the First Motion to Dismiss was the assignment of Mr. Johnson's sole

membership interest in Homemakers to the Trustee and his lack of authority over the corporate governance of Homemakers.

9.    After multiple hearings and additional supplemental briefing, Judge Robson entered her Order Dismissing Bankruptcy Case (1st Bk. Case Doc. No. 73) (the "**Dismissal Order**").

10.    After the First Bankruptcy Case was dismissed, Tiered Capital, under the control of Debtor[1], filed a Motion for Reconsideration of the Dismissal Order (1st Bk. Case Doc No. 77) (the "**Reconsideration Motion**"). Debtor, individually, also filed a document in support of the Reconsideration Motion (1st Bk. Case Doc. No. 82). A basis for the Motion for Reconsideration was that after the bankruptcy case was filed, several purported beneficiaries of the Tiered Trust signed a resolution approving the bankruptcy filing. The signatories included Debtor on behalf of Tiered Capital.

11.    Pedixon and ZPD filed an objection to the Reconsideration Motion on July 25, 2025.

12.    Shortly thereafter, despite the Motion to Dismiss being determined and litigated, Tiered Capital sought a second bite of the apple to re-litigate issues already determined in the Motion to Dismiss proceedings and filed its Motion for Evidentiary Hearing (1st Bk. Case Doc. No. 81).

13.    Pedixon and ZPD filed an objection to the Motion for an Evidentiary Hearing on August 12, 2025 (Doc No. 84).

14.    On August 25, 2025, Judge Robson entered her Order (1) Denying Motion for

---

[1] Debtor and Mr. Johnson own an interest in Tiered Capital. A trust also owns an interest in Tiered Capital and Frank Amodeo (discussed below) is the beneficiary of that trust.

Reconsideration and (2) Denying as Moot Motion for Evidentiary Hearing (1st Bk. Case Doc. No. 85) (the "**Reconsideration Order**").

## C.    Debtor Foreclosure Case

15.    On May 13, 2025, Debtor filed a Complaint against Pedixon claiming he satisfied a mortgage in the principal amount of $125,000 on his home. **See Exhibit "C"**.

16.    On August 18, 2025, Pedixon filed its Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint for Foreclosure seeking to foreclose of Debtor's residence. **See Exhibit "D"**.

## D.    The WM Holdings and MTF Holdings Dispute

17.    Debtor's Schedules reflect an ownership of a 100% interest in WM Holdings, LLC ("**WM**") and a 99% interest in MTF Holdings, LLC ("**MTF**"). These claims are inaccurate.

18.    In June of 2023, Pedixon loaned an entity Debtor had an interest in, Florida Space Coast Resorts, Inc., $3,000,000 (the "**Space Coast Note**"). **Exhibit "E"**.[2]

19.    In October of 2023, the borrowers requested that a mortgage securing the Space Coast Note be released and Pedixon requested replacement collateral. The parties entered into a Loan Agreement dated October 24, 2023 (the "**Space Coast Loan Agreement**"), to amend its original agreement. **Exhibit "F"**.

20.    In connection with the Space Coast Loan Agreement, Pedixon and Flynn entered into a Security and Pledge Agreement dated October 30, 2023 (the "**Space Coast Security Agreement**"). **Exhibit "G"**. Among other things, Flynn pledged his interests in the cash flow, among other things (the "**Cash Flow**") from certain investments and his membership interests in MTF and WM. In connection with the Space Coast Security Agreement, Flynn signed pledges in

---

[2] This loan was later included in the Tiered Loan Agreement.

6363290.v1

favor of Pedixon of his membership interests in MTF and WM and the Cash Flow. **See Composite Exhibit "H"**.

21. A closing statement for the Space Coast Loan is attached hereto as **Exhibit "I"**.

22. The Space Coast Note fell into default. Pedixon, exercised its pledge rights in the membership interest in WM, MTF and the Cashflows. **See Composite Exhibit "J"**.

**E.     The 650 LLC Case**

23. In his Schedules, Debtor claims to own a 100% interest in non-debtor 650 85th, LLC ("**650 LLC**"). On May 7, 2025, non-debtors 650 85th, LLC ("**650 LLC**"), Sherwood Construction, Inc. ("**Sherwood**") and Debtor filed their Complaint for Accounting (the "**Complaint**"), against Movant in the Circuit Court for the Sixteenth Judicial Circuit in and for Monroe County, Florida pending under Case Number 2025-CA-518-M (the "**650 State Court Case**"). **Exhibit "K"**.

24. In the State Court Case, on July 28, 2025, Pedixon filed its Answer and Affirmatives Defenses, which included multiple Counterclaims (the "**Counterclaims**"). Count I of the Counterclaims seeks to foreclose on certain real property owned by 650 LLC (the "**Foreclosure Count**"). Count II demands judgment against Debtor, 650 LLC and Sherwood for liability under a Promissory Note (the "**Note Count**"). **Exhibit "L"**.

**F.     The Guaranty Case**

25. On August 20, 2025, Pedixon and ZPD filed its Complaint for Damages for Breach of Guaranties against the Guarantors of the Tiered Guaranty, including, Debtor (the "**Guaranty Case**"). **See Exhibit "M"**.

**G.     The Involuntary Bankruptcy Case**

26.     On September 2, 2025, Debtor caused Tiered Capital to file an involuntary Chapter 11 bankruptcy case against Homemakers in the Middle District of Florida (6:25-bk-05570-GER) (the "**Involuntary Proceeding**").

27.     On September 29, 2025, the putative debtor, Homemakers, filed a Motion to Dismiss the Involuntary Proceeding and sought sanctions against, among others, Tiered Capital and Debtor. (Inv. Bk. Doc. No. 7)

28.     The Involuntary Proceeding was hotly contested. Pertinent to this Motion, an evidentiary hearing was set for December 17, 2025. Pedixon agreed to continue the hearing to conduct a settlement conference with Debtor, Tiered Capital, and Mr. Johnson, so long as they acknowledged there was a debt owed to Homemakers and their "advisor" Frank Amodeo did not participate.[3] Debtor and Tiered Capital agreed and the hearing was continued and a settlement conference held in late December 2025.

29.     The day before the settlement conference, Debtor filed a complaint in state court seeking over $88,000,000 in damages for attempting to collect on the Tiered Guaranty. Not surprisingly, the settlement conference did not result in a resolution. At the settlement conference Debtor, on behalf of himself and Tiered Capital, denied any money was owed to Pedixon.

30.     The evidentiary hearing on the Motion to Dismiss the Involuntary Proceeding and whether Tiered Capital, Horton Johnson, and Frank Amodeo filed or joined the involuntary petition in good faith was held on February 3, 2025 (the "**Evidentiary Hearing**"). Tiered Capital did not

---

[3] Frank Amodeo is a two-time convicted felon and disbarred bankruptcy attorney. He has been adjudicated to be incapacitated due to mental health issues and is a ward of the State of Florida. Mr. Amodeo acts as an advisor and strategist for Debtor and Mr. Johnson and their entities, including Tiered Capital. He filed multiple documents in the Involuntary Bankruptcy Case, acted as the corporate representative to two late joining petitioners, CTO Holdings, Inc. ("**CTO**") and IMQA Holdings, Inc. ("**IMQA**"), and questioned witnesses during the evidentiary hearing regarding CTO's and IMQA's bad faith in joining the petition even though those entities were represented by counsel. He is also participating in the state court litigation, even though he is not a party.

6363290.v1

appear at the hearing[4] and provided no evidence to support its good faith or that it met the requirements to file the involuntary petition under Section 303 of the Bankruptcy Code. Debtor did appear as a witness in his individual capacity.

**H.    Debtor's Bankruptcy Case**

31.    Just prior to the Evidentiary Hearing in the Involuntary Proceeding, on January 22, 2026 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. This resulted in the imposition of the automatic stay with respect to the sanctions request made in the Involuntary Bankruptcy Case.

32.    On the Petition Date, Debtor filed his Schedules and Statement of Financial Affairs, which he amended on February 6, 2026 (collectively, the "**Schedules**"). In his Schedules, Debtor claims monthly income of $12,479.50. In his Schedule J, he reports $9,369.78 in expenses. In his Form 122C-2, he reports disposable income as a _negative_ $1,022.28. In his Amendment to his Schedules, he revised his income and his expenses, but that amendment was based on him eventually selling his interest in 650 LLC to his wife.

33.    On February 17, 2026, the Court entered its Order Dismissing Chapter 13 Case because Debtor was not eligible for Chapter 13, but allowed Debtor fourteen (14) days to convert his case. (Doc. No. 38)

34.    On March 3, 2026, Debtor filed his Notice of Voluntary Conversion to Chapter 11 (Doc. No. 41) and his Motion to Vacate Order Dismissing Chapter 13 Case.

35.    On March 25, 2026, Debtor filed his Case Management Summary (Doc. No. 53) the "CMS") under Local Rule 2081-1(b). The CMS does not provide any description of Debtor's business or business revenues.

---

[4] Scott Rost, former counsel for Tiered Capital, withdrew a few weeks before the hearing.

6363290.v1

36.     On April 20, 2026, counsel for Pedixon attended Debtor's previously scheduled 341 meeting of creditors. Debtor did not attend the meeting and Pedixon's counsel was informed the meeting would be continued because on April 20, 2026, Debtor filed an Amended Voluntary Petition to elect Subchapter V of Chapter 11 of the Bankruptcy Code (Doc No. 62).

37.     The next day, on April 21, 2026, a status conference and hearing with respect to Pedixon's Renewed Motion for Order Determining That the Automatic Stay Does Not Apply to Non-Debtors and Their Property (Doc No. 43) (the "**Stay Motion**") was held.[5] At that hearing, Debtor's counsel stated Debtor will be amending his Schedules and that the primary purpose of this bankruptcy case was to determine the amount of Pedixon's claim that is being litigated in the Guaranty Case. At that hearing, the Court raised the issue as to whether the deadline under Subchapter V to file a plan should be extended because the election to proceed under Subchapter V does not result in a new Order for Relief under Section 348 of the Bankruptcy Code.

## I.     <u>The Plan</u>

38.     On April 21, 2026, Debtor filed its Subchapter V Plan of Reorganization for Martin Charles Flynn (Doc. No. 66) (the "**Plan**"). The Plan does not provide any treatment of Pedixon's secured interest in Debtor's residence. It is a one-year Plan, and proposes to pay approximately $478,000, despite Debtor being subject to millions of dollars of claims.

## J.     <u>Continued 341 Meeting of Creditors</u>

39.     On May 4, 2026, Debtor's continued 341 meeting of creditors was held. At that meeting, Debtor testified he was still planning on amending his Schedules. Further, he testified that the income he refers to in his Schedule J related entirely to proceeds from 650 LLC and from

---

[5] This Motion was granted, however, on April 20, 2026, knowing that the Stay Motion would be granted, Debtor removed this case to the Bankruptcy Court and a Motion to Remand this case is currently pending before the Court.

6363290.v1

WM and MTF. He also testified he was not currently receiving any income from MTF and WM because the funds were being held pending the resolution of Debtor's claims that Pedixon does not have an interest in the Cashflows and the membership interests in WM and MTF.

**K.    Debtor's Monthly Operating Reports**

40.    On May 13, 2026, Debtor filed his monthly operating reports for the month of March and April 2026 (Doc. Nos. 79, 80). As of the end of April 2026, Debtor had $352.74 on hand and a total income for both months totaling $1,291.48. The source of this income is unclear.

## ARGUMENT

41.    Under § 1112(b)(1), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this Chapter to a case under Chapter 7 or dismiss a case under this Chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under Section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112. The word "shall" is mandatory once cause is established and no exception applies, the court must act. See, In re No Rust Rebar, Inc., 641 B.R. 412, 422-423 (Bankr. S.D. Fla. 2022); In re Sundale, Ltd., 471 B.R. 300, 302-303 (Bankr. S.D. Fla. 2012). While Section 1112(b)(4) provides examples of cause to dismiss a bankruptcy case, these are not exclusive, and can include bad faith. See In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988) (citing other factors to consider for a determination of bad faith).

42.    In the Subchapter V context, Section 1181(a) provides an exhaustive list of sections that do not apply in Subchapter V cases, and § 1112(b) is not among those excluded provisions. 11 U.S.C. § 1181; 11 U.S.C. § 1112. The Bankruptcy Court for the Southern District of Florida noted in In re Seven Stars on the Hudson Corp., 618 B.R. 333, 343 (Bankr. S.D. Fla. 2020) that § 1112(b)(4)(J) provides that "a debtor's failure to file a disclosure statement or to file

6363290.v1

or confirm a plan within the time fixed by the Bankruptcy Code constitutes cause for dismissal of this case" and applied this provision to dismiss the case. Moreover, the plan filed must be complete or the case is subject to dismissal. Cause exists under § 1112(b)(4)(J) where the debtor's plan is materially incomplete or otherwise insufficient, including where a plan is not feasible or fails to provide adequate means for its implementation. See In re No Rust Rebar, Inc., 641 B.R. 412 (2022).

43.     Additional considerations for dismissal or conversion of a Subchapter V case include: i) the debtor's financial distress; ii) ability to formulate and execute a viable reorganization plan; and iii) evidence of filing purely or primarily as a litigation tactic. In re TGP Communications LLC, 662 B.R. 795, 803 (Bankr. S.D. Fla. 2024). Ultimately the question is does the case "comport with the Congressional intent of the Bankruptcy Code?" Id. at 804.

**Debtor does not qualify for Subchapter V.**

44.     In his CMS, Debtor did not identify what commercial activity he was engaged in to qualify for Subchapter V. Section 1182(1) of the Bankruptcy Code requires that for a debtor to qualify for Subchapter V, the debtor must be a "small business debtor." That term is defined, in part, as "a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is in the business of owning single asset real estate)..... 11 U.S.C. § 101(51D)(A)(emphasis added).

45.     Debtor does not conduct business in his individual capacity. According to his Schedules, he owns interests in or is the officer or director of several entities who at one time conducted business or may own investments in other companies or investments. Debtor as his own legal entity, in his own name, is not engaged in business. None of his other businesses have filed for bankruptcy protection as required by the definition of "small business debtor." While his non-

debtor entities may qualify as a "small business debtor" for the purposes of Subchapter V, Debtor does not. If Debtor qualifies for Subchapter V, than any employee, officer, director or investor in a non-debtor company would qualify for Subchapter V. This result is well outside the definition of "small business debtor" reflected in the Bankruptcy Code.

46.    Further, even if Debtor could qualify as a small business debtor for the purposes of Subchapter V, based on his attempts to litigate 650 LLC's foreclosure in this case and because several of his entities are co-obligors on his debts, this case appears to be intended to litigate non-debtor's interest. To the extent that Debtor was engaged in business activities as of the Petition Date is in serious question. Tiered Capital is no longer operating. WM and MTF are owned by Pedixon and exists to receive collect passive income. Sherwood Construction is no longer operating and has turned over its business to CTO Holdings that is acting as its debt collector.

47.    Based on the above, the election to proceed Subchapter V and receive its benefits is not supportable and was in bad-faith.

**Debtor does not have a steady source of income to complete a plan.**

48.    In his Schedules, Debtor claims he has current income from his business interests. That is not true. As addressed above, his businesses do not appear to be operating or generating revenue. In Debtor's Schedules he claims to own interests in four (4) businesses: Tiered Capital, WM, MTF and 650 LLC. However, Debtor assigned Pedixon his ownership interests in MTF and WM, as well as all of the income derived therefrom. Tiered Capital is defunct. 650 LLC's sole asset is subject to a foreclosure proceeding. Debtor's MORs only reflect approximately $600.00 a month in income. Debtor reported a negative disposable income in his Chapter 13 filings. There is nothing to indicate Debtor has the ability to complete the Plan.

**Debtor's Schedules appear to be incomplete and they still have not been amended.**

11

6363290.v1

49.    Debtor has repeatedly stated through counsel and at his 341 meeting of creditors he is amending his Schedules. As of the date of this Motion, he has not filed his amendments. This is egregious in the Subchapter V context where a case has been pending for four months and Congress intended such case to be expeditious to protect creditors.

50.    In addition, it appears Debtor's Schedules are incomplete. In 2023, Debtor provided Pedixon with a balance sheet. In that Balance Sheet he claimed a net worth of $14,445,774. Included in that net worth were "Investments Real Estate" that included several investments not reflected in his Schedules: Boatworks Residences, 73 Ocean Apartments, Caya Place Apartments, and 623 73rd Duplex (collectively, the "**Missing Entities**"). In total, these investments were reportedly worth $2,591,775. These interests are not referred to in Debtor's Schedules or Statement of Financial Affairs.

**Debtor's Plan is unconfirmable on its face.**

51.    The Plan as written is not confirmable. Debtor presents no treatment of Pedixon's mortgage on Debtor's home. Debtor projects an income of $478,000 in year one of the Plan, but there is no support for that amount. To the extent he is relying on a resolution of his dispute of his income from MTF and WM, his Plan by only being a one year Plan, will not pay all of his creditors in full, and if he extended his Plan to three to five years according to his Chapter 13 filings, he has a _negative_ disposable income even if we include WM and MTF. The Plan also does not identify the sources of income or provide any specific statements regarding feasibility. Pedixon asserts a claim totaling approximately $6.0 million. The Plan does not address avoidance actions relating to the Missing Entities.

52.    In addition, the Plan does not provide a sufficient liquidation analysis. The Plan states the value of his "business interests" are unknown. He does not identify the business interests

12

6363290.v1

and provides no analysis as to what they may generate in a liquidation. Debtor does not identify any other assets of significant value.

53. By definition the Plan cannot be complete and is a mere placeholder. The Plan was filed in response to comments made by the Court at the status conference that the Plan should be filed within 90-days of the Petition Date because section 348 of the Bankruptcy Code does not reset the date of the order for relief for Subchapter V cases. The Plan is not complete because Debtor has repeatedly stated he needs to amend its Schedules and they were not submitted as of the date of the Plan. Without amended and accurate Schedules, the creditors cannot fully evaluate the Plan. Debtor could have easily continued its bankruptcy case outside of Subchapter V, but he decided to invoke the advantages of Subchapter V while not complying with the clearly stated Congressional intent when enacting Subchapter V.

**This is a two-party dispute.**

54. As already stated by Debtor's counsel at the status conference, Debtor's primary reason for filing this bankruptcy case is to determine and litigate Pedixon's claim in Bankruptcy Court rather than the state court where they are pending. Debtor even removed a foreclosure against a non-debtor's assets, 650 LLC, in an attempt to forestall Pedixon's recovery. Debtor has not addressed the foreclosure of his home in his Plan. Based on the litigation history between the parties, Debtor's participation in the bankruptcy cases of Homemakers, his filing of the Chapter 13 case without eligibility in order to avoid being subject to a sanctions judgment in the Involuntary Proceeding, Debtor's complete lack of income, and Debtor's counsel's statement's at the status conference, this case is about forum shopping and is a litigation tactic and this case was filed in bad faith.

13

6363290.v1

## CONCLUSION/RESERVATION OF RIGHTS

55.   As of this time, dismissal or conversion of this case is warranted. Conversion of this bankruptcy case to Chapter 7 would most likely be most beneficial to creditors. There are significant questions regarding Debtor's asset and business interests and the reduction of his assets from over $14,000,000 in 2023 to what is reported in his Schedules. A Chapter 7 trustee should be given a chance to investigate Debtor's assets and liabilities for the benefit of the estate.

56.   As discovery is pending, Pedixon asserts and reserves its right to supplement or amend this Motion and raise additional arguments before this Court.

WHEREFORE, Movant requests that an Order be entered converting this case to a case pending under Chapter 7, or in the alternative, dismissing this bankruptcy case and for any further relief the Court deems just.

DATED: May 19, 2026.

/s/ James A. Timko
James A. Timko, Esq.
Florida Bar No. 0088858
**DEAN, MEAD, EGERTON, BLOODWORTH,
CAPOUANO & BOZARTH, P.A.**
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801
Telephone:    407-841-1200
Facsimile:    407-423-1831
Emails:       jtimko@deanmead.com
              mgodek@deanmead.com
***Counsel for Creditor, Pedixon, LLC***

14

6363290.v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties listed below by ECF notification (if they receive ECF notification) and U.S. mail on May 19, 2026:

**Debtor**

Martin Charles Flynn, Jr.
14556 Saint Georges Hill Drive
Orlando, FL 32828

**Debtor's Counsel**

Daniel A. Velazquez
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Avenue, Suite 1400
Orlando, FL 32801

**Subchapter V Trustee**

Todd Budgen
Budgen Law
Post Office Box 520546
Longwood, FL 32752

**U.S. Trustee**

United States Trustee - ORL7/13, 7
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

**U.S. Trustee's Counsel**

Wanda D. Murray
400 West Washington Street, Ste. 1100
Orlando, FL 32801

and the parties-in-interest matrix attached hereto.

/s/ *James A. Timko*
James A. Timko, Esq.

15

6363290.v1

Label Matrix for local noticing
113A-6
Case 6:26-bk-00399-LVV
Middle District of Florida
Orlando
Tue May 19 14:36:56 EDT 2026

First State Bank of the Florida Keys
Lippes Mathias, LLP
c/o Mahra C. Sarofsky, Esq.
c/o Rilyn A. Carnahan, Esq.
4420 Beacon Cir.
West Palm Beach, FL 33407-3281

Martin Charles Flynn Jr
14556 Saint Georges Hill Drive
Orlando, FL 32828-8035

Pedixon, LLC
c/o James A. Timko, Esq.
Dean Mead et al
420 S. Orange Avenue
Suite 700
Orlando, FL 32801-4911

Shane P. Sarver
c/o Zimmerman, Kiser & Sutcliffe, P.A.
P.O. Box 3000
Orlando, FL 32802-3000

650 85th LLC
14556 Saint Georges Hill Drive
Orlando, FL 32828-8035

Austin Commons LP
1011 Cherry Avenue
Nashville TN 37203-4755

Bank of America
PO Box 660441
Dallas TX 75266-0441

Bank of America
PO Box 851001
Dallas TX 75285-1001

Bank of America, N.A.
MARINOSCI LAW GROUP, P.C.
100 West Cypress Creek Road, Suite 1045
Fort Lauderdale, FL 33309-2191

Bank of America, N.A. -
P.O. Box 31785
Tampa, FL 33631-3785

Bank of America, N.A. -
PO Box 673033
Dallas, TX 75267-3033

Billd Exchange LLC
Attn: RJ Haughey II Esq
401 E Jackson Street
Suite 2225
Tampa FL 33602-5213

Billd Exchange, LLC -
3800 N. Lamar Blvd. #210
AUSTIN, TX 78756-0003

Cape Crossing Condominium Association Inc
4320 S Babcock St Suite 102
Melbourne FL 32901-8863

Cape Crossing Town Homeowners Association In
4320 S Babcock St Suite 102
Melbourne FL 32901-8863

Chase Card Services
PO Box 15123
Wilmington DE 19850-5123

Chase Ink
PO Box 15123
Wilmington, DE 19850-5123

Chase Prime Visa
PO Box 15123
Wilmington, DE 19850-5123

Cherry Village LP
421 NE 12th Avenue
Homestead FL 33030-6259

Citi Cards
PO Box 658202
Dallas TX 75265-8202

David McPhillips
4907 Bayshore Blvd 116
Tampa FL 33611-3875

Fifth Third Bank N.A. -
PO Box 9013
Addison, Texas 75001-9013

First State Bank of the Florida Keys
RILYN A. CARNAHAN, ESQ
4420 Beacon Cir.
West Palm Beach, Florida 33407-3281

First State Bank of the Florida Keys
c/o Mahra Sarofsky, Esq. and Rilyn Carna
Lippes Mathias, LLP
4420 Beacon Circle
West Palm Beach, FL 33407-3281

Florida Department of Revenue -
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Horton Johnson
10226 Curry Ford Road
Suite 107, PMB 1036
Orlando, FL 32825-8735

Horton S Johnson
10226 Curry Ford Road
Suite 107 PMB 1036
Orlando FL 32825-8735

Internal Revenue Service
PO Box 1303
Charlotte NC 28201-1303

Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

Iseley Fugitt
1400 Prudential Drive
Suite 3
Jacksonville FL 32207-8177

J. Christopher Crowder
700 N Wickham Rd, Unit 205
Melbourne, FL 32935-8840

JPMorgan Chase Bank, N.A. -
s/b/m/t Chase Bank USA, N.A.
Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

James A. Timko, Esq.
DEAN, MEAD, EGERTON, BLOODWORTH,
CAPOUANO & BOZARTH, P.A.
420 S. Orange Avenue, Suite 700
Orlando, Florida 32801-4911

Jerry Holliday
Attn: Eric S Gillin Esq
222 N Harbor City Blvd
Melbourne FL 32935-6762

Launch Credit Union
300 S Plumosa St
Merritt Island FL 32952-3526

Lowndes, Drosdick, Doster, Kantor & Reed, PA
PO Box 2809
Orlando, FL 32802-2809

Luis Cortez
Attn: Peter Carr Esq
203 E Livingston Street
Orlando FL 32801-1508

MTF Holdings, LLC
14556 Saint Georges Hill Drive
Orlando, FL 32828-8035

Michael McPhillips
Fassett, Anthony & Taylor, P.A.
1325 W. Colonial Drive
Orlando, FL. 32804-7133

Mike McPhillips
310 Lagoon Way
Merritt Island, FL 32953-4132

Monroe County Property Tax Collector
PO Box 1129
Key West FL 33041-1129

Orange County Tax Collector -
PO Box 545100
Orlando FL 32854-5100

PEDixon LLC
1627 East Vine Street Suite E
Kissimmee FL 34744-3719

SHANE P. SARVER
Zimmerman, Kiser & Sutcliffe, P.A.
P.O. Box 3000
Orlando, FL 32802-3000

Tamamoi, LLC
c/o Elizabeth Wulff, Esq.
McMichael Taylor Gray, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092-2871

The Carton Family Trust
c/o Elizabeth Wulff, Esq.
McMichael Taylor Gray, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092-2871

Tracey Flynn
14556 Saint Georges Hill Drive
Orlando FL 32828-8035

WM Holdings Group LLC
c/o Shane Sarver Manager TriSt
4488 Heaton Park Trial
Viera, FL 32955-6760

United States Trustee - ORL7/13 7 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Frederic J DiSpigna +
Marinosci Law Group, P.C.
100 West Cypress Creek Road
Suite 1045
Fort Lauderdale, FL 33309-2191

Phil A D'Aniello +
Fassett Anthony & Taylor PA
1325 West Colonial Drive
Orlando, FL 32804-7133

James Timko +
Dean, Mead, Egerton, Bloodworth, Capouan
420 S Orange Avenue
Suite 700
Orlando, FL 32801-4911

Bradley J Anderson +
Zimmerman Kiser & Sutcliffe, P.A.
Post Office Box 3000
Orlando, FL 32802-3000

Mahra C Sarofsky +
Lippes Mathias LLP
4420 Beacon Circle
West Palm Beach, FL 33407-3281

Wanda D Murray +
United States Department of Justice
400 West Washington Street
Ste 1100
Orlando, FL 32801-2440

Daniel A Velasquez +
Latham, Luna, Eden & Beaudine, LLP
201 S. Orange Ave., Ste. 1400
Orlando, FL 32801-3483

Bank of America (EM) +
4161 Piedmont Parkway, NC4-105-03-14
Greensboro, NC 27410-8119

Lori V. Vaughan +
Orlando
, FL

L. Todd Budgen +
Budgen Law
Post Office Box 520546
Longwood, FL 32752-0546

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)BANK OF AMERICA, N.A.                    (u)Michael McPhillips                    (u)Various Sherwood Entities Debtor is guaran

(u)Note: Entries with a '+' at the end of the          End of Label Matrix
name have an email address on file in CMECF             Mailable recipients      59
----------------------------------------               Bypassed recipients       4
Note: Entries with a '-' at the end of the              Total                    63
name have filed a claim in this case

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## LOAN AGREEMENT

THIS LOAN AGREEMENT is entered on this 14 day of September 2023, between the following lender, borrowers and guarantors.

### LENDER:

- PEDIXON LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

- ZPD LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

    (hereinafter collectively referred to as "Lender" for convenience purposes)

### BORROWER:

- Tiered Capital, Inc., whose address is 5526 Hansel Avenue, Orlando, FL 32809

    (referred to herein as the "Borrower")

### GUARANTORS:

- Sherwood Construction, Inc.

- Florida Space Coast Resorts, Inc.

- Homemakers Real Estate, LLC

- Cape Crossing Vacation Rentals, LLC ("CCVR")

- Holly Bluff Marina, Inc. ("Holly")

- A Marine, Inc.

- Recycled Group of South Carolina, LLC ("Recycled")

- 650 85th

- MTF Holdings, LLC

- Martin C. Flynn, Jr.

- Horton S. Johnson

- Yaniv Amar

    All guarantors are collectively referred to as the "Guarantor."

1



DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## DEFINITIONS

Lender, Borrower and Guarantor agree that in addition to terms defined elsewhere in this Agreement, the following terms have the following meaning:

*Agreement* – This Loan Agreement, which may be amended or modified from time to time, together with all exhibits and schedules attached.

*CCVR* – Cape Crossing Vacation Rentals, LLC, and its assigns.

*Closing Attorney* – Alison Pitkanen, Esquire.

*Collateral* – All property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, lease, assignment of lease, land trust, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Event of Default* – Any of the Events of Default set forth below.

*First Mortgages* – First priority security interest in the Property held by Mainstreet Bank (as to 19 Units) and Tamamoi (as to 9 units), recorded in the Public Records of Brevard County, Florida, and more particularly described on Schedule 2.

*Grantor* – Each and all of the persons or entities granting a Security Interest in any Collateral for the Indebtedness.

*Leases* – All leases that are part of the vacation rental program at Cape Crossing Resort and Marina as created under Brevard County Official Records Book 7626 Page 1609.

*Indebtedness* – All Loans, together with all other obligations, debts and liabilities of Borrower and Guarantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Guarantor, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower and/or Guarantor may be liable individually or jointly with others; whether Borrower and/or Guarantor may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable. The total indebtedness as of the date hereof is Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000).

*Loan* – All loans and financial accommodations from Lender to Borrower and/or Guarantor, whether now or hereafter existing, and however evidenced, including without limitation, the loan in the original principal amount of $750,000.00 of even date herewith, and any other loan described herein or described on any exhibit or schedule attached to this Agreement from time to time.

*Loan Documents* – The Note, and Related Documents.

*Note* – Promissory note evidencing Borrower's Loan obligations in favor of Lender.

*Obligor(s)* – Individually and collectively, Borrower and Guarantor.

*Permitted Liens* – All (a) liens and security interests securing indebtedness owed by Borrower to Lender; (b) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (c) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (c) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing. Specifically, included as part of the Permitted Liens are the

2

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

following: the first mortgages, in the disclosed outstanding principal amount as of the date hereof, currently affecting title to the Land, as long as the Borrower's representations made herein are true and correct.

*Property* – The real property legally described in Exhibit "A" attached hereto, consisting of 26 Units, together with all appurtenances thereto, including the improvements located thereon and the fixtures and existing personal property. The Property is governed by a homeowner association(s) and is thus subject to the governing documents recorded in the Official Records of Brevard County, Florida, including, but not limited to, the articles, bylaws, and covenants, of Cape Crossing Resort and Marina Living and Cape Crossing Resort Management Inc., in Official Records Book 7626 Page 1609, Cape Crossing Condominium Association, Inc. and/or Cape Crossing Townhomes Homeowners Association, Inc, including but not limited to all amendments to said documents that may be hereafter recorded in the Official Records of Brevard County, Florida.

*Related Documents* – All promissory notes, credit agreements, loan agreements, assignment and/or sale of rents, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

*Security Interest* – Any type of collateral security, whether in the form of a lien, charge, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

*Stock* – All of the issued and outstanding stock and/or membership units, whichever the case may be of Holly Bluff Marina, Inc., Recycled Group of South Carolina and Cape Crossing Vacation Rentals, LLC.

*Tiered Loan* – The Tiered Loan includes all loan accommodations as of the date hereof made to Tiered Capital, Inc., the principals of Tiered Capital Inc., the consultants of Tiered Capital, Inc., the Borrowers, the Guarantors, and all entities related thereto. All of the loans that comprise the Tiered Loan are set forth on Schedule 1 attached hereto and made a part hereof. After closing the Loan on this date, the total outstanding indebtedness of the Tiered Loan will be Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000). The Tiered Loan shall include all modifications, extensions, renewals and advances made after the date hereof.

*Tiered Loan Monthly Interest Payment* – The loan payment due under the Tiered Loan on the 1st of each month. This total payment is inclusive of each loan payment due under the loans identified on Schedule 1.

*Trust Property* – The Property and the Stock.

*Unit(s)* – Any dwelling place located on or about Cape Crossing Resort and Marina created under Brevard County Official Records Book 7626 Page 1609, that is used in the rental program located at the Resort, and shall include but is not limited to, a condominium and townhouse.

3

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

In consideration of the mutual covenants and promises set forth herein, Lender and Obligors enter into this Loan Agreement.

1. **Purpose.** The parties have acknowledged and agree upon the following facts:

   1.1. All Obligors have benefited from the Tiered Loan, and will all benefit from the current Loan of $750,000.00.

   1.2. The Tiered Loan is in default as of the date hereof. This includes, but is not limited to, a monetary default of all loans by all Obligors. These loans are more particularly set forth on Schedule 1.

   1.3. The Obligors have requested assistance from the Lender to reinstate each of their loans.

   1.4. In exchange for the extension of credit from the Lender, the Obligors hereby transfer Trust Property into the land trust, guarantee the payment of the Tiered Loan Monthly Interest Payment and make all of the promises stated herein.

   Notwithstanding the foregoing, and except as may be specifically stated herein, the terms of each loan described on Schedule 1 shall remain unchanged and shall further remain in full force and effect.

2. **Loan Closing.** On the date hereof, Lender has made a loan accommodation to Borrower in the principal amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00) (the "Loan").

3. **Joint Liability.** By signature hereto, the Obligors are individually, jointly and collectively responsible for the timely payment of the Tiered Loan Monthly Interest Payment.

4. **Trust Property.** All of the Stock and Property shall be transferred unto CRESENT SOUND LTD. as the Trustee of the TIERED LAND TRUST AGREEMENT created and funded with the Trust Property of even date herewith.

5. **Additional Collateral.** Each Obligor shall take all reasonable and necessary steps to ensure that Lender has a perfected security interest in the following Collateral:

   5.1. **Leases.** All currently existing and future leases shall be assigned by CCVR, or its assigns, unto Lender.

   5.2. **Rents.** All rents collected by virtue of the Obligor's vacation rental business shall be assigned to Lender.

   5.3. **Collected Rents.** The collected rents from Obligor's vacation rental business shall be paid as follows:

      5.3.1. Lender shall be entitled to the first rental monies received in weekly installments of $25,000, which shall be applied to the amount owed under the Tiered Loan Monthly Interest Payment.

      5.3.2. Current sales tax due and payable.

      5.3.3. Then, the First Mortgages shall be paid.

4

DocuSign Envelope ID: ADBFE0CB-97E1-459F-9A59-99B406B04C39

5.3.4. No Obligor hereunder shall be entitled to any of the collected rental income to pay any unsecured indebtedness, or to repay any of Obligor's personal investments in any of the undersigned entities.

5.3.5. Any excess collected rental income shall be expended to pay other debts and obligations as directed by Borrower.

5.4. **Unit Sale Proceeds**. The proceeds of the sale of any Unit or any other Collateral, subject only to the payment of the Permitted Liens and standard closing costs.

6. **Allocation of Loan**. The Loan shall be allocated into two parts:

6.1. $375,000 shall be designated as an interest reserve account (the "Reserve Account"). The Parties agree to the following terms and conditions regarding the Reserve Account:

6.1.1. The following shall be paid from the Reserve Account: all outstanding payments owed to Lender as of the date hereof and all closing costs incurred as a result of the Loan. After closing, Lender shall provide an accounting of funds applied from the Reserve Account.

6.1.2. From time to time, with the consent of Lender, funds from the Reserve Account may be used towards the Monthly Payment if financial assistance is necessary.

6.1.3. From time to time, with the consent of Lender, funds from the Reserve Account may be used to assist with closing costs that may be required when there is a closing on any Unit.

6.1.4. When there is a sale of any of the Property, Lender, in Lender's discretion, may replenish the Reserve Account with monies received from the proceeds of a sale.

6.2. $375,000 shall be disbursed to the Closing Attorney, and shall be utilized for the benefit of Borrower as follows:

6.2.1. All outstanding associations dues and real estate taxes shall be paid.

6.2.2. The outstanding amounts currently due on the First Mortgage payments shall be made.

6.2.3. $89,000 shall be delivered to Closing Attorney for outstanding payments related to the purchase of Holly Bluff Marina, Inc.

6.2.4. Borrower shall provide Closing Attorney with written instructions related to any excess funds that may be available.

7. **Depository Account**. As a condition precedent to the loan, Obligor shall establish a depository account and direct all rental income from its vacation rental operations to said account. The details of this account should be provided to Lender within three days of this Loan Agreement.

8. **Post Closing Covenants.**

8.1. **Weekly Payment to Lender.** Obligor agrees to make weekly payments to Lender in the amount of Twenty-Five Thousand Dollars and No/Cents ($25,000). Lender will apply this payment to the Tiered Loan Monthly Interest Payment. The intention of the Weekly Payment is for the Lender to collect One Hundred Thousand Dollars and No/Cents ($100,000.00) per month, therefore, if there is a shortfall one week, it will be recovered in the following weeks so that Lender receives at least $100,000.00/per month before any other Property expenses are paid.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

8.2.  **Agreement to sell the Units.** Obligor agrees to earnestly market and sell Units. Obligor agrees that its goal is to sell two units each month. Obligor must provide monthly notification to Lender identifying the subject units listed for sale. When a contract is signed, it must be immediately delivered to Lender to ensure Lender has the opportunity to exercise its right of first refusal.

8.3.  **Leases.** Obligor shall take all steps necessary to remain compliant in all existing and future vacation rental leases relating to the Property. Obligor shall not cause any disruption to the Leases. Obligor shall not make any material changes to the leases without the prior written approval of the Lender. Copies of all existing leases shall be delivered to Lender within three days of Closing.

8.4.  **Property.** Obligor shall ensure that the Property is well-maintained and the investment in the Units are protected. Specifically, Obligor must ensure that the following items are timely paid:

8.4.1.  Association dues.

8.4.2.  Sales tax.

8.4.3.  Real estate taxes.

8.4.4.  All required insurances, as may be mandated by mortgage agreement, lease agreement, or otherwise.

8.4.5.  Monthly payments due under the First Mortgages.

9.  **Documents Executed Contemporaneous With Closing.** The parties will execute all documents necessary to effectuate the following at Closing, or at any time thereafter, as Lender may request, to fulfill the loan requirements set forth herein.

9.1.  Assignment of all current and future leases on the Property from CCVR to Lender.

9.2.  Assignment, transfer and sale of all rental payments collected by CCVR. Lender will be entitled to all existing and future rents generated from the vacation rental business operated by CCVR.

9.3.  Execution of the TIERED LAND TRUST AGREEMENT designating CRESCENT SOUND, LTD. as Trustee. Said land trust agreement shall be funded with the Trust Property at the time of Closing.

9.4.  Execution and recordation of a trustee's deed transferring the Trust Property unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.5.  Execution of proper documentation transferring all of the issued and outstanding Stock unto CRESCENT SOUND, LTD., as Trustee of the contemplated land trust.

9.6.  Execution of agreements assigning the beneficial interest in the Trust Property unto Lender, or a designated assignee thereof. This agreement shall be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.7.  Written notification of the two (2) Units that are being marketed for sale each month, along with a copy of the listing agreement..

9.8.  Executed CCVR stock option to be held in trust by the Closing Attorney until satisfaction of the Tiered Loan.

9.9.  The form of each document referenced in this section shall be attached hereto and incorporated as part of this Loan Agreement.

6

DocuSign Envelope ID: ADBFE0CB-9761-469F-9A59-99B406B04C39

10.   **Representations and Warranties.** Each Obligor represents and warrants to Lender, as of the date of this Agreement, and as of the date of any renewal, extension or modification of the Loan or any part of the Tiered Loan, and at all times any Indebtedness exists, that:

10.1.   First Mortgages. The outstanding principal balance of the First Mortgages and the corresponding approximate monthly payments are more particularly set forth on Schedule 2.

  10.1.1.   Obligor will not make any further advances on the First Mortgages, and will ensure the First Mortgages are timely paid even if the monthly rents collected are not sufficient to pay said indebtedness.

10.2.   Authorization. The execution, delivery, and performance of this Agreement and all Related Documents by Obligor, to the extent to be executed, delivered or performed by Obligor, have been duly authorized by all necessary action by Obligor; do not require the consent or approval of any other person, regulatory authority or governmental body; and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Obligor or (b) by law, governmental regulation, court decree, or order applicable to Obligor.

10.3.   Legal Effect. This Agreement constitutes, and any instrument or agreement required hereunder to be given by Obligor when delivered will constitute, legal, valid, and binding obligations of Obligor enforceable against Obligor in accordance with their respective terms.

10.4.   Litigation and Claims. No litigation, claim, investigation, administrative proceedings or similar action (including those for unpaid taxes) against Obligor is pending or threatened, and no other event has occurred which may materially adversely affect Obligor's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

10.5.   Taxes. To the best of Obligor's knowledge, all tax returns and reports of Obligor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Obligor in good faith in the ordinary course of business and for which adequate reserves have been provided.

10.6.   Binding Effect. This Agreement, the Note, all Security Interests directly or indirectly securing repayment of Obligor's Loan and all of the Related Documents are binding upon Obligor as well as upon Obligor's successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

10.7.   Commercial Purposes. Borrower intends to use the Loan proceeds solely for business or commercial related purposes.

10.8.   Information. All information heretofore or contemporaneously herewith furnished by Obligor to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Obligor to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

10.9.   Survival of Representation and Warranties. Obligor understands and agrees that Lender, without independent investigation, is relying upon the above representations and warranties in extending the Loan to Obligor. Obligor further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as Obligor's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

7

DocuSign Envelope ID: ADBFEUCB-9761-459F-9A59-99B406B04C39

11. **Prepayment.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the Loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

12. **Affirmative Covenants.** Each Obligor covenants and agrees with Lender that, while this Agreement is in effect, it will:

   12.1. <u>Litigation</u>. Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower which could materially affect the financial condition of Borrower.

   12.2. <u>Financial Records</u>. Maintain its books and records in accordance with generally accepted accounting principles, or with sound accounting principles applied on a consistent basis, and permit Lender to examine and audit Obligor's books and records at all reasonable times or to confirm Obligor's compliance with this Agreement.

   12.3. <u>Taxes, Charges and Liens</u>. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Obligor or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Obligor's properties, income, or profits. Provided however, Obligor will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (a) the legality of the same shall be contested in good faith by appropriate proceedings, and (b) Obligor shall have established on its book adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with generally accepted accounting practices. Obligor, upon demand of Lender, will furnish to Lender evidence of payment of the assessments, taxes, charges, levies, liens and claims and will authorize the appropriate governmental official to deliver to Lender at any time a written statement of any assessments, taxes, charges, levies, liens and claims against Obligor's properties, income, or profits.

   12.4. <u>Performance</u>. Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in the Related Documents in a timely manner, and promptly notify Lender if Obligor learns of the occurrence of any event which constitutes an Event of Default under this Agreement or under any of the Related Documents.

   12.5. <u>Additional Assurances</u>. Each Obligor shall make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorney may reasonably request to evidence and secure both the Loan and the Tiered Loan, and to perfect all Security Interests.

13. **Negative Covenants.** Each Obligor covenants and agrees with Lender that while this Agreement is in effect, Obligor shall not, without the prior written consent of Lender:

   13.1. <u>Continuity of Operations</u>. (a) Engage in any business activities substantially different that those in which Obligor is presently engaged, or (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business.

14. **Event of Default.** Each of the following shall constitute an Event of Default under this Agreement:

8

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

14.1.   **Default on Indebtedness.** Failure to make any payment when due on the Loan and/or the Tiered Loan Monthly Interest Payment. This shall include the failure to pay to Lender $25,000/week as agreed upon herein.

14.2.   **Default on Depository Account.** Failure to immediately notify Lender regarding any changes made to the Depository Account.

14.3.   **Default on Leases.** Any default, termination or material change under the Leases.

14.4.   **Default on Sale of Units.** The failure to use good faith in the marketing and sale of the Units.

14.5.   **Other Defaults.** Failure of any Obligor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of any Obligor to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and such Obligor, including, without limitation, a default under any other loan referred to in the Note as constituting a default under the Note.

14.6.   **Default in Favor of Third Parties.** Should an Obligor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of such Obligor's property or such Obligor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

14.7.   **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of an Obligor under this Agreement or the Related Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

14.8.   **Insolvency.** The dissolution or termination of the existence of Borrower as a going business, the Insolvency of Borrower, the appointment of a receiver for any part of property of Borrower, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws or against Borrower.

14.9.   **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

14.10.  **Insecurity.** Lender, in good faith, deems itself insecure.

15.  **Effect of an Event of Default on Indebtedness.** In the event Obligor fails to make the Monthly Payment and/or the Weekly Payment, Lender shall have the right to all of the following remedies. Lender's failure to exercise any of its rights hereunder shall not constitute a waiver of any rights provided herein.

15.1.   **Exclusive control of Depository Account.** If any monetary Event of Default shall occur, Lender, at Lender's option, shall have the right to sole and exclusive control of the Depository Account. Lender may exercise this right upon delivery of the attached notice to CCVR, with a copy to Tiered Capital, Inc. In the event Lender must exercise this right, Lender shall be released of any liability relating to the manner in which the collected rents are managed. Lender shall be under no duty or obligation to pay any other party, or any particular item relating to the Property.

15.2.   **CCVR Stock Option.** If any monetary Event of Default shall occur, Lender, at Lender option, shall be entitled to exercise its option on the CCVR stock. Lender's exercise of its option shall be deemed exercised upon delivery of the notice to CCVR, with notice to Tiered Capital, Inc. (form of option attached); and/or

9

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

15.3. **Beneficial Ownership in Trust Property.** The assignment of beneficial ownership of the Trust Property shall be executed contemporaneously herewith, and held in trust by the Closing Attorney.

Upon execution of this Loan Agreement, the Closing Attorney shall be authorized to release the following directly to Lender if Lender so elects in any monetary Event of Default: Assignment of Beneficial Interest in the Trust Property (attached). No advance notice to Borrower or Obligor shall be required.

16. **Effect of All Events of Default.**

16.1. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Loan Documents, all commitments and obligations of Lender under this Agreement or the Loan Documents or any other agreement immediately will terminate (including any obligation to make disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Loan Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of any Obligor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

16.2. Further, notwithstanding any provision of the Note or any other Loan Documents, Lender may, following an Event of Default, and without declaring all amounts due and owing (i.e. accelerating the Loan), increase the Interest Rate by the highest rate allowed by law. Such interest rate shall apply until the later of the following to occur: (a) one calendar year after the Event of Default; or (b) the Event of Default is cured. Lender's pursuit of this remedy will not preclude Lender from thereafter accelerating the Loan or taking other remedies available under this Agreement or the Loan Documents.

17. **Release.** Upon satisfaction of all the Indebtedness, including any future advances or future loan or accommodations made to any Obligor hereunder, this Agreement shall terminate. As to Yaniv Amar, upon satisfaction of the loans made to Recycled Group of South Carolina, LLC and Holly Bluff Marina, Inc., and as long as no additional extensions of credit have been made to said obligor, Yaniv Amar shall be released from this Agreement. With the release from this Agreement, the undersigned will take the steps necessary to transfer all the shares of Holly and Recycled from the Tiered Land Trust unto Yaniv Amar, or his designee.

18. **Miscellaneous.**

18.1. **Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

18.2. **Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Florida. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Brevard County, the State of Florida. Lender and Borrower waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

18.3. **Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

10

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

18.4. Multiple Parties; Corporate Authority. All obligations of each Obligor under this Agreement shall be joint and several, and all references to an Obligor shall mean each and every Obligor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

18.5. Notices. All notices required to be given under this Agreement shall be given in writing, may be sent by email (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United State mail, first class, postage prepaid, addressed to party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Obligor, notice to any Obligor will constitute notice to all parties named as Obligor. For notice purposes, Obligor will keep Lender informed at all times of Obligor's current address(es).

18.6. Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

18.7. Successors and Assigns. All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure to the benefit of Lender, its successors and assigns.

18.8. Survival. All warranties, representations, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

18.9. Time is of the Essence. Time is of the essence in the performance of this Agreement.

18.10. Waiver. Lender shall not be deemed to have waived any rights under this Agreement, or any loan documents relating to any loan obligation identified on Schedule 1, or any other agreement with the Obligors unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Obligors, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or of any Obligors as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender is any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of Lender.

19. Survival of Agreement. This Agreement shall survive the closing of the Loan.

20. Schedules and Exhibits. All schedules and exhibits referred to herein and attached hereto shall be incorporated and made part of this Agreement.

11

DocuSign Envelope ID: ADBFE0CB-0701-488F-0A59-00B405B04039

The undersigned have agreed to the foregoing as of the date first set forth above.

Kenneth G. Dixon
As Manager of PEDIXON LLC
AND
AS Manager of ZPD LLC

By: _____
Martin C. Flynn, Jr.
 Individually
 AND as President of Sherwood Construction
 AND as Manager of 650 85th LLC,
 AND as Member of MTF Holdings, LLC,
 AND as Manager of Cape Crossing Vacation Rentals, LLC
 AND as President of Tiered Capital, Inc.

By: _____
Yaniv Amar
 Individually
 AND as Manager of Recycled Group of South Carolina, LLC
 AND as President of A Marine, Inc.
 AND as President of Holly Bluff Marina, Inc.

By: _____
Horton S. Johnson
 Individually
 AND as Manager of Homemakers Real Estate, LLC
 AND as Trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012

FLORIDA SPACE COAST RESORTS, INC.
By: _____
Alexandra Lezcano, Authorized Agent

12

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**STATE OF FLORIDA**
**COUNTY OF** _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Martin C. Flynn, Jr.

_____
Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
_____ Personally known OR
__✓__ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

**STATE OF FLORIDA**
**COUNTY OF** _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of physical presence or __ online notarization on September _14_, 2023, by Yaniv Amar.

_____
Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
_____ Personally known OR
__✓__ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

13

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___physical presence or __ online notarization on September _14_, 2023, by Alexandra Lezcano.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
_____ Personally known OR
_____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: ___License___


STATE OF FLORIDA
COUNTY OF _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___physical presence or __ online notarization on September _14_, 2023, by Horton S. Johnson.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: _HH077342_
Commission Expires: _1/5/2025_

Notary: Check one of the following:
_____ Personally known OR
_____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: ___License___

14

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## SCHEDULE 1

### Tiered Loans
#### Tiered Principals — Loans as of 9/1/2023

**Original January 2022 Loan – Modified and Renewed August 2022**
Borrower:    Sherwood Construction, Inc.
Future Advance:    $250,000.00 represented by Allonge to Note
Total Note Amt:    $600,000

**IMQA 506 Loan**
Lender:    Parke Financial Limited Partnership
Borrower:    IMQA INVESTMENTS, INCORPORATED
Loan Amount:    $300,000

**Recycled Group of SC**
Lender:    ZPD LLC
Borrower:    Recycled Group of South Carolina, LLC
Loan Amount:    $1,300,000

**Option Loan**
Lender:    Pedixon LLC
Borrower:    Sherwood Construction, Inc.
Loan Amount:    $500,000

**One Million Dollar Loan**
Lender:    Pedixon LLC
Borrower:    Sherwood Construction, Inc.
Loan Amount:    $1,000,000

**Resorts Common Area Loan**
Lender:    Pedixon LLC
Borrower:    Sherwood Construction; Canaveral Crossroads as mortgagor
Loan Amount:    $500,000

**River Fly Loan**
Lender:    Pedixon LLC
Borrower:    Florida Space Coast Resorts, Inc.
Loan Amount:    $3,000,000

**Holly Bluff Loan**
Lender:    Pedixon LLC
Borrower:    Tiered Capital, Inc.
Loan Amount:    $3,000,000

**Marty Loan**
Lender:    Pedixon, LLC
Borrower:    Martin C. Flynn, Jr.
Loan Amount:    $125,000

15

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

**EXHIBIT A**
**PROPERTY**

**Legal Descriptions of 26 Units**

16

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

## GUARANTY AGREEMENT

### MARTIN C. FLYNN, JR.

### MTF HOLDINGS, LLC

### 650 85th LLC

### SHERWOOD CONSTRUCTION, INC.

### CAPE CROSSING VACATION RENTALS, LLC

This GUARANTY is given by Martin C. Flynn in the following capacities and shall be collectively referred to herein as the "Guarantor": individually, as President of Sherwood Construction, as Manager of 650 85th LLC, as Member of MTF Holdings, LLC, and as Manager of Cape Crossing Vacation Rentals, LLC.

This GUARANTY is given to induce PEDIXON LLC, a Florida limited liability company located at 1627 E. Vine St., Suite E, Kissimmee FL 34744 (hereinafter called the "Creditor"), to loan funds in the amount of up to SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00), to TIERED CAPITAL, INC., a Florida Corporation (hereinafter called the "Borrower") in accordance with the loan agreement executed of even date herewith.

In consideration of the foregoing, the Guarantor does hereby agree with the Creditor as follows:

1.  **Obligation of Guarantor.** The Guarantor absolutely and unconditionally guarantees to the Creditor, its successors and assigns (whether collateral assigns or otherwise), the prompt and full payment in United States currency and performance to the Creditor at the place of business of the Creditor set forth above or at such other place and to such other person as the Creditor may designate at maturity of any and every obligation, in connection with which either as maker, drawer, guarantor, endorser or otherwise, whether directly, indirectly or contingently, the Borrower is, either individually or jointly or severally with any other person or persons, now or shall become at any time in the future liable to the Creditor with interest thereon at the rate or rates provided in the obligations guaranteed hereby or at the maximum rate allowed from time to time by law in Florida, whichever is less, until payment in full has been received by Creditor, together with all attorneys' fees, costs and expenses of collection whether suit be brought or not, including costs, expenses and attorneys' fees in any bankruptcy proceeding or on appeal if an appeal is taken from any suit, incurred by the Creditor, in connection with any matter covered by this Guaranty. The Guarantor also absolutely and unconditionally guarantees the full and timely performance of all duties and obligations whatsoever of the Borrower to Creditor, whether now existing or hereafter arising, including but not limited to the loan agreement setting forth the loan covenants, and Guarantor further agrees in the event the Borrower fails to fully and timely perform any of such duties and obligations, then Guarantor shall fully and timely perform same. This guaranty includes, without limitation, (i) the loan from Lender to Borrower made on even date herewith, and (ii) the total monthly loan payment due under the loans identified on Schedule 1 attached hereto, which payment obligation is referred to as the Tiered Loan Monthly Interest Payment in the loan agreement executed on this date.

2.  **Term of Guaranty.** The liability of the Guarantor hereunder shall continue until the earlier of:

    2.1.  This guaranty is marked "Canceled" by the Creditor,

    2.2.  Until the Creditor shall receive written notice, by registered mail signed by the Guarantor, canceling this Guaranty, but such cancellation shall not affect in any way the continuing liability of the Guarantor on any transactions covered by this Guaranty up to the time of the actual receipt by the

1



**EXHIBIT**

tabbles

B

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

Creditor of such notice of cancellation, including any advance or other monies which may at any time thereafter be made by the Creditor to the Borrower pursuant to any agreement, promissory note or other instrument or document evidencing any indebtedness of the Borrower to the Creditor, entered into prior to the receipt by the Creditor of such notice by the Guarantor. Notwithstanding the receipt by the Creditor of any notice of cancellation hereunder, the Creditor may in its discretion amend, modify and renew in any way whatsoever any agreement, promissory note or other instrument or document evidencing any indebtedness of the Borrower to the Creditor and in existence at the time such notice of cancellation is received by the Creditor, all without affecting in any way whatsoever the continuing liability of the Guarantor hereunder, but the liability of the Guarantor solely in regard to the principal amount owed the Creditor shall not exceed the amount of principal owing to the Creditor at the time such notice of cancellation is received by the Creditor together with such additional amounts as may thereafter be advanced by the Creditor to or on behalf of the Borrower pursuant to any such agreement, promissory note or other instrument or document in existence at the time such notice is received by the Creditor. In the event such notice of cancellation is given, the liability of the Guarantor shall continue without limitation whatsoever for all amounts other than principal (which is limited under the preceding sentence) due the Creditor such as interest, attorney's fees, costs, and other such amounts.

3. **Bankruptcy of Borrower.** Notwithstanding that the Guaranty may have been canceled under paragraph 2, to the extent the Borrower has made any payments to the Creditor within the ninety (90) day periods before and after the date this Guaranty was so canceled, and the Guarantor was obligated under this Guaranty for such payments, the liability of the Guarantor hereunder shall at all times continue for the amounts so paid by the Borrower to the Creditor. If, for any reason, (e.g. bankruptcy, or otherwise), the Creditor is not permitted to retain the payments so made by the Borrower during such time periods, the Guarantor shall be liable under this Guaranty for the amount of such payments as if this Guaranty had never been canceled and the Creditor shall be entitled to recover such amount so paid by the Borrower within such time periods. Anything in this Guaranty to the contrary notwithstanding, if at any time this Guaranty is to be canceled under the provisions of paragraph 2, the Creditor may retain this Guaranty for a period of one hundred twenty (120) days after the date such Guaranty is to be so canceled and in the event no bankruptcy petition has been filed by or against the Borrower for the ninety (90) day period following the date the Guaranty is to be canceled, then, in that event, the Guaranty shall be returned to the Guarantor. If, however, a bankruptcy petition has been filed by or against the Borrower during such ninety (90) day period, and the Borrower has made payments to the Creditor during such (90) day period, this Guaranty shall not be canceled or returned to the Guarantor unless and until a decision by a court of competent jurisdiction, or other agreement has been entered or reached, pursuant to which the Creditor shall be entitled to retain all such monies paid during such ninety (90) day period. If, as set forth above, the Creditor is obligated to return to the Borrower any monies so paid during such ninety (90) day period, this Guaranty shall not be canceled (notwithstanding it being marked "Canceled" and returned to the Guarantor) and the Guarantor shall continue to be liable to the Creditor for all monies paid during such ninety (90) day period. If the Creditor shall have marked this Guaranty "Canceled" or returned this Guaranty to the Guarantor, and under the provisions of this paragraph 3 or paragraph 2, the Guarantor has continuing liability to the Creditor for certain amounts which the Creditor has or is obligated to return to the Borrower, then, in such case, the Creditor may enforce its rights under this Guaranty upon any copy of this Guaranty notwithstanding the fact that the original of this Guaranty may have been marked "Canceled" or returned to the Guarantor.

4. **Consent to Creditor's Acts.** The Guarantor consents, without affecting in any way the Guarantor's liability to the Creditor hereunder, that the Creditor may, without notice to or consent of the Guarantor and upon such terms as it may deem advisable and with or without consideration and after notice of cancellation is received by the Creditor under paragraph 2 hereof:

4.1. Extend, in whole or in part, by renewal or otherwise, and as often as the Creditor may wish, the time of payment of any indebtedness owing by the Borrower, to the Creditor, or held by the Creditor as security for any such obligation;

4.2. Release, surrender, exchange, modify, impair, or extend the period of duration, or the time for performance or payment, of any collateral securing any obligation of the Borrower to the Creditor;

2

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

4.3. Settle or compromise any claim of the Creditor against the Borrower, or against any other person, firm or corporation, whose obligation is held by the Creditor as collateral security for any obligation of the Borrower to the Creditor; and

4.4. Release in whole or in part any person liable for the payment of any obligation of the Borrower to the Creditor including, but not limited to, any person liable as an endorser, guarantor or judgment debtor (if the Creditor obtains a judgment on any obligation of the Borrower) of such obligation and, in any event, any such release shall not affect the liability of the Guarantor for the entire amount of any and every obligation of the Borrower to the Creditor. Further, the Creditor shall not be under any obligation whatsoever to obtain or perfect or to maintain the perfection of any security interest or other lien on property to secure indebtedness of the Borrower to the Creditor and the Creditor shall have no obligation to, and shall not have any liability for failing to, obtain or perfect or to maintain the perfection of any security interest or lien on property to secure indebtedness of the Borrower. Any failure of the Creditor to obtain and perfect or to maintain the perfection of any security interest or lien shall not affect in any way whatsoever the obligation of the Guarantor to the Creditor under this Guaranty. The Guarantor hereby ratifies and confirms any such extension, renewal, release, surrender, exchange, modification, impairment, settlement, or compromise and all such actions shall be binding upon the Guarantor who hereby waives all defenses, counterclaims, or offsets which the Guarantor might have by reason thereof.

5. **Waivers By Guarantor.** The Guarantor waives:

5.1. Notice of acceptance of this Guaranty by the Creditor;

5.2. Notice of presentment, demand for payment, notice of dishonor or protest of any of the Borrower's obligations or the obligation of any person, firm, or corporation held by the Creditor as collateral security for the Borrower's obligation;

5.3. Notice of the failure of any person, firm, or corporation to pay to the Creditor any indebtedness held by the Creditor as collateral security for any obligation of the Borrower;

5.4. Failure of the Creditor to obtain and perfect or maintain the perfection or priority of any security interest or lien on property to secure any indebtedness of the Borrower; and

5.5. All defenses, offsets and counterclaims which the Guarantor may at any time have to any claim of the Creditor against the Borrower.

6. **Subrogation.** Nothing herein contained is intended or shall be construed to give to Guarantor any right of subrogation in or under any note, security document or any other loan document evidencing in any way or relating to any obligation of the Borrower to the Creditor which is or may be covered by this Guaranty, any right to participate in any way therein, or in the right, title and interest of the Creditor in and to any collateral covered by any loan or security documents relating to any such obligations notwithstanding any payments made by Guarantor under this Guaranty, all such rights of subrogation and participation being hereby expressly waived and released.

7. **Subordination.** In the event that for any reason whatsoever, the Borrower is now or hereafter becomes indebted to the Guarantor, the Guarantor agrees that the amount of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all obligations of the Borrower to the Creditor which are covered by this Guaranty, and that the Guarantor shall not be entitled to enforce or receive payment thereof until all sums then due and owing to the Creditor shall have been paid in full. If any payment shall have been made to the Guarantor by the Borrower on any such indebtedness during any time that there are obligations outstanding from the Borrower to the Creditor which are covered by this Guaranty, the Guarantor shall hold in trust all such payments for the benefit of the Creditor and shall make such payments to the Creditor to be credited and applied against obligations of the Borrower to the Creditor, whether matured or unmatured, in accordance with the discretion of the Creditor.

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

8. **Representations By Guarantor.** The Guarantor represents that, at the time of the execution and delivery of this Guaranty, nothing exists to impair the effectiveness of the liability of the Guarantor to the Creditor hereunder, or the immediate taking effect of this Guaranty as the sole agreement between the Guarantor and the Creditor with respect to guaranteeing the Borrower's obligation to the Creditor.

9. **Remedies of Creditor.** The Creditor may at its option proceed in the first instance against the Guarantor to collect any obligation covered by this Guaranty, without first proceeding against the Borrower for such obligation, or any other person, firm or corporation liable for such obligation, and without first resorting to any property at any time held by the Creditor as collateral security for such obligation and without any marshaling of assets whatsoever.

10. **Construction and Benefit.** This Guaranty is delivered and made in, and shall be construed pursuant to and governed by, the laws of the State of Florida, and is binding upon the Guarantor and his legal representatives and successors, and shall inure to the benefit of the Creditor, its successors and assigns.

11. **Miscellaneous.** To the extent the Guarantor is obligated to make any payments to the Creditor under this Guaranty, the Creditor may offset and retain in payment of such amounts any and all monies of the Guarantor in the possession of the Creditor at any time. In the further event the Creditor obtains a final judgment against the Guarantor upon this Guaranty, the judgment shall bear interest not at the judgment rate but at the highest rate permitted by applicable law from time to time in effect at the time of such judgment. The liability of the Guarantor hereunder, if more than one, shall be joint and several. The term "Creditor" shall be deemed to include the aforementioned Creditor and any successors and assigns. The term "Borrower" shall include the individual or individuals, association, partnership, corporation or other entity named herein as Borrower and:

   11.1. Any successor individual or individuals, association, partnership, corporation or other entity to which all or substantially all of the business or assets of such Borrower shall have been transferred,

   11.2. In the case of a partnership Borrower, any new partnership which shall have been created by reason of the admission of any new partner or partners therein or the dissolution of the existing partnership by the death, resignation or other withdrawal of any partner, and

   11.3. In the case of a corporate Borrower, any other corporation into or with which such Borrower shall have been merged, consolidated, reorganized, purchased or absorbed.

12. **JURY WAIVER.** EACH PARTY HEREBY COVENANTS AND AGREES THAT IN ANY LITIGATION, SUIT, ACTION, COUNTERCLAIM, OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, WHICH ARISES OUT OF CONCERNS, OR RELATES TO THIS AGREEMENT, ANY AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, THE PERFORMANCE HEREOF, OR THE RELATIONSHIP CREATED HEREBY, WHETHER SOUNDING IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, TRIAL SHALL BE TO A COURT OF COMPETENT JURISDICTION AND NOT TO A JURY. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT, AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO OF THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. NEITHER PARTY HAS MADE OR RELIED UPON ANY ORAL REPRESENTATIONS TO OR BY THE OTHER PARTY REGARDING THE ENFORCEABILITY OF THIS PROVISION. EACH PARTY HAS READ AND UNDERSTANDS THE EFFECT OF THIS JURY WAIVER PROVISION.

13. **Waiver.** A failure to assert any rights or remedies available to a party under the terms of this agreement, or a waiver of the right to remedies available to a party by a course of dealing or otherwise shall not be deemed to be a waiver of any other right or remedy under this agreement, unless such waiver of such right or remedy is contained in a writing signed by the party alleged to have waived his other rights or remedies.

14. **Entire Understanding.** This agreement represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations (if any) made by and between the parties.

4

DocuSign Envelope ID: ADBFE0CB-9761-459F-9A59-99B406B04C39

15.    **Amendments.** The provisions of this agreement may not be amended, supplemented, waived, or changed orally but only by a writing making specific reference to this agreement signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought.

IN WITNESS WHEREOF, the Guarantor has signed this Agreement on September _____, 2023.

GUARANTOR:
Martin C. Flynn, Jr.

Individually
AND as President of Sherwood Construction

AND as Manager of 650 85th LLC,
AND as Member of MTF Holdings, LLC,
AND as Manager of Cape Crossing Vacation Rentals, LLC

Witness #1 Signature

Gabrielle Milotte
Witness #1 Printed Name

Witness #2 Signature

Witness #2 Printed Name

5

Filing # 223020895 E-Filed 05/13/2025 02:52:56 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

MARTIN C. FLYNN, JR.,

      Plaintiff,

                                       Case No.

v.

PEDIXON LLC,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Martin C. Flynn, Jr., hereby sues Defendant, PEDIXON LLC, as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Martin C. Flynn, Jr. ("Plaintiff"), is a Florida resident over the age of 18, who at all times material hereto owned the following real property located within Orange County, Florida – Street Address: 14556 Saint Georges Hill Dr., Orlando, Florida 32828; Legal Description: Lot 108, Kensington at Eastwood, according to the plat thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County, Florida (the "Property").

2.      Defendant, PEDIXON LLC ("Defendant"), is a Florida limited liability company operating within Orange County, Florida for purposes of both the mortgage on the Property in Orange County, Florida, which such mortgage is the subject of this action, and the UCC lien recorded in the Official Records of Orange County, Florida.

3.      This Court has subject matter jurisdiction as this is an action involving real property where the matter in controversy (the improper mortgage) exceeds the sum of $50,000.00, exclusive of interest, costs, and attorney's fees.



EXHIBIT

C

4.      Venue is proper in Orange County, Florida, pursuant to Fla. Stat. § 47.011 (2024), as Orange County is where the causes of action accrued.

5.      Venue is also proper in Orange County, Florida, pursuant to Fla. Stat. § 47.011 (2024), as Plaintiff is seeking to require Defendant to release a mortgage on property located in Orange County and satisfy a UCC Financing Statement recorded in the Official Records of Orange County.

6.      All conditions precedent to the maintenance of this action have occurred, have been waived, or otherwise have been fully performed.

7.      Plaintiff has retained the undersigned counsel and is obligated to pay them their reasonable attorneys' fees, costs, and expenses in prosecuting this matter.

## GENERAL ALLEGATIONS

8.      On or about July 28, 2023, Plaintiff entered into a mortgage with Defendant for the Property (the "Mortgage"). A copy of the recorded Mortgage is attached hereto as **Exhibit A**.

9.      The Mortgage was in exchange for a loan from Defendant in the amount of $125,000.00, where Plaintiff executed a promissory note on or about July 28, 2023, for that amount (the "Promissory Note").[1] A copy of the Promissory Note is attached hereto as **Exhibit B**, and a copy of the applicable Loan Closing Statement is attached as **Exhibit C**.

10.     Thereafter, on or about August 2, 2023, Defendant recorded a Uniform Commercial Code Financing Statement in the official records of Orange County, Florida as additional security for the debt of the loan (the "UCC Lien"). A recorded copy of the UCC Lien is attached hereto as **Exhibit D**.

---

[1] Upon information and belief, a fully executed copy of the Promissory Note is in Defendant's possession, custody, or control.

11.     On or about November 17, 2023, Plaintiff fully satisfied his indebtedness to Defendant under the Promissory Note, Mortgage, and UCC Lien.  Attached hereto as **Exhibit E** is a copy of the applicable Settlement Statement.[2]

12.     On or about April 28, 2025, Plaintiff, through counsel, issued a *Demand to Release Mortgage and Satisfy UCC Lien* (the "Demand") to Defendant, a copy of which is attached hereto as **Exhibit F**.

13.     The Demand was delivered via certified mail on or about May 1, 2025.  USPS Tracking information is attached hereto as **Exhibit G**.

14.     As of the date of this filing, Defendant has not released the Mortgage or satisfied the UCC Lien.  Attached as **Exhibit H** is a printout of the Orange County, Florida Official Records showing only the subject Mortgage and UCC Lien upon searching for any and all documents recorded by "PEDIXON LLC."

<div align="center">

**COUNT I**
**ACTION TO REQUIRE RELEASE OF MORTGAGE**
**AND VIOLATION OF FLA. STAT. § 701.04(2)(a)**

</div>

15.     This is an action brought under Fla. Stat. § 701.04(2)(a) (2024), seeking to require Defendant to release the Mortgage.

16.     Plaintiff hereby incorporates and re-alleges the allegations set forth in paragraphs 1 through 14 above as if fully set forth herein.

17.     Despite Plaintiff fully paying the unpaid balance of the loan, Defendant has failed to release the Mortgage within 60 days of same.

---

[2] Upon information and belief, a fully executed copy of the Promissory Note is in Defendant's possession, custody, or control.

<div align="center">3</div>

18.     More specifically, within 60 days after the unpaid balance of the loan secured by the Mortgage was fully paid, Defendant was required to "execute in writing an instrument acknowledging release of the mortgage; have the instrument acknowledged, or proven, and send it or cause it to be sent for recording in the official records of the proper county; and send or cause to be sent the recorded release to the mortgagor or record title owner of the property." Fla. Stat. § 701.04(2)(a) (2024).

19.     Defendant did not, within 60 days after the unpaid balance of the loan secured by the Mortgage was fully paid, comply with any of the requirements set forth in the preceding paragraph.

20.     Pursuant to Fla. Stat. § 701.04(2)(a) (2024), Plaintiff is entitled to his reasonable attorney fees and costs in having to bring this action against Defendant to enforce the requirements of this statutory provision.  To wit, "[t]he prevailing party in a civil action brought against the mortgagee or mortgage servicer to enforce the requirements of this paragraph is entitled to reasonable attorney fees and costs." *Id.*

WHEREFORE, Plaintiff respectfully requests this Court to render judgment against Defendant for violation of Fla. Stat. § 701.04(2)(a) (2024), order Defendant to release the subject Mortgage, award Plaintiff his reasonable attorney's fees and costs, and for any other relief this Court deems just and proper.

### COUNT II
### ACTION TO REQUIRE SATISFACTION OF LIEN
### AND VIOLATION OF FLA. STAT. § 701.04(3)

21.     This is an action brought under Fla. Stat. § 701.04(3) (2024), seeking to require Defendant to satisfy the UCC Lien.

4

22.    Plaintiff hereby incorporates and re-alleges the allegations set forth in paragraphs 1 through 14 above as if fully set forth herein.

23.    Despite Plaintiff fully paying the unpaid balance of the loan, Defendant has failed to satisfy the UCC Lien within 60 days of same.

24.    More specifically, within 60 days after the unpaid balance on the UCC Lien was fully paid, Defendant was required to "execute in writing an instrument acknowledging satisfaction of the lien or judgment; have the instrument acknowledged, or proven, and send it or cause it to be sent for recording in the official records of the proper county; and send or cause to be sent the recorded satisfaction to the person who has made the full payment." Fla. Stat. § 701.04(3) (2024).

25.    Defendant did not, within 60 days after the unpaid balance of the UCC Lien was fully paid, comply with any of the requirements set forth in the preceding paragraph.

26.    Pursuant to Fla. Stat. § 701.04(3) (2024), Plaintiff is entitled to his reasonable attorney fees and costs in having to bring this action against Defendant to enforce the requirements of this statutory provision.  To wit, "[t]he prevailing party in a civil action brought against the creditor or assignee, or the attorney of record in the case of a judgment, to enforce the requirements of this subsection is entitled to reasonable attorney fees and costs." *Id.*

WHEREFORE, Plaintiff respectfully requests this Court to render judgment against Defendant for violation of Fla. Stat. § 701.04(3) (2024), order Defendant to satisfy the subject lien, award Plaintiff his reasonable attorney's fees and costs, and for any other relief this Court deems just and proper.

Dated: May 13, 2025

Respectfully submitted,

By: */s/ Benjamin T. Lute*
Benjamin T. Lute, Esq.
**ISELEY|FUGITT**
Florida Bar No.: 123876
6675 13th Ave. N, Suite 2B
St. Petersburg, FL 33710
Phone: (727) 613-1020
blute@iseleyfugitt.com
amillan@iseleyfugitt.com
*Counsel for Martin C. Flynn, Jr.*

6

# EXHIBIT A

**THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $125,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

DOC # 20230434480
08/02/2023 10:10 AM   Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $437.50
Intangible Tax: $250.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

This instrument was prepared by:
Alison Pitkmen, Esquire
1980 N. Atlantic Avenue., Ste. 328
Cocoa Beach, FL 32931

**MORTGAGE**

THIS INDENTURE, is made as of the 28TH day of July 2023, by MARTIN C. FLYNN, JR. (referred to as the "Mortgagor") and PEDIXON, LLC, a Florida limited liability company (the "Mortgagee").

In consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following property which shall be referred to as the "Mortgaged Property":

**Lot 108, Kensington at Eastwood, according to the plat thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County, Florida.**

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS AND NO/CENTS ($125,000.00), including any extensions or future advances made hereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.      Payment of Loan . Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of this Mortgage, promissory note entered into of even date herewith, and any related loan documents executed herewith (the "Loan Documents"), and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.      Taxes, Assessments, Liens and Charges. Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

Second Mortgage. This is a second mortgage, inferior only to the Permitted Lien. The only permitted lien on the property is that certain mortgage recorded in Orange County Official Records Book _____ Page_____, with a current outstanding principal balance of $112,213.00 ("Permitted Lien"). No additional advances shall be permitted under the existing mortgage. Any advance made under the existing mortgage during the term of this Mortgage shall be deemed an immediate default of this Mortgage.

3.      Preservation and Maintenance. Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.      Interest on Delinquent Sums. Any sums which shall not be paid when due shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

5.      Reimbursement of Legal Fees and Costs. In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6.      Acceleration Upon Default. Mortgagor agrees that: (a) if payment of the Loan under said Loan Documents is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in the Loan Documents, and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening

20230434480  Page 2 of 2

of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7.    Compliance With Laws and Regulations. Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8.    Future Advances. That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9.    Security. The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10.   Severability. If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or any of the the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11.   Satisfaction of Mortgage. Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Orange County, Florida at the expense of Mortgagor.

12.   Changes, Modifications and Discharges: Enforceability. This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13.   Forbearance by Mortgagee Not a Waiver. Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14.   Notices. Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC                                             Martin C. Flynn, Jr
1627 East Vine Street, Suite E, Kissimmee, FL 34744      14556 Saint Georges Hill Drive, Orlando, FL 32828

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15.   Parties Bound, Construction of Language. The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title and shall inure to the benefit of Mortgagee and its successors and assigns. Wherever used herein, the singular shall include the plural, the plural the singular and one gender shall include all genders.

The Mortgagor has caused this instrument to be executed and delivered and has intended the same to be and become effective as of the day and year first above written.

By: _Martin C. Flynn, Jr._
Martin C. Flynn, Jr.

Acknowledged by: _____
Tracey Hester Flynn

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 28th day of July, 2023 by Martin C. Flynn, Jr. and Tracey Hester Flynn who are personally known to me or produced _License_ as identification.

SEAL

Notary Public-State of Florida

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

# EXHIBIT B

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,000,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## PROMISSORY NOTE

| | |
|---|---|
| Date of Note: | July 28, 2023 |
| Loan: | One Hundred Twenty-Five Thousand Dollars and 00/100 ($125,000.00) |
| Interest Rate: | The rate of interest shall be fixed at a rate of FIFTEEN PERCENT (15%) PER ANNUM. |
| Maturity Date | October 1, 2023 |
| Interest Payment: | Interest on the outstanding principal balance of the Loan |
| Borrower: | Martin C. Flynn, Jr. |
| Borrower's address: | 14556 Saint Georges Hill Drive, Orlando, FL 32828 |
| Lender: | PEDIXON LLC |
| Lender's address: | 1627 East Vine Street, Suite E, Kissimmee, FL 34744 |

FOR VALUE RECEIVED, Martin C. Flynn, Jr. does hereby covenant and promise to pay to the order of the Lender, or to its successors or assigns, at its principal office, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States as follows.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of FIFTEEN PERCENT (15%) PER ANNUM.*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in consecutive monthly installments on the 1ˢᵗ day of every month for a term of sixty (60) days.*

*The first payment shall be due on September 1, 2023.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on October 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

---

**DOCUMENTARY EXCISE TAXES DUE ON THIS INSTRUMENT HAVE BEEN PAID IN FULL ON THE MORTGAGE SECURING THE LOAN EVIDENCED HEREBY.**

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**Additional Terms of the Promissory Note**

1.  **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2.  **Collateral.**

    2.1.  All property and assets, real, personal and otherwise, located at 14556 Saint Georges Hill Drive, Orlando, FL 32828, granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

    2.2.  All entitlement to the amounts reserved, as certified by Martin C. Flynn, Jr., under the following Sherwood Construction, Inc. construction projects:

        2.2.1.  KCBC

            501 E. Ocean Drive, Key Colony Beach, FL

        2.2.2.  Cherry Village. Project Number 066-35381

            421 NE 12th Ave, Homestead, FL

        2.2.3.  Amelia Village

            3605 16th St., Vero Beach, FL

        2.2.4.  Austin Commons

            2726 Kurt St., Eustis FL

3.  **Late Charge.** If a payment is 11 days or more late, Borrower will be 5.000% of the unpaid portion of the regularly scheduled payment.

4.  **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

5.  **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    5.1.  <u>Payment Default</u>. Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

2

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

5.2.   Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the loan agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

5.3.   Notice of Default. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

5.4.   Lender's Rights. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

6.   **Costs of Collection; Attorney's Fees**. If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

7.   **Notices.**  Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

| **Lender:** | **Borrower:** |
|---|---|
| PEDIXON LLC | |
| 1627 East Vine Street, Suite E | 14556 Saint Georges Hill Drive |
| Kissimmee, FL 34744 | Orlando, FL 32809 |
| Attention: Kenneth G. Dixon | Attention: Martin C. Flynn, Jr. |
| kendixon@lelandenterprisesinc.com | |

8.   **Governing Law**. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

9.   **General Provisions**.

9.1.   If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

9.2.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

9.3.   Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender

3

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

9.4.    This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, AND HEREBY AGREES TO THE TERMS OF THE NOTE.**

**BORROWER**

DocuSigned by:

*Martin C. Flynn, Jr.*

By: Martin C. Flynn, Jr.

STATE OF FLORIDA
COUNTY OF _____

      The foregoing instrument was acknowledged before me by means of __ physical presence or __ online notarization this _____ day of July 2023, by Martin C. Flynn, Jr.

                          _____
                          Notary Public, State of Florida
                          Name: _____
                                  (Please print or type)
                          Commission Number:
                          Commission Expires:

Notary: Check one of the following:
_____    Personally known OR
_____    Produced Identification (if this box is checked, fill in blank below).
           Type of Identification Produced: _____

5

# EXHIBIT C

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

LOAN CLOSING STATEMENT 7/28/2023

Borrower:      Martin C. Flynn, Jr.

Lender:        PEDIXON LLC

Closing Attorney:  Alison Pitkanen Law Firm

Disbursement:    July 28, 2023

I.     Loan Amount                      **125,000.00**

II.    Closing Costs

| | |
|---|---:|
| Loan Fee | 2,500.00 |
| Mortgage  - Recordation | 27.00 |
| Documentary Stamps Mortgage | 437.50 |
| Intangible Tax | 250.00 |
| UCC filing - Florida | 44.00 |
| UCC recording | 27.00 |
| Title Search - Old Republic | 85.00 |

**TOTAL COSTS DUE FROM BORROWER:**      <u>**3,370.50**</u>

The undersigned acknowledge and agree that the amounts referenced herein are correct, and authorize the Closing Attorney to disburse the funds accordingly.

PEDIXON LLC

_____
By:  Kenneth G. Dixon
Its:  Manager

_Martin C. Flynn, Jr._    (DocuSigned by)
_____
By:  Martin C. Flynn, Jr.

Closing Attorney

_____
By:  Alison Pitkanen, Esq.

# EXHIBIT D

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**DOC # 20230434713**
08/02/2023 10:42 AM   Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Alison Pitkanen Law Firm LLC - 407-449-0037 - alisonpitkanen@gmail.com

**B. Email Address**

**C. SEND ACKNOWLEDGEMENT TO:**
Name    Alison Pitkanen Law Firm LLC

Address   1980 N. Atlantic Avenue

Address   Ste. 328

City/State/Zip   Cocoa Beach, FL 32931

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1.b INDIVIDUAL'S SURNAME<br>Flynn | FIRST PERSONAL NAME<br>Martin | ADDITIONAL NAME(S)/INITIAL(S)<br>C. | SUFFIX<br>Jr. |
| 1.c MAILING ADDRESS Line One<br>14556 Saind Georges Hill Drive | This space not available. | | |
| MAILING ADDRESS Line Two | CITY<br>Orlando | STATE<br>FL | POSTAL CODE<br>32828 | COUNTRY<br>USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME<br>PEDIXON, LLC | | | |
|---|---|---|---|
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c MAILING ADDRESS Line One<br>1627 EAST VINE STREET | This space not available. | | |
| MAILING ADDRESS Line Two<br>SUITE E | CITY<br>KISSIMMEE | STATE<br>FL | POSTAL CODE<br>34744 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL OF THE REAL AND PERSONAL PROPERTY OF DEBTOR MARTIN C. FLYNN, JR. PARTICULARLY DESCRIBED HERETO:

LOT 108, KENSINGTON AT EASTWOOD. ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 40. PAGES 16 THROUGH 19, PUBLIC RECORDS    OF ORANGE COUNTY, FLORIDA

**5. ALTERNATE DESIGNATION** (if applicable)
☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)         Filing Office Copy         Approved by the Secretary of State, State of Florida

## Instructions for State of Florida UCC Financing Statement Form (Form UCC-1)
### 20230434713  Page 2 of 2

- Please type or laser-print this form.  Be sure it is completely legible.  Read all instructions on form. Forms must be completed according to Florida state law.
- Fill in form very carefully. If you have questions, consult your attorney.  Filing office cannot give legal advice.
- Processing fees are set by the Florida Legislature, are non-refundable, and are subject to change. To verify processing fees, contact FLORIDAUCC, LLC. at (850) 222-8526 or email help@floridaucc.com.
- Make checks payable to FLORIDAUCC, LLC. or the Florida Department of State.
- Send ONE copy of each filing request, with the appropriate non-refundable processing fee to:

    | 1st Class Mail | Overnight Courier Service |
    |---|---|
    | FLORIDAUCC, LLC. | FLORIDAUCC, LLC. |
    | PO Box 5588 | 2002 Old St. Augustine Rd. Bldg. D |
    | Tallahassee, FL 32314 | Tallahassee, FL 32301 |

- The acknowledgement copy will be returned to the address indicated in block B.
- Do not insert anything in the open space in the upper right hand portion of this form; it is reserved for filing office use.
- If you need to use attachments, you are encouraged to use the State of Florida Uniform Commercial Code Financing Statement Form – Addendum and/or the State of Florida Uniform Commercial Code Financing Statement Form - Additional Party and/or the State of Florida Uniform Commercial Code Financing Statement Form – Additional Information.

# EXHIBIT E

DocuSign Envelope ID: 4495A4E8-8CB1-4CA9-8592-BEDA76A2617D

**SETTLEMENT STATEMENT**              (consisting of 2 pages)
November 17, 2023

Lender          PEDIXON LLC
                PARKE FINANCIAL LIMITED PARTNERSHIP

Borrower        TIERED CAPITAL, INC.
                IMQA INCORPORATED
                FLORIDA SPACE COAST RESORTS, INC.
                MARTIN C. FLYNN, JR.

**INCOMING FUNDS**

River Fly-In Condominium          2,603,595.00

**DISBURSEMENT OF INCOMING FUNDS**

**Parke Financial Limted Partnership Loan to IMQA INCORPORATED**
Interest 11/1/2023 - 11/16/2023          1,600.00
Loan Payoff                            300,000.00
Record Satisfaction                         10.00
Simplifile                                  10.00

**PEDXON LLC loan to Martin C. Flynn, Jr.**
Interest 11/1/2023 - 11/16/2023            833.33
Loan Payoff                            125,000.00
Record Satisfaction                         10.00
Simplifile                                  10.00

**PEDIXON LLC loan to Florida Space Coast Resorts, Inc.**
Record Satisfaction                         18.50
Simplifile                                  10.00

**Fees Related to PEDIXON LLC loan to Tiered Capital, Inc.**
Option Loan Extension Fee                 5,000

**Remaining Disbursement of Incoming Funds**
Pitkanen Valley National Trust Account    2,000,000
Pitkanen Attorney Fee (Sept through Dec)     50,000
PEDIXON interest reserve account            121,093.17

**TOTAL DISBURSEMENTS      2,603,595.00**

DocuSign Envelope ID: 4495A4E8-8CB1-4CA9-8592-BEDA76A2617D

The undersigned authorize and direct Closing Attorney to disburse the Incoming Funds as stated herein.

By: _____
Kenneth G. Dixon, as Manager
of PEDIXON LLC
AND as President of MTF, INC,
the General Partner of
Parke Financial Limited Partnership

DocuSigned by:
*Martin C. Flynn, Jr.*
By: _____
8788014E49D94EA...
Martin C. Flynn, Jr., individually
and as President of Tiered Capital, Inc.

DocuSigned by:
*Alexandra M. Lezcano*
By: _____
8DA320825D76489...
Alexandra Lezcano President as President
of Florida Space Coast Resorts, Inc.

Closing Attorney:

By: _____
Alison Pitkanen, Esq.

DocuSigned by:
*Deborah M. Milotte*
By: _____
3E173BDE8F2B497...
Deborah Milotte, as President
of IMQA INVESTMENTS INCORPORATED

# EXHIBIT F



## ISELEY | FUGITT

ATTORNEYS WITH A FOUNDATION OF EXCELLENCE

April 28, 2025

**VIA CERTIFIED MAIL,RETURN RECEIPT REQUESTED
& VIA ELECTRONIC MAIL**

PEDIXON LLC
c/o Kennith G. Dixon
1627 East Vine Street, Suite E
Kissimmee, FL 34744
*kendixon@lelandenterprisesinc.com*

|  |  |  |
|---|---|---|
| **RE:** | | **Demand to Release Mortgage and Satisfy UCC Lien** |
| **Client:** | | **Martin Flynn, Jr.** |

Dear Mr. Dixon:

This law firm represents Martin Flynn, Jr. in this matter. If you are represented by legal counsel, you are welcome to forward this to his or her attention.

As you are aware, on or about November 17, 2023, Mr. Flynn fully satisfied his indebtedness to PEDIXON LLC ("PEDIXON") under that certain Promissory Note dated July 28, 2023, and the mortgage and UCC Financing Statement PEDIXON recorded in conjunction with same.

The following supporting documentation is enclosed herewith:
- A copy of the November 17, 2023 Settlement Statement;
- A copy of the subject Promissory Note;
- A copy of the July 28, 2023 Loan Closing Statement;
- A copy of the recorded Mortgage; and
- A copy of the recorded UCC Financing Statement Form.

Pursuant to applicable governing laws, including Fla. Stat. § 701.04, PEDIXON was required to execute and record an instrument acknowledging release of this mortgage within 60 days after the unpaid balance of the loan secured by said mortgage was fully paid. It was also required to send the recorded release to Mr. Flynn. Over a year later and PEDIXON still has not done so.

Additionally, with respect to the UCC Financing Statement, PEDIXON was required to execute and record an instrument acknowledging satisfaction of the lien within 60 days after the



unpaid balance on the lien was fully paid. It was also required to send the recorded satisfaction to Mr. Flynn. This, too, has not yet occurred.

PEDIXON's failure to comply with applicable laws in releasing and satisfying these encumbrances constitutes slander of title, and is causing, and will continue to cause, Mr. Flynn significant monetary damages.

Accordingly, this letter constitutes Mr. Flynn's final demand to release the mortgage and satisfy the UCC lien, as well as send copies of the recorded filings to Mr. Flynn by way of email to his undersigned counsel at blute@iseleyfugitt.com. Should PEDIXON fail to do so within 10 days from the date of this correspondence, Mr. Flynn will take all legal action necessary, including filing suit. Should litigation be required, Mr. Flynn will be entitled to all reasonable attorney's fees and costs incurred.

Govern yourself accordingly.

Sincerely,

ISELEY | FUGITT

Benjamin T. Lute, Esq.

*Enclosures*

DocuSign Envelope ID: 4495A4E8-8CB1-4CA9-8592-BEDA76A2617D

**SETTLEMENT STATEMENT**                    (consisting of 2 pages)
November 17, 2023

Lender        PEDIXON LLC
              PARKE FINANCIAL LIMITED PARTNERSHIP

Borrower      TIERED CAPITAL, INC.
              IMQA INCORPORATED
              FLORIDA SPACE COAST RESORTS, INC.
              MARTIN C. FLYNN, JR.


**INCOMING FUNDS**

River Fly-In Condominium          2,603,595.00


**DISBURSEMENT OF INCOMING FUNDS**

**Parke Financial Limted Partnership Loan to IMQA INCORPORATED**
Interest 11/1/2023 - 11/16/2023          1,600.00
Loan Payoff                            300,000.00
Record Satisfaction                         10.00
Simplifile                                  10.00

**PEDXON LLC loan to Martin C. Flynn, Jr.**
Interest 11/1/2023 - 11/16/2023            833.33
Loan Payoff                            125,000.00
Record Satisfaction                         10.00
Simplifile                                  10.00

**PEDIXON LLC loan to Florida Space Coast Resorts, Inc.**
Record Satisfaction                         18.50
Simplifile                                  10.00

**Fees Related to PEDIXON LLC loan to Tiered Capital, Inc.**
Option Loan Extension Fee                 5,000

**Remaining Disbursement of Incoming Funds**
Pitkanen Valley National Trust Account   2,000,000
Pitkanen Attorney Fee (Sept through Dec)    50,000
PEDIXON interest reserve account           121,093.17


                    **TOTAL DISBURSEMENTS       2,603,595.00**

The undersigned authorize and direct Closing Attorney to disburse
the Incoming Funds as stated herein.

By: _____

Kenneth G. Dixon, as Manager
of PEDIXON LLC
AND as President of MTF, INC,
the General Partner of
Parke Financial Limited Partnership

Closing Attorney:

By: _____

Alison Pitkanen, Esq.

By: _____
DocuSigned by: Martin C. Flynn, Jr.
8788014E49D94EA...

Martin C. Flynn, Jr., individually
and as President of Tiered Capital, Inc.

By: _____
DocuSigned by: Alexandra M. Lezcano
8DA320825D76489...

Alexandra Lezcano President as President
of Florida Space Coast Resorts, Inc.

By: _____
DocuSigned by: Deborah M. Milotte
3E173BDE8F2B497...

Deborah Milotte, as President
of IMQA INVESTMENTS INCORPORATED

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,000,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## PROMISSORY NOTE

| | |
|---|---|
| Date of Note: | July 28, 2023 |
| Loan: | One Hundred Twenty-Five Thousand Dollars and 00/100 ($125,000.00) |
| Interest Rate: | The rate of interest shall be fixed at a rate of FIFTEEN PERCENT (15%) PER ANNUM. |
| Maturity Date | October 1, 2023 |
| Interest Payment: | Interest on the outstanding principal balance of the Loan |
| Borrower: | Martin C. Flynn, Jr. |
| Borrower's address: | 14556 Saint Georges Hill Drive, Orlando, FL 32828 |
| Lender: | PEDIXON LLC |
| Lender's address: | 1627 East Vine Street, Suite E, Kissimmee, FL 34744 |

FOR VALUE RECEIVED, Martin C. Flynn, Jr. does hereby covenant and promise to pay to the order of the Lender, or to its successors or assigns, at its principal office, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States as follows.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of FIFTEEN PERCENT (15%) PER ANNUM.*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in consecutive monthly installments on the 1ˢᵗ day of every month for a term of sixty (60) days.*

*The first payment shall be due on September 1, 2023.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on October 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

---

**DOCUMENTARY EXCISE TAXES DUE ON THIS INSTRUMENT HAVE BEEN PAID IN FULL ON THE MORTGAGE SECURING THE LOAN EVIDENCED HEREBY.**

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**Additional Terms of the Promissory Note**

1. **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2. **Collateral.**

   2.1. All property and assets, real, personal and otherwise, located at 14556 Saint Georges Hill Drive, Orlando, FL 32828, granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

   2.2. All entitlement to the amounts reserved, as certified by Martin C. Flynn, Jr., under the following Sherwood Construction, Inc. construction projects:

      2.2.1. KCBC

      501 E. Ocean Drive, Key Colony Beach, FL

      2.2.2. Cherry Village. Project Number 066-35381

      421 NE 12th Ave, Homestead, FL

      2.2.3. Amelia Village

      3605 16th St., Vero Beach, FL

      2.2.4. Austin Commons

      2726 Kurt St., Eustis FL

3. **Late Charge.** If a payment is 11 days or more late, Borrower will be 5.000% of the unpaid portion of the regularly scheduled payment.

4. **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

5. **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   5.1. <u>Payment Default</u>. Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

2

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

5.2. <u>Other Defaults</u>. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the loan agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

5.3. <u>Notice of Default</u>. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

5.4. <u>Lender's Rights</u>. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

6. **Costs of Collection; Attorney's Fees**. If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

7. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

| **Lender:** | **Borrower:** |
|---|---|
| PEDIXON LLC | |
| 1627 East Vine Street, Suite E | 14556 Saint Georges Hill Drive |
| Kissimmee, FL 34744 | Orlando, FL 32809 |
| Attention: Kenneth G. Dixon | Attention: Martin C. Flynn, Jr. |
| kendixon@lelandenterprisesinc.com | |

8. **Governing Law**. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

9. **General Provisions**.

9.1. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

9.2. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

9.3. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender

3

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

9.4.    This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, AND HEREBY AGREES TO THE TERMS OF THE NOTE.

**BORROWER**

*Martin C. Flynn, Jr.*

By: Martin C. Flynn, Jr.

STATE OF FLORIDA

COUNTY OF _____

     The foregoing instrument was acknowledged before me by means of __ physical presence or __ online notarization this _____ day of July 2023, by Martin C. Flynn, Jr.

_____
Notary Public, State of Florida
Name: _____
     (Please print or type)
Commission Number:
Commission Expires:

Notary: Check one of the following:
_____    Personally known OR
_____    Produced Identification (if this box is checked, fill in blank below).
     Type of Identification Produced: _____

5

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

LOAN CLOSING STATEMENT 7/28/2023

Borrower:          Martin C. Flynn, Jr.

Lender:            PEDIXON LLC

Closing Attorney:  Alison Pitkanen Law Firm

Disbursement:      July 28, 2023

I.    Loan Amount                                          125,000.00

II.   Closing Costs

| | |
|---|---:|
| Loan Fee | 2,500.00 |
| Mortgage  - Recordation | 27.00 |
| Documentary Stamps Mortgage | 437.50 |
| Intangible Tax | 250.00 |
| UCC filing - Florida | 44.00 |
| UCC recording | 27.00 |
| Title Search - Old Republic | 85.00 |

**TOTAL COSTS DUE FROM BORROWER:**          <u>3,370.50</u>

The undersigned acknowledge and agree that the amounts referenced herein are correct, and authorize the Closing Attorney to disburse the funds accordingly.

PEDIXON LLC

_____          Martin C. Flynn, Jr.
By: Kenneth G. Dixon             ---8788014E49D94EA...
Its: Manager                     By:  Martin C. Flynn, Jr.

                                 Closing Attorney

                                 _____
                                 By:  Alison Pitkanen, Esq.

**THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $125,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

DOC # 20230434480
08/02/2023 10:10 AM   Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $437.50
Intangible Tax: $250.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

This instrument was prepared by:
Alison Pitkinen, Esquire
1980 N. Atlantic Avenue., Ste. 328
Cocoa Beach, FL 32931

<div align="center">

**MORTGAGE**

</div>

THIS INDENTURE, is made as of the 28TH day of July 2023, by MARTIN C. FLYNN, JR. (referred to as the "Mortgagor") and PEDIXON, LLC, a Florida limited liability company (the "Mortgagee").

In consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following property which shall be referred to as the "Mortgaged Property":

**Lot 108, Kensington at Eastwood, according to the plat thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County, Florida.**

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS AND NO/CENTS ($125,000.00), including any extensions or future advances made hereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1. _Payment of Loan_ . Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of this Mortgage, promissory note entered into of even date herewith, and any related loan documents executed herewith (the "Loan Documents"), and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2. _Taxes, Assessments, Liens and Charges_. Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

_Second Mortgage_. This is a second mortgage, inferior only to the Permitted Lien. The only permitted lien on the property is that certain mortgage recorded in Orange County Official Records Book _____ Page_____, with a current outstanding principal balance of $112,213.00 ("Permitted Lien"). No additional advances shall be permitted under the existing mortgage. Any advance made under the existing mortgage during the term of this Mortgage shall be deemed an immediate default of this Mortgage.

3. _Preservation and Maintenance_. Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4. _Interest on Delinquent Sums_. Any sums which shall not be paid when due shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

5. _Reimbursement of Legal Fees and Costs_. In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6. _Acceleration Upon Default_. Mortgagor agrees that: (a) if payment of the Loan under said Loan Documents is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in the Loan Documents, and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening

20230434480  Page 2 of 2

of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7.    **Compliance With Laws and Regulations.** Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8.    **Future Advances.** That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9.    **Security.** The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10.    **Severability.** If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or any of the the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11.    **Satisfaction of Mortgage.** Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Orange County, Florida at the expense of Mortgagor.

12.    **Changes, Modifications and Discharges; Enforceability.** This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13.    **Forbearance by Mortgagee Not a Waiver.** Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14.    **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC                                           Martin C. Flynn, Jr
1627 East Vine Street, Suite E, Kissimmee, FL 34744    14556 Saint Georges Hill Drive, Orlando, FL 32828

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15.    **Parties Bound, Construction of Language.** The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title and shall inure to the benefit of Mortgagee and its successors and assigns. Wherever used herein, the singular shall include the plural, the plural the singular and one gender shall include all genders.

The Mortgagor has caused this instrument to be executed and delivered and has intended the same to be and become effective as of the day and year first above written.

By: _Martin C. Flynn, Jr._ 
Martin C. Flynn, Jr.

Acknowledged by: _[signature]_ 
Tracey Hester Flynn

STATE OF Florida 
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 28ᵗʰ day of July, 2023 by Martin C. Flynn, Jr. and Tracey Hester Flynn who are personally known to me or produced _License_ as identification.

SEAL

_[signature]_ 
Notary Public-State of _Florida_

Janelle Morea 
Notary Public 
State of Florida 
Comm# HH077342 
Expires 1/5/2025

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Alison Pitkanen Law Firm LLC - 407-449-0037 - alisonpitkanen@gmail.com

**B. Email Address**

**C. SEND ACKNOWLEDGEMENT TO:**
Name    Alison Pitkanen Law Firm LLC

Address    1980 N. Atlantic Avenue

Address    Ste. 328

City/State/Zip    Cocoa Beach, FL 32931

**DOC # 20230434713**
08/02/2023 10:42 AM   Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

## 1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

1.a ORGANIZATION'S NAME

| 1.b INDIVIDUAL'S SURNAME<br>Flynn | FIRST PERSONAL NAME<br>Martin | ADDITIONAL NAME(S)/INITIAL(S)<br>C. | SUFFIX<br>Jr. |
|---|---|---|---|

| 1.c MAILING ADDRESS Line One<br>14556 Saind Georges Hill Drive | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY<br>Orlando | STATE<br>FL | POSTAL CODE<br>32828 | COUNTRY<br>USA |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

2.a ORGANIZATION'S NAME

| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2.c MAILING ADDRESS Line One | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

## 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

3.a ORGANIZATION'S NAME
PEDIXON, LLC

| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3.c MAILING ADDRESS Line One<br>1627 EAST VINE STREET | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two<br>SUITE E | CITY<br>KISSIMMEE | STATE<br>FL | POSTAL CODE<br>34744 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF THE REAL AND PERSONAL PROPERTY OF DEBTOR MARTIN C. FLYNN, JR. PARTICULARLY DESCRIBED HERETO:

LOT 108, KENSINGTON AT EASTWOOD. ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 40. PAGES 16 THROUGH 19, PUBLIC RECORDS    OF ORANGE COUNTY, FLORIDA

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

**Instructions for State of Florida UCC Financing Statement Form (Form UCC-1)**
20230434713  Page 2 of 2

- Please type or laser-print this form. Be sure it is completely legible. Read all instructions on form. Forms must be completed according to Florida state law.
- Fill in form very carefully. If you have questions, consult your attorney. Filing office cannot give legal advice.
- Processing fees are set by the Florida Legislature, are non-refundable, and are subject to change. To verify processing fees, contact FLORIDAUCC, LLC. at (850) 222-8526 or email help@floridaucc.com.
- Make checks payable to FLORIDAUCC, LLC. or the Florida Department of State.
- Send ONE copy of each filing request, with the appropriate non-refundable processing fee to:

    | 1st Class Mail | Overnight Courier Service |
    |---|---|
    | FLORIDAUCC, LLC. | FLORIDAUCC, LLC. |
    | PO Box 5588 | 2002 Old St. Augustine Rd. Bldg. D |
    | Tallahassee, FL 32314 | Tallahassee, FL 32301 |

- The acknowledgement copy will be returned to the address indicated in block B.
- Do not insert anything in the open space in the upper right hand portion of this form; it is reserved for filing office use.
- If you need to use attachments, you are encouraged to use the State of Florida Uniform Commercial Code Financing Statement Form – Addendum and/or the State of Florida Uniform Commercial Code Financing Statement Form - Additional Party and/or the State of Florida Uniform Commercial Code Financing Statement Form – Additional Information.

# EXHIBIT G

# USPS Tracking®

FAQs >

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?
app=U: psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

✕

Your item was delivered to an individual at
the address at 1:21 pm on May 1, 2025 in
KISSIMMEE, FL 34744.

KISSIMMEE, FL 34744
May 1, 2025, 1:21 pm

**See All Tracking History**

**Get More Out of USPS Tracking:**

  **USPS Tracking Plus®**

**What Do USPS Tracking Statuses Mean?**
**(https://faq.usps.com/s/article/Where-is-my-
package)**

---

**Text & Email Updates**                                          ⌄

---

**USPS Tracking Plus®**                                           ⌄

Feedback

---

**Product Information**                                           ⌃

**Postal Product:**                          **Features:**
                                             Certified Mail™

**See Less** ⌃

Track Another Package

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# EXHIBIT H

**COMPTROLLER PHIL
DIAMOND, CPA
ORANGE COUNTY, FLORIDA**

Govt Log in     Language     Home         cart

---

Basic Official Records Search

**Individual Names** should be entered **Last First** (i.e. Smith James). For a broader search, use only a last name and first initial.

**Organizational Names** should be entered **as they are spelled** (i.e. Nevada Bank).

---

Recorder Documents are certified from Jan 1, 1878 through May 11, 2025

| Recording Date Start | Recording Date End | Document # | Either Party Name |
|---|---|---|---|
| | | | ✖ PEDIXON LLC |

Book/Page

| Grantor | Grantee | Book | Page |
|---|---|---|---|
| | | | |

Document Types

Use Advanced Name Searching
([What is this?](#))

| Recent searches | | Clear Selections | Search |
|---|---|---|---|

---

Description (2)

Financing S...   1

Showing page 1 of 1 for 2 Total Results    **Basic Official Records Search Either Party Name contains PEDIXON LLC**    🖨 ÂŽ

Back

© Copyright 2014-2023 Tyler Technologies I Version 2023.1.49

| | | |
|---|---|---|
| FLYNN MARTIN C JR | PEDIXON LLC | Lot: 108 KENSINGTON AT EASTWOOD |

**20230434480 • Mortgage • 08/02/2023 10:10 AM**

| Grantor | Grantee | Legal |
|---|---|---|
| FLYNN MARTIN C JR | PEDIXON LLC | Lot: 108 KENSINGTON AT EASTWOOD |

Apply Filter…

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA CIVIL DIVISION

MARTIN C. FLYNN, JR.,

      Plaintiff,

v.

PEDIXON LLC,

      Defendant.

      CASE NO.  2025-CA-004329-O

_____/

PEDIXON LLC,

      Counter-Plaintiff,

v.

MARTIN C. FLYNN, JR,

      Counter-Defendant.

_____/

PEDIXON LLC,

      Third-Party Plaintiff,

v.

TRACY HESTER FLYNN,
EASTWOOD COMMUNITY
ASSOCIATION, Inc., a Florida corporation,
and
UNKNOWN TENANT,

      Third-Party Defendants.

_____/

### ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND THIRD PARTY COMPLAINT FOR FORECLOSURE

Defendant, PEDIXON LLC ("Pedixon"), hereby answers and affirmatively defends against the Complaint filed by Plaintiff, Martin C. Flynn, Jr. ("Plaintiff"), stating as follows:

### PARTIES, JURISDICTION, AND VENUE



**EXHIBIT**

D

1.      Admitted the Plaintiff owns the property and is over age 18. All remaining allegations are denied.

2.      Admitted that Pedixon is a Florida limited liability company. Pedixon denies the remaining allegations of this paragraph, including the characterization of the mortgage and UCC lien.

3.      Admitted for jurisdictional purposes. The remaining allegations are denied.

4.      Admitted that venue may be proper in Orange County, Florida, to the extent the Property is located there.  Otherwise denied.

5.      Admitted that venue may be proper in Orange County, Florida, for purposes of Plaintiff's requested relief.  Pedixon denies that such relief is warranted.

6.      Denied. Pedixon lacks sufficient information to admit that all conditions precedent have been satisfied.

7.      Admitted that Plaintiff is represented by counsel.  Pedixon lacks knowledge of Plaintiff's fee arrangement and therefore denies the remaining allegations.

## GENERAL ALLEGATIONS

8.      Admitted that a document purporting to be a mortgage was executed on or about July 28, 2023. Pedixon denies any allegations inconsistent with the terms of the actual mortgage, which is the best evidence of its contents.

9.      Admitted that a promissory note dated July 28, 2023, exists and that the face amount of the note is $125,000. Pedixon denies any remaining allegations inconsistent with the actual promissory note and the loan closing statement, which are the best evidence of their contents.

10.     Admitted that a UCC Financing Statement was recorded on or about August 2, 2023. Pedixon denies any characterization of the UCC lien that contradicts its express terms.

2

11.    Denied.

12.    Admitted that a document purporting to be a demand was sent by Plaintiff's counsel. Pedixon denies the characterization and legal effect of said document.

13.    Admitted that a USPS Tracking receipt is attached as Exhibit G. Pedixon lacks sufficient knowledge to admit the content or effect of the delivery.

14.    Denied. Pedixon has not recorded a satisfaction or release because the underlying obligations have not been fully paid or satisfied.

<div align="center">

**COUNT I**
**ACTION TO REQUIRE RELEASE OF MORTGAGE**
**AND VIOLATION OF FLA. STAT. § 701.04(2)(a)**

</div>

15.    Admitted as to the nature of the action.

16.    Pedixon incorporates its responses to Paragraphs 1 through 14 as if fully set forth herein.

17.    Denied.

18.    Denied that Pedixon was required to execute and record a release under Fla. Stat. § 701.04(2)(a), as the debt has not been fully paid.

19.    Denied.

20.    Denied that Plaintiff is entitled to attorney's fees or any relief.

WHEREFORE, Pedixon denies that Plaintiff is entitled to any of the relief sought in Count I, judgment should be entered in favor of Pedixon and Pedixon should be awarded interest, attorneys' fees and costs.

<div align="center">

**COUNT II**
**ACTION TO REQUIRE SATISFACTION OF LIEN**
**AND VIOLATION OF FLA. STAT. § 701.04(3)**

</div>

21.    Admitted as to the nature of the action.

<div align="center">3</div>

22.     Pedixon incorporates its responses to Paragraphs 1 through 14 as if fully set forth herein.

23.     Denied.

24.     Denied that Pedixon was required to record a satisfaction under Fla. Stat. § 701.04(3), as the debt secured by the UCC lien has not been fully paid.

25.     Denied.

26.     Denied that Plaintiff is entitled to attorney's fees or any relief.

WHEREFORE, Pedixon denies that Plaintiff is entitled to any of the relief sought in Count II, judgment should be entered in favor of Pedixon and Pedixon should be awarded interest, attorneys' fees and costs.

## AFFIRMATIVE DEFENSES

### Affirmative Defense No. 1: Failure to State a Cause of Action

Plaintiff's Complaint fails to state a cause of action upon which relief may be granted because it does not adequately plead that the loan secured by the mortgage and UCC lien was fully satisfied. And the loan was not satisfied.

### Affirmative Defense No. 2: Failure of Insufficient Payment

Pedixon affirmatively alleges that the obligations secured by the subject mortgage and UCC lien have not been fully paid or satisfied. The mortgage and note were never satisfied and never agreed to the treatment of the funds reflected in the payoff statements attached to the Complaint.

### Affirmative Defense No. 3: Unclean Hands

Plaintiff seeks equitable relief (release and satisfaction of recorded instruments) while having acted inequitably by diverting secured project funds, in violation of the loan terms and

4

never intending to repay the loan. His misconduct bars equitable relief under the doctrine of unclean hands.

### Affirmative Defense No. 4: Good Faith Belief of Incomplete Performance

Pedixon acted at all times in good faith, with a reasonable belief that Plaintiff had not satisfied the secured obligations in full. Any delay in releasing or satisfying the instruments was based on a bona fide dispute over payment.

### Affirmative Defense No. 5: Lack of Competent Evidence

Plaintiff has not produced any competent, admissible evidence signed by Pedixon confirming receipt of payment in full. Exhibit E to the Complaint, which purports to be a Settlement Statement, is not executed by Pedixon and does not establish satisfaction of the loan.

### Affirmative Defense No. 6: Improper Application of Fla. Stat. § 701.04(3)

Count II is improperly brought under Fla. Stat. § 701.04(3), which does not govern UCC financing statements. Satisfaction or termination of a UCC lien is governed by Chapter 679, *Florida Statutes*, particularly Fla. Stat. § 679.513.

### Affirmative Defense No. 7: Estoppel

Plaintiff is estopped from asserting entitlement to release or satisfaction where he failed to comply with material obligations under the loan, including making the necessary payments to satisfy the loan.

### Affirmative Defense No. 8: Waiver

By diverting loan-secured funds and failing to comply with agreed-upon disbursement protocols, Plaintiff waived any right to insist upon immediate satisfaction or release of the mortgage and lien.

### Affirmative Defense No. 9: Disputed Debt

5

Pedixon never agreed to the payoff statement, the amounts reflected therein were utilized to address other obligations owed by Plaintiff or his affiliates millions of dollars of obligations owed to Pedixon, and there is a good faith dispute regarding to the satisfaction of the note and mortgage.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT FOR FORECLOSURE

Defendant/Counterclaim Plaintiff, PEDIXON, LLC ("Pedixon"), by and through undersigned counsel, hereby files this Counterclaim against Plaintiff/Counterclaim Defendant, MARTIN C. FLYNN, JR. ("M. Flynn"), and Third-Party Defendants, TRACY HESTER FLYNN ("T. Flynn"), EASTWOOD COMMUNITY ASSOCIATION, Inc., a Florida corporation ("Eastwood"), and UNKNOWN TENANT, and alleges as follows:

### COUNT I: Foreclosure

1. This is an action to foreclose a mortgage on real property in Orange County, Florida, described as follows:

> **Lot 108, Kensington at Eastwood, according to the play thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County.**

2. On July 28, 2023, Defendant, M. Flynn executed and delivered a Promissory Note and a Mortgage securing payment of the Note, to Plaintiff or Plaintiff's assignor. T. Flynn, M. Flynn's spouse, also signed the Mortgage. The Mortgage was recorded as Doc #20230434480 in the Public Records of Orange County, Florida. In addition, a UCC-1 Financing Statement recorded as Doc. #20230434713 was recorded in the Official Records of Orange County, Florida and with the Florida Secretary of State as Doc. #20230211039X (collectively, the "UCC-1"). The property described in the Mortgage was then owned by and in possession of the mortgagor. A copy of the Note, Mortgage and UCC-1 are attached hereto as **Composite Exhibit "A"**, and incorporated herein by reference.

6

3.     Plaintiff owns the Note and Mortgage, and is authorized to conduct business in the State of Florida, or is exempt under § 607.1501 Florida Statutes. Plaintiff is entitled to enforce the Note under § 673.3011 Florida Statutes. Plaintiff's Affidavit of Lost Note is attached hereto as **Exhibit "B."**

4.     The property is now owned by Defendant M. Flynn, who holds possession.

5.     The loan is in default in payments and it has fully matured.

6.     Plaintiff declares the full amount payable under the Note and Mortgage to be due.

7.     Defendant, M. Flynn, owes Plaintiff $125,000 that is due on principal on the Note and Mortgage, plus interest from the inception of the loan, title search expenses for ascertaining necessary parties to this action, fees, costs and expenses.

8.     Plaintiff has retained the undersigned to represent it in this cause and has agreed to pay a reasonable fee for such representation, for which Defendants, M. Flynn and T. Flynn are responsible pursuant to the terms of the Note and Mortgage.

9.     Plaintiff has advanced or may advance money for taxes, insurance premiums, or escrow shortages, required by the terms of the Mortgage, which are secured by the lien of Plaintiff's mortgage.

10.    All conditions precedent to the filing of this action have been performed or have occurred.

11.    Defendant, T. Flynn, may claim some interest in the property by virtue of unpaid association dues. This interest, if any, is subordinate and inferior to the Mortgage lien of Plaintiff.

12.    Defendant, Eastwood, may claim some interest in the property by virtue of unpaid association dues or otherwise. This interest, if any, is subordinate and inferior to the Mortgage lien of Plaintiff.

7

13.     Defendant, UNKNOWN TENANT, may claim some interest in the property by virtue of possession, which interest, if any, is subordinate and inferior to the Mortgage lien of Plaintiff.

WHEREFORE, Plaintiff demands a judgment foreclosing the Mortgage and the interests of Defendants and all persons claiming under or against M. Flynn and/or T. Flynn since the date of filing the Notice of Lis Pendens, and an accounting of the amount due Plaintiff under the Note and Mortgage, and if the amount due is not paid within the time set by the Court, that the property be sold pursuant to Florida Statutes Section 45.031 to satisfy Plaintiff's claim, and if the proceeds of sale are insufficient to pay Plaintiff's claim, and if not prohibited from doing so by the automatic stay or entry of discharge, that a deficiency judgment be entered for the sum remaining unpaid, as well as attorneys' fees and costs against Defendant, M. Flynn (except no deficiency is sought against any person protected by bankruptcy stay or injunction or has been discharged from this debt), and such further relief as the Court deems fair and equitable.

**NOTICE: THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated: August 18, 2025

/s/ James A. Timko
JAMES A. TIMKO, ESQ.
Florida Bar No.: 0088858
IAN A. WIGGINS, ESQ.
Florida Bar No.: 1048826
**DEAN, MEAD, EGERTON, BLOODWORTH,
CAPOUANO & BOZARTH, P.A.**
Post Office Box 2346
Orlando, Florida 32802-2346
Phone: (407) 841-1200
Fax: (407) 423-1831
Primary Email: jtimko@deanmead.com
Secondary Email: mgodek@deanmead.com

8

Primary Email: iwiggins@deanmead.com
Secondary Email: lmetress@deanmead.com
*Attorneys for PEDIXON, LLC*

---

**VERIFICATION**

Under penalty of perjury, I declare that I have read the foregoing Complaint for mortgage foreclosure, and the facts alleged therein are true and correct to the best of my knowledge and belief. I have the authority to verify this Complaint on behalf of Plaintiff.

_____

Signature

Print Name: __KENNETH DIXON__

---

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of August, 2025, this document was electronically transmitted to the Clerk of Court via the Florida Courts E-Filing Portal ("FCEP") which will send electronic notification to the following counsel of record:

Benjamin T. Lute, Esq.
Iseley |Fugitt
Florida Bar No.: 123876
6675 13th Avenue N, Suite 2B
St. Petersburg, Florida 33710
blute@iseleyfugitt.com
amillan@iseleyfugitt.com
*Counsel for Plaintiff*

*/s/ James A. Timko*
JAMES A. TIMKO, ESQ.

10

## IMPORTANT NOTICE

## UNDER 15 U.S.C.S. SECTION 1629g

UNLESS YOU, WITHIN THIRTY DAYS AFTER RECEIPT OF THIS NOTICE DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY CREDITOR.

IF YOU NOTIFY US IN WRITING WITHIN THE THIRTY-DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION OR JUDGMENT WILL BE MAILED TO YOU.

UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

IF YOU NOTIFY US IN WRITING WITHIN THE THIRTY-DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, OR THAT YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, WE SHALL CEASE COLLECTION OF THE DEBT, OR ANY DISPUTED PORTION THEREOF, UNTIL WE OBTAIN VERIFICATION OF THE DEBT OR A COPY OF A JUDGMENT, OR NAME AND ADDRESS OF THE ORIGINAL CREDITOR, AND A COPY OF SUCH VERIFICATION OR JUDGMENT, OR NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IS MAILED TO YOU.

This notice applies only to a debt as defined in 15 USCS Section 1692a(5), meaning any obligation or alleged obligation of a CONSUMER to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

THE THIRTY DAYS TO DISPUTE THIS DEBT IS SEPARATE FROM THE TWENTY DAYS TO RESPOND TO THIS COMPLAINT. ALTHOUGH YOU HAVE THIRTY DAYS TO DISPUTE THE VALIDITY OF THE DEBT PURSUANT TO 15 U.S.C.S §1629g, YOU MUST RESPOND TO THIS COMPLAINT AS EXPLAINED IN THE SUMMONS WITHIN 20 DAYS FROM THE DAY YOU WERE SERVED. PLEASE REFER BACK TO THE SUMMONS FOR COMPLETE INSTRUCTIONS.

# COMPOSITE EXHIBIT "A"

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,000,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## PROMISSORY NOTE [1]

| | |
|---|---|
| Date of Note: | July 28, 2023 |
| Loan: | One Hundred Twenty-Five Thousand Dollars and 00/100 ($125,000.00) |
| Interest Rate: | The rate of interest shall be fixed at a rate of FIFTEEN PERCENT (15%) PER ANNUM. |
| Maturity Date | October 1, 2023 |
| Interest Payment: | Interest on the outstanding principal balance of the Loan |
| Borrower: | Martin C. Flynn, Jr. |
| Borrower's address: | 14556 Saint Georges Hill Drive, Orlando, FL 32828 |
| Lender: | PEDIXON LLC |
| Lender's address: | 1627 East Vine Street, Suite E, Kissimmee, FL 34744 |

FOR VALUE RECEIVED, Martin C. Flynn, Jr. does hereby covenant and promise to pay to the order of the Lender, or to its successors or assigns, at its principal office, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States as follows.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of FIFTEEN PERCENT (15%) PER ANNUM.*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in consecutive monthly installments on the 1st day of every month for a term of sixty (60) days.*

*The first payment shall be due on September 1, 2023.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on October 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

---

**DOCUMENTARY EXCISE TAXES DUE ON THIS INSTRUMENT HAVE BEEN PAID IN FULL ON THE MORTGAGE SECURING THE LOAN EVIDENCED HEREBY.**

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

### Additional Terms of the Promissory Note

1. **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2. **Collateral.**

   2.1. All property and assets, real, personal and otherwise, located at 14556 Saint Georges Hill Drive, Orlando, FL 32828, granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

   2.2. All entitlement to the amounts reserved, as certified by Martin C. Flynn, Jr., under the following Sherwood Construction, Inc. construction projects:

   2.2.1. KCBC

   501 E. Ocean Drive, Key Colony Beach, FL

   2.2.2. Cherry Village. Project Number 066-35381

   421 NE 12th Ave, Homestead, FL

   2.2.3. Amelia Village

   3605 16th St., Vero Beach, FL

   2.2.4. Austin Commons

   2726 Kurt St., Eustis FL

3. **Late Charge.** If a payment is 11 days or more late, Borrower will be 5.000% of the unpaid portion of the regularly scheduled payment.

4. **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

5. **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   5.1. <u>Payment Default.</u> Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

5.2. <u>Other Defaults</u>. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the loan agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

5.3. <u>Notice of Default</u>. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

5.4. <u>Lender's Rights</u>. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

6. **Costs of Collection; Attorney's Fees.** If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

7. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

**Lender:**
PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744
Attention: Kenneth G. Dixon
kendixon@lelandenterprisesinc.com

**Borrower:**

14556 Saint Georges Hill Drive
Orlando, FL 32809
Attention: Martin C. Flynn, Jr.

8. **Governing Law.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

9. **General Provisions.**

9.1. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

9.2. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

9.3. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

9.4.  This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, AND HEREBY AGREES TO THE TERMS OF THE NOTE.**

**BORROWER**

*Martin C. Flynn, Jr.*

By: Martin C. Flynn, Jr.

STATE OF FLORIDA

COUNTY OF _____

     The foregoing instrument was acknowledged before me by means of __ physical presence or __ online notarization this _____ day of July 2023, by Martin C. Flynn, Jr.

                        Notary Public, State of Florida
                        Name: _____
                                (Please print or type)
                        Commission Number:
                        Commission Expires:

<u>Notary: Check one of the following:</u>
_____    Personally known OR
_____    Produced Identification (if this box is checked, fill in blank below).
            Type of Identification Produced: _____

5

**THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $125,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

This Instrument was prepared by:
Allson Pitkmon, Esquire
1980 N. Atlantic Avenue., Sto. 328
Cocoa Beach, FL 32931

**DOC # 20230434480**
08/02/2023 10:10 AM   Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $437.50
Intangible Tax: $250.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**MORTGAGE**

THIS INDENTURE, is made as of the 28ᵀᴴ day of July 2023, by MARTIN C. FLYNN, JR. (referred to as the "Mortgagor") and PEDIXON, LLC, a Florida limited liability company (the "Mortgagee").

In consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following property which shall be referred to as the "Mortgaged Property":

Lot 108, Kensington at Eastwood, according to the plat thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County, Florida.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS AND NO/CENTS ($125,000.00), including any extensions or future advances made hereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.      <u>Payment of Loan</u>.  Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of this Mortgage, promissory note entered into of even date herewith, and any related loan documents executed herewith (the "Loan Documents"), and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.      <u>Taxes, Assessments, Liens and Charges</u>.  Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach.  In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

<u>Second Mortgage</u>.  This is a second mortgage, inferior only to the Permitted Lien. The only permitted lien on the property is that certain mortgage recorded in Orange County Official Records Book _____ Page _____, with a current outstanding principal balance of $112,213.00 ("Permitted Lien"). No additional advances shall be permitted under the existing mortgage. Any advance made under the existing mortgage during the term of this Mortgage shall be deemed an immediate default of this Mortgage.

3.      <u>Preservation and Maintenance</u>.  Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.      <u>Interest on Delinquent Sums</u>.  Any sums which shall not be paid when due shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

5.      <u>Reimbursement of Legal Fees and Costs</u>.  In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6.      <u>Acceleration Upon Default</u>.  Mortgagor agrees that:  (a) if payment of the Loan under said Loan Documents is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in the Loan Documents, and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening

20230434480 Page 2 of 2

of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7. **Compliance With Laws and Regulations.** Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8. **Future Advances.** That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9. **Security.** The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10. **Severability.** If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or any of the the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11. **Satisfaction of Mortgage.** Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Orange County, Florida at the expense of Mortgagor.

12. **Changes, Modifications and Discharges; Enforceability.** This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13. **Forbearance by Mortgagee Not a Waiver.** Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC
1627 East Vine Street, Suite E, Kissimmee, FL 34744

Martin C. Flynn, Jr
14556 Saint Georges Hill Drive, Orlando, FL 32828

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15. **Parties Bound, Construction of Language.** The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title and shall inure to the benefit of Mortgagee and its successors and assigns. Wherever used herein, the singular shall include the plural, the plural the singular and one gender shall include all genders.

The Mortgagor has caused this instrument to be executed and delivered and has intended the same to be and become effective as of the day and year first above written.

By: _Martin C. Flynn, Jr._
Martin C. Flynn, Jr.

Acknowledged by: _[signature]_
Tracey Hester Flynn

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 28th day of July, 2023 by Martin C. Flynn, Jr. and Tracey Hester Flynn who are personally known to me or produced License as identification.

SEAL

Notary Public-State of Florida

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

**Florida Secured Transaction Registry**

# FILED

2023 Aug 02 11:25 AM

\*\*\*\*\*\* 20230211039X \*\*\*\*\*\*

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
ALISON PITKANEN; 4074490037
Email ALISONPLAW@GMAIL.COM

**B. SEND ACKNOWLEDGEMENT TO:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME FLYNN | FIRST PERSONAL NAME MARTIN | ADDITIONAL NAME(S)/INITIAL(S) C | SUFFIX JR. |

| 1c. MAILING ADDRESS Line One 14556 SAINT GEORGES HILL DRIVE | | This space not available. | | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY ORLANDO | | STATE FL | POSTAL CODE 32828 | COUNTRY US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS Line One | | This space not available. | | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME PEDIXON, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS Line One 1627 EAST VINE STREET | | This space not available. | | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY KISSIMMEE | | STATE FL | POSTAL CODE 34744 | COUNTRY US |

**4. This FINANCING STATEMENT covers the following collateral:**

All of the real and personal property of Debtor Martin C. Flynn, Jr., particularly described hereto: Lot 108, Kensington at Eastwood, According to the Plat thereof as recorded in Plat Book 40, Pages 16 through 19, Public Records of Orange County, Florida

**5. ALTERNATE DESIGNATION** (if applicable)   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)     Filing Office Copy     Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Alison Pitkanen Law Firm LLC - 407-449-0037 - alisonpitkanen@gmail.com

**B. Email Address**

**C. SEND ACKNOWLEDGEMENT TO:**
Name    Alison Pitkanen Law Firm LLC

Address    1980 N. Atlantic Avenue

Address    Ste. 328

City/State/Zip    Cocoa Beach, FL 32931

**DOC # 20230434713**
08/02/2023 10:42 AM  Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **1.b INDIVIDUAL'S SURNAME** Flynn | **FIRST PERSONAL NAME** Martin | **ADDITIONAL NAME(S)/INITIAL(S)** C. | **SUFFIX** Jr. |
| **1.c MAILING ADDRESS Line One** 14556 Saint Georges Hill Drive | This space not available. | | |
| MAILING ADDRESS Line Two | **CITY** Orlando | **STATE** FL **POSTAL CODE** 32828 | **COUNTRY** USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **2.b INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **2.c MAILING ADDRESS Line One** | This space not available. | | |
| MAILING ADDRESS Line Two | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |

**3. SECURED PARTY'S NAME   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)**

| 3.a ORGANIZATION'S NAME PEDIXON, LLC | | | |
|---|---|---|---|
| **3.b INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **3.c MAILING ADDRESS Line One** 1627 EAST VINE STREET | This space not available. | | |
| MAILING ADDRESS Line Two SUITE E | **CITY** KISSIMMEE | **STATE** FL **POSTAL CODE** 34744 | **COUNTRY** USA |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF THE REAL AND PERSONAL PROPERTY OF DEBTOR MARTIN C. FLYNN, JR. PARTICULARLY DESCRIBED HERETO:

LOT 108, KENSINGTON AT EASTWOOD, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 40, PAGES 16 THROUGH 19, PUBLIC RECORDS    OF ORANGE COUNTY, FLORIDA

**5. ALTERNATE DESIGNATION (if applicable)**

| | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR |
|---|---|---|---|
| | AG LIEN | NON-UCC FILING | SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**
[■]  All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

[ ]  Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

**Instructions for State of Florida UCC Financing Statement Form (Form UCC-1)**
20230434713   Page 2 of 2

- Please type or laser-print this form. Be sure it is completely legible. Read all instructions on form. Forms must be completed according to Florida state law.
- Fill in form very carefully. If you have questions, consult your attorney. Filing office cannot give legal advice.
- Processing fees are set by the Florida Legislature, are non-refundable, and are subject to change. To verify processing fees, contact FLORIDAUCC, LLC. at (850) 222-8526 or email help@floridaucc.com.
- Make checks payable to FLORIDAUCC, LLC. or the Florida Department of State.
- Send ONE copy of each filing request, with the appropriate non-refundable processing fee to:

  <u>1st Class Mail</u>
  FLORIDAUCC, LLC.
  PO Box 5588
  Tallahassee, FL 32314

  <u>Overnight Courier Service</u>
  FLORIDAUCC, LLC.
  2002 Old St. Augustine Rd. Bldg. D
  Tallahassee, FL 32301

- The acknowledgement copy will be returned to the address indicated in block B.
- Do not insert anything in the open space in the upper right hand portion of this form; it is reserved for filing office use.
- If you need to use attachments, you are encouraged to use the State of Florida Uniform Commercial Code Financing Statement Form – Addendum and/or the State of Florida Uniform Commercial Code Financing Statement Form - Additional Party and/or the State of Florida Uniform Commercial Code Financing Statement Form – Additional Information.

# EXHIBIT "B"

## AFFIDAVIT OF LOST NOTE

STATE OF FLORIDA
COUNTY OF OSCEOLA

BEFORE ME, the undersigned authority duly authorized in the State and County last aforesaid to take oaths and acknowledgments, personally appeared, KENNETH DIXON, who swears and avers that the following is true of his/her personal knowledge:

1.    I am over the age of 18 years, have no legal disability which would inhibit my giving this affidavit.

2.    I am currently the Managing Member of PEDIXON, LLC ("PEDIXON").

3.    I am familiar with the business records of PEDIXON, which it regularly creates and maintains, including the business records regarding the loan at issue in this action.   I make this affidavit based on personal knowledge and review of PEDIXON business records and the loan at issue.

4.    I am familiar with the industry standards for creating and maintaining records associated with residential mortgage loans, including, but not limited to, promissory notes, allonges, endorsements, mortgages, assignments of mortgages, payment histories, default letters, and transfer letters.

5.    A true and correct copy of the Note and Mortgage are attached as **Exhibit "1."**

6.    I have conducted a thorough search of PEDIXON's records to locate the original Note. However, despite my efforts, PEDIXON cannot obtain possession of the original Note because it has been lost and its whereabouts cannot be determined.

7.    At the time the original Note was lost, PEDIXON was entitled to enforce the Note.

8.    The loss of possession of the original Note was not the result of a transfer by PEDIXON

9.    The loss of possession of the original Note was not the result of a lawful seizure.

10. Through my position and experience with PEDIXON I am familiar with the business records of PEDIXON, which it regularly creates and maintains to memorialize the transfer of a promissory note or the lawful seizure of a promissory note.

11. If the Note was transferred, it is common practice of PEDIXON to create a record memorializing such transfer and to retain a copy of such record. I have reviewed PEDIXON's records and have not located any such record memorializing a transfer of the Note.

12. If the Note was lawfully seized, PEDIXON would create a record memorializing the lawful seizure and to retain a copy of such record. I have reviewed PEDIXON's records and have not located any such record memorializing a lawful seizure of the Note.

13. I have reviewed the attached the Note and Mortgage attached as Exhibit "1" ("Records").

14. The Records are true and correct copies of the records as maintained by PEDIXON Corporation, of which I am the custodian.

15. The Records were made by, or from information transmitted by, a person with knowledge of the facts contained in the Records.

16. The Records were made at or near the time of the acts and events appearing on them.

17. The Records were made or compiled as part of the regular practice of PEDIXON.

18. The Records were kept in the regular course of PEDIXON's regularly conducted business activity.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

FURTHER AFFIANT SAYETH NOT.



Plaintiff

Name: _KENNETH DIXON_

Title: _MANAGING MEMBER_

On this _18th_ day of _August_ , 2025, the above-named Affiant personally appeared before me **by means of ☒ physical presence or ☐ online notarization**, was placed under oath, and swore that the statements made in the foregoing affidavit were true and complete, and in my presence affixed his/her signature thereto. Affiant is personally known to me.

NOTARY PUBLIC

Print Name: _Connie Schneckenberg_

My Commission Expires:

CONNIE J. SCHNECKENBERG
MY COMMISSION # HH 201488
EXPIRES: February 7, 2026
Bonded Thru Notary Public Underwriters

# EXHIBIT "1"

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,000,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## PROMISSORY NOTE [1]

| | |
|---|---|
| Date of Note: | July 28, 2023 |
| Loan: | One Hundred Twenty-Five Thousand Dollars and 00/100 ($125,000.00) |
| Interest Rate: | The rate of interest shall be fixed at a rate of FIFTEEN PERCENT (15%) PER ANNUM. |
| Maturity Date | October 1, 2023 |
| Interest Payment: | Interest on the outstanding principal balance of the Loan |
| Borrower: | Martin C. Flynn, Jr. |
| Borrower's address: | 14556 Saint Georges Hill Drive, Orlando, FL 32828 |
| Lender: | PEDIXON LLC |
| Lender's address: | 1627 East Vine Street, Suite E, Kissimmee, FL 34744 |

FOR VALUE RECEIVED, Martin C. Flynn, Jr. does hereby covenant and promise to pay to the order of the Lender, or to its successors or assigns, at its principal office, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States as follows.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of FIFTEEN PERCENT (15%) PER ANNUM.*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in consecutive monthly installments on the 1st day of every month for a term of sixty (60) days.*

*The first payment shall be due on September 1, 2023.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on October 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

---

**DOCUMENTARY EXCISE TAXES DUE ON THIS INSTRUMENT HAVE BEEN PAID IN FULL ON THE MORTGAGE SECURING THE LOAN EVIDENCED HEREBY.**

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD8D08D65

## Additional Terms of the Promissory Note

1. **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2. **Collateral.**

   2.1. All property and assets, real, personal and otherwise, located at 14556 Saint Georges Hill Drive, Orlando, FL 32828, granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

   2.2. All entitlement to the amounts reserved, as certified by Martin C. Flynn, Jr., under the following Sherwood Construction, Inc. construction projects:

      2.2.1. KCBC

         501 E. Ocean Drive, Key Colony Beach, FL

      2.2.2. Cherry Village. Project Number 066-35381

         421 NE 12th Ave, Homestead, FL

      2.2.3. Amelia Village

         3605 16th St., Vero Beach, FL

      2.2.4. Austin Commons

         2726 Kurt St., Eustis FL

3. **Late Charge.** If a payment is 11 days or more late, Borrower will be 5.000% of the unpaid portion of the regularly scheduled payment.

4. **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

5. **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   5.1. <u>Payment Default.</u> Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

2

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

5.2. Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the loan agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

5.3. Notice of Default. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

5.4. Lender's Rights. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

6. **Costs of Collection; Attorney's Fees.** If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

7. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

**Lender:**
PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744
Attention: Kenneth G. Dixon
kendixon@lelandenterprisesinc.com

**Borrower:**

14556 Saint Georges Hill Drive
Orlando, FL 32809
Attention: Martin C. Flynn, Jr.

8. **Governing Law.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

9. **General Provisions.**

9.1. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

9.2. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

9.3. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender

3

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

9.4.   This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

4

DocuSign Envelope ID: E6741A0A-1812-4437-A6DC-F94AD6D08D65

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, AND HEREBY AGREES TO THE TERMS OF THE NOTE.**

**BORROWER**

_Martin C. Flynn, Jr._

By: Martin C. Flynn, Jr.

STATE OF FLORIDA
COUNTY OF _____

     The foregoing instrument was acknowledged before me by means of __ physical presence or __ online notarization this _____ day of July 2023, by Martin C. Flynn, Jr.

_____
Notary Public, State of Florida
Name: _____
     (Please print or type)
Commission Number:
Commission Expires:

<u>Notary: Check one of the following:</u>
____    Personally known OR
____    Produced Identification (if this box is checked, fill in blank below).
     Type of Identification Produced: _____

**THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $125,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

This instrument was prepared by:
Allson Pitkanen, Esquire
1980 N. Atlantic Avenue., Sto. 328
Cocoa Beach, FL 32931

**DOC # 20230434480**
08/02/2023 10:10 AM    Page 1
2
Rec Fee: $18.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $437.50
Intangible Tax: $250.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**MORTGAGE**

THIS INDENTURE, is made as of the 28ᵀᴴ day of July 2023, by MARTIN C. FLYNN, JR. (referred to as the "Mortgagor") and PEDIXON, LLC, a Florida limited liability company (the "Mortgagee").

In consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following property which shall be referred to as the "Mortgaged Property":

**Lot 108, Kensington at Eastwood, according to the plat thereof as recorded in Plat Book 40, Pages 16 through 19, public records of Orange County, Florida.**

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS AND NO/CENTS ($125,000.00), including any extensions or future advances made hereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.      _Payment of Loan._   Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of this Mortgage, promissory note entered into of even date herewith, and any related loan documents executed herewith (the "Loan Documents"), and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.      _Taxes, Assessments, Liens and Charges._   Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

_Second Mortgage._   This is a second mortgage, inferior only to the Permitted Lien. The only permitted lien on the property is that certain mortgage recorded in Orange County Official Records Book _____ Page_____, with a current outstanding principal balance of $112,213.00 ("Permitted Lien"). No additional advances shall be permitted under the existing mortgage. Any advance made under the existing mortgage during the term of this Mortgage shall be deemed an immediate default of this Mortgage.

3.      _Preservation and Maintenance._   Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.      _Interest on Delinquent Sums._   Any sums which shall not be paid when due shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

5.      _Reimbursement of Legal Fees and Costs._   In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6.      _Acceleration Upon Default._   Mortgagor agrees that:  (a) if payment of the Loan under said Loan Documents is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in the Loan Documents, and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening

**20230434480  Page 2 of 2**

of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7. **Compliance With Laws and Regulations.** Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8. **Future Advances.** That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9. **Security.** The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10. **Severability.** If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or any of the the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11. **Satisfaction of Mortgage.** Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Orange County, Florida at the expense of Mortgagor.

12. **Changes, Modifications and Discharges; Enforceability.** This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13. **Forbearance by Mortgagee Not a Waiver.** Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC
1627 East Vine Street, Suite E, Kissimmee, FL 34744

Martin C. Flynn, Jr
14556 Saint Georges Hill Drive, Orlando, FL 32828

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15. **Parties Bound, Construction of Language.** The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title and shall inure to the benefit of Mortgagee and its successors and assigns. Wherever used herein, the singular shall include the plural, the plural the singular and one gender shall include all genders.

The Mortgagor has caused this instrument to be executed and delivered and has intended the same to be and become effective as of the day and year first above written.

By: _Martin C. Flynn, Jr._
Martin C. Flynn, Jr.

Acknowledged by: _[signature]_
Tracey Hester Flynn

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 28th day of July, 2023 by Martin C. Flynn, Jr. and Tracey Hester Flynn who are personally known to me or produced _License_ as identification.

SEAL

Notary Public-State of _Florida_

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

**THIS IS A BALLOON NOTE AND THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,000,000.00 TOGETHER WITH ALL ACCRUED INTEREST AND ANY ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

### PROMISSORY NOTE

| | |
|---|---|
| Date of Note: | June 12, 2023 |
| Principal Amount: | Three Million Dollars and 00/100 ($3,000,000.00) |
| Maturity Date: | July 1, 2024 |
| Interest Rate: | The rate of interest shall be fixed at a rate of FIFTEEN PERCENT (15%) PER ANNUM. |
| Interest Payment: | Interest on outstanding principal balance |
| Lender: | PEDIXON LLC |
| Lender's address: | 1627 East Vine Street, Suite E, Kissimmee, FL 34744 |

FOR VALUE RECEIVED, the undersigned (the "Borrower"), does hereby covenant and promise to pay to the order of the Lender, or to its successors or assigns, at its principal office, or at such other place as the Lender may designate to the Borrower in writing from time to time, in legal tender of the United States as follows.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of FIFTEEN PERCENT (15%) PER ANNUM.*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable in consecutive monthly installments on the 1st day of every month for a term of twelve (12) months.*

*A final balloon installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on July 1, 2024 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

---

**DOCUMENTARY EXCISE TAXES DUE ON THIS INSTRUMENT HAVE BEEN PAID IN FULL ON THE MORTGAGE SECURING THE LOAN EVIDENCED HEREBY.**



EXHIBIT

E

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

### Additional Terms of the Promissory Note

1.  **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2.  **Collateral.** The collateral is twenty condominium units and corresponding parking spaces located at 715 Pilot Lane, Merritt Island FL 32952, This Note is secured by all of the following instruments granted in favor of Lender:

    2.1.  Mortgage

    2.2.  Security Agreement

3.  **Late Charge.** If a payment is 11 days or more late, Borrower will be 5.000% of the unpaid portion of the regularly scheduled payment.

4.  **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

5.  **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    5.1.  <u>Payment Default.</u> Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

    5.2.  <u>Other Defaults.</u> Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the Loan Agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

    5.3.  <u>Notice of Default.</u> Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

    5.4.  <u>Lender's Rights.</u> If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

6.  **Costs of Collection; Attorney's Fees.** If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any

2

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

7.   **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

**Lender:**
PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744
Attention: Kenneth G. Dixon
kendixon@lelandenterprisesinc.com

**Borrower:**
FLORIDA SPACE COAST RESORTS, INC.
1650 Sand Lake Road, Suite 340
Orlando, FL 32809
Attention: David Ruiz,
druiz@flaspacecoast.com

8.   **Governing Law.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

9.   **General Provisions.**

9.1.   If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

9.2.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

9.3.   Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

9.4.   This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

3

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, AND HEREBY AGREES TO THE TERMS OF THE NOTE.**

**BORROWER**

FLORIDA SPACE COAST RESORTS, INC.

By: David Ruiz, Authorized Agent

STATE OF _Florida_
COUNTY OF _Orange_

The foregoing instrument was acknowledged before me by means of ✓ physical presence or __ online notarization this __12th__ day of June 2023, by David Ruiz.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)
Commission Number:
Commission Expires:

Notary: Check one of the following:
___ Personally known OR
✓ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

4

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

## LOAN AGREEMENT

## MODIFICATION OF ORIGINAL LOAN: RELEASE OF RIVER FLY MORTGAGE, ESTABLISH SHOW MONEY ACCOUNT & SUBSTITUTE COLLATERAL

THIS LOAN AGREEMENT is entered on this 24TH day of October 2023, between the following lender, borrower and guarantors.

**LENDER:**

- PEDIXON LLC, whose address is 1627 East Vine Street, Suite E, Kissimmee, FL 34744

**BORROWER:**

- Florida Space Coast Resorts, Inc., whose address is 1650 Sand Lake Road.

  (referred to herein as the "Borrower")

**GUARANTORS:**

- Sherwood Construction, Inc.

- Homemakers Real Estate, LLC

- Cape Crossing Vacation Rentals, LLC

- 650 85TH LLC

- MTF Holdings, LLC

- Martin C. Flynn, Jr.

- Yaniv Amar

- Horton S. Johnson

- Holly Bluff Marina, Inc.

- A Marine, Inc.

The Guarantors join in the execution of this Agreement to acknowledge and guaranty the modified terms of the Original Loan, which is a part of the Consolidated Loan entered into by the Parties. The Original Loan and Consolidated Loan are defined below.

Borrower and Guarantors may be collectively referred to herein as the "Obligor."

Borrower and Obligor may be collectively referred to herein as the "Parties."

1



EXHIBIT

F

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

For good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties make the following acknowledgments and agree to the terms and conditions stated herein.

1) **Original Loan & Loan Amount.** This Loan Agreement references and modifies the June 2023 loan accommodation to Florida Space Coast Resorts, Inc. in the original principal amount of Three Million Dollars ($3,000,000.00) (the "Loan Amount"). The original loan includes a promissory note and several other loan-related documents simultaneously executed as a condition for making the loan, all of which may be hereafter referred to as the "Original Loan."

2) **River Fly-In Mortgage (RFI Mortgage).** To secure the Original Loan, there is a mortgage encumbering real estate property more particularly described on the schedule attached (the "Property"). Said RFI Mortgage is recorded at Book 9815 Page 2132, and subsequently modified by the Mortgage Assumption and Restatement recorded at Book 9846 Page 1937, official records of Brevard County, Florida (collectively the "RFI Mortgage").

3) **Promissory Note.** The payment of the Original Loan is evidenced by that certain promissory note dated June 12, 2023 in the original principal amount of Three Million Dollars with a maturity date of July 1, 2024 (the "Promissory Note").

4) **Purpose.**

   a) The post-closing covenants under the Original Loan have not been met. Specifically, Lender has not received a loan policy of title insurance, and Borrower is no longer in possession of the Property to effectuate the issuance of a loan policy.
   b) The Parties have agreed to modify the Original Loan subject to the conditions herein.
   c) Obligor has offered, and Lender has agreed, to substitute collateral to secure the Original Loan in exchange for a release of the RFI Mortgage.
   d) The Loan Amount is not being changed hereunder.
   e) Except as otherwise stated herein and the documents executed herewith (the "Related Documents"), the Original Loan shall remain in full force and effect.
   f) The Promissory Note dated June 12, 2023, a copy of which is attached hereto, remains in full force and effect.

5) **Consideration.** In exchange for the substitution of collateral granted hereunder, and the other promises and covenants made herein, Lender has agreed to provide a full release of the RFI Mortgage, and shall reinstate the Original Loan.

6) **Loan Closing.** On the date hereof, Lender has agreed to modify the Original Loan by agreeing to accept the substitution of collateral defined herein and all other terms and conditions set forth herein. On the Loan Closing, the Lender will be granted a priority security interest in the Substitute Collateral (defined below).

7) **Consolidated Loan Remains in Effect.**

   a) The Original Loan is part of the Indebtedness under the Consolidated Loan.
   b) The Indebtedness is defined as all loans, together with all other obligations, debts and liabilities of Borrower and Guarantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Guarantor, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower and/or Guarantor may be liable individually or jointly with others; whether Borrower and/or Guarantor may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable. The total indebtedness as of the date hereof is Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000).

2

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

c) In September 2023, the Indebtedness (inclusive of the Original Loan) was consolidated by the Obligor under the agreement referred to as the "Consolidated Loan."

d) The Obligor acknowledges that all of the guaranties made under the Consolidated Loan are in full force and effect, and as of the date hereof, the monthly payment due to Lender under the Consolidated Loan is $127,938.00 (the "Total Monthly Interest Payment").

e) Nothing in this Agreement modifies or changes the Consolidated Loan or the Indebtedness as defined thereunder.

8) **Allocation of Loan Amount.**

a) **Cash Collateral Account (the "Account").** A monetary amount equal to $2,603,595.00 will be placed in an interest-bearing money market account established by Alison Pitkanen Law Firm (the "Firm").

   i) The Parties direct and authorize the Firm to open an interest-bearing money market account for said funds.
   ii) The Account will be owned and controlled by Lender.
   iii) The interest earned under this Account shall be paid directly to Lender.
   iv) No funds shall be released from this Account without the written consent of Lender.
   v) In the event of default in the payment of the Indebtedness, Lender shall have the right to terminate this Account, at which time the funds will be released directly to Lender, including all accrued interest.
   vi) Upon termination of this Account, the funds shall be applied to the Indebtedness in the following order:
   - outstanding interest under the Original Loan;
   - outstanding principal under the Consolidated Loan;
   - any late fees under the Indebtedness;
   - any remaining balance shall be applied to the principal amount of the Indebtedness. Lender in Lender's discretion shall determine the order in which the Indebtedness is repaid.

b) **Loan Balance Secured by Substitute Collateral.** An amount equal to $396,405 was released to Borrower under the Original Loan. Said funds are not yet due to Lender. Said funds shall be secured by the Substitute Collateral as defined herein.

9) **Substitute Collateral (the "Security Interests").** The Parties acknowledge that it is difficult to ascertain the present and/or future value of the Substitute Collateral, and Obligor is unable to provide a priority security interest in any real property. For this reason, Obligor grants the following various forms of collateral to secure the Loan Amount under the Original Loan.

Each Obligor shall take all reasonable and necessary steps to ensure that Lender has a perfected security interest in the following Substitute Collateral, including the execution of any documentation that may be required, from time to time, after execution of this Agreement, to effectuate Lender's priority security interest in the following.

a) **Affordable Housing Interest.** Lender shall have a priority security interest in the three affordable housing projects identified on the schedule attached and incorporated herein. To perfect this security interest, the relevant Obligor hereunder, who is the record owner of the affordable housing interest, shall execute assignments and options of all its interest unto Lender.
   i) Counsel for Lender shall hold the executed assignments in trust.
   ii) Said assignments shall be released to Lender, at Lender's discretion, in the event of a default hereunder.

b) **Additional ROGOS.** Lender shall have a priority security interest in all of the ROGOS owned by Obligor, including any newly acquired ROGOS. These ROGOS are in addition to the ROGOS already encumbered by Lender. Said ROGOS are more particularly described on the attached schedule.

   i) Lender will permit the ROGOS to be utilized for future development projects as long the following conditions precedent are met:
   (1) Lender receives advance written notice, and

3

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

(2) Lender receives payment in the amount of One Hundred Thousand Dollars ($100,000.00).

ii) The intention of securing the ROGOS is to guarantee that Lender shall be entitled to the proceeds in the event of any transfer, sale or utilization of the ROGOS.

iii) Lender has no intention of preventing the ROGOS from being utilized for development purposes.

c) **Assignment of Holly Bluff Proceeds.** Lender shall have a priority security interest in the Proceeds of Holly Bluff Marina, Inc. (the "Marina").

i) **Proceeds.** The Proceeds shall include all monies or other property received resulting from Obligor's transactions on, about or relating to the Marina, including but not limited to slip rentals and boat sales.

ii) **Supplemental Payment.** As part of the consideration to reinstate the Original Loan, Borrower and Obligor must prove the ability to meet the payment obligations. Accordingly, Marina and Obligor hereby assign and transfer unto Lender an amount equal to Twenty-Seven Thousand Dollars ($27,000.00) on the first day of each month, commencing with the first payment due on January 1, 2024, and consecutive monthly payments on the 1st day of each month thereafter during the term of the Original Loan.

    1. Lender will apply this payment to the Total Monthly Interest Payment.

    2. The intention of the Supplemental Payment is for the Lender to collect at least One Hundred Twenty-Seven Thousand Dollars and No/Cents ($127,000.00) per month. Under the Consolidated Loan, there is an existing requirement for Obligor to make a weekly payment to Lender. The Supplemental Payment will ensure that Obligor delivers to Lender sufficient funds to meet the payment obligations of the Indebtedness.

iii) **Waiver.** This requirement may be waived by Lender, in Lender's sole discretion, from time to time, as long as Lender is in receipt of all of the payments due under the Original Loan, Consolidated Loan and the Indebtedness.

d) **Amelia Village Retainage.** Lender shall have a priority security interest in the full retainage amount due to Sherwood Construction, Inc. under the Amelia Village project. This retainage shall be assigned to Lender. The current information detailing the Amelia Village retainage is set forth on the attached schedule.

e) **RFI Contract.** Lender shall have a priority security interest in the furniture contract and management agreement to be negotiated with River Fly-In Condominium, Inc.

f) **Trust Property.** On this date, the following shall be added and made part of the Trust Property (as that term is originally defined under the Consolidated Loan), and secured by Lender until such time as the Indebtedness is satisfied.

i) all of the stock of Florida Space Coast Resorts, Inc.

ii) all of the membership units owned and controlled by Martin C. Flynn, Jr in MTF Holdings, LLC. Martin C. Flynn, Jr. represents and warrants that his ownership interest constitutes ninety-nine percent (99%) of the issues and outstanding membership units of MTF Holdings, LLC.

iii) The Trust Property shall be transferred unto CRESENT SOUND LTD. as the Trustee of the TIERED LAND TRUST AGREEMENT.

iv) Lender shall receive an assignment of beneficial ownership in the Trust Property, which shall be executed contemporaneously herewith, and held in trust by the Firm.

g) **Survival.** This provision shall survive closing until the Indebtedness is fully satisfied.

4

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

**10) Conditions Precedent to Release of Mortgage & Substitution of Collateral.**

a) River Fly-In Condominium, Inc. must deliver an amount equal to $2,603,595.00 unto Firm. These funds are being delivered pursuant to the Termination Agreement between Borrower and River Fly-In Condominium, Inc. (a copy of this termination agreement is attached for reference purposes).

b) Lender will be provided with a priority security interest in the Substitute Collateral.
   (a) The Substitute Collateral will be cross collateralized with all other existing loan accommodations made by Lender to Obligor.

c) The parties will execute all documents necessary to effectuate the terms and conditions hereunder to fulfill the loan requirements set forth herein. The attached hereto identifies and incorporates the documents executed contemporaneously herewith.

**11) Representations and Warranties.** Each Obligor represents and warrants to Lender, as of the date of this Agreement, and at all times any Indebtedness exists, that:

a) <u>Authorization</u>. The execution, delivery, and performance of this Agreement and all Related Documents by Obligor, to the extent to be executed, delivered or performed by Obligor, have been duly authorized by all necessary action by Obligor; do not require the consent or approval of any other person, regulatory authority or governmental body; and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Obligor or (b) by law, governmental regulation, court decree, or order applicable to Obligor.

b) <u>Legal Effect</u>. This Agreement constitutes, and any instrument or agreement required hereunder to be given by Obligor when delivered will constitute, legal, valid, and binding obligations of Obligor enforceable against Obligor in accordance with their respective terms.

c) <u>Litigation and Claims</u>. No litigation, claim, investigation, administrative proceedings or similar action (including those for unpaid taxes) against Obligor is pending or threatened, and no other event has occurred which may materially adversely affect Obligor's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

d) <u>Taxes</u>. To the best of Obligor's knowledge, all tax returns and reports of Obligor that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Obligor in good faith in the ordinary course of business and for which adequate reserves have been provided.

e) <u>Binding Effect</u>. This Agreement, the promissory note, the Security Interests, directly or indirectly securing repayment of the Indebtedness, and all of the Related Documents are binding upon Obligor as well as upon Obligor's successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

f) <u>Information</u>. All information heretofore or contemporaneously herewith furnished by Obligor to Lender for the purposes of or in connection with this Agreement or any transaction contemplated hereby is, and all information hereafter furnished by or on behalf of Obligor to Lender will be, true and accurate in every material respect on the date as of which such information is dated or certified; and none of such information is or will be incomplete by omitting to state any material fact necessary to make such information not misleading.

g) <u>Survival of Representation and Warranties</u>. Obligor understands and agrees that Lender, without independent investigation, is relying upon the above representations and warranties in extending the Loan to Obligor. Obligor further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as the Indebtedness shall be paid in full.

5

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

12) **Affirmative Covenants**. Each Obligor covenants and agrees with Lender that, while this Agreement is in effect, it will:

    a) **Litigation**. Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower which could materially affect the financial condition of Borrower.

    b) **Financial Records**. Maintain its books and records in accordance with generally accepted accounting principles, or with sound accounting principles applied on a consistent basis, and permit Lender to examine and audit Obligor's books and records at all reasonable times or to confirm Obligor's compliance with this Agreement.

    c) **Taxes, Charges and Liens**. Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Obligor or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Obligor's properties, income, or profits. Provided however, Obligor will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (a) the legality of the same shall be contested in good faith by appropriate proceedings, and (b) Obligor shall have established on its book adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with generally accepted accounting practices. Obligor, upon demand of Lender, will furnish to Lender evidence of payment of the assessments, taxes, charges, levies, liens and claims and will authorize the appropriate governmental official to deliver to Lender at any time a written statement of any assessments, taxes, charges, levies, liens and claims against Obligor's properties, income, or profits.

    d) **Performance**. Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in the Related Documents in a timely manner, and promptly notify Lender if Obligor learns of the occurrence of any event which constitutes an Event of Default under this Agreement or under any of the Related Documents.

    e) **Additional Assurances**. Each Obligor shall make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorney may reasonably request to evidence and secure the Original Loan, and to perfect all Security Interests.

13) **Negative Covenants**. Each Obligor covenants and agrees with Lender that while this Agreement is in effect, Obligor shall not, without the prior written consent of Lender: (a) Engage in any business activities substantially different that those in which Obligor is presently engaged, or (b) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, change its name, dissolve or transfer or sell collateral out of the ordinary course of business.

14) **Event of Default.** Each of the following shall constitute an Event of Default under this Agreement:

    a) **Default on Indebtedness**. Failure to make any payment when due on the Consolidated Loan or any other Indebtedness.

    b) **Other Defaults**. Failure of any Obligor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of any Obligor to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and such Obligor, including, without limitation, a default under any other loan referred to in the Note as constituting a default under the Note.

    c) **Default in Favor of Third Parties**. Should an Obligor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

that may materially affect any of such Obligor's property or such Obligor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

d) **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of an Obligor under this Agreement or the Related Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

e) **Insolvency.** The dissolution or termination of the existence of Borrower as a going business, the insolvency of Borrower, the appointment of a receiver for any part of property of Borrower, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws or against Borrower.

f) **Adverse Change.** A material adverse change occurs in Obligor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

g) **Insecurity.** Lender, in good faith, deems itself insecure.

15) **Effect of an Event of Default on Indebtedness.** In the event Obligor fails to make a timely payment hereunder, Lender shall have the right to all of the following remedies, including all of the remedies available at law or in equity. Lender's failure to exercise any of its rights hereunder shall not constitute a waiver of any rights provided herein.

a) **Account Terminated.** The Cash Collateral Account shall be terminated, and the funds shall be returned to Lender as stated herein.

b) **Exercise of Affordable Options.** Lender may exercise any or all of its options under the affordable housing projects.

c) **Beneficial Ownership in Trust Property.** Lender, at Lender's option, shall have the right to the beneficial ownership of the Trust Property. The assignment of beneficial ownership in the Trust Property is being held in trust by the Firm.

16) **Effect of All Events of Default.** If any Event of Default shall occur, all commitments and obligations of Lender under this Agreement or any other agreement immediately will terminate, and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of any Obligor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

17) **Miscellaneous.**

a) **Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

b) **Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Florida. If there is a lawsuit, Obligor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, the State of Florida. Lender and Borrower waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Obligor against the other. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

7

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

c) Caption Headings. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

d) Multiple Parties; Corporate Authority. All obligations of each Obligor under this Agreement shall be joint and several, and all references to any Guarantor or Obligor shall mean each and every Obligor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

e) Notices. All notices required to be given under this Agreement shall be given in writing, may be sent by email (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United State mail, first class, postage prepaid, addressed to party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Obligor, notice to any Obligor will constitute notice to all parties named as Obligor. For notice purposes, Obligor will keep Lender informed at all times of Obligor's current address(es).

f) Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

g) Successors and Assigns. All covenants and agreements contained by or on behalf of Borrower shall bind its successors and assigns and shall inure to the benefit of Lender, its successors and assigns.

h) Survival. All warranties, representations, and covenants made by Obligor in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

i) Time is of the Essence. Time is of the essence in the performance of this Agreement.

j) Survival of Agreement. This Agreement shall survive the execution of this Agreement.

k) Schedules and Exhibits. All schedules and exhibits referred to herein and attached hereto shall be incorporated and made part of this Agreement.

   i) Schedule 1 Property – from RFI Mortgage

   ii) Schedule 2 Copy of Existing Promissory Note dated June 12, 2023

   iii) Schedule 3 Identification of Three (3) Affordable Housing Projects

   iv) Schedule 4 ROGOS

   v) Schedule 5 Amelia Village Retainage

   vi) Schedule 6 Termination Agreement between Borrower and River Fly-In Condominium, Inc.

   vii) Schedule 7 Related Documents – executed contemporaneously herewith to meet the loan requirements

8

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF6-31FC-48FE-A327-47C1E98C5BC9

The undersigned Lender has agreed to the foregoing as of the date first set forth above.

_____
Kenneth G. Dixon
        As Manager of PEDIXON LLC

9

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20
DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

The undersigned obligors have agreed to the foregoing as of the date first set forth above.

By: _Martin C. Flynn, Jr._

**Martin C. Flynn, Jr.**
    Individually
    AND as President of Sherwood Construction
    AND as Manager of 650 85th LLC,
    AND as Member of MTF Holdings, LLC,
    AND as Manager of Cape Crossing Vacation Rentals, LLC
    AND as President of Tiered Capital, Inc.

By: _Yaniv Amar_

**Yaniv Amar**
    Individually
    AND as Manager of Recycled Group of South Carolina, LLC
    AND as President of A Marine, Inc.
    AND as President of Holly Bluff Marina, Inc.

By: _Horton S. Johnson_

**Horton S. Johnson**
    Individually
    AND as Manager of Homemakers Real Estate, LLC
    AND as Trustee of the Horton S. Johnson Revocable Trust dated August 3, 2012

**FLORIDA SPACE COAST RESORTS, INC.**

By: _Alexandra M. Lezcano_
Alexandra M. Lezcano, Authorized Agent

10

Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

## SECURITY PLEDGE AGREEMENT

Pledge of Stock, Cash Flow and ROGOS

DATED:       October 30, 2023

MARTIN C. FLYNN, JR. ("Flynn") and PEDIXON LLC, a Florida limited liability company ("Lender" and "Secured Party") hereby enter into this security pledge agreement (the "Pledge Agreement") as a condition precedent of the Loan Agreement executed on this date.

Said Note, loan agreement and documents executed of even date herewith may be referred to herein as the "Loan Documents."

MTF Holdings LLC, a Florida limited liability company, and WM Holdings Group, LLC, a Florida Limited liability company are entities primarily owned and controlled by Flynn, and each have directly benefited from the loan accommodation made by Lender.

Flynn, MTF Holdings, LLC and WM Holdings Group, LLC shall be collectively referred to as the "Obligor," and by execution hereof, and in exchange for the loan modification made by Secured Party, each shall guarantee the Loan Agreement and all terms of this Pledge Agreement.

In further consideration of the substitution of collateral set forth in the Loan Agreement, and the mutual covenants and agreements between Obligor and Secured Party, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Obligor and Secured Party agree as follows:

I.    **SECURITY INTEREST AND COLLATERAL.** To secure the payment and performance of the indebtedness under the Loan Agreement and each and every debt, liability and obligation of every type and description which Obligor may now or at any time hereafter owe to Secured Party (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several or joint and several; all such debts, liabilities and obligations being herein collectively referred to as the "Obligations"), Obligor hereby grants Secured Party a priority security interest (herein called the "Security Interest") in the following property (herein called the "Collateral"):

   a.   ROGOS. All of Obligor's interest in and to all building rights in the State of Florida, as of the date hereof, and any building rights acquired until such time as all Obligations are satisfied and/or released by the Secured Party.

   b.   Cash Flow. Obligor's percentage interest in any cash flow, payments, management fees and tax credits directly from any entity formed for the purpose of constructing and operating low-income multifamily housing projects, including but not limited to the following projects (the "Projects"):

      i.    Keys Affordable Development, LLC. That certain 51 unit low-income multifamily housing project in Marathon, Florida in Marathon, Florida
      ii.   Keys Affordable Development II, LLC. That certain 42-unit low-income multifamily housing project in Marathon, Florida.
      iii.  Keys Affordable Development IV, LLC.
      iv.   Quint Development, LLC.

1



Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

      **v.** Tri-Star Affordable Development, LLC.

     **vi.** The Cash Flow shall include the cash flow, payments, management fees and tax credits from all affordable housing projects to which Obligor, or any affiliate or related party, has a current interest and to which Obligor acquires an interest until such time as the Obligations are fully satisfied and/or released by Secured Party.

  **c.** Membership Units.

     **i.** All of the membership units of MTF Holdings, LLC, and

     **ii.** All of the membership units of WM Holdings, LLC.

**II. TRUST PROPERTY HELD IN TRUST.** The ROGOS, Cash Flow and Membership Units shall be collectively referred to herein as the "Trust Property." Upon execution hereof, Obligor hereby assigns unto Secured Party all of its interest in the following pledged Collateral to be held in trust by Alison Pitkanen Law Firm (the "Firm").

  **a.** ROGOS; and

  **b.** Cash Flow; and

  **c.** Membership Units of MTF Holdings, LLC; and

  **d.** Membership Units of WM Holdings, LLC.

Secured Party shall only exercise its right to execute any assignment after the Notice and Opportunity to Cure requirements are met.

**III. Notice and Opportunity to Cure Requirements.** Obligor party shall be entitled to written notice of any default under the Loan Agreement and this Pledge Agreement, and shall have fifteen (15) days from receipt of such notice to cure such default prior to the exercise of any remedy provided herein ("Notice and Opportunity to Cure Requirements"). Secured Party agrees to cooperate with Obligor in any and all attempts by Obligor to cure any default within the default cure period.

**IV. REPRESENTATIONS, WARRANTIES AND AGREEMENTS.** Obligor represents, warrants and agrees that:

  **a.** Obligor has (or will have at the time Obligor acquires rights in Collateral hereafter arising) absolute title to each item of Collateral free and clear of all security interest, liens and encumbrances, except the Security Interest, and will defend the Collateral against all claims or demands of all persons other than Secured Party. Obligor will not sell or otherwise dispose of the Collateral or any interest therein without the prior written consent of Secured Party.

  **b.** This Agreement has been duly and validly authorized by all necessary corporate action.

  **c.** Obligor hereby represents and warrants to Lender, in order to induce Lender to enter into the Loan Agreement, as follows: (a) there are no actions, suits or proceeding pending or threatened against or affecting Obligor before any court of law or equity, or any administrative board, or before any governmental authority, nor is Obligor in default under the terms of any other indebtedness or obligation or with respect to any governmental authority;

  **d.** All representations and warranties previously made by Obligor in connection with the Loan Documents are true and correct, and incorporated herein by this reference.

  **c.** Obligor will:

2

Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

i.   promptly pay all taxes and other governmental charges levied or assessed upon or against any Collateral or upon or against the creation, perfection or continuance of the Security Interest;

ii.  keep all Collateral free and clear of all security interests, liens and encumbrances except the Security Interest;

iii. at all reasonable times, permit Secured Party or its representatives to examine or inspect any Collateral, wherever located, and to examine, inspect and copy Obligor's books and records pertaining to the Collateral and its business and financial condition;

iv.  pay when due or reimburse Secured Party on demand for all costs of collection of any of the Obligations and all other out-of-pocket expenses (including in each case all reasonable attorneys' fees) incurred by Secured Party in connection with the creation, perfection, satisfaction, protection, defense or enforcement of the Security Interest or the creation, continuance, protection, defense or enforcement of this Agreement or any or all of the Obligations, including expenses incurred in any litigation or bankruptcy or insolvency proceedings;

v.   execute, deliver or endorse any and all instruments, documents, assignments, security agreements and other agreements and writings which Secured Party may at any time reasonably request in order to secure, protect, perfect or enforce the Security Interest and Secured Party's rights under this Agreement;

vi.  not use or keep any Collateral, or permit it to be used or kept, for any unlawful purpose or in violation of any federal, state or local law, statute or ordinance; and

V.  **COLLECTION RIGHTS OF SECURED PARTY.** Secured Party may at any time after the occurrence of the Notice and Opportunity to Cure Requirements, provide notice to an authorized agent of the Project, that such right to payment has been assigned or transferred to Secured Party for security and shall be paid directly to Secured Party. The parties acknowledge that there may be advance notice provisions required to effectuate the assignment of the Collateral. Obligor shall take all reasonable and necessary steps to consummate Secured Party's execution of the assignment of any of the Collateral upon the exercise of this provision.

VI.  **EVENTS OF DEFAULT.** Each of the following occurrences shall constitute an event of default under this Agreement (herein called "Event of Default"):

a.  Default on Obligations. Failure to make any payment when due under the Loan Documents or any other Obligations.

b.  Other Defaults. Failure of any Obligor to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Loan Documents, or failure of any Obligor to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and such Obligor, relating to the Obligations.

c.  False Statements. Any warranty, representation or statement made or furnished to Lender by or on behalf of an Obligor under this Agreement or the Loan Documents is false or misleading in any material respect at the time made or furnished, or becomes false or misleading at any time thereafter.

3

Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

d. <u>Insolvency.</u> The dissolution or termination of the existence of Obligor as a going business, the insolvency of Obligor, the appointment of a receiver for any part of property of Obligor, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws or against Obligor.

VII.   **REMEDIES UPON EVENT OF DEFAULT.**   After satisfaction of the proper Notice and Opportunity to Cure Requirements, Secured Party may exercise any one or more of the following rights and remedies in the Event of Default:

a. declare all unmatured Obligations to be immediately due and payable, and the same shall thereupon be immediately due and payable, without presentment or other notice or demand;

b. exercise the assignment of the Trust Property. The Firm shall be authorized to release the Trust Property directly to Lender if Lender so elects. Obligor shall fully cooperate to effectuate the transfer of any of the Trust Property.

c. exercise its collection rights granted hereunder. Obligor shall fully cooperate to effectuate the collection rights directly to Secured Party.

d. exercise and enforce any or all rights and remedies available upon default to a secured party under the Uniform Commercial Code, including but not limited to the right to take possession of any Collateral, proceeding without judicial process or by judicial process (without a prior hearing or notice thereof, which Obligor hereby expressly waives), and the right to sell, lease or otherwise dispose of any or all of the Collateral, and in connection therewith. Secured Party may require Obligor to make the Collateral available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties, and if notice to Obligor of any intended disposition of Collateral or any other intended action is required by law in a particular instance, such notice shall be deemed commercially reasonable if given at least 10 calendar days prior to the date of intended disposition or other action;

e. exercise or enforce any or all other rights or remedies available to Secured Party by law or agreement against the Collateral, against Obligor or against any other person or property.

VIII.   **MISCELLANEOUS.**

a. This Agreement can be waived, modified, amended, terminated or discharged, and the Security Interest can be released, only explicitly in a writing signed by Secured Party. A waiver signed by Secured Party shall be effective only in the specific instance and for the specific purpose given. Mere delay or failure to act shall not preclude the exercise or enforcement of any of Secured Party's rights or remedies. All rights and remedies of Secured Party shall be cumulative and may be exercised singularly or concurrently, at Secured Party's option, and the exercise or enforcement of any one such right or remedy shall neither be a condition to, nor bar the exercise or enforcement of any other.

b. All notices to be given to Obligor shall be deemed sufficiently given if delivered or mailed by regular or certified mail, postage prepaid, to Obligor at its address set forth herein or at the most recent address shown on Secured Party's records.

c. This Agreement shall be binding upon and inure to the benefit of Obligor and Secured Party and their respective heirs, representatives, successors and assigns and shall take effect when signed by Obligor and delivered to Secured Party, and Obligor waives notice of Secured Party's acceptance hereof.

4

Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

d.  Secured Party may execute this Agreement if appropriate for the purpose of filing, but the failure of Secured Party to execute this Agreement shall not affect or impair the validity or effectiveness of this Agreement.

e.  A carbon, photographic or other reproduction of this Agreement or of any financing statement signed by the Obligor shall have the same force and effects as the original for all purposes of a financing statement.

f.  This Agreement shall be governed by the laws of the State of Florida.

g.  If any provision or application of this Agreement is held unlawful or unenforceable in any respect, such illegality or unenforceability shall not affect other provisions or applications which can be given effect, and this Agreement shall be construed as if the unlawful or unenforceable provision or application had never been contained herein or prescribed hereby.

h.  All representations and warranties contained in this Agreement shall survive the execution, delivery and performance of this Agreement and the creation and payment of the Obligations.

i.  Obligor hereby ratifies and confirms that all the terms, covenants, conditions, warranties, representations and agreement contained in the Loan Documents.

j.  Should there be any conflict between the terms of this Pledge Agreement and the Loan Agreement, this Pledge Agreement shall control.


**OBLIGOR:**                                          **SECURED PARTY:**

*Martin C. Flynn, Jr.*                                *K. Dx*
————————————————                                     ————————————————
By: Martin C. Flynn, Jr.                              By: Kenneth G. Dixon, Manager of PEDIXON LLC
     Individually, and
     as Manager of MTF Holdings, LLC, and
     as Manager of WM Holdings, LLC


5

Docusign Envelope ID: 545249E8-5982-4DFA-92C0-E713A3E9775F

**STATE OF FLORIDA**
**COUNTY OF** ~~Orange~~

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on October 30th, 2023, by Martin C. Flynn, Jr.

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
_____ Personally known OR
_____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _____ License _____

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

### Assignment and Transfer of Cash Flow

For value received, pursuant to the terms of the loan documents executed of even date herewith, the undersigned, Martin C. Flynn, Jr., individually, WM Holdings, LLC, and MTF Holdings, LLC hereby unconditionally assign and transfer the following unto PEDIXON LLC.

All of its percentage interest in any cash flow, payments, management fees and tax credits directly from any entity formed for the purpose of constructing and operating low-income multifamily housing projects, including but not limited to the following projects:

- Keys Affordable Development, LLC. That certain 51 unit low-income multifamily housing project in Marathon, Florida in Marathon, Florida
- Keys Affordable Development II, LLC. That certain 42-unit low-income multifamily housing project in Marathon, Florida.
- Keys Affordable Development IV, LLC.
- Quint Development, LLC.
- Tri-Star Affordable Development, LLC.
- The Cash Flow shall include the cash flow, payments, management fees and tax credits from all affordable housing projects to which Obligor, or any affiliate or related party, has a current interest and to which Obligor acquires an interest until such time as the Obligations are fully satisfied and/or released by Secured Party.

The undersigned represents and warrants that said Cash Flow has not been assigned, transferred or otherwise encumbered; and that and all proper notice provisions have been met to effectuate the legal transfer of the Cash Flow unto PEDIXON LLC.

Executed on this 30th day of October 2023.

By: _____
Martin C. Flynn, Jr.

DocuSigned by:
*Martin C. Flynn, Jr.*
B786014E49D94EA

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on October 30, 2023, by Martin C. Flynn, Jr.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
___ Personally known OR
_X_ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License



EXHIBIT

H

tabbies'

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

## Assignment and Transfer of Shares

**For value received,** pursuant to the terms of the loan documents executed of even date herewith, the undersigned, Martin C. Flynn, Jr. hereby unconditionally assigns and transfers the following unto PEDIXON LLC.

The issued and outstanding shares of membership units of WM Holdings, LLC, a Florida limited liability company. The undersigned represents and warrants that he is owner of all the issued and outstanding shares of said company, and that the shares have not been sold, transferred, assigned, or otherwise encumbered as of the date hereof.

The undersigned hereby and irrevocably constitutes and appoints Alison Pitkanen, Esquire, as attorney-in-fact, to transfer the said shares on the books of company.

Executed on this 30th day of October 2023.

By: _____ Martin C. Flynn, Jr.

Martin C. Flynn, Jr.

**STATE OF FLORIDA**
**COUNTY OF** _Orange_

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on October 30, 2023, by Martin C. Flynn, Jr.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: _Janelle Morea_
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
_____ Personally known OR
___ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: _License_

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

### Assignment and Transfer of Shares

For value received, pursuant to the terms of the loan documents executed of even date herewith, the undersigned, Martin C. Flynn, Jr. hereby unconditionally assigns and transfers the following unto PEDIXON LLC.

The issued and outstanding shares of membership units of MTF Holdings, LLC, a Florida limited liability company. The undersigned represents and warrants that he is owner of all the issued and outstanding shares of said company, and that the shares have not been sold, transferred, assigned, or otherwise encumbered as of the date hereof.

The undersigned hereby and irrevocably constitutes and appoints Alison Pitkanen, Esquire, as attorney-in-fact, to transfer the said shares on the books of company.

Executed on this 30th day of October 2023.

By: _____
Martin C. Flynn, Jr.

**STATE OF FLORIDA**
**COUNTY OF** Orange

THE FOREGOING INSTRUMENT WAS sworn to (or affirmed) and subscribed before me by means of ___ physical presence or ___ online notarization on October 30, 2023, by Martin C. Flynn, Jr.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

Notary Public, State of Florida
Name: Janelle Morea
(Please print or type)

Commission Number: HH077342
Commission Expires: 1/5/2025

Notary: Check one of the following:
____ Personally known OR
____ Produced Identification (if this box is checked, fill in blank below).
Type of Identification Produced: License

DocuSign Envelope ID: D1157520-7C51-4CF7-8D2C-73E9F6A42D20

DocuSign Envelope ID: FA265EF5-31FC-48FE-A327-47C1E98C5BC9

## ASSIGNMENT OF ALL CONTRACTS AND BUILDING RIGHTS

MTF Holdings LLC, a Florida limited liability company, WM Holdings, LLC, a Florida limited liability company and Martin C. Flynn, Jr. (collectively the "Assignor") for and in consideration of the sum of TEN ($10.00) DOLLARS and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged hereby assigns, grants, transfers and delivers unto PEDIXON LLC (the "Assignee") the following:

- All building rights contracts in the State of Florida, and

- All of its ownership and interest in and to all current building rights in the State of Florida

- All of its ownership and interest in and to all State of Florida building rights that may be vested or acquired from the date hereof, until such time as the indebtedness owed to PEDIXON, LLC is fully satisfied.

TO HAVE AND TO HOLD the same unto the Assignee, its personal representatives, heirs and assigns forever.

The Assignor acknowledges and agrees that it has full right and authority to assign and transfer its interest in the ROGOS as stated herein, that they are free from all encumbrances; and that the Assignor has good right and title to assign the same aforesaid.

Assignor agrees to execute any additional documentation that may be required to effectuate the assignment of the aforesaid ROGOS unto Assignee.

Assignor and Assignee agree that the intention of this Assignment is to transfer all of the building rights contracts, and all interests in and to the building rights, to which Assignee has an interest, in the State of Florida. The undersigned agrees to take any action reasonably necessary to effectuate the assignment of said contract and/or building right as contemplated hereunder.

This Assignment shall survive the closing on the date hereof.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this 30th day of October 2023.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

ASSIGNOR:

Printed name: Janelle Morea

— DocuSigned by:
Martin C. Flynn, Jr.
— 8788014E49D94EA
By: Martin C. Flynn, individually and
Manager of MTF Holdings, LLC, and
Manager of WM Holdings, LLC

Printed name: David Ruiz

DocuSign Envelope ID: D527C587-8318-42BE-AB0E-2D1E43C3CC17

SETTLEMENT STATEMENT June 13, 2023

Borrower          FLORIDA SPACE COAST RESORTS, INC.

Guarantors:       SHERWOOD CONSTRUCTION, INC
                  HORTON S. JOHNSON, individually and as Trustee
                  HOMEMAKERS REAL ESTATE, LLC
                  TIERED CAPITAL, INC.

Lender:           PEDIXON LLC

Closing Attorney   ALISON PITKANEN LAW FIRM

Purpose:          Acquisition and security interest in 20 River-Fly-In, Inc. condominium units

**I. LOAN AMOUNT**                              3,000,000.00


**II. CLOSING COSTS & FEES**

**TO LENDER:**

| | |
|---|---|
| Loan Fee | 60,000.00 |
| Prepaid Interest on Advance 6/14 - 6/30 (17 days) | 21,250.00 |
| Renewal Fee on Sherwood Construction, Inc. loan 1/28/2022 | 6,000.00 |
| Current June Payment due to Lender | 34,000.00 |

**TO CLOSING ATTORNEY:**

| | |
|---|---|
| Settlement fee | 500.00 |
| Title Search Fee (Old Republic Invoice) | 250.00 |
| Simplifile | 20.00 |
| Attorney Fee | 20,000.00 |
| Fedex Fee | 45.00 |
| Wire fees | 200.00 |

**TO BREVARD COUNTY - RECORDATION & STATE LOAN TAXES:**

| | |
|---|---|
| Record Quit Claim Deed | 35.50 |
| Documentary Stamp Tax - Deed (based on $1,301,797.50) | 9,112.60 |
| Record Mortgage | 44.00 |
| Documentary Stamp Tax - Mortgage | 10,500.00 |
| Intangible Tax | 6,000.00 |

**TOTAL FUNDS DUE FROM BORROWER**          167,957.10

**III. FUNDS PAID ON BORROWER'S BEHALF:**

| | |
|---|---|
| River Fly-In Condominium, Inc. | 1,301,797.50 |
| Alison Pitkanen Trust Account - 2nd deposit | 1,301,797.50 |
| **TOTAL REDUCTION IN FUNDS** | 2,603,595.00 |

**IV. LOAN PROCEEDS AVAILABLE TO BORROWER:**          228,447.90

Borrower and Lender have reviewed this settlement statement and find it to be a true and accurate statement of all receipts and disbursements that shall be made to close this transaction. Borrower and Lender further certify that Alison Pitkanen Law Firm LLC is authorized and directed to ensure the funds to be disbursed in accordance with this statement, and to record the necessary docments in the public records of Brevard County, Florida.

Sherwood Construction joins in the execution of this closing statement to acknowledge and agree that the monthly payments due under this loan shall be paid directly from construction draw payments that may be received on any of its projects. Thus, Lender shall have a security interest in all of its construction projects during the term of this loan.

PEDIXON LLC

By: Kenneth G. Dixon
Its: Managing Member

Sherwood Construction, Inc

Martin C. Flynn, Jr.
Martin C. Flynn, Jr., President

FLORIDA SPACE COAST RESORTS, INC.

By: David Ruiz, authorized agent

By signature hereto, Closing Agent agrees to make disbursements as stated herein.

EXHIBIT

I

tabbies

**James Timko**

| | |
|---|---|
| **From:** | Alison Pitkanen <alisonpitkanen@gmail.com> |
| **Sent:** | Friday, January 24, 2025 3:55 PM |
| **To:** | Marty Flynn; Woody Johnson; Marty Flynn |
| **Subject:** | PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice |
| **Attachments:** | CC Delinq. Crescent Sound Ltd 12.17.24.pdf; Dixon - Notice of Application of Account Proceeds (Loan XXX1214) (08.27.24).pdf |

Marty C. Flynn, Jr. & Tracy Hester Flynn
14255 Saint Georges Hill Drive
martyf@sherwoodconstruction.net
mcflynn@me.com

Delivered via email and regular mail

Horton S. Johnson
2523 Kissam Court
Belle Isle, FL 32809
wjohnsonbbf@gmail.com

Delivered via email and regular mail

Yaniv Amar
3475 Mystic Pointe Drive, #10
Aventura FL 33180

Delivered via regular mail

January 24, 2025

RE:    PEDIXON LLC and ZPD LLC (collectively, the "Lender") loan to Tiered Capital, Inc., Sherwood Construction et. al. (collectively referred to as "Tiered") and more particularly consolidated in September 2023 and subsequsntly modified in October 2023  (all loans, both separately and consolidated, are individually and collectively referred to as the "Loan")

Gentlemen,

    I wanted to reach out with an update regarding this Loan while I am still able to do so.

PEDIXON LLC has accelerated the interest rate under the Loan, effective February 1, 2024.

The outstanding principal balance of the Loa is $8,150,000.
The total amount of accrued unpaid interest is $1,552,376.
The total payoff of the Loan is currently $9,702,376.

I have identified below all of the guarantors and obligors under the Loan.



1

**Opportunity to Cure.**

My records reflect that default notification was provided in January 2024, and again, in June 2024. Since February 1, 2024, the defaults have continued to accumulate. This correspondence should also serve to provide you with a formal opportunity to cure the defaults under the Loan. The Lender provides you with fifteen days from the date hereof to do so.

As you may recall, in January 2024, Mr. Johnson relinquished control of the membership units in Homemakers Real Estate, LLC; and in exchange therefor, the Lender did not pursue legal action against him personally at the time. It is my understanding that no other steps have been taken to cure any of the defaults since January 2024.

**Defaults.**

There are numerous monetary and non-monetary defaults under the loan. I want to bring your attention to the following most significant defaults:

- Certificate of Deposit. In August 2024, the Lender received notice that Sherwood Construction Inc. allowed First State Bank to seize a significant piece of collateral represented by a One Million Dollar certificate of deposit. The First State Bank correspondence detailing the seizure is attached for reference. This collateral has not been replaced or replenished.

  The Lender has requested that Mr. Flynn (on behalf of 650 85TH LLC) transfer the real property located in Marathon Florida unto the Tiered Land Trust. A good-faith gesture such as this would have shown a willingness to cooperate; but the property was never transferred.

- Association Dues. Crescent Sound Ltd., as Trustee of the Tiered Land Trust, recently received notification from Keystone Management Group requesting payment of delinquent association dues. It is my understanding that payments continue to be delinquent. Attached is the detailed accounting of amounts due.

- Maturity. All Loans, except for the October 2023 Flynn Substitution Loan ($750,000), matured in 2024. The entire unpaid principal balances of the matured loans, including interest and fees, have been due and payable.

Note: The referenced defaults are in addition to numerous other defaults under the Loan.

- 

**Conclusion.**

If you have any interest in resolving this in an amicable manner, please let me know.

I will not be involved in any legal action to foreclose upon or seize assets and properties, personal or otherwise. I have advised the Lender to procure separate legal counsel to enforce its rights and remedies under the Loan; and it is my understanding that it has done so. Notwithstanding, the Lender remains open to resolving this amicably with you.

I urge you to consult with legal counsel as soon as possible before this escalates even further.

**Obligors & Guarantors.** Here is a list of obligors and guarantors under the Loan.

Horton S. Johnson, individually
Martin C. Flynn, Jr., individually
Tracy Hester Flynn, individually
Tiered Capital, Inc., a Florida corporation
Sherwood Construction, Inc.
Horton S. Johnson Revocable Trust dated August 3, 2012
MTF Holdings, LLC, a Florida limited liability company
WM Holdings LLC, a Florida limited liability company
65 85TH ST LLC, a Florida limited liability company
Florida Space Coast Resorts, Inc., a Florida corporation
Canaveral Crossroads, LLC
A Marine, Inc., a Florida corporation
Cape Crossing Vacation Rentals, LLC, a Florida limited liability company
Holly Bluff Marina, Inc,, a Florida corporation
Recycled Group of South Carolina, LLC, a South Carolina limited liability company
Canaveral Crossroads, LLC

If you have any questions, please feel free to contact me to discuss. I am happy to answer questions for as long as I can. Once litigation counsel steps in, I will have to defer you to them.

Thank you,
Alison

Alison Pitkanen, Esquire
1980 N. Atlantic Ave, Suite 230-328
Cocoa Beach FL 32931
Cell (407) 449-0037

IMPORTANT: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message.

3

**Marisa Godek**

| | |
|---|---|
| **From:** | Alison Pitkanen <alisonpitkanen@gmail.com> |
| **Sent:** | Friday, April 11, 2025 1:01 PM |
| **To:** | mike.mcp1951@gmail.com |
| **Subject:** | Fwd: Tiered-Flynn - Cash Collateral (Affordables) Notice to McPhillips & Sarver |
| **Attachments:** | Assignments..Flynn.Affordables Cash Flow ROGOs.pdf; ATT00001.htm; 10.30.23 Security Pledge Agrmt-1.pdf; ATT00002.htm; ATT00003.htm |

Sent from my iPhone

Begin forwarded message:

> **From:** Alison Pitkanen <alisonpitkanen@gmail.com>
> **Date:** January 25, 2025 at 12:53:06 PM EST
> **To:** mike.mcp1951@gmail.com, Shane Sarver <shanes@heritage-inc.net>
> **Subject: Tiered-Flynn - Cash Collateral (Affordables) Notice to McPhillips & Sarver**

Shane Sarver
shanes@heritage-inc.net

Mike McPhillips
mike.mcp1951@gmail.com

Good afternoon gentlemen,

I am contacting you as legal counsel for PEDIXON LLC ("PEDIXON"). PEDIXON previously made a loan accommodation to Martin C. Flynn, Jr., his wife and various entities owned and operated by him.

As security for the loan, PEDIXON has a priority security interest in Marty's share of several ventures to which you are also a part.

Marty is in default of the PEDIXON loan, and he has been in default since December 2023. Marty has pledged collateral in the form of real estate, cash flow, ROGOS and membership interests, as represented by the attached documents, namely:  Security Pledge Agreement, Assignment of ROGOS, Assignment of Cash Flow and Assignment of Membership Interests.

In order to protect the collateral interest, and to prevent any improper monetary disbursements, Mr. Dixon is exercising his rights under the loan.

This shall serve as notice that, going forward, Marty's share of all monies collected by the entities identified below must be delivered to my firm to be held in trust for further handling. My firm currently collects all other cash collateral under the loan.  If Marty has any objections to the funds being handled in this manner, I will initiate an interpleader action, and I will deposit the monies with the court registry.

1

Wiring instructions are attached.

PEDIXON is engaging litigation counsel to further handle the seizure of these and other assets. Once they are up to speed, I will no longer be involved in this matter. If these instructions change at the direction of litigation counsel, you will be notified accordingly,

Please take note of the entities subject to this notice:

- Keys Affordable Development, LLC
- Keys Affordable Development II, LLC
- Keys Affordable Development IV, LLC
- Quint Development, LLC
- Tri-Star Affordable Development, LLC
- MTF Holdings, LLC
- WM Holdings, LLC

These instructions should not disrupt any business operations, or your share of any disbursable monies. If you are unable to comply with these instructions, please advise.

Thank you in advance for your cooperation,

Alison

Alison Pitkanen, Esquire
1980 N. Atlantic Ave, Suite 230-328
Cocoa Beach FL 32931
Cell (407) 449-0037

IMPORTANT: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message.

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN
AND FOR MONROE COUNTY, FLORIDA

CASE NO.: 2025-CA-_____-M

650 85TH LLC, a Florida Limited Liability
Company, SHERWOOD CONSTRUCTION, INC.,
a Florida Corporation, and MARTIN C. FLYNN, JR.,
individually,

        Plaintiff,

v.

PEDIXON LLC.

        Defendant.

_____/

## COMPLAINT FOR ACCOUNTING

Plaintiffs 650 85TH LLC, SHERWOOD CONSTRUCTION, INC., and MARTIN C.
FLYNN, JR. sues Defendant, PEDIXON LLC for an accounting, including accounting of receipts
and balance, pursuant to Florida Statute § 701.04(1)(a), 679.210, and 687.08 and alleges as
follows:

### Parties, Jurisdiction, and Venue

1.    This lawsuit involves several claims, all relating to a mortgage, loan, and
promissory among 650 85TH LLC ("Mortgagor") and PEDIXON LLC ("Mortgagee") and
SHERWOOD CONSTRUCTION, INC., and MARTIN C. FLYNN, JR.

2.    At all times material hereto, Plaintiff 650 85TH LLC is a Florida Limited Liability
Company organized under the laws of Florida and operating within Monroe County, Florida.

3.    At all times material hereto, Plaintiff SHERWOOD CONSTRUCTION, INC., is a
Florida Corporation organized under the laws of Florida.



EXHIBIT
K

1

4. At all times material hereto, Plaintiff MARTIN C. FLYNN, JR. is an individual, over the age of 18, who at all times had a material interest in the property located at 650 85th Street, Marathon, Florida 33050 through 650 85th LLC, was a guarantor on the loan and promissory note with PEDIXON LLC, and is other wise *sui juris*.

5. At all times material hereto, Defendant PEDIXON LLC is a Florida Limited Liability Company organized under the laws of Florida and operated within Monroe County, Florida for purposes of the subject mortgage on property located at 650 85th Street, Marathon, Florida 33050.

6. All of the actions giving rise to this matter have occurred in Monroe County, Florida, relating to a property located in Marathon within Monroe County, Florida.

7. As such, the Court has subject matter jurisdiction and personal jurisdiction of this matter, and venue is proper in Marathon.

8. The Circuit Court has jurisdiction as the lawsuit involves real property and a mortgage.

9. Plaintiffs have retained the undersigned law firm to prosecute this action and is obliged to pay its attorneys a reasonable fee for their services.

10. All other conditions precedent to the maintenance of this action have been performed, have occurred, or have been excused or waived.

**General Allegations**

11. On or about January 28, 2022, 650 85TH LLC, entered into a Mortgage with Defendant PEDIXON LLC for real property, with a legal description of: Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe

2

County, Florida, more commonly known as 650 85th Street Ocean, Marathon, Florida 33050 ("subject property"). See a copy of the Mortgage attached as **Exhibit 1** hereto.

12.     Martin C. Flynn is a principal owners of 650 85TH LLC.

13.     The mortgage was in exchange for a loan from PEDIXON LLC for $500,000.00, where Sherwood Construction, Inc., executed a Promissory Note for that amount, also on January 28, 2022. See a copy of the Promissory Note attached as **Exhibit 2** herein.

14.     Martin C. Flynn is also a signor on the Loan.

15.     Martin C. Flynn is the President of Sherwood Construction, Inc.

16.     Martin C. Flynn and Tracey Hester Flynn executed the Promissory Note as guarantors.

17.     Also on January 28, 2022, a Loan Agreement between PEDIXON LLC and Sherwood Construction, Inc. was executed, which addressed the $500,000.00 in the Promissory Note and the Mortgage on 650 85th St. Ocean, Marathon, Florida.  See a copy of the Loan Agreement is attached hereto as **Exhibit 3**.

18.     650 85TH LLC is listed as a signor on the Loan Agreement.

19.     A Mortgage Modification to the mortgage between 650 85th LLC and PEDIXON LLC was executed by Martin C. Flynn, Jr. on August 4th, 2022.  See a copy of the Mortgage Modification attached as **Exhibit 4** herein.

20.     An allonge to the Promissory Note between Sherwood Construction, Inc. and PEDIXON LLC was executed on or about August 3, 2022. See a copy of the Allonge to Promissory Note attached as **Exhibit 5** herein.

3

21. The allonge to the Promissory Note acknowledged payment of $150,000.00 toward the $500,000.00 sum, while also advancing an additional $250,000.00, increasing the total loan balance to $600,000.00.

22. Plaintiffs, through MARTIN C. FLYNN and his agents, have made myriad payments to PEDIXON LLC through direct payments, credits, and receipt of real and personal property that exceed the $600,000.00 on the loan.

23. Plaintiffs, through MARTIN C. FLYNN and his agents, have demanded an accounting of payments and balance at least twice, including a direct demand on April 4, 2025. See a copy of the April 4, 2025, correspondence to PEDIXON LLC at **Exhibit 6**.

<u>**COUNT I**</u>
<u>**DECLARATORY JUDGMENT**</u>
**(ALL PLAINTIFFS)**

24. Plaintiffs realleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

25. Plaintiffs hve insecurity and doubts about its rights and obligations under the subject Mortgage, Loan Agreement, and/or Promissory Note as it pertains to the amounts paid towards the Loan Agreement and Promissory Note.

26. Plaintiff believes that the Loan Agreement and Promissory Note has been paid in full, but Plaintiffs have been unable to get an accounting of payments, interest, or final claimed balance from Defendant despite repeated requests for the same.

27. There is a bona fide, actual, present practical need for a determination of the status of the loan to determine satisfaction of the mortgage.

28. Defendant has made Plaintiffs question what rights they have under the Mortgage, Promissory Note, or Loan Agreement as it relates to satisfaction of Mortgage and accounting.

4

Case 6:26-bk-00399-LVV    Doc 81    Filed 05/19/26    Page 152 of 267

29. The declaration sought deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

30. Plaintiffs' rights or obligations under the easement are dependent upon the facts or the law applicable to the facts.

31. Plaintiffs and Defendants have an actual, present, adverse and antagonistic interest in the subject matter of this declaration, either in fact or law, which are all before the Court by proper process.

32. Defendant has not recorded a satisfaction nor has it giving a proper accounting of payments, interest, and balance.

33. The relief sought herein is not merely the giving of legal advice by the Court or the answer to questions propounded from curiosity.

34. The declaratory relief process sought in this action is not extraordinary and is consistent with the declaratory judgment statutes authorizing an action to declare the underlying issues of fact in determining the existence or non-existence of any right, or of "any fact upon which the existence of nonexistence of such ... right does or may depend, and whether such ... right ... now exists or will arise in the future." § 86.011, Fla. Stat.

35. An order is needed to determine the rights of the parties involved as the parties are currently in controversy as to scope and use of the easement.

WHEREFORE, Plaintiffs demand declaratory judgment requesting that the Court enter an order as to the parties rights under the mortgage, loan agreement, and/or promissory note, and for any other relief that this Court deems just and proper.

WOLFF STEVENS, PLLC

## COUNT II
## VIOLATION OF FLORIDA STATUTE SECTION 701.04(1)
## (PLAINTIFF 650 85TH LLC)

37.     Plaintiff realleges and incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

38.     This action arises pursuant to Florida Statute Section 701.04(1).

39.     Plaintiff has made request for an accounting and estoppel letter pursuant to Section 701.04(1) to Defendant.

40.     Defendant has refused to provide an accounting and/or an estoppel letter regarding unpaid balance within ten (10) days of the written request to Defendant.

WHEREFORE, Plaintiff respectfully requests that Defendant be held in violation of Florida Statute Section 701.04(1), and be ordered to provide an accounting and estoppel letter regarding the balance of the loan, for costs and attorneys fees for bringing such action, and for any other relief that this Court deems just and proper.

## COUNT III
## VIOLATION OF FLORIDA STATUTE SECTION 679.210
## (ALL PLAINTIFFS)

41.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 23 above as if fully set forth herein.

42.     This action arises pursuant to Florida Statute Section 679.210.

43.     Plaintiffs, through Martin C. Flynn, have made requests for an accounting of the unpaid obligations secured by collateral.

44.     Defendant has refused to provide an accounting regarding unpaid obligations within fourteen (14) days of the written request to Defendants.

6

WHEREFORE, Plaintiffs respectfully request that Defendant be held in violation of Florida Statute Section 679.210, and be ordered to provide an accounting of unpaid obligations regarding the balance of the loan, for costs and attorneys fees for bringing such action, and for any other relief that this Court deems just and proper.

## COUNT IV
## VIOLATION OF FLORIDA STATUTE SECTION 687.08
### (ALL PLAINTIFFS)

45.       Plaintiffs reallege and incorporate by reference paragraphs 1 through 23 above as if fully set forth herein.

46.       This action arises pursuant to Florida Statute Section 687.08.

47.       Plaintiffs have made payments on the loan.

48.       Defendant has failed to give Plaintiffs a receipt of payments or any other accounting regarding the loan.

WHEREFORE, Plaintiffs respectfully request that Defendant be held in violation of Florida Statute Section 687.08 and be ordered to provide receipts, forfeit all interest, for costs and attorneys fees for bringing such action, and for any other relief that this Court deems just and proper.

Dated: May 7th, 2025.

Respectfully Submitted,

/s/

Florida Bar No.: 0088981
coburn@marathonlaw.com

**Wolfe Stevens, PLLC**
5800 Overseas Highway, Suite 3
Marathon, Florida 33050

7

WOLFE STEVENS, PLLC

(305) 743-5281

PATRICK M. STEVENS, ESQ.
Florida Bar No: 57468
stevens@marathonlaw.com
reception@marathonlaw.com

DALE R. COBURN III, ESQ.
Florida Bar No.: 0088981
coburn@marathonlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of May 2025, a true and correct copy of the forgoing original document was filed with the Clerk of the Court via the Florida Courts eFiling Portal, which will also send an automatic e-mail message with a true and correct copy of the forgoing document to all Counsel listed therein.

**Wolfe Stevens PLLC**
*Attorneys for Plaintiff*
6807 Overseas Highway
Marathon, Florida 33050
Tel No.: (305) 743-9858

BY:   /s/ Dale R. Coburn, Esq.
        Dale R. Coburn III, Esq.
        FL Bar No.: 0088981

8

This instrument prepared by:
Alison Pitkanen, Esquire
518 South Magnolia Ave., Suite 110
Orlando, Florida 32801

Recording costs - $35.50
Documentary Excise Tax - $ $1,750
Intangible Taxes - $ $1,000

Doc # 2363740   Bk# 3158 Pg# 183
Recorded 3/1/2022 3:10 PM   Page 1 of 4

Mtg Doc Stamp $1,750.00       Intangible Tax $1,000.00
Filed and Recorded in Official Records of
**MONROE COUNTY   KEVIN MADOK, CPA**

## MORTGAGE

THIS INDENTURE, is made as of the 28th day of January 2022, by 650 85TH LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

### WITNESSETH:

That in consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following:

That property situated in Monroe County, Florida and more particularly identified on Exhibit "A" attached hereto, which shall be referred to herein as the "Mortgaged Property" or the "Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors and assigns, forever.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS, subject only to any extensions or future advances made thereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.     Payment of Loan.  Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of the Loan Agreement, and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.     Taxes, Assessments, Liens and Charges.  Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach.  In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

3.     Preservation and Maintenance.  Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.     Interest on Delinquent Sums.  Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of said Real Property Participation Agreement, and whether principal, interest or money owing for advancements by the holder pursuant to the terms of this Mortgage, shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

**EXHIBIT**

**1**

5.    **Reimbursement of Legal Fees and Costs.** In the event the Loan Agreement is placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6.    **Acceleration Upon Default.** Mortgagor agrees that:  (a) if payment of the Loan under said Loan Agreement is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in this Mortgage (or the Loan Agreement secured hereby) and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of the Loan Agreement and this Mortgage, become due and payable, anything herein or in the Loan Agreement to the contrary notwithstanding.

7.    **Compliance With Laws and Regulations.** Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8.    **Future Advances.** That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9.    **Security.** The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10.    **Severability.** If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or the Loan Agreement, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Agreement shall remain operative and in full force and effect.

11.    **Satisfaction of Mortgage.** Upon payment to Mortgagee of all sums due under the Loan Agreement and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Monroe County, Florida at the expense of Mortgagor.

12.    **Changes, Modifications and Discharges; Enforceability.** This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13.    **Forbearance by Mortgagee Not a Waiver.** Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Agreement. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14.    **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

As to Mortgagee:                          As to Mortgagor:

PEDIXON LLC                               650 85TH LLC
1627 East Vine Street, Suite E            518 South Magnolia Ave., Suite 110
Kissimmee, FL 34744                       Orlando, Florida 32801

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15.    **Parties Bound; Construction of Language.** The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title, and shall inure to the benefit of Mortgagee and its successors and assigns.

2

Wherever used herein, the singular shall include the plural, the plural the singular and one gender shall include all genders.

IN WITNESS WHEREOF, the Mortgagor has caused this instrument to be executed and delivered, and has intended the same to be and become effective as of the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

650 85TH LLC, a Florida limited liability company

WITNESSES:

Printed name: Janelle Morea

By: Martin C. Flynn, Member

Printed name: Alexandra M. Lezcano

STATE OF Florida
COUNTY OF Orange

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 28th day of January 2022 by Martin C. Flynn as Member of 650 85ª LLC, a Florida limited liability company, who is personally known to me or produced License as identification.

SEAL

Notary Public-State of Florida

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

3

**EXHIBIT "A"**

Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

4

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

## PROMISSORY NOTE

**Loan: $500,000.00**
**Effective Date: January 28th, 2022**

      FOR VALUE RECEIVED, **SHERWOOD CONSTRUCTION INC.**, a Florida corporation (referred to herein as the the "Borrower"), promises to pay to **PEDIXON LLC** (referred to herein as the "Lender"), in the manner hereinafter specified, the principal sum of **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)** (the "Loan").

      Martin C. Flynn and Tracey Hester Flynn hereby join in the execution of this Note, and hereby agree to the terms and conditions hereof as guarantors of the Loan in further accordance with the terms of the Loan Agreement executed of even date herewith.

**INTEREST RATE:**

      *The interest rate on this Note shall be fixed at the rate of TWELVE PERCENT/PER ANNUM (12%).*

**PAYMENT SCHEDULE:**

      The Borrower hereby agrees to repay the indebtedness as follows:

      *Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable on March 1, 2022 and the 1st day of every month thereafter for twelve (12) months.*

      *Interest will be computed on the basis of a 360-day year.*

      *A final installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on February 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

      *The first payment on March 1, 2022 shall include Interest on the Interest Rate from the effective date of closing as set forth herein and for each day thereafter for the remainder of the month of January.*

### Additional Terms of the Promissory Note

1.    **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2.    **Late Charge.** If a payment is 11 days or more late, Borrower will be charged the greater of (a) 5.000% of the unpaid portion of the regularly scheduled payment (up to a maximum of $250.00); or (b) $35.00.

SHERWOOD

**EXHIBIT**

**2**

1/28/22

DocuSign Envelope ID: CBF263E2-FE35-4347-B398-73CE4690881D
DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

7.2.   That certain Assignment of Contracts.

7.3.   That certain Assignment of Building Rights of even date herewith.

7.4.   That certain Loan Agreement of even date herewith.

8.   **General Provisions.**

8.1.   If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

8.2.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

8.3.   Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

8.4.   The obligations under this Note are joint and several.

8.5.   This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER: SHERWOOD CONSRUCTION, INC.**

*Martin C. Flynn*

By: Martin C. Flynn, individually,
and as
President of Sherwood Construction, Inc.

*Tracey Hester Flynn*

By: Tracey Hester Flynn individually

Check the appropriate language:

_____   Florida documentary Stamp required by law in the amount of $_____ has been paid or will be paid directly to the Department of Revenue.

_X_   Florida Documentary Stamps required to be paid on the indebtedness evidenced hereby have been paid and affixed to the original mortgage executed herewith.

3

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

## LOAN AGREEMENT

THIS LOAN AGREEMENT is made as of the 28th day of January 2022, by and between **PEDIXON LLC**, a Florida limited liability company ("Lender"), and **SHERWOOD CONTSRUCTION, INC.**, a Florida corporation (hereinafter referred to as "Borrower") and joinder by **MARTIN C. FLYNN** and **TRACEY HESTER FLYNN** (hereinafter, individually and collectively referred to as to the "Guarantor").

**650 85TH LLC** (the "Company"), as the record owner of the Land described herein, shall join in execution of this Loan Agreement to provide consent for the Land to be used as collateral for the Loan.

**MTF Holdings, LLC**, as the owner and holder of the building rights situated in Monroe County, all of which are more particularly described herein, shall join in execution of this Loan Agreement to provide consent for the ROGOS and Additional ROGO Collateral to be assigned and transferred unto the Lender.

### RECITALS

WHEREAS, Borrower has requested PEDIXON LLC to provide funds, and PEDIXON LLC has agreed to purchase a FIVE HUNDRED THOUSAND DOLLAR ($500,000.00) certificate of deposit at First State Bank (the "CD") to obtain a letter of credit for Sherwood Construction, Inc. (the "Loan")

WHEREAS, Sherwood Construction has agreed to use said letter of credit to complete the construction of Amelia Village in Vero Beach, Florida.

WHEREAS, in order to secure repayment of the Loan, the Borrower has agreed to provide the Lender with the following:

- a second mortgage on the Land located at 650 85th Street Ocean, Marathon, FL (the "Mortgage"); and

- an assignment of Borrower's interest in the following contracts for transfer of building right, all situate in Monroe County, Florida (the "ROGOS"), more particularly described on Exhibit "A" attached; and

- an assignment of eight (8) additional contracts for transfer of building right, all situate in Monroe County (the "Additional ROGO Collateral), more particularly described on Exhibit "B" attached hereto; and

- personal guaranties securing the Loan to be executed by Martin C. Flynn and Tracey Hester Flynn.

WHEREAS, Lender has agreed to make and Borrower has agreed to accept the Loan, subject to the terms, provisions and conditions hereinafter set forth;

NOW, THEREFORE, it is agreed by the parties hereto as follows:

### ARTICLE I DEFINITIONS

As used in this Agreement and in the Exhibits annexed hereto, the following terms shall have the following meanings, unless the context otherwise requires:

1.1     Agreement: This Loan Agreement and any written amendments or modifications thereto duly executed by all of the parties hereto.

1.2     Business Day: Any day, except for Sunday.

EXHIBIT

3

1/28/22

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

1.3     Events of Default: The happenings and occurrences described hereunder.

1.4     First Mortgage: That certain first mortgage approximate amount of $308,000.00 recorded on May 24, 2019 in Official Records Book 2966 Page 980, of the public records of Monroe County, Florida.

1.5     Governmental Authority:  Any municipal, county, state or federal governmental authority or other governmental authority (domestic or foreign) having or claiming jurisdiction over the Land, Lender or Borrower.

1.6     Land: The real property described in Exhibit "A" attached hereto.

1.7     Loan:  Lender has agreed to purchase a FIVE HUNDRED THOUSAND DOLLAR ($500,000.00) certificate of deposit at First State Bank (the "CD") to obtain a letter of credit for Sherwood Construction, Inc. This Loan shall include any future advances or modifications thereof, to be made by Lender to Borrower, pursuant to the terms, provisions and conditions of this Agreement.

1.8     Mortgage: The Second Mortgage executed by Company to Lender encumbering the Land.
Attached hereto as Exhibit C.

1.9     Note:  The promissory note, of even date herewith, made by the Borrower to the order of Lender, in the principal amount of **FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS ($500,000.00)** referred to herein as the "Note".
Attached hereto as Exhibit D.

1.10    Permitted Encumbrances:  The First Mortgage.

1.11    ROGOS: Two (2) Contracts for Transfer of Building Right in the City of Marathon more particularly described on Exhibit A attached hereto.

1.12    Additional ROGOS Collateral: Eight (8) Contracts for Transfer of Building Right in the City of Marathon more particularly described on Exhibit B attached hereto.

1.13    Security Documents:  Any and all other documents now or hereafter securing the repayment of the Loan, including, without limitation, those instruments described with particularity in Section 2 hereof.

1.14    Company: 650 85TH LLC, is the record owner of the Land and shall execute the Mortgage in favor of Lender.

1.15    Guarantors: Martin C. Flynn and Tracey Hester Flynn.

## ARTICLE II SECURITY AND TERMS FOR THE LOAN

2.1     Security for the Loan.  The obligations of the Borrower to repay the principal and interest on the Loan shall be secured by the following:

a.      The Mortgage on the Land, which Mortgage shall be executed by Company, in the form attached hereto as Exhibit C.

b.      Assignment of the ROGOS. Borrower shall execute an Assignment of the ROGOS in the form attached hereto as Exhibit A.

2

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

> • The Assignment of the ROGOS shall include the following terms: Lender and Borrower shall equally split the proceeds of the sales contemplated under said contracts. The Lender shall apply its full share of the proceeds to reduce the principal balance of the Loan.

b.   Assignment of the Additional ROGOS Collateral.  Borrower shall execute and Assignment of Additional ROGOS Collateral in the form attached hereto as Exhibit B.

d.   Martin C. Flynn and Tracey Hester Flynn shall secure full payment of the Loan by execution of the Note more particular described in Section 2.2 hereof.

e.   Such other collateral and security as Lender and Borrower may agree upon.

2.2   Interest, Fees Repayment and Maturity. Interest shall be charged in accordance with the Note and the loan shall be repaid in accordance with the Note, which shall include but not be limited to the following terms:

> • The Interest Rate on the Note shall be 12% per annum.  More specifically, Interest Rate on the Note shall have a monthly interest rate of ONE PERCENT (1%) based on the outstanding principal balance of the Loan.
> • The Loan Fee of TWO PERCENT (2%) shall be paid at closing.
> • The Term of the Loan shall be one (1) year.

2.3   After one year from the date of the loan, there shall be a one year option to extend in exchange for ONE PERCENT (1%) of said loan amount to be paid thirty (30) days prior to the effective date of the option to extend.

2.4   The form of the Note shall be attached hereto as Exhibit D.

## ARTICLE III  REPRESENTATIONS AND WARRANTIES

Borrower, and Company, when applicable, hereby represent and warrant to the Lender as follows:

3.1   Borrower and Company are in compliance with all laws, regulations, ordinances and public authorities applicable to them and has the full power and authority to consummate the transactions herein.

3.2   Organizational Documents.  All documents reflecting the organization of the Borrower (the "Organizational Documents") that have been given to Lender have not been modified or amended and the Organizational Documents will not be in any manner materially changed, modified or altered without the prior written consent of Lender.

3.3   Other Agreements.  Neither Borrower nor Company is a party to any agreement or instrument adversely affecting to a material degree its present or proposed business, properties, assets, operation or condition, financial or otherwise, and neither Borrower nor Company is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument.

3.4   Other Financing.  Except for the First Mortgage, the Borrower has not received any other financing for the Land.  Except for the First Mortgage, and the approximate outstanding balance thereon as of the date hereof, Borrower shall not obtain any additional financing for the Land, and shall not allow any liens or encumbrances of any kind to be filed against the Land.

3

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

3.5    No Event of Default. No Event of Default exists under this Agreement or the First Mortgage and no event has occurred and is continuing which, with notice or the passage of time or either, would constitute a default under any provision thereof.

## ARTICLE IV  AFFIRMATIVE COVENANTS

Borrower, and Company, when applicable, hereby covenant and agree that, from the date hereof and until all indebtedness and obligations incurred in connection with the Loan shall have been paid, performed and discharged in full, Borrower, and Company, when applicable, will:

4.1    Payment of Costs and Taxes. Promptly pay all costs and taxes incurred in connection with the Land when the same become due and payable.

4.2    Performance of Obligations. Duly pay, perform and discharge all of its obligations hereunder, under the Assignment of ROGOS, Assignment of Additional Collateral, Note, the Mortgage and any other agreement between Borrower and Lender.

4.3    Compliance with Laws. Promptly and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations and requirements or every governmental authority.

4.4    Existence, Properties, Etc. Do all things necessary to preserve and maintain in full force and effect the existence of Company as a corporation under the laws of the State of Florida.

4.5    Hold Harmless. Defend, at its own cost and hold Lender harmless from any action, proceedings or claim affecting the, Land or other collateral held by Lender for the Loan.

## ARTICLE V  NEGATIVE COVENANTS

Borrower and Company, when applicable, further covenant and agree that, from the date hereof and so long as any of the Loan shall not have been paid in full, as to both principal and interest, it will not:

5.1    Other Financing. Obtain other financing in connection with the the Land without the prior consent of Lender.

5.2    Security Documents. Create, incur, assume or permit any assignment, lien, pledge or other encumbrance upon any of the Security Documents or any interest or equity therein, other than to Lender.

5.3    Breach of Any Contract. Commit any act, suffer or permit any act to occur which would, in any manner, give rise to the material breach of any term, covenant or condition on Borrower's part to be performed under any contract to which it is bound.

5.4    Judgments. Permit any judgment obtained against Borrower or Company to remain unpaid for a period of thirty (30) days following the entry thereof.

5.5    First Mortgage. Borrower shall not perform any act that would constitute a violation of the First Mortgage, or result in a default of the First Mortgage.

## ARTICLE VI  DEFAULT

6.1    Events of Default. The occurrence of any of the following shall constitute an Event of Default hereunder:

4

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

a.   Default in Payment.   Borrower shall fail to make any payment required by the Note or any Security Document, without notice or demand.

b.   Performance of Covenants.   Borrower and/or Company shall default in the due observance or performance of any covenant or agreement made by Borrower hereunder or under any other agreement between Borrower and Lender related to the Loan, including the Security Documents (other than payment of money) and such default shall continue for a period of fifteen (15) days after written notice thereof from the Lender to Borrower; or

c.   Breach of Warranty.   Any representation or warranty made by Borrower and/or Company hereunder, under any statement, instrument or certificate delivered by Borrower and/or Company, to Lender pursuant to the provisions hereof, under any other agreement between the Borrower and Lender, including the Security Documents, or otherwise, shall be determined by Lender to have been false or misleading in any material respect as of the date on which the same was made; or

d.   Default under Mortgage.   An event of default under the Mortgage shall occur and be continuing; or Borrower fails to timely pay the First Mortgage or performs any act in violation of the First Mortgage that would cause a default thereunder; or

e.   Failure to Pay Other Debts.   The Borrower fails to pay any other debt related to the Loan in a timely manner, including but not limited to the failure to pay the First Mortgage payment directly to Lender in a manner which Lender is able to ensure timely payment thereof; or

f.   Execution of Security Agreements.   The Borrower executes any conditional bill of sale, chattel mortgage or other security instrument in favor of anyone other than Lender covering any of the Contracts For Transfer of Building Right identified on Exhibit A and B.

6.2   Remedies.   If an Event of Default shall occur and be continuing, Lender may, at its option:

a.   Acceleration.   Declare all amounts previously advanced to Borrower hereunder and under the Note, and all interest accrued and unpaid thereon, and all other amounts due under the Note and this agreement to be immediately due and payable without presentment, demand, protest or further notice of any kind (all of which hereby are expressly waived) and Lender may thereupon institute proceedings to collect the same and/or foreclose the Mortgage.

b.   Enforcement of Security.   Exercise its rights and remedies under the Note, and any other agreement between Borrower and Lender, including the Security Documents, in accordance with the respective terms thereof.

## ARTICLE VII ADDITIONAL TERMS

7.1   Loan Expenses. Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, broker's fees and commissions, attorneys' fees, documentary, intangible and other taxes, recording costs and expenses.

7.2   Further Assurances. Borrower and Lender agree that at any time, and from time and time, after the execution and delivery of this Agreement, it shall, execute and deliver such further documents and do such further acts and things in order to more fully effectuate the purposes of this Agreement.

7.3   Governing Law. This Agreement shall be governed by and be construed in accordance with the laws of the State of Florida.

5

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

7.4   Severability. In case any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity of the remaining provisions shall be in no way affected, prejudiced or disturbed thereby.

7.5   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one agreement.

7.6   Entire Agreement. This Agreement contains the entire agreement between Lender and Borrower with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements among Lender and Borrower with respect to the subject matter hereof.

7.7   No Partnership or Joint Venture. Nothing herein nor the acts of the parties hereto shall be construed to create a partnership or joint venture between Company/Borrower and Lender.

7.8   Gender. The use of any gender shall include all other genders. The singular shall include the plural and vice versa.

7.9   Survival of Provisions. All covenants, agreements, representations and warranties made in this Agreement and the documents delivered in support of the Loan shall be deemed to have been material and relied on by the Lender and shall survive the execution and delivery to the Lender of the Note, the Security Documents and the disbursement and advance of funds pursuant to the Loan.

7.10   Conflict with Notes and Security Documents. In the event of any conflict between the terms of the Note, the Security Documents and this Agreement, the terms of this Agreement shall control and govern in all respects. Whenever possible, the provisions of this Agreement shall be deemed supplemental to and not in derogation of the Note and Security Documents.

7.11   Headings. The headings of the articles, sections and subsections of this Agreement are for convenience and reference only and shall not be considered a part hereof nor shall they be deemed to limit or otherwise affect any of the terms or provisions hereof.

7.12   Exhibits. All of the exhibits annexed hereto are incorporated herein by reference and form a part of this Agreement.

SIGNATURE LINES ON FOLLOWING PAGE

6

DocuSign Envelope ID: CBF263E2-FE35-4347-B396-73CE4690881D

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3896B2208E38

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Signed, sealed and delivered in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**BORROWER: SHERWOOD CONSRUCTION, INC.**

By: Martin C. Flynn, President

Signed, sealed and delivered in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**COMPANY: 650 85ᵗʰ LLC**

By: Martin C. Flynn, Member

Signed, sealed and delivered in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**MTF Holdings, LLC**

By: Martin C. Flynn, Member

Signed, sealed and delivered in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**GUARANTORS**

By: Martin C. Flynn, individually

By: Tracey Hester Flynn

7

DocuSign Envelope ID: 36DF335F-7BC1-4BA8-8A1C-3898B2208E38

Signed, sealed and delivered
in our presence:

**LENDER: PEDIXON LLC**

Printed name: Janelle Moreci

DocuSigned by:

5808996032S3463

By: Kenneth G. Dixon, Manager

Printed name: Alexandra M. Lezcano

8

Doc # 2395895 Bk# 3199 Pg# 1140  Electronically Recorded 10/27/2022 at 3:45 PM Pages 8
Filed and Recorded in Official Records of MONROE COUNTY KEVIN MADOK
ElectronicallyREC: $69.50  Mtg Doc Stamp $875.00 Intangible Tax $500.00

DocuSign Envelope ID: 9D204AA0-4FB8-4203-BE3F-4BF4A661CFB4

Prepared By and Return To:
Alison Pitkanen, Esquire
10524 Moss Park Road, Suite 204-101
Orlando, FL 32832

## MORTGAGE MODIFICATION AGREEMENT

### (Future Advance in the amount of $250,000)

THIS AGREEMENT (referred to hereafter as the "Agreement"), made effective as of the 4th day of August 2022 ("Effective Date"), by and between 650 85TH LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee")

Pedixon LLC may be herein referred to as the Lender, and 650 85TH LLC may be herein referred to as Obligor

### WITNESSETH:

WHEREAS, all recording references contained in this Agreement are to the Public Records of Monroe County, Florida; and

WHEREAS, Mortgagor executed a certain mortgage recorded in Official Records Book 3158, Page 183 which mortgage shall incorporate all assignments and modifications thereof (referred to herein as the "Mortgage"), encumbering certain real property ("Property") located in Monroe County, Florida, and more particularly described as follows:

Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

WHERAS, said Mortgage is security for a credit accommodation represented by that certain Loan Agreement dated January 28, 2022, representing a loan in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS, subject only to any extensions or future advances made thereunder, together with all other related loan and security documents executed of even date therewith (the "Credit Accommodation").

WHERAS, Mortgagor is an Obligor under the Credit Accommodation and is responsible for the repayment of that certain original promissory note dated January 28, 2022 in the original principal amount of $500,000.00 (the "Original Note").

WHEREAS, Mortgagor is the owner of the Property encumbered by the Mortgage, and Lender is the owner and holder of the Credit Accommodation, Original Note and Mortgage and is the secured party under the Credit Accommodation and the related loan and security documents, including but not limited to the loan agreement, executed on January 28, 2022 (the "Loan Documents")

WHEREAS, the total outstanding balance of the Original Note, as of the date hereof, is $350,000.00.

WHEREAS, Lender has agreed to provide a future advance under the terms of the Mortgage in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/CENTS ($250,000.00) which shall be evidenced by a Future Advance Allonge to Promissory Note (the "Future Advance Allonge")

WHEREAS, the Original Note, together with the Future Advance Allonge executed of even date herewith, shall be collectively referred to herein as the Note.

WHEREAS, the total outstanding indebtedness represented by the Note, as of the date hereof, is SIX HUNDRED THOUSAND DOLLARS AND NO/CENTS ($600,000 00)

### AGREEMENT:

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which each party acknowledges, the parties hereto do hereby agree as follows:

1.  The recitals hereinabove contained are true and correct, affirmed and are made a part hereof and incorporated herein by reference.

2.  This Agreement evidences a future advance made by the Lender pursuant to the future advance provision of the Mortgage referred to hereinabove. It is agreed that this future advance is evidenced by the Future Advance Allonge. The Future Advance Allonge and Note shall be secured by the above described Mortgage and Loan Documents. The Obligor agrees to pay the indebtedness in accordance with the terms of the Note and any renewals, modifications, extensions or consolidations thereof.

1

EXHIBIT

4

Case 6:26-bk-00399-LVV Doc 24 Filed 02/06/26 Page 30 of 112
Case 6:26-bk-00399-LVV Doc 81 Filed 05/19/26 Page 171 of 267
Doc. # 2395895 Page Number: 2 of 8

DocuSign Envelope ID: 9D204AA0-4F86-4203-BE3F-4BF4A661CFB4

3. The Obligor agrees to pay the indebtedness in accordance with the terms of the Note and any renewals, modifications, extensions or consolidations thereof.

4. That as of the Effective Date, the relevant terms of the Original Note and Mortgage are modified pursuant to the terms of that certain Future Advance Allonge executed of even date herewith, and other related documents required by Lender to modify the Mortgage and secure the collateral identified in the Loan Documents. The Original Note and the Future Advance Allonge evidence the total indebtedness on the Mortgage, including all future advances, as of the date hereof, and in exchange therefore, modifications as more particularly set forth in said related loan and security documents executed of even date herewith.

5. Obligor agrees that all documentary stamp taxes, intangible taxes, title insurance premiums, title search and examination charges, recording fees, and all other costs whatsoever incurred with respect to this Loan, or the subject matter hereof, shall be paid by Obligor promptly and on demand; and if at any time the State of Florida shall determine that the intangible tax or documentary stamp tax paid in connection with this Loan, as modified hereby, or any documentation executed in connection therewith is insufficient for any reason whatsoever, Obligor shall pay for same upon such determination, together with all interest and penalties imposed in connection therewith.

6. Obligor does hereby for itself and each of them and for their respective legal representatives successors, predecessors and assigns (jointly and severally "Releasors"), waive any claim or defenses which they or any of them now have or might hereafter have with respect to the Note and Mortgage, as hereby modified, or by virtue of any claims or defenses in any civil proceedings or otherwise, brought or asserted by Lender or Releasors or by a third party in each case by reason of any act, matter, contract, agreement, or thing whatsoever from the beginning or time up and to and through the date of the Agreement, as of the date this Agreement is notarized as to the last signatory hereto.

7. Obligor hereby represents and warrants to Lender that all representations and warranties previously made by Obligor in connection with the Mortgage and Note are true and correct, and incorporated herein by this reference.

8. Obligor hereby ratifies and confirms that all the terms, covenants, conditions, warranties, representations and agreement contained in the Mortgage and the Loan Documents as modified herein, shall remain in full force and effect as modified by this Agreement.

9. Obligor represent and warrants to Lender that Obligor has filed no petition for an order for relief under Title 11 of the U.S. Code, as amended, and that, to the best of Obligor's knowledge, Obligor is not the subject of any petition for an order for relief under any applicable bankruptcy or insolvency laws; and Obligor has not made any assignments for the benefit of creditors under any applicable state laws.

10. Any misrepresentation or breach of warranty or covenant of Obligor contained under this Agreement or any of the Loan Documents shall constitute a default under the terms of each of the Loan Documents.

11. All the terms, covenants and conditions herein contained are and shall be binding on, and shall enure to the benefit of Lender and its successors and assigns.

12. All covenants, agreements, acknowledgements, waivers and/or releases herein made or granted by Obligor shall be binding upon Obligor and its successors and assigns and the terms of this Agreement shall inure to the benefit of Obligor and its permitted successors and assigns.

13. This Agreement shall be construed under Florida law and shall not be construed more strictly against one party than against the other merely by virtue of the fact it may have been prepared by counsel for one of the parties, it being recognized that this is a negotiated document and that the parties have each contributed materially to the content hereof.

14. If the event any provision, paragraph, sentence, clause, phrase or word is deemed invalid or unenforceable, then to the extent that he remaining portions of this Agreement and such provision, paragraph, sentence, clause, phrase or word is valid and enforceable shall remain in full force and effect.

15. That, in the event of any default under the terms and conditions of this Agreement or any other instrument referred to herein or contemplated hereby, the entire principal balance amount represented by the Future Advance Allonge, together with all accrued interest and charges, shall, at Lender's option, become immediately due and payable.

16. That the terms, liens and operations of the Note and Mortgage are ratified and confirmed in all other respects not inconsistent with the provisions of this Agreement and shall continue in full force and effect, except as specifically modified by the terms hereof.

17 Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744

650 85TH LLC
518 South Magnolia Ave., Suite 110
Orlando, Florida 32801

2

Case 6:26-bk-00399-LVV Doc 24 Filed 02/06/26 Page 31 of 112
Case 6:26-bk-00399-LVV Doc 81 Filed 05/19/26 Page 172 of 267
**Doc. # 2395895 Page Number: 3 of 8**

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

650 85TH LLC, a Florida limited liability company

WITNESSES:

Printed name: N. Gro Byvis

By: Martin C. Flynn, Jr., Member

Printed name: Jose Porquer

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 4th day of August, 2022 by Martin C. Flynn, Jr., as Member of 650 85th LLC, a Florida limited liability company, who is personally known to me or produced _licence_ as identification.

SEAL

Notary Public-State of Florida

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

DOCUMENTARY STAMPS ON THE FUTURE ADVANCE ALLONGE AND INTANGIBLE TAX ON THE MORTGAGE MODIFICATION REFLECTING A FUTURE ADVANCE AMOUNT OF $250,000.00 SHALL BE AFFIXED HERETO.

3

Doc. # 2395895 Page Number: 4 of 8

## SCHEDULE "2"

All improvements, including tangible personal property, now or hereafter attached to or placed, erected, constructed, developed, and made a part of the real property (the "Improvements"); including heating and air condition equipment, and all renewals of or replacements or substitutions for any of the foregoing, whether or not the same are or shall be attached to the real property, as hereinafter defined, (the "Land") or any Improvements; all sewer rights, water and water rights, timber, crops and mineral interests pertaining to the Land; all building materials and equipment now or hereafter delivered to and intended to be installed in or on the Land or the Improvements, if any; all plans and specifications for the Improvements; all contracts relating to the Land, the Improvements or the Personal Property; any deposits (including purchasers' earnest money deposits and tenants' security deposits), bank accounts, funds, documents, contract rights, accounts, commitments, construction contracts, architectural agreements, general intangibles (including, without limitation, trademarks, tradenames and symbols) and instruments, notes or chattel paper arising from or by virtue of any transactions related to the Land the Improvements, if any, or the Personal Property, if any; all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Land, the Improvements and the Personal Property; all proceeds arising from or by virtue of the sale, lease or other dispositions of the Land, the Improvements or the Personal Property; all proceeds (including premium refunds) of each policy of insurance relating to the Land, the Improvements or the Personal Property; all proceeds from the taking of any of the Land, the Improvements, the Personal Property or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts, or other rights of access, for any public or quasi-public use under any law; all right, title and interest of Debtor in and to all streets, roads, public places, easements and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the land; any leases , rents, royalties, bonuses, issues, profits, revenues or other benefits of the Land, the Improvements or the Personal Property, including, without limitation, cash or letters of credit deposited pursuant to purchase contracts or leases to secure performance by the purchasers or lessees of their obligations thereunder; all consumer goods located in, or by about the Land or the Improvements, or used in connection with the use or operation thereof; all rights, hereditaments and appurtenances pertaining to the foregoing; and other reasonable interest of every kind and character that Debtor now has or at any time hereafter acquired in and to the Land, Improvements, and Personal Property described herein and all property that is used or useful in connection therewith, including reasonable rights of ingress and egress and all reasonable reversionary rights or interests of Debtor with respect to such property.

Land described as:
Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

Case 6:26-bk-00399-LVV    Doc 24    Filed 02/06/26    Page 33 of 112
Case 6:26-bk-00399-LVV    Doc 81    Filed 05/19/26    Page 174 of 267

Doc. # 2395895 Page Number: 5 of 8

DocuSign Envelope ID: 9D204AA0-4FB6-4203-8E3F-4BF4A661CFB4

This instrument prepared by:
Prepared By and Return To:
Alison Pitkanen, Esquire
10524 Moss Park Road, Suite 204-101
Orlando, FL 32832

## MORTGAGE

THIS INDENTURE, is made as of the 4ᵗʰ day of August 2022, by MTF HOLDINGS, LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

## WITNESSETH:

That in consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement dated as of January 28, 2022, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following:

The building and development rights commonly referred to as ROGOS, situated in Monroe County, Florida and more particularly identified on Exhibit "A" attached hereto, which shall be referred to herein as the "Mortgaged Property" or the "Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors and assigns, forever.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property represented by a Warranty Deed for Transfer of Building Rights recorded in the Official Records of Monroe County, Florida Book 3145 Page 2042, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement dated January 28, 2022, and Future Advance Allonge to Promissory Note dated August 4, 2022, representing an outstanding indebtedness of SIX HUNDRED THOUSAND DOLLARS AND NO/CENTS ($600,000.00) (the "Loan Amount"), subject only to any extensions or future advances made thereunder (collectively, the "Loan Documents"). The Loan Amount and the Loan Documents represent the Loan made hereunder.

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.    **Payment of Loan**. Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of the Loan Documents, and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.    **Taxes, Assessments, Liens and Charges**. Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

3.    **Preservation and Maintenance**. Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.    **Interest on Delinquent Sums**. Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of said Real Property Participation Agreement, and whether principal, interest or money owing for advancements by the holder pursuant to the terms of this Mortgage, shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

Case 6:26-bk-00399-LVV  Doc 24  Filed 02/06/26  Page 34 of 112
Case 6:26-bk-00399-LVV  Doc 81  Filed 05/19/26  Page 175 of 267

Doc. # 2395895  Page Number: 6 of 8

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

5.    <u>Reimbursement of Legal Fees and Costs</u>. In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents

6    <u>Acceleration Upon Default</u>. Mortgagor agrees that: (a) if payment of the Loan under said Loan Documents are not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in this Mortgage (or the Loan Documents secured hereby) and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of the Loan Agreement and this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7.    <u>Compliance With Laws and Regulations</u>. Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8.    <u>Future Advances</u>. That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9.    <u>Security</u>. The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10.    <u>Severability</u>. If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11.    <u>Satisfaction of Mortgage</u>. Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Monroe County, Florida at the expense of Mortgagor.

12.    <u>Changes, Modifications and Discharges; Enforceability</u>. This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13.    <u>Forbearance by Mortgagee Not a Waiver</u>. Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant

14.    <u>Notices</u>. Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

As to Mortgagee:                As to Mortgagor:

PEDIXON LLC                    MTF HOLDINGS, LLC
1627 East Vine Street, Suite E         518 South Magnolia Ave., Suite 110
Kissimmee, FL 34744             Orlando, Florida 32801

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15.    <u>Parties Bound; Construction of Language</u>. The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title, and shall inure to the benefit of Mortgagee and its successors and assigns.

2

Doc. # 2395895  Page Number: 7 of 8

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

IN WITNESS WHEREOF, the Mortgagor has caused this instrument to be executed and delivered, and has intended the same to be and become effective as of the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

MTF HOLDINGS, LLC

WITNESSES:

Printed name: _____

By: Martin C. Flynn, Jr., Member

Jose Portentud
Printed name: Jose Portentud

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this ___ day of August, 2021 by Martin C. Flynn as Member of MTF HOLDINGS, LLC, a Florida limited liability company, who is personally known to me or produced License as identification.

Janelle Mores
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025    SEAL

Notary Public State of Florida

ALL DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW, INCLUDING ALL FUTURE ADVANCES THEREON, HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA, AND THE SUBSEQUENT MORTGAGE MODIFICATION RECORDED IN THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

3

Doc. # 2395895  Page Number: 8 of 8

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

EXHIBIT "A"

Six (6) market rate building rights assigned Sender Site Identifier No. DP-21-34 by the City of Marathon, Florida. Said market rate transferable building rights being transferred from the following described Sender Site in Monroe County, Florida:

Block 5 Lots 5, 6, 14, 15, 16, and 17, MARATHON BEACH, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 2, PAGE 21 PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

AND

Block 1 Lot 1, LINCOLN MANOR, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 4, PAGE 16 PUBLIC RECORDS OF MONROE COUNTY, FLORIDA

Parcel 00337390-000100

The subject market rate transferable building rights shall run with, and be appurtenant to, the following described Receiver Site owned by City of Marathon

4

Dated: August 3, 2022                              Future Advance Amount: $250,000

## FUTURE ADVANCE ALLONGE TO PROMISSORY NOTE

This instrument is the First Allonge to that certain Promissory Note, entered into as of the date hereof, by and between the undersigned SHERWOOD CONSTRUCTION, INC. (the "Borrower"), and PEDIXON LLC, a Florida limited liability company, or assigns (the "Lender").

Reference is hereby made to the following promissory note attached hereto, which shall be incorporated within and referred to as the "Credit Accommodation": That certain promissory note dated January 28, 2022 executed by the Borrower in favor of the Lender in the original principal amount of $500,000.00 (the "Note").

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and the Lender hereby agree as follows:

1.  The outstanding principal balance of the Note as of the date hereof is $350,000.00.

2.  The Note is hereby amended to provide that the Credit Accommodation represented by the Note shall be increased by an additional sum of $250,000.00, so that the total outstanding principal balance will be $600,000.00 or so much thereof as may be advanced and outstanding from time to time, together with interest thereon.

3.  Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable on 1st day of every month hereafter until the Maturity Date of February 1, 2023, at which time a final installment equal to all of the principal of and interest on the Loan will be due.

4.  Interest at the Interest Rate from the of this Allonge and for each day hereafter for the remainder of the month of August shall also be due and payable on September 1, 2022.

5.  Except as amended herein, the Note and all terms of the Loan Agreement, both dated January 28, 2022 shall remain in full force and effect.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ALLONGE TO THE NOTE, AND HEREBY AGREES.**

**BORROWER, SHERWOOD CONSRUCTION, INC.**

By: Martin C. Flynn, individually,
and as President of Sherwood Construction, Inc.

**DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA. DOCUMENTARY STAMPS ON THE FUTURE ADVANCE IN THE PRINCIPAL AMOUNT OF $875.00 SHALL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE.**

EXHIBIT

5



# Wolfe|Stevens
## Attorneys at Law

April 4, 2025

**Sent via Certified U.S. Mail to:**

PEDIXON LLC
Attn: Kenneth G. Dixon
c/o Ms. Alison Pitkanen
Pitkanen Law Firm
1980 N. Atlantic Ave. Suite 230-328
Cocoa Beach, Florida 32931

**Sent via Email to:**

Alison Pitkanen
alisonpitkanen@gmail.com

RE: Martin C. Flynn, Jr./650 85th LLC
650 85th St. Ocean, Marathon, Florida 33050

## CORRESPONDENCE AND REQUEST FOR SATISFACTION AND ESTOPPEL

Dear Mr. Dixon:

My office represents 650 85th St. LLC and Martin "Marty" C. Flynn, Jr. in relation to the property located at 650 85th St. Ocean, Marathon, Florida 33050. Please consider this a request to release the mortgage, via a recorded satisfaction of mortgage, for the referenced property, 650 85th St. Ocean, Marathon, Florida 33050 (hereinafter referred to as the "subject property" or "650 85th St. Ocean").

As you know, 650 85th LLC and PEDIXON LLC entered into a mortgage agreement regarding 650 85th St. Ocean, Marathon, Florida 33050 on or about January 28, 2022, which was recorded on March 1, 2022, along with a Loan Agreement between PEDIXON LLC, Sherwood Construction, Inc., Martin C. Flynn, and Tracey Hester Flynn. The original amount of the mortgage was $500,000.00. Per a Mortgage Modification executed on August 4, 2022, and recorded on October 27, 2022, the remaining amount on the mortgage and note was $350,000.00, which was then increased by another $250,000.00 to a total amount of $600,000.00. As a sidenote, Mr. Flynn and the undersigned are concerned about the oddities involved in the mortgage itself, which includes a docu-sign signature with a notary attestation that indicates an in-person notarization, which begs the question why docu-sign would have been used at all if all signatories were in the same room. A mortgage with such oddities, if indeed against Florida law, could be deemed unenforceable.

It is Mr. Flynn's position that PEDIXON has been more than paid back in full in regard to the mortgage on 650 85th St. Ocean. First, the proceeds of the original loan (secured by mortgage) went to a certificate deposit at First State Bank, which appears to have been in

WOLFE STEVENS, PLLC
5800 Overseas Highway. Suite 3. Marathon. Florida 33050
PH: 305-743-9858 FAX: 305-743-7489
Page 1 of 3

EXHIBIT
6



# Wolfe|Stevens
## Attorneys at Law

PEDIXON's name rather than that of Sherwood Construction. First State bank has since closed the account and sent the deposit back to PEDIXON, leaving at most $100,000.00 due on the mortgage. As described below, that remaining $100,000.00 has, at least, been paid as described below. Not only has PEDIXON received cash in the amount of $3,075,000.00, it has additionally received properties, consisting of Holly Bluff real estate in Deland, Florida, and the property in Hampton, South Carolina, to which a value of at least $7,750,000.00 should be applied ($4,250,000.00 for Holly Bluff, and $3,500,000.00 for Hampton, SC). The cash payment along with the value of the two properties equals at least $10,725,000.00. Additionally, these amounts and payments do not even include over $2,000,000.00, paid to PEDIXON by Sherwood Construction or paid by other entities such as Crescent Sound, nor the assignment of rents for Cape Crossing.

Furthermore, there are least three (3) more payments/unapplied value that must be considered, for a value of at least $1,325,000.00, as follows:

1.  Insurance Payments. PEDIXON received an insurance payment in the amount of $125,000.00 for Holly Bluff.
2.  Holly Bluff Business. In addition to the Holly Bluff real estate, PEDIXON received the Holly Bluff Marina, Inc. business. This business was not included in the real estate value. At the time of PEDIXON's acquirement of the business, the assets and income stream were worth at least $800,000.00.
3.  Hampton, SC Personal Property. It is believed that PEDIXON determined that the equipment, machinery, and other personal property was worth at least $400,000.00.

None of the above have been applied.

Pursuant to Florida Statute § 701.04(2)(a), within 60 days after the unpaid balance of a loan secured has been fully paid, the mortgagee shall execute a release and have it recorded. PEDIXON has not done this despite the fact that PEDIXON has been paid, in funds and value of properties/assets taken/acquired.

Furthermore, PEDIXON is to consider this correspondence as mortgagor's written request pursuant to § 701.04(1)(a) for an estoppel letter setting forth PEDIXON's claim (to which mortgagor disagrees for reasons listed above as to payments) of the unpaid balance specifically relating to the mortgage involving 650 85th St. Ocean, which is to include an accounting of applied payments.



# Wolfe|Stevens
## Attorneys at Law

CC:

Occupants of:
650 85th St. Ocean
Marathon, Florida 33050

Sincerely,

/s/

Wolfe Stevens, PLLC
Dale Coburn, Esq
Email: coburn@marathonlaw.com

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA

650 85TH STREET, a Florida limited liability
company, *et al*

      Plaintiff,                    Case No.: 2025-CA-518-M

v.

PEDIXON, LLC, a Florida limited liability
company,

      Defendant.

_____/

PEDIXON, LLC, a Florida limited liability
Company,

      Counter-Plaintiff,

v.

650 85TH LLC, a Florida limited liability company,
SHERWOOD CONSTRUCTION, INC., a Florida
corporation, and MARTIN C. FLYNN, individually,

      Counter-Defendants.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW, Defendant, PEDIXON, LLC, a Florida limited liability company,

by and through undersigned counsel, and files this its Answer and Affirmative Defenses to

Plaintiff's Complaint for Accounting, and alleges as follows:

1. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

2. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

1

EXHIBIT

L

Case 6:26-bk-00399-LVV    Doc 81    Filed 03/19/26    Page 183 of 267

3. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

4. Admits that Martin C. Flynn executed a promissory note in his individual capacity to PEDIXON, LLC. Without knowledge to admit or deny as to Flynn's material interest as to the named LLC and therefore denies and demands strict proof thereof.

5. Admits for venue purposes only.

6. Without knowledge to admit or deny what "all actions giving rise" incorporates, therefore denies and demands strict proof thereof.

7. Admits for venue purposes only.

8. Admits for jurisdiction purposes only.

9. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

10. Denies.

11. Exhibit 1 speaks for itself.

12. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

13. Without knowledge as to what "exchange for a loan" means, however, Exhibit 2 speaks for itself. Typically, a mortgage is given to secure a promissory note, not in exchange for a loan.

14. Without knowledge to admit or deny what "signor on loan" signifies, however, Martin C. Flynn did sign Exhibit 2, both individually and as President of Sherwood Construction, Inc.

15. Without knowledge to admit or deny, as the corporation records show Martin Flynn

2

as "manager", therefore denies and demands strict proof thereof.

16. Admits that Martin C. Flynn and Tracey Hester Flynn, executed the Promissory Note, attached as Exhibit 2, individually.

17. Exhibit 3 speaks for itself.

18. Admits that there is a signature block for 650 85TH LLC signed by Martin C. Flynn as Member on the Loan Agreement.

19. Exhibit 4 speaks for itself.

20. Exhibit 5 speaks for itself.

21. The language and terms of Exhibit 5 speaks for itself.

22. Without knowledge to admit or deny what a "myriad of payments" incorporates, therefore denies and demands strict proof thereof.

23. Exhibit 6 speaks for itself.

## COUNT I – Declaratory Judgment

24. Defendant's responses to paragraphs 1 through 23 are stated above.

25. Without knowledge to admit or deny as to Plaintiffs' insecurity and doubts, therefore denies and demands strict proof thereof.

26. Without knowledge to admit or deny as to what Plaintiffs believe, therefore denies and demands strict proof thereof. By way of further denial, Defendant denies that the mortgage has been paid in full by borrowers.

27. Denies.

28. Without knowledge to admit or deny as to Plaintiffs' questions, therefore denies and demands strict proof thereof. The documents referred to as the mortgage, promissory note, and loan agreement speak for themselves.

3

29. Without knowledge to admit or deny, therefore denies and demands strict proof thereof.

30. Without knowledge to admit or deny what "easement" Plaintiffs are referencing, therefore denies and demands strict proof thereof.

31. Denies.

32. Admits that a satisfaction is improper, therefore not recorded. Denies that an accounting has not been previously provided.

33. Denies. More specifically, Plaintiffs are asking for a legal opinion as to their rights under certain documents attached to Plaintiffs' Complaint, which is not proper.

34. Florida Statute 86.011 speaks for itself. Defendant denies the remainder of the paragraph.

35. Denies.

## COUNT II – VIOLATION OF FLA. STAT. 701.04(1)

36. Plaintiffs' Complaint skipped number 36, therefore a response is not required.

37. Defendant's responses to paragraphs 1 through 23 are stated above.

38. A response is not required for this statement.

39. Denies.

40. Denies.

## COUNT III – VIOLATION OF FLA. STAT. 679.210

41. Defendant's responses to paragraphs 1 through 23 are stated above.

42. A response is not required for this statement.

43. Without knowledge to admit or deny what obligations and or collateral Plaintiffs are referring to and therefore denies and demands strict proof thereof.

4

44.     Denies.

## COUNT IV – VIOLATION OF FLA. STAT. 687.08

45.     Defendant's responses to paragraphs 1 through 23 are stated above

46.     A response is not required for this statement.

47.     Without knowledge to admit or deny as to Plaintiffs' allegations regarding "payment on the loan," and therefore denies and demands strict proof thereof.

48.     Denies.

WHEREFORE, the above named and moving Defendant respectfully requests this Honorable Court, for the issues stated above, issue an Order in favor of Defendant, award costs and attorneys' fees and for such other relief as the Court deems fair, just, appropriate, or equitable.

## AFFIRMATIVE DEFENSES

Defendant asserts the following Affirmative Defenses to the Complaint:

### First Affirmative Defense

The Plaintiff is estopped from demanding an accounting. To prevail on a complaint for accounting, the plaintiff needs to demonstrate that the parties hold a fiduciary relationship between them, which requires a formal accounting. Plaintiffs and Defendant's relationship is that of an arm's length transaction and parties, therefore Plaintiffs are denied from seeking equitable relief as to an accounting.

### Second Affirmative Defense

As a Second, separate and distinct affirmative defense, Defendant asserts that the Plaintiffs have other available remedies, such as breach of contract available to them, and as such, an equitable count for accounting is improper.

5

### Third Affirmative Defense

As a Third, separate and distinct affirmative defense, Defendant asserts that Plaintiffs' Complaint states that it is a Complaint for Accounting, however, the Complaint itself has four causes of action, none of which entitle Plaintiffs to an accounting. As such, Plaintiffs have failed to state a cause of action against Defendant for an Accounting.

### Fourth Affirmative Defense

As a Fourth, separate and distinct affirmative defense, Defendant asserts that any delay in performance of the subject loan agreement was caused by the direct acts and/or inaction of Plaintiff as it failed to properly make payments when due and are combining certain payments associated with other loans between the parties to this specific promissory note.

### Fifth Affirmative Defense

As a Fifth, separate and distinct affirmative defense, Defendant asserts that Plaintiff failed to state a cause of action for declaratory relief. The gravamen of Plaintiffs' Complaint is that it made all required payments, and as such, a Satisfaction of Mortgage should be recorded. The court as a trier of fact, cannot clarify the rights of Plaintiffs as to whether they made payments that were not applied, as those are factual issues that are not a genuine dispute or uncertainty under the "loan documents" attached to Plaintiffs' Complaint.

### Sixth Affirmative Defense

As a Sixth, separate and distinct affirmative defense, Defendant asserts that Plaintiffs failed to state a cause of action for violation of Fla. Stat. 701.04. Outside of blanket allegations that it has made payments and the mortgage needs to be satisfied,

6

Plaintiff 650 85TH, LLC, has failed to allege sufficient facts and/or demonstrate payment of the outstanding principal and interest on the subject promissory note and any amendments nor has Plaintiff specifically alleged the damages Plaintiffs have incurred, and as such, has failed to state a cause of action under Fla. Stat. 701.04.

## Seventh Affirmative Defense

As a Seventh, separate and distinct affirmative defense, Defendant asserts that Plaintiffs failed to properly allege the requirements under Fla. Stat. 679.210, and as such, have failed to allege a cause of action under Fla. Stat. 679.210 against Defendant for which relief may be obtained.

## Eighth Affirmative Defense

As an Eighth, separate and distinct affirmative defense, Defendant asserts that Plaintiffs failed to properly plead an action for violation of Fla. Stat. 687.08. Plaintiffs have failed to allege that they demanded receipt upon making payments, whether payments were made in cash, that a receipt was refused, and/or any allegation required under Fla. Stat. 687.08, and as such, failed to state a cause of action against Defendant for which relief may be obtained.

## Ninth Affirmative Defense

As a Ninth, separate and distinct, affirmative defense, Defendant asserts that Plaintiffs' claims are barred by the doctrine of unclean hands. Plaintiff has alleged that its' requests for an accounting have been ignored, however, this claim is not only false, but also in bad faith, as Plaintiffs are well aware as to what is due and owing, through notice provided by Defendant. Plaintiffs have also omitted, in bad faith, that Plaintiff's debt far exceeds Plaintiffs' claim as a result of the Consolidated Loan Plaintiffs executed in

7

September of 2023.

## Tenth Affirmative Defense

As a Tenth, separate and distinct, affirmative defense, Defendant asserts that Plaintiffs are seeking a declaratory judgment which is nothing more than an advisory opinion. "Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, and rest in the future." *Santa Rosa County v. Administration Commission, Division of Administrative Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995). *See also State v. Florida Consumer Action Network*, 830 So. 2d 148, 152 (Fla. 1st DCA 2002), *rev. denied*, 852 So. 2d 861 (Fla. 2003).

Here, Plaintiffs have cited that they have "insecurity and doubts" regarding their rights and obligations under the Mortgage and Note. The facts are that Plaintiffs are in default of their loan agreement and Defendant has provided Notice of such. Plaintiffs claim they "believe" the Defendant has been paid in full, but has failed to provide proof of such or cite anything specific to counter Defendant's Notice. Further, Plaintiffs' Complaint is based only on prior iterations of the Loan in question, thereby making Plaintiffs' requests of this Court hypothetical in nature as they are not based on the events as they have actually occurred. The declaratory relief Plaintiffs are now seeking would merely be an advisory opinion as to the loan agreement and is not appropriate for declaratory judgment.

## Reservation

Defendant reserves the right to Amend its Affirmative Defenses should other Defenses arise during the discovery process.

8

## Attorneys' Fees

Defendant has retained undersigned counsel and has agreed to pay reasonable attorneys' fees in this matter.

## VERIFIED COUNTERCLAIM

COMES NOW, the Counter-Plaintiff, PEDIXON, LLC, (hereinafter "Counter-Plaintiff", "Plaintiff", or "Lender") by and through undersigned counsel and brings this Counterclaim against the Counter-Defendants, 650 85TH LLC, a Florida limited liability company, Sherwood Construction, Inc., a Florida corporation, and Martin C. Flynn, (hereinafter collectively referred to as "Counter-Defendants" or "Defendants") and pursuant to Florida law and the Florida Rules of Civil Procedure, and alleges:

## GENERAL ALLEGATIONS

1.  This is an action to foreclose a mortgage on real property and for damages which exceed the sum of $50,000.00 exclusive of interest, attorneys' fees and costs.

2.  Plaintiff, PEDIXON, LLC (hereinafter "PEDIXON"), is a Florida limited liability company authorized to conduct business in the State of Florida.

3.  Defendant, 650 85TH LLC (hereinafter "650 85TH"), is a Florida limited liability company with a principal location of Marathon, Florida.

4.  Defendant, Sherwood Construction, Inc. (hereinafter "Sherwood"), is a Florida corporation based in Orlando Florida of which Martin C. Flynn, Jr. is President.

5.  Defendant, Martin C. Flynn, is an otherwise sui generis individual residing in the State of Florida.

6.  Sherwood Construction, Inc., is hereinafter referred to as "Borrower".

7.  Martin C. Flynn is hereinafter referred to as the "Guarantor".

8.  Jurisdiction is proper in that the real property, hereinafter referred to as the "subject

9

property", that is the subject of the instant foreclosure matter is located in Monroe County, Florida and more particularly described as follows:

**Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.**

Commonly referred to as 650 85th Street, Ocean, Marathon, Florida 33050
Having Parcel ID Number: 00349130-000000

9. On or about January 28th, 2022, there was executed and delivered by Defendants, 650 85TH, a Mortgage securing payment of a Promissory Note in the amount of Five Hundred Thousand Dollars ($500,000.00). The mortgaged property was then owned by and in possession of Defendant 650 85TH. A copy of the Mortgage is attached hereto, made a part hereof, and marked as Exhibit "A".

10. On or about January 28th, 2022, there was executed and delivered by Defendants, Sherwood and Martin C. Flynn, and Tracey H. Flynn in their corporate and individual capacities as guarantors, a Promissory Note in the amount of Five Hundred Thousand Dollars ($500,000.00). A copy of the Promissory Note is attached hereto, made a part hereof, and marked as Exhibit "B". The Promissory Note was secured by the 650 85TH Mortgage referenced in paragraph 11 above.

11. On or about January 28th, 2022, there was executed and delivered by Defendants, Sherwood as Borrower, Martin C. Flynn as Guarantor, and 650 85TH as record owner of the Land, a Loan Agreement. A copy of the Loan Agreement is attached hereto, made a part hereof and marked as Exhibit "C'.

12. On or about August 4, 2022, there was executed and delivered by Defendants, 650 85TH, Sherwood, Martin C. Flynn, and Tracey H. Flynn, a Mortgage Modification Agreement and Future Advance Allonge to Promissory Note outlining the parties'

10

agreement to a future advance in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), which was added to the outstanding principal balance at the time of execution, which was Three Hundred Fifty Thousand Dollars ($350,000.00), bringing the total principal outstanding indebtedness to Six Hundred Thousand Dollars ($600,000.00). A copy of the executed Mortgage Modification Agreement and Future Advance Allonge to Promissory Note are attached hereto, made a part hereof, and marked as Exhibits "D" and "E".

13. On or about December 13, 2022, there was executed and delivered by Borrowers a Loan, Security, and Cross Collateralization Agreement outlining the parties' agreement and total outstanding balance of Borrower's indebtedness to Lender in the amount of Two Million One Hundred Thousand Dollars ($2,100,000.00). A copy of the Cross Collateralization Agreement is attached hereto, made a part hereof, and marked as Exhibit "F".

14. On or about December 14, 2022, there was executed and delivered by Borrowers a Mortgage Modification Agreement in the amount of Four Hundred Thousand ($400,000.00) dollars as a future advance. A copy of the Mortgage Modification Agreement is attached hereto made a part hereof and marked as Exhibit "G".

15. Collectively, the documents in paragraphs 9 through 14 of this Counterclaim are herein referred to as the "Loan Documents".

16. Lender is the owner and holder of the original Loan Documents and will file the same of record.

17. Defendant 650 85TH is the record legal title holder to the property subject to this foreclosure action.

18. Martin C. Flynn is personal guarantor on the loan of the subject property subject to this foreclosure action.

19. The Mortgage of the Lender is a lien superior in dignity to any prior or subsequent right, title, claim, lien, or interest arising out of a mortgage or mortgagor's predecessors in interest, with the exception of those interests of the First Mortgage on the subject property recorded in the Official Records Book 2966 Page 980, of the Public Records of Monroe County, Florida.

20. There has been a default under the covenants, terms, and agreements of the Loan Documents in that the Borrowers failed to make payments due on November 1, 2023, December 1, 2023, and all subsequent payments, as required.

21. Lender notified Defendants by a Notice of Default on December 20, 2023. A copy of the Notice is attached hereto, made a part hereof, and marked as Exhibit "H".

22. Additional notices of default were provided on or about January 2024 and June 2024.

23. On or about January 24, 2025, Plaintiff provided Defendants an additional notice with an opportunity to resolve the matter. A copy of this letter is attached hereto, made a part hereof, and marked as Exhibit "I".

24. Despite these notices, Defendants have failed to satisfy the loan.

25. All conditions precedent to the acceleration of this mortgage, note, and foreclosure of the mortgage have been fulfilled or have occurred.

26. Lender declares and demands the full amount due along with interest penalties, and other fees to be due as outlined in the promissory note and mortgage due and payable.

12

Case 6:26-bk-00399-LVV Doc 81 Filed 05/19/26 Page 194 of 267

27. Defendants owe Plaintiff $1,191,671.23 that is due on principal on the Note, plus accrued and unpaid interest and late charges thereon. All costs and expenses incurred or to be incurred by Lender in collecting amounts due to it under the Note and Mortgage, and protecting its security, and various other amounts that are or may become due under the terms of the Note and Mortgage.

28. By reason of the aforementioned defaults, Lender (i) has been required to secure the services of the undersigned attorneys to endeavor to collect the sums due to it under the Loan and to conduct these proceedings, and has agreed to pay said attorneys a reasonable fee for their services and to reimburse them for the costs they incur in connections therewith, and (ii) has been and will be compelled to incur expenses for title information in connection with these proceedings. All fees, costs, and expenses so paid or incurred constitute additional debt.

29. The mortgage owned and held by Lender is a lien superior in dignity to any right, lien, title, or interest of the Defendants named herein or other entities, with the exception of the interests of the First Mortgage on the subject property recorded in the Official Records Book 2966 Page 980, of the Public Records of Monroe County, Florida.

30. Lender has retained the law offices of Highsmith & Van Loon, P.A. and has agreed to pay reasonable attorneys' fees to prosecute this action.

## COUNT I
## ACTION TO FORECLOSE MORTGAGE

31. This is an action to foreclose a mortgage on real property located in Monroe County, Florida.

32. Lender reavers the allegations contained in paragraphs 1 through 30 above as fully

13

set forth herein.

WHEREFORE, Plaintiff prays that this Court:

(a)    Take jurisdiction of this action and the parties hereto;

(b)    Adjudge that the Plaintiff has a lien against the property subject to the mortgage for the sum due, and that the lien held by Plaintiff is superior and paramount to any lien, right, title, or interest of the Defendant and/or other Defendants herein, or any party claiming by, through, or under said Defendants in that such lien, right, title, or interest of the Defendants and/or other Defendants be forever barred or foreclosed, with the exception of the interests of the First Mortgage on the subject property recorded in the Official Records Book 2966 Page 980, of the Public Records of Monroe County, Florida;

(c)    Make an accounting of the sums due to the Lender under the Loan Documents, including all amounts that have been or may be advanced or incurred by Lender in collecting the sums due to it under the Loan Documents and in protecting its security in the Collateral, including court costs and reasonable attorneys' fees;

(d)    Order that if said sums are not paid within the time set by the Court, that the Collateral be sold and the proceeds of such sale be applied toward satisfaction of Plaintiff's claims; and that the estate and all right, title, and interest of the Defendants and all persons claiming by, through, under, or against said Defendants since the filing of the Notice of Lis Pendens herein, be forever barred and foreclosed unless any Defendant personally liable

14

shall have been discharged from liability under the subject notes pursuant to the provision of the Bankruptcy Code 11 U.S.A. Section 101, et seq; and

(e)   Retain jurisdiction of this cause and parties hereto to grant such other and further relief as is just and equitable under the circumstances.

## COUNT II
## ACTION ON PROMISSORY NOTE

33.   This is an action for damages in excess of $50,000.00 exclusive of interest and attorneys' fees.

34.   Lender reavers the allegations contained in paragraphs 1 through 30 above as fully set forth herein.

WHEREFORE, Plaintiff demands judgment for damages against Defendants for all sums due to Lender under the Loan Documents, and for such other and further relief as the Court may deem appropriate.

## COUNT III
## PERSONAL GUARANTY AS TO DEFENDANT MARTIN C. FLYNN

35.   This is an action for damages in excess of $50,000.00 exclusive of interest and attorneys' fees.

36.   Lender reavers the allegations contained in paragraphs 1 through 30 above as fully set forth herein.

37.   Defendant, Martin C. Flynn, executed a Personal Guaranty.

38.   In reliance on the Personal Guaranty of Martin C. Flynn, Plaintiff loaned money to Defendants, which has not been paid.

39.   Defendant, Martin C. Flynn, unconditionally promised the full and prompt payment of all sums due by Defendant under the Cross Collateralization Agreement and

15

subsequent Consolidation Loan. The Note is now in default.

40. All conditions precedent to the liability of Defendant Martin C. Flynn herein and to the brining of this action have been performed or have occurred.

41. Plaintiff is due the sum of One Million One Hundred Ninety-One Thousand Six Hundred Seventy-One and 23/100 ($1,191,671.23) dollars that is due on principal on the Note, plus accrued and unpaid interest and late charges thereon.

42. Plaintiff has obligated itself to pay its attorneys a reasonable fee for services in bringing this action, and Defendant Martin C. Flynn is obligated to reimburse the Plaintiff for all attorneys' fees and costs incurred in this matter.

WHEREFORE, Plaintiff demands judgment for damages against Defendants for all sums due to Lender under the Loan Documents, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

HIGHSMITH & VAN LOON, P.A.

By: /s/ David Van Loon
DAVID VAN LOON
Florida Bar No. 655074
3158 Northside Drive
Key West, Florida 33040
Telephone: (305) 296-8851
Facsimile: (305) 296-8575
e-mail: david@hvl-law.com
olivia@hvl-law.com

16

Case 6:26-bk-00399-LVV   Doc 81   Filed 05/19/26   Page 198 of 267

## VERIFICATION

BEFORE ME personally appeared Kenneth G. Dixon for the above Plaintiff, who after

being duly sworn states that the allegations in the foregoing Counterclaim are true and correct.

_____
Kenneth G. Dixon as authorized
representative of PEDIXON, LLC

SWORN TO AND SUBSCRIBED before me this _28_ day of July, 2025.

EMILY BADGER
MY COMMISSION # HH 649071
EXPIRES: July 7, 2029

NOTARY PUBLIC
State of Florida    *Personally known*
*to me.*

## Certificate of Service

I HEREBY CERTIFY that on this 28th day of July, 2025 a true and correct copy of the foregoing document was electronically filed with the Clerk of Courts by using the Florida eFile portal/system and emailed via the e-filing system to all counsel of record.

Respectfully submitted,

HIGHSMITH & VAN LOON, P.A.

By:     /s/ David Van Loon
       David Van Loon, Esquire
       Florida Bar # 655074
       3158 Northside Drive
       Key West, Florida 33040
       Telephone (305) 296-8851
       Facsimile (305) 296-8575
       david@hvl-law.com
       olivia@hvl-law.com
       Attorneys for Defendant/
       Counter-Plaintiff

18

This instrument prepared by:
Alison Pitkanen, Esquire
518 South Magnolia Ave., Suite 110
Orlando, Florida 32801

Doc # 2363740    Bk# 3158 Pg# 183
Recorded 3/1/2022 3:10 PM    Page 1 of 4

Mtg Doc Stamp $1,750.00        Intangible Tax $1.000.00
Filed and Recorded in Official Records of
**MONROE COUNTY   KEVIN MADOK, CPA**

Recording costs - $35.50
Documentary Excise Tax - $ $1,750
Intangible Taxes - $ $1,000

## MORTGAGE

THIS INDENTURE, is made as of the 20th day of January 2022, by 650 85TH LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

## WITNESSETH:

That in consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement of even date herewith between Mortgagor and Mortgagee, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following:

That property situated in Monroe County, Florida and more particularly identified on Exhibit "A" attached hereto, which shall be referred to herein as the "Mortgaged Property" or the "Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors and assigns, forever.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement executed of even date herewith in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS, subject only to any extensions or future advances made thereunder (the "Loan Amount")

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.    Payment of Loan. Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of the Loan Agreement, and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.    Taxes, Assessments, Liens and Charges. Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

3.    Preservation and Maintenance. Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.    Interest on Delinquent Sums. Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of said Real Property Participation Agreement, and whether principal, interest or money owing for advancements by the holder pursuant to the terms of this Mortgage, shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

**EXHIBIT**

A

5. **Reimbursement of Legal Fees and Costs.** In the event the Loan Agreement is placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6. **Acceleration Upon Default.** Mortgagor agrees that: (a) if payment of the Loan under said Loan Agreement is not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in this Mortgage (or the Loan Agreement secured hereby) and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of the Loan Agreement and this Mortgage, become due and payable, anything herein or in the Loan Agreement to the contrary notwithstanding.

7. **Compliance With Laws and Regulations.** Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows: Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8. **Future Advances.** That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9. **Security.** The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10. **Severability.** If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or the Loan Agreement, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Agreement shall remain operative and in full force and effect.

11. **Satisfaction of Mortgage.** Upon payment to Mortgagee of all sums due under the Loan Agreement and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Monroe County, Florida at the expense of Mortgagor.

12. **Changes, Modifications and Discharges: Enforceability.** This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13. **Forbearance by Mortgagee Not a Waiver.** Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Agreement. No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14. **Notices.** Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

As to Mortgagee:                          As to Mortgagor:

PEDIXON LLC                               650 85TH LLC
1627 East Vine Street, Suite E            518 South Magnolia Ave., Suite 110
Kissimmee, FL 34744                       Orlando, Florida 32801

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address. Any such notices properly sent by mail shall be deemed received: (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15. **Parties Bound: Construction of Language.** The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title, and shall inure to the benefit of Mortgagee and its successors and assigns.

2

Wherever used herein. the singular shall include the plural. the plural the singular and one gender shall include all genders.


IN WITNESS WHEREOF, the Mortgagor has caused this instrument to be executed and delivered, and has intended the same to be and become effective as of the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:


MORTGAGOR:

650 85TH LLC, a Florida limited liability company

WITNESSES:

Printed name: _Janelle Morea_

DocuSigned by:

*Martin C. Flynn*

By: Martin C. Flynn, Member

Printed name: _Alexandra M. Lezcano_

STATE OF _Florida_
COUNTY OF _Orange_

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this _28th_ day of _January_ 2022 by Martin C. Flynn as Member of 650 85th LLC, a Florida limited liability company. who is personally known to me or produced _License_ as identification.

SEAL

Notary Public-State of _Florida_

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

3

Case 6:26-bk-00399-LVV    Doc 81    Filed 05/19/26    Page 203 of 267

**EXHIBIT "A"**

Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

4

## PROMISSORY NOTE

**Loan:** $500,000.00
**Effective Date:** January 28th, 2022

FOR VALUE RECEIVED, **SHERWOOD CONSTRUCTION INC.**, a Florida corporation (referred to herein as the the "Borrower"), promises to pay to **PEDIXON LLC** (referred to herein as the "Lender"), in the manner hereinafter specified, the principal sum of **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)** (the "Loan").

Martin C. Flynn and Tracey Hester Flynn hereby join in the execution of this Note, and hereby agree to the terms and conditions hereof as guarantors of the Loan in further accordance with the terms of the Loan Agreement executed of even date herewith.

**INTEREST RATE:**

*The interest rate on this Note shall be fixed at the rate of TWELVE PERCENT/PER ANNUM (12%).*

**PAYMENT SCHEDULE:**

The Borrower hereby agrees to repay the indebtedness as follows:

*Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable on March 1, 2022 and the 1st day of every month thereafter for twelve (12) months.*

*Interest will be computed on the basis of a 360-day year.*

*A final installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on February 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

*The first payment on March 1, 2022 shall include Interest on the Interest Rate from the effective date of closing as set forth herein and for each day thereafter for the remainder of the month of January.*

### Additional Terms of the Promissory Note

1. **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2. **Late Charge.** If a payment is 11 days or more late, Borrower will be charged the greater of (a) 5.000% of the unpaid portion of the regularly scheduled payment (up to a maximum of $250.00); or (b) $35.00.

**EXHIBIT**

B

tabbies

3. **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

4. **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   4.1. <u>Payment Default</u>. Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

   4.2. <u>Other Defaults</u>. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the Loan Agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

   4.3. <u>Notice of Default</u>. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

   4.4. <u>Lender's Rights</u>. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

5. **Costs of Collection; Attorney's Fees.** If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

6. **Governing Law.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

7. **Collateral.** This Note is secured by all of the following instruments granted in favor of Lender (all of which are collectively referred to in this Note as the "Mortgage"):

   7.1. That certain Mortgage Deed of even date herewith.

2

7.2.    That certain Assignment of Contracts.

7.3.    That certain Assignment of Building Rights of even date herewith.

7.4.    That certain Loan Agreement of even date herewith.

8.    **General Provisions.**

8.1.    If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

8.2.    Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

8.3.    Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

8.4.    The obligations under this Note are joint and several.

8.5.    This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER: SHERWOOD CONSRUCTION, INC.**

*Martin C. Flynn*
By: Martin C. Flynn, individually,
and as
President of Sherwood Construction, Inc.

*Tracey Hester Flynn*
By: Tracey Hester Flynn individually

Check the appropriate language:

_____ Florida documentary Stamp required by law in the amount of $_____ has been paid or will be paid directly to the Department of Revenue.

__X_ Florida Documentary Stamps required to be paid on the indebtedness evidenced hereby have been paid and affixed to the original mortgage executed herewith.

3

# LOAN AGREEMENT

THIS LOAN AGREEMENT is made as of the 28th day of **January 2022**, by and between **PEDIXON LLC**, a Florida limited liability company ("Lender"), and **SHERWOOD CONTSRUCTION, INC.**, a Florida corporation (hereinafter referred to as "Borrower") and joinder by **MARTIN C. FLYNN** and **TRACEY HESTER FLYNN** (hereinafter, individually and collectively referred to as to the "Guarantor").

**650 85TH LLC** (the "Company"), as the record owner of the Land described herein, shall join in execution of this Loan Agreement to provide consent for the Land to be used as collateral for the Loan.

**MTF Holdings, LLC**, as the owner and holder of the building rights situated in Monroe County, all of which are more particularly described herein, shall join in execution of this Loan Agreement to provide consent for the ROGOS and Additional ROGO Collateral to be assigned and transferred unto the Lender.

## RECITALS

WHEREAS, Borrower has requested PEDIXON LLC to provide funds, and PEDIXON LLC has agreed to purchase a FIVE HUNDRED THOUSAND DOLLAR ($500,000.00) certificate of deposit at First State Bank (the "CD") to obtain a letter of credit for Sherwood Construction, Inc. (the "Loan")

WHEREAS, Sherwood Construction has agreed to use said letter of credit to complete the construction of Amelia Village in Vero Beach, Florida.

WHEREAS, in order to secure repayment of the Loan, the Borrower has agreed to provide the Lender with the following:

- a second mortgage on the Land located at 650 85th Street Ocean, Marathon, FL (the "Mortgage"); and

- an assignment of Borrower's interest in the following contracts for transfer of building right, all situate in Monroe County, Florida (the "ROGOS"), more particularly described on Exhibit "A" attached; and

- an assignment of eight (8) additional contracts for transfer of building right, all situate in Monroe County (the "Additional ROGO Collateral), more particularly described on Exhibit "B" attached hereto; and

- personal guaranties securing the Loan to be executed by Martin C. Flynn and Tracey Hester Flynn.

WHEREAS, Lender has agreed to make and Borrower has agreed to accept the Loan, subject to the terms, provisions and conditions hereinafter set forth;

NOW, THEREFORE, it is agreed by the parties hereto as follows:

## ARTICLE I DEFINITIONS

As used in this Agreement and in the Exhibits annexed hereto, the following terms shall have the following meanings, unless the context otherwise requires:

1.1   Agreement: This Loan Agreement and any written amendments or modifications thereto duly executed by all of the parties hereto.

1.2   Business Day: Any day, except for Sunday.

**EXHIBIT**

C

1.3     Events of Default: The happenings and occurrences described hereunder.

1.4     First Mortgage: That certain first mortgage approximate amount of $308,000.00 recorded on May 24, 2019 in Official Records Book 2966 Page 980, of the public records of Monroe County, Florida.

1.5     Governmental Authority: Any municipal, county, state or federal governmental authority or other governmental authority (domestic or foreign) having or claiming jurisdiction over the Land, Lender or Borrower.

1.6     Land: The real property described in Exhibit "A" attached hereto.

1.7     Loan: Lender has agreed to purchase a FIVE HUNDRED THOUSAND DOLLAR ($500,000.00) certificate of deposit at First State Bank (the "CD") to obtain a letter of credit for Sherwood Construction, Inc. This Loan shall include any future advances or modifications thereof, to be made by Lender to Borrower, pursuant to the terms, provisions and conditions of this Agreement.

1.8     Mortgage: The Second Mortgage executed by Company to Lender encumbering the Land.
        Attached hereto as Exhibit C.

1.9     Note: The promissory note, of even date herewith, made by the Borrower to the order of Lender, in the principal amount of **FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS ($500,000.00)** referred to herein as the "Note".
        Attached hereto as Exhibit D.

1.10    Permitted Encumbrances: The First Mortgage.

1.11    ROGOS: Two (2) Contracts for Transfer of Building Right in the City of Marathon more particularly described on Exhibit A attached hereto.

1.12    Additional ROGOS Collateral: Eight (8) Contracts for Transfer of Building Right in the City of Marathon more particularly described on Exhibit B attached hereto.

1.13    Security Documents: Any and all other documents now or hereafter securing the repayment of the Loan, including, without limitation, those instruments described with particularity in Section 2 hereof.

1.14    Company: 650 85TH LLC, is the record owner of the Land and shall execute the Mortgage in favor of Lender.

1.15    Guarantors: Martin C. Flynn and Tracey Hester Flynn.

ARTICLE II SECURITY AND TERMS FOR THE LOAN

2.1     Security for the Loan. The obligations of the Borrower to repay the principal and interest on the Loan shall be secured by the following:

        a.      The Mortgage on the Land, which Mortgage shall be executed by Company, in the form attached hereto as Exhibit C.

        b.      Assignment of the ROGOS. Borrower shall execute an Assignment of the ROGOS in the form attached hereto as Exhibit A.

2

     •     The Assignment of the ROGOS shall include the following terms: Lender and Borrower shall equally split the proceeds of the sales contemplated under said contracts. The Lender shall apply its full share of the proceeds to reduce the principal balance of the Loan.

b.     Assignment of the Additional ROGOS Collateral. Borrower shall execute and Assignment of Additional ROGOS Collateral in the form attached hereto as Exhibit B.

d.     Martin C. Flynn and Tracey Hester Flynn shall secure full payment of the Loan by execution of the Note more particular described in Section 2.2 hereof.

e.     Such other collateral and security as Lender and Borrower may agree upon.

2.2     Interest, Fees Repayment and Maturity. Interest shall be charged in accordance with the Note and the loan shall be repaid in accordance with the Note, which shall include but not be limited to the following terms:

- • The Interest Rate on the Note shall be 12% per annum. More specifically, Interest Rate on the Note shall have a monthly interest rate of ONE PERCENT (1%) based on the outstanding principal balance of the Loan.
- • The Loan Fee of TWO PERCENT (2%) shall be paid at closing.
- • The Term of the Loan shall be one (1) year.

2.3     After one year from the date of the loan, there shall be a one year option to extend in exchange for ONE PERCENT (1%) of said loan amount to be paid thirty (30) days prior to the effective date of the option to extend.

2.4     The form of the Note shall be attached hereto as Exhibit D.

### ARTICLE III REPRESENTATIONS AND WARRANTIES

Borrower, and Company, when applicable, hereby represent and warrant to the Lender as follows:

3.1     Borrower and Company are in compliance with all laws, regulations, ordinances and public authorities applicable to them and has the full power and authority to consummate the transactions herein.

3.2     Organizational Documents. All documents reflecting the organization of the Borrower (the "Organizational Documents") that have been given to Lender have not been modified or amended and the Organizational Documents will not be in any manner materially changed, modified or altered without the prior written consent of Lender.

3.3     Other Agreements. Neither Borrower nor Company is a party to any agreement or instrument adversely affecting to a material degree its present or proposed business, properties, assets, operation or condition, financial or otherwise, and neither Borrower nor Company is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument.

3.4     Other Financing. Except for the First Mortgage, the Borrower has not received any other financing for the Land. Except for the First Mortgage, and the approximate outstanding balance thereon as of the date hereof, Borrower shall not obtain any additional financing for the Land, and shall not allow any liens or encumbrances of any kind to be filed against the Land.

3.5     No Event of Default. No Event of Default exists under this Agreement or the First Mortgage and no event has occurred and is continuing which, with notice or the passage of time or either, would constitute a default under any provision thereof.

### ARTICLE IV  AFFIRMATIVE COVENANTS

Borrower, and Company, when applicable, hereby covenant and agree that, from the date hereof and until all indebtedness and obligations incurred in connection with the Loan shall have been paid, performed and discharged in full, Borrower, and Company, when applicable, will:

4.1     Payment of Costs and Taxes. Promptly pay all costs and taxes incurred in connection with the Land when the same become due and payable.

4.2     Performance of Obligations. Duly pay, perform and discharge all of its obligations hereunder, under the Assignment of ROGOS, Assignment of Additional Collateral, Note, the Mortgage and any other agreement between Borrower and Lender.

4.3     Compliance with Laws. Promptly and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations and requirements or every governmental authority.

4.4     Existence, Properties, Etc. Do all things necessary to preserve and maintain in full force and effect the existence of Company as a corporation under the laws of the State of Florida.

4.5     Hold Harmless. Defend, at its own cost and hold Lender harmless from any action, proceedings or claim affecting the, Land or other collateral held by Lender for the Loan.

### ARTICLE V  NEGATIVE COVENANTS

Borrower and Company, when applicable, further covenant and agree that, from the date hereof and so long as any of the Loan shall not have been paid in full, as to both principal and interest, it will not:

5.1     Other Financing. Obtain other financing in connection with the the Land without the prior consent of Lender.

5.2     Security Documents. Create, incur, assume or permit any assignment, lien, pledge or other encumbrance upon any of the Security Documents or any interest or equity therein, other than to Lender.

5.3     Breach of Any Contract. Commit any act, suffer or permit any act to occur which would, in any manner, give rise to the material breach of any term, covenant or condition on Borrower's part to be performed under any contract to which it is bound.

5.4     Judgments. Permit any judgment obtained against Borrower or Company to remain unpaid for a period of thirty (30) days following the entry thereof.

5.5     First Mortgage. Borrower shall not perform any act that would constitute a violation of the First Mortgage, or result in a default of the First Mortgage.

### ARTICLE VI  DEFAULT

6.1     Events of Default. The occurrence of any of the following shall constitute an Event of Default hereunder:

DocuSign Envelope ID: 36DE3A5E7BC2-9BA8A6A0C-3898BE2V8E38

a.   **Default in Payment.** Borrower shall fail to make any payment required by the Note or any Security Document, without notice or demand.

b.   **Performance of Covenants.** Borrower and/or Company shall default in the due observance or performance of any covenant or agreement made by Borrower hereunder or under any other agreement between Borrower and Lender related to the Loan, including the Security Documents (other than payment of money) and such default shall continue for a period of fifteen (15) days after written notice thereof from the Lender to Borrower; or

c.   **Breach of Warranty.** Any representation or warranty made by Borrower and/or Company hereunder, under any statement, instrument or certificate delivered by Borrower and/or Company, to Lender pursuant to the provisions hereof, under any other agreement between the Borrower and Lender, including the Security Documents, or otherwise, shall be determined by Lender to have been false or misleading in any material respect as of the date on which the same was made; or

d.   **Default under Mortgage.** An event of default under the Mortgage shall occur and be continuing; or Borrower fails to timely pay the First Mortgage or performs any act in violation of the First Mortgage that would cause a default thereunder; or

e.   **Failure to Pay Other Debts.** The Borrower fails to pay any other debt related to the Loan in a timely manner, including but not limited to the failure to pay the First Mortgage payment directly to Lender in a manner which Lender is able to ensure timely payment thereof; or

f.   **Execution of Security Agreements.** The Borrower executes any conditional bill of sale, chattel mortgage or other security instrument in favor of anyone other than Lender covering any of the Contracts For Transfer of Building Right identified on Exhibit A and B.

6.2   **Remedies.** If an Event of Default shall occur and be continuing, Lender may, at its option:

a.   **Acceleration.** Declare all amounts previously advanced to Borrower hereunder and under the Note, and all interest accrued and unpaid thereon, and all other amounts due under the Note and this agreement to be immediately due and payable without presentment, demand, protest or further notice of any kind (all of which hereby are expressly waived) and Lender may thereupon institute proceedings to collect the same and/or foreclose the Mortgage.

b.   **Enforcement of Security.** Exercise its rights and remedies under the Note, and any other agreement between Borrower and Lender, including the Security Documents, in accordance with the respective terms thereof.

## ARTICLE VII ADDITIONAL TERMS

7.1   **Loan Expenses.** Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, broker's fees and commissions, attorneys' fees, documentary, intangible and other taxes, recording costs and expenses.

7.2   **Further Assurances.** Borrower and Lender agree that at any time, and from time and time, after the execution and delivery of this Agreement, it shall, execute and deliver such further documents and do such further acts and things in order to more fully effectuate the purposes of this Agreement.

7.3   **Governing Law.** This Agreement shall be governed by and be construed in accordance with the laws of the State of Florida.

5

7.4   Severability. In case any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity of the remaining provisions shall be in no way affected, prejudiced or disturbed thereby.

7.5   Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one agreement.

7.6   Entire Agreement. This Agreement contains the entire agreement between Lender and Borrower with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements among Lender and Borrower with respect to the subject matter hereof.

7.7   No Partnership or Joint Venture. Nothing herein nor the acts of the parties hereto shall be construed to create a partnership or joint venture between Company/Borrower and Lender.

7.8   Gender. The use of any gender shall include all other genders. The singular shall include the plural and vice versa.

7.9   Survival of Provisions. All covenants, agreements, representations and warranties made in this Agreement and the documents delivered in support of the Loan shall be deemed to have been material and relied on by the Lender and shall survive the execution and delivery to the Lender of the Note, the Security Documents and the disbursement and advance of funds pursuant to the Loan.

7.10   Conflict with Notes and Security Documents. In the event of any conflict between the terms of the Note, the Security Documents and this Agreement, the terms of this Agreement shall control and govern in all respects. Whenever possible, the provisions of this Agreement shall be deemed supplemental to and not in derogation of the Note and Security Documents.

7.11   Headings. The headings of the articles, sections and subsections of this Agreement are for convenience and reference only and shall not be considered a part hereof nor shall they be deemed to limit or otherwise affect any of the terms or provisions hereof.

7.12   Exhibits. All of the exhibits annexed hereto are incorporated herein by reference and form a part of this Agreement.

SIGNATURE LINES ON FOLLOWING PAGE

6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Signed, sealed and delivered
in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**BORROWER: SHERWOOD CONSRUCTION, INC.**

DocuSigned by:
Martin C. Flynn
780CF1A5AC30431...
By: Martin C. Flynn, President

Signed, sealed and delivered
in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**COMPANY: 650 85th LLC**

DocuSigned by:
Martin C. Flynn
780CF1A5AC30431...
By: Martin C. Flynn, Member

Signed, sealed and delivered
in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**MTF Holdings, LLC**

DocuSigned by:
Martin C. Flynn
780CF1A5AC30431
By: Martin C. Flynn, Member

Signed, sealed and delivered
in our presence:

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

Printed name: Janelle Morea

Printed name: Alexandra M. Lezcano

**GUARANTORS**

DocuSigned by:
Martin C. Flynn
780CF1A5AC30431...
By: Martin C. Flynn, individually

DocuSigned by:
Tracey Hester Flynn
0183AC9A85834ED
By: Tracey Hester Flynn

7

Signed, sealed and delivered
in our presence:

Printed name: Janelle Marra

Printed name: Alexandra M. Lezcano

**LENDER: PEDIXON LLC**

DocuSigned by:

560899603253483

By: Kenneth G. Dixon, Manager

8

Doc # 2395895 Bk# 3192 Pg#1640 Ctrl#00000 Recorded 09/27/2022 9:86 PM Page 74 of 112
Filed and Recorded in Official Records of MONROE COUNTY KEVIN MADOK
ElectronicallyREC: $69.50 Mtg Doc Stamp $875.00 Intangible Tax $500.00

Case 6-26-bk-00369-LVV Doc 84 Filed 03/19/26 Page 215 of 267

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

Prepared By and Return To:
Alison Pitkanen, Esquire
10524 Moss Park Road, Suite 204-101
Orlando, FL 32832

## MORTGAGE MODIFICATION AGREEMENT

### (Future Advance In the amount of $250,000)

THIS AGREEMENT (referred to hereafter as the "Agreement"), made effective as of the 4th day of August 2022 ("Effective Date"), by and between 650 85TH LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

Pedixon LLC may be herein referred to as the Lender, and 650 85TH LLC may be herein referred to as Obligor.

### WITNESSETH:

WHEREAS, all recording references contained in this Agreement are to the Public Records of Monroe County, Florida; and

WHEREAS, Mortgagor executed a certain mortgage recorded in Official Records Book 3158, Page 183 which mortgage shall incorporate all assignments and modifications thereof (referred to herein as the "Mortgage"), encumbering certain real property ("Property") located in Monroe County, Florida, and more particularly described as follows:

Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

WHERAS, said Mortgage is security for a credit accommodation represented by that certain Loan Agreement dated January 28, 2022, representing a loan in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS, subject only to any extensions or future advances made thereunder, together with all other related loan and security documents executed of even date therewith (the "Credit Accommodation").

WHERAS, Mortgagor is an Obligor under the Credit Accommodation and is responsible for the repayment of that certain original promissory note dated January 28, 2022 in the original principal amount of $500,000.00 (the "Original Note").

WHEREAS, Mortgagor is the owner of the Property encumbered by the Mortgage, and Lender is the owner and holder of the Credit Accommodation, Original Note and Mortgage and is the secured party under the Credit Accommodation and the related loan and security documents, including but not limited to the loan agreement, executed on January 28, 2022 (the "Loan Documents").

WHEREAS, the total outstanding balance of the Original Note, as of the date hereof, is $350,000.00.

WHEREAS, Lender has agreed to provide a future advance under the terms of the Mortgage in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/CENTS ($250,000.00) which shall be evidenced by a Future Advance Allonge to Promissory Note (the "Future Advance Allonge").

WHEREAS, the Original Note, together with the Future Advance Allonge executed of even date herewith, shall be collectively referred to herein as the Note.

WHEREAS, the total outstanding indebtedness represented by the Note, as of the date hereof, is SIX HUNDRED THOUSAND DOLLARS AND NO/CENTS ($600,000.00).

### AGREEMENT:

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which each party acknowledges, the parties hereto do hereby agree as follows:

1.      The recitals hereinabove contained are true and correct, affirmed and are made a part hereof and incorporated herein by reference.

2.      This Agreement evidences a future advance made by the Lender pursuant to the future advance provision of the Mortgage referred to hereinabove. It is agreed that this future advance is evidenced by the Future Advance Allonge. The Future Advance Allonge and Note shall be secured by the above described Mortgage and Loan Documents. The Obligor agrees to pay the indebtedness in accordance with the terms of the Note and any renewals, modifications, extensions or consolidations thereof.

1

EXHIBIT

tabbies

D

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

3. The Obligor agrees to pay the indebtedness in accordance with the terms of the Note and any renewals, modifications, extensions or consolidations thereof.

4. That as of the Effective Date, the relevant terms of the Original Note and Mortgage are modified pursuant to the terms of that certain Future Advance Allonge executed of even date herewith, and other related documents required by Lender to modify the Mortgage and secure the collateral identified in the Loan Documents. The Original Note and the Future Advance Allonge evidence the total indebtedness on the Mortgage, including all future advances, as of the date hereof, and in exchange therefore, modifications as more particularly set forth in said related loan and security documents executed of even date herewith.

5. Obligor agrees that all documentary stamp taxes, intangible taxes, title insurance premiums, title search and examination charges, recording fees, and all other costs whatsoever incurred with respect to this Loan, or the subject matter hereof, shall be paid by Obligor promptly and on demand; and if at any time the State of Florida shall determine that the intangible tax or documentary stamp tax paid in connection with this Loan, as modified hereby, or any documentation executed in connection therewith is insufficient for any reason whatsoever, Obligor shall pay for same upon such determination, together with all interest and penalties imposed in connection therewith.

6. Obligor does hereby for itself and each of them and for their respective legal representatives successors, predecessors and assigns (jointly and severally "Releasors"), waive any claim or defenses which they or any of them now have or might hereafter have with respect to the Note and Mortgage, as hereby modified, or by virtue of any claims or defenses in any civil proceedings or otherwise, brought or asserted by Lender or Releasors or by a third party in each case by reason of any act, matter, contract, agreement, or thing whatsoever from the beginning or time up and to and through the date of the Agreement, as of the date this Agreement is notarized as to the last signatory hereto.

7. Obligor hereby represents and warrants to Lender that all representations and warranties previously made by Obligor in connection with the Mortgage and Note are true and correct, and incorporated herein by this reference.

8. Obligor hereby ratifies and confirms that all the terms, covenants, conditions, warranties, representations and agreement contained in the Mortgage and the Loan Documents as modified herein, shall remain in full force and effect as modified by this Agreement.

9. Obligor represent and warrants to Lender that Obligor has filed no petition for an order for relief under Title 11 of the U.S. Code, as amended, and that, to the best of Obligor's knowledge, Obligor is not the subject of any petition for an order for relief under any applicable bankruptcy or insolvency laws; and Obligor has not made any assignments for the benefit of creditors under any applicable state laws.

10. Any misrepresentation or breach of warranty or covenant of Obligor contained under this Agreement or any of the Loan Documents shall constitute a default under the terms of each of the Loan Documents.

11. All the terms, covenants and conditions herein contained are and shall be binding on, and shall enure to the benefit of Lender and its successors and assigns.

12. All covenants, agreements, acknowledgements, waivers and/or releases herein made or granted by Obligor shall be binding upon Obligor and its successors and assigns and the terms of this Agreement shall inure to the benefit of Obligor and its permitted successors and assigns.

13. This Agreement shall be construed under Florida law and shall not be construed more strictly against one party than against the other merely by virtue of the fact it may have been prepared by counsel for one of the parties, it being recognized that this is a negotiated document and that the parties have each contributed materially to the content hereof.

14. If the event any provision, paragraph, sentence, clause, phrase or word is deemed invalid or unenforceable, then to the extent that he remaining portions of this Agreement and such provision, paragraph, sentence, clause, phrase or word is valid and enforceable shall remain in full force and effect.

15. That, in the event of any default under the terms and conditions of this Agreement or any other instrument referred to herein or contemplated hereby, the entire principal balance amount represented by the Future Advance Allonge, together with all accrued interest and charges, shall, at Lender's option, become immediately due and payable.

16. That the terms, liens and operations of the Note and Mortgage are ratified and confirmed in all other respects not inconsistent with the provisions of this Agreement and shall continue in full force and effect, except as specifically modified by the terms hereof.

17. Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC
1627 East Vine Street, Suite E
Kissimmee, FL 34744

650 85TH LLC
518 South Magnolia Ave., Suite 110
Orlando, Florida 32801

2

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

WITNESSES:

650 85TH LLC, a Florida limited liability company

Printed name: N. Ben Juves

By: Martin C. Flynn, Jr., Member

Printed name: Jose Parentin

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 4th day of August 2022 by Martin C. Flynn, Jr., as Member of 650 85th LLC, a Florida limited liability company, who is personally known to me or produced __license__ as identification.

SEAL

Notary Public-State of Florida

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

DOCUMENTARY STAMPS ON THE FUTURE ADVANCE ALLONGE AND INTANGIBLE TAX ON THE MORTGAGE MODIFICATION REFLECTING A FUTURE ADVANCE AMOUNT OF $250,000.00 SHALL BE AFFIXED HERETO.

3

## SCHEDULE "2"

All improvements, including tangible personal property, now or hereafter attached to or placed, erected, constructed, developed, and made a part of the real property (the "Improvements"); including heating and air condition equipment, and all renewals of or replacements or substitutions for any of the foregoing, whether or not the same are or shall be attached to the real property, as hereinafter defined, (the "Land") or any Improvements; all sewer rights, water and water rights, timber, crops and mineral interests pertaining to the Land; all building materials and equipment now or hereafter delivered to and intended to be installed in or on the Land or the Improvements, if any; all plans and specifications for the Improvements; all contracts relating to the Land, the Improvements or the Personal Property; any deposits (including purchasers' earnest money deposits and tenants' security deposits), bank accounts, funds, documents, contract rights, accounts, commitments, construction contracts, architectural agreements, general intangibles (including, without limitation, trademarks, tradenames and symbols) and instruments, notes or chattel paper arising from or by virtue of any transactions related to the Land the Improvements, if any, or the Personal Property, if any; all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Land, the Improvements and the Personal Property; all proceeds arising from or by virtue of the sale, lease or other dispositions of the Land, the Improvements or the Personal Property; all proceeds (including premium refunds) of each policy of insurance relating to the Land, the Improvements or the Personal Property; all proceeds from the taking of any of the Land, the Improvements, the Personal Property or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts, or other rights of access, for any public or quasi-public use under any law; all right, title and interest of Debtor in and to all streets, roads, public places, easements and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the land; any leases , rents, royalties, bonuses, issues, profits, revenues or other benefits of the Land, the Improvements or the Personal Property, including, without limitation, cash or letters of credit deposited pursuant to purchase contracts or leases to secure performance by the purchasers or lessees of their obligations thereunder; all consumer goods located in, or by about the Land or the Improvements, or used in connection with the use or operation thereof; all rights, hereditaments and appurtenances pertaining to the foregoing; and other reasonable interest of every kind and character that Debtor now has or at any time hereafter acquired in and to the Land, Improvements, and Personal Property described herein and all property that is used or useful in connection therewith, including reasonable rights of ingress and egress and all reasonable reversionary rights or interests of Debtor with respect to such property.

Land described as:
Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A681CFB4

This instrument prepared by:
Prepared By and Return To:
Alison Pitkanen, Esquire
10524 Moss Park Road, Suite 204-101
Orlando, FL 32832

## MORTGAGE

THIS INDENTURE, is made as of the 4th day of August 2022, by MTF HOLDINGS, LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

### WITNESSETH:

That in consideration of $10.00, and other good and valuable consideration to secure the payment of the Loan evidenced by that certain Loan Agreement dated as of January 28, 2022, Mortgagor does hereby grant, bargain, sell, assign, transfer, convey and confirm unto the Mortgagee the following:

The building and development rights commonly referred to as ROGOS, situated in Monroe County, Florida and more particularly identified on Exhibit "A" attached hereto, which shall be referred to herein as the "Mortgaged Property" or the "Property".

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors and assigns, forever.

Mortgagor hereby covenants with the Mortgagee that Mortgagor is indefeasibly seized with fee simple absolute title to the Mortgaged Property represented by a Warranty Deed for Transfer of Building Rights recorded in the Official Records of Monroe County, Florida Book 3145 Page 2042, and has full power and lawful authority to sell, convey, transfer and mortgage the same; that the Mortgaged Property is free, clear and discharged from all liens, encumbrances, and claims of any kind, except for taxes that may not be presently due and payable, and any matters of record affecting the Mortgaged Property at the moment of recording of the instrument of conveyance of the Mortgaged Property by Mortgagee to Mortgagor; and that Mortgagor hereby fully warrants unto the Mortgagee the title to the Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS, and these presents are on the express condition, that Mortgagor is indebted to Mortgagee by virtue of that certain Loan Agreement dated January 28, 2022, and Future Advance Allonge to Promissory Note dated August 4, 2022, representing an outstanding indebtedness of SIX HUNDRED THOUSAND DOLLARS AND NO/CENTS ($600,000.00) (the "Loan Amount"), subject only to any extensions or future advances made thereunder (collectively, the "Loan Documents"). The Loan Amount and the Loan Documents represent the Loan made hereunder.

NOW, THEREFORE, if Mortgagor shall fully pay said Loan Amount, and shall fully pay all other indebtedness or liability that may become due and owing hereunder and secured hereby, and shall faithfully and timely comply with and perform each and every other covenant and provision herein on the part of Mortgagor to be complied with and performed, then these presents shall be void and released at the expense of Mortgagor, otherwise to remain in full force and effect.

AND Mortgagor does hereby expressly covenant and agree as follows:

1.     Payment of Loan. Mortgagor shall pay the Loan Amount hereinbefore referred to, according to the terms and tenor of the Loan Documents, and the interest and other sums due thereon and/or secured hereby promptly as the same shall become due.

2.     Taxes, Assessments, Liens and Charges. Mortgagor shall pay all taxes, assessments and public charges already levied or assessed or that may hereafter be levied or assessed upon or against the Mortgaged Property, or any part thereof, when due and payable according to law or otherwise, before they become delinquent, and before any interest or penalty shall attach. In the event any lien or claim of lien is filed or recorded against the Property, Mortgagor shall procure the discharge or release of same of record, or the transfer of same to other security as provided by the laws of the State of Florida, within fifteen (15) days of the filing or recordation thereof.

3.     Preservation and Maintenance. Mortgagor shall keep all fixtures, improvements and buildings erected on the Mortgaged Property in good order and repair and shall not cause or permit waste of the Mortgaged Property, nor do or permit any other act whereby the Mortgaged Property shall become less valuable.

4.     Interest on Delinquent Sums. Any sums which shall not be paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of said Real Property Participation Agreement, and whether principal, interest or money owing for advancements by the holder pursuant to the terms of this Mortgage, shall bear interest at the highest rate for which it is lawful to contract from the date of such advancement, lapse or acceleration, until paid.

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

5.    Reimbursement of Legal Fees and Costs.  In the event the Loan Documents are placed in the hands of an attorney for collection, or in case Mortgagee shall become a party either as plaintiff or as defendant in any suit or legal proceeding in relation to the Mortgaged Property or the lien created hereby, or for the recovery or protection of the indebtedness hereby secured, Mortgagor shall repay to Mortgagee on demand all costs and expenses of Mortgagee arising therefrom, including reasonable attorneys' fees, with interest thereon at the highest rate for which it is lawful to contract until paid, all of which sums, if unpaid, shall be added to and become a part of the debt secured by these presents.

6.    Acceleration Upon Default.  Mortgagor agrees that:  (a) if payment of the Loan under said Loan Documents are not received by Mortgagee on the due date thereof, or (b) if default be made in the performance of any of the other covenants contained in this Mortgage (or the Loan Documents secured hereby) and such default is not cured within fifteen (15) days from the date of written notice thereof, then, upon the happening of either or any of the events specified above, the whole unpaid principal sum of the Loan, with interest accrued thereon, shall, at the option of the holder of the Loan Agreement and this Mortgage, become due and payable, anything herein or in the Loan Documents to the contrary notwithstanding.

7.    Compliance With Laws and Regulations.  Until the entire indebtedness shall have been paid in full, Mortgagor hereby covenants and agrees as follows:  Mortgagor will promptly and fully comply with, conform to, and obey all present and future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency having jurisdiction, or similar body exercising similar functions which may be applicable to it or to the Mortgaged Property.

8.    Future Advances.  That any sum or sums which may be loaned or advanced by the Mortgagee to the Mortgagor at any time within twenty (20) years from the date of this indenture, together with interest thereon at the rate agreed upon at the time of such loan or advance, shall be equally secured with and have the same priority as the original indebtedness and be subject to all the terms and provisions of this Mortgage; provided, that the aggregate amount of the principal outstanding at any time shall not exceed two times the original principal amount hereof.

9.    Security.  The security herein and hereby provided shall not affect, nor be affected by, any other or further security taken or to be taken for the same indebtedness, or any part thereof.

10.    Severability.  If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Mortgage or the Loan Documents, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein (or therein) contained and the remainder of this Mortgage and/or the Loan Documents shall remain operative and in full force and effect.

11.    Satisfaction of Mortgage.  Upon payment to Mortgagee of all sums due under the Loan Documents and this Mortgage, Mortgagee shall execute, acknowledge and deliver to Mortgagor a Satisfaction of this Mortgage in recordable form, which Satisfaction of Mortgage shall be recorded in the Public Records of Monroe County, Florida at the expense of Mortgagor.

12.    Changes, Modifications and Discharges; Enforceability.  This Mortgage may not be changed orally, but only by an agreement in writing which is signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

13.    Forbearance by Mortgagee Not a Waiver.  Failure of Mortgagee to exercise any of the rights and privileges herein granted Mortgagee shall in no way be construed as a waiver or abandonment of any rights or privileges under this Mortgage or the Loan Documents.  No waiver of a breach of any of the covenants herein contained shall be a waiver of any succeeding breach of the same covenant or any other covenant.

14.    Notices.  Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

As to Mortgagee:                          As to Mortgagor:

PEDIXON LLC                              MTF HOLDINGS, LLC
1627 East Vine Street, Suite E           518 South Magnolia Ave., Suite 110
Kissimmee, FL 34744                      Orlando, Florida 32801

Mortgagor or Mortgagee may change the address to which notices are to be sent by written notice to the other party specifying said change of address.  Any such notices properly sent by mail shall be deemed received:  (i) on the third (3rd) day following the day of mailing, or (ii) on the date of actual receipt by the addressee as evidenced by a properly executed return receipt, whichever date shall first occur.

15.    Parties Bound; Construction of Language.  The provisions hereof shall be binding upon Mortgagor and its assigns and successors in interest and title, and shall inure to the benefit of Mortgagee and its successors and assigns.

2

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

IN WITNESS WHEREOF, the Mortgagor has caused this instrument to be executed and delivered, and has intended the same to be and become effective as of the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

**MTF HOLDINGS, LLC**

WITNESSES:

Printed name: _____

By: Martin C. Flynn, Jr., Member

Jose Poleatud
Printed name: Jose Poleatud

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 4th day of August, 2021 by Martin C. Flynn as Member of MTF HOLDINGS, LLC, a Florida limited liability company, who is personally known to me or produced License as identification.

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025    SEAL

Notary Public-State of Florida

ALL DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW, INCLUDING ALL FUTURE ADVANCES THEREON, HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA, AND THE SUBSEQUENT MORTGAGE MODIFICATION RECORDED IN THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

3

DocuSign Envelope ID: 9D204AA0-4FB6-4203-BE3F-4BF4A661CFB4

EXHIBIT "A"

Six (6) market rate building rights assigned Sender Site Identifier No. DP-21-34 by the City of Marathon, Florida. Said market rate transferable building rights being transferred from the following described Sender Site in Monroe County, Florida:

Block 5 Lots 5, 6, 14, 15, 16, and 17, MARATHON BEACH, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 2, PAGE 21 PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.

AND

Block 1 Lot 1, LNCOLN MANOR, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 4, PAGE 16 PUBLIC RECORDS OF MONROE COUNTY, FLORIDA

Parcel 00337390-000100

The subject market rate transferable building rights shall run with, and be appurtenant to, the following described Receiver Site owned by City of Marathon

4

Dated: August 3, 2022                                Future Advance Amount: $250,000

### FUTURE ADVANCE ALLONGE TO PROMISSORY NOTE

This instrument is the First Allonge to that certain Promissory Note, entered into as of the date hereof, by and between the undersigned SHERWOOD CONSTRUCTION, INC. (the "Borrower"), and PEDIXON LLC, a Florida limited liability company, or assigns (the "Lender").

Reference is hereby made to the following promissory note attached hereto, which shall be incorporated within and referred to as the "Credit Accommodation": That certain promissory note dated January 28, 2022 executed by the Borrower in favor of the Lender in the original principal amount of $500,000.00 (the "Note").

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and the Lender hereby agree as follows:

1. The outstanding principal balance of the Note as of the date hereof is $350,000.00.

2. The Note is hereby amended to provide that the Credit Accommodation represented by the Note shall be increased by an additional sum of $250,000.00, so that the total outstanding principal balance will be $600,000.00 or so much thereof as may be advanced and outstanding from time to time, together with interest thereon.

3. Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable on 1st day of every month hereafter until the Maturity Date of February 1, 2023, at which time a final installment equal to all of the principal of and interest on the Loan will be due.

4. Interest at the Interest Rate from the of this Allonge and for each day hereafter for the remainder of the month of August shall also be due and payable on September 1, 2022.

5. Except as amended herein, the Note and all terms of the Loan Agreement, both dated January 28, 2022 shall remain in full force and effect.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ALLONGE TO THE NOTE, AND HEREBY AGREES.**

**BORROWER, SHERWOOD CONSRUCTION, INC.**

By: Martin C. Flynn, individually,
and as President of Sherwood Construction, Inc.

**DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA. DOCUMENTARY STAMPS ON THE FUTURE ADVANCE IN THE PRINCIPAL AMOUNT OF $875.00 SHALL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE.**

EXHIBIT

E

## PROMISSORY NOTE

Loan: $500,000.00
Effective Date: January 28th, 2022

      FOR VALUE RECEIVED, SHERWOOD CONSTRUCTION INC., a Florida corporation (referred to herein as the the "Borrower"), promises to pay to PEDIXON LLC (referred to herein as the "Lender"), in the manner hereinafter specified, the principal sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "Loan").

      Martin C. Flynn and Tracey Hester Flynn hereby join in the execution of this Note, and hereby agree to the terms and conditions hereof as guarantors of the Loan in further accordance with the terms of the Loan Agreement executed of even date herewith.

**INTEREST RATE:**

      *The interest rate on this Note shall be fixed at the rate of TWELVE PERCENT/PER ANNUM (12%).*

**PAYMENT SCHEDULE:**

      The Borrower hereby agrees to repay the indebtedness as follows:

      *Interest at the Interest Rate on the outstanding principal balance of the Loan shall be due and payable on March 1, 2022 and the 1st day of every month thereafter for twelve (12) months.*

      *Interest will be computed on the basis of a 360-day year.*

      *A final installment equal to all the principal of and interest on the Loan then remaining unpaid will be due on February 1, 2023 (the "Maturity Date"). All payments received hereunder shall be applied first to the payment of any expenses or charges payable hereunder or under any other loan documents, then to interest due and payable, or in such other order as the Lender shall determine at its option.*

      *The first payment on March 1, 2022 shall include Interest on the Interest Rate from the effective date of closing as set forth herein and for each day thereafter for the remainder of the month of January.*

### Additional Terms of the Promissory Note

1.    **Prepayment.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.

2.    **Late Charge.** If a payment is 11 days or more late, Borrower will be charged the greater of (a) 5.000% of the unpaid portion of the regularly scheduled payment (up to a maximum of $250.00); or (b) $35.00.

3.    **Interest After Default.** Upon default, including failure to pay upon final maturity, Lender, at its option, may increase the interest rate on this Note to the maximum rate allowed by law, if and to the extent that the increase does not cause the interest rate to exceed the maximum rate permitted by applicable law.

4.    **Default.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

4.1.    <u>Payment Default</u>. Borrower fails to make, as and when due, any payment due under this Note, and such failure continues for 15 days after written notice thereof from Lender.

4.2.    <u>Other Defaults</u>. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the other documents executed by Borrower in connection with this Note or this transaction including, without limitation, the Loan Agreement executed of even date herewith and all other instruments, agreements and documents, whether now or hereafter existing (the "Related Documents"), and such failure continues for 15 days after written notice thereof from Lender.

4.3.    <u>Notice of Default</u>. Upon default, Lender shall provide written notice to Borrower via certified mail, return receipt requested, and Borrower shall have an opportunity to cure said default within 15 days of receipt of said notice.

4.4.    <u>Lender's Rights</u>. If Borrower fails to cure said default within said 15 day period, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

5.    **Costs of Collection; Attorney's Fees.** If Borrower fails to make any amount due hereunder, or if any dispute arises hereunder (whether or not suit be brought); or if any legal action or other proceeding (including, without limitation, appeals or bankruptcy proceedings) whether at law or in equity, which arises out of, concerns, or relates to this Note, any and all transactions contemplated hereunder, the performance hereof, or the relationship created hereby, or is brought for the enforcement of this Note, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this agreement, the successful or prevailing party or parties shall be entitled to recover all costs of collection including, without limitation, reasonable attorney's fees, court costs, all expenses (even if not taxable as court costs), and all collection agency expenses, commissions or charges, incurred in connection with the dispute, action or proceeding, in addition to any other relief to which such party or parties may be entitled.

6.    **Governing Law.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Note has been accepted by Lender in the State of Florida.

7.    **Collateral.** This Note is secured by all of the following instruments granted in favor of Lender (all of which are collectively referred to in this Note as the "Mortgage"):

7.1.    That certain Mortgage Deed of even date herewith.

2

7.2.  That certain Assignment of Contracts.

7.3.  That certain Assignment of Building Rights of even date herewith.

7.4.  That certain Loan Agreement of even date herewith.

8.  **General Provisions.**

8.1.  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.

8.2.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.

8.3.  Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral.

8.4.  The obligations under this Note are joint and several.

8.5.  This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER: SHERWOOD CONSRUCTION, INC.**

*Martin C. Flynn*

By: Martin C. Flynn, individually,
and as
President of Sherwood Construction, Inc.

*Tracey Hester Flynn*

By: Tracey Hester Flynn individually

Check the appropriate language:

_____  Florida documentary Stamp required by law in the amount of $_____ has been paid or will be paid directly to the Department of Revenue.

_X_  Florida Documentary Stamps required to be paid on the indebtedness evidenced hereby have been paid and affixed to the original mortgage executed herewith.

3

<div align="center">

**LOAN,**
**SECURITY AND**
**CROSS COLLATERALIZATION**
**AGREEMENT**

</div>

THIS LOAN, SECURITY and CROSS COLLATERALIZATION AGREEMENT is made on this 13th day of December 2022, by and between the following:

> **PEDIXON LLC, a Florida limited liability company**
> ("Lender"),
>
> **SHERWOOD CONSTRUCTION, INC., a Florida corporation**
> ("Borrower").
>
> **MARTIN C. FLYNN, Jr.**
> ("Guarantor"),
>
> **650 85TH LLC**
> ("Company"), and
>
> **MTF Holdings, LLC**
> ("MTF").
>
> Lender, Borrower, Guarantor, Company and MTF may be referred to as the "Parties."

For good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties agree to the following terms and conditions.

1. **Existing Indebtedness.** The Parties agree and acknowledge that the following represents the total outstanding indebtedness as of the date hereof:

   a. Original Loan dated January 28, 2022, where Pedixon purchased a certificate of deposit at First State Bank to obtain a letter of credit for the benefit of Borrower for the purpose of completing the construction of Amelia Village in Vero Beach, Florida, evidenced by a loan agreement and promissory note in the amount of $500,000. This indebtedness is represented by a promissory note dated January 28, 2022, and mortgage recorded in Official Records Book 3158, Page 183, Monroe County, State of Florida.

   b. First Modification to Original Loan dated August 4, 2022, evidenced by an Allonge to Note reflecting an additional loan advance of $250,000 and secured by a mortgage modification recorded in Official Records Book 3199 Page 1140, Monroe County, State of Florida.

   c. Option and Cross Collateral Loan dated October 7, 2022 evidenced by a promissory note in the amount of $500,000 and an option agreement securing an option to purchase and right of first refusal on several properties. This loan also includes a Cross-Collateralization

**EXHIBIT**

tabbies®

F

Agreement providing for the joint and several liability of the Borrower, Company, MTF and Guarantor for the payment of the Original Loan, First Modification, and the Cross Collateral Loan.

d. The Original Loan, First Modification and Cross Collateral Loan shall be collectively called the "Existing Indebtedness."

e. The Loan Agreement representing the Existing Indebtedness dated January 28, 2021 shall be modified to include the modifications and amendments, and shall otherwise remain in full force and effect.

f. The outstanding principal balance of the Existing Indebtedness is **$2,100,000.00**

2. **Security on Existing Indebtedness.** The Parties agree and acknowledge that the following represents all of the security for the Existing Indebtedness as of the date hereof:

a. Mortgage on the Land (defined below) located at 650 85th Street Ocean, Marathon, FL recorded in the Official Records of Monroe County, FL Book 3158 Page 183, as amended by the Second Modification recorded in Official Records of Monroe County, FL Book 3199 Page 1140 (the "650 Mortgage");

b. Mortgage and assignment of all of MTF's interest in and to the building rights, all situate in Monroe County, FL together with a mortgage securing said rights recorded in the Official Records of Monroe County, FL Book 3199 Page 1144 (the "ROGOS Collateral);

c. Personal guaranty of Martin C. Flynn, Jr. and Tracey Hester Flynn (the "Guaranty")

d. Right of first refusal and option to purchase eight condominium and townhome units located at the Cape Crossing Resort in Merritt Island, Fl, as recorded in the Public Records of Brevard County, Florida (the "Option").

e. All of the documents representing this Security on the Existing Indebtedness including, but not limited to the 650 Mortgage, the Mortgage and Assignment of the ROGOS Collateral, personal guaranty documentation, and the referenced Option shall be referred to as the Existing Security Documents.

3. **Loan Accommodation.** Borrower has requested an additional loan accommodation from Lender, and Lender has agreed to extend credit to Borrower in the following manner:

a. Future advance on the 650 Mortgage in the amount **$400,000**; and
b. New loan in the amount of **$600,000** ("Current Loan")

On this date, this is a total consolidated credit accommodation of One Million Dollars and No Cents ($1,000,000.00) and the terms thereof shall be subject to the terms and conditions of this Agreement and shall be cross-collateralized with the Existing Security Documents.

2

The Existing Indebtedness, the Future Advance, the Option and Collateral Loan, together with the Current Loan, may be herein collectively referred to as the "Loan."

After making the loan accommodation on this date, the total outstanding balance of Borrower's indebtedness to Lender is **$2,100,000.00** ("Total Indebtedness").

4. **Security for the Future Advance.** The obligations of the Borrower to repay the Future Advance shall be secured by the following:

    a. **Land.** The Land is described on Exhibit A.

    A second modification of the 650 Mortgage shall be executed by MTF, and it shall provide for a Future Advance according to the following terms.

        i. This second mortgage modification shall be executed of even date herewith, and shall provide for a future advance on the 650 Mortgage in the amount of $400,000, and shall be recorded in the official records of Monroe County.

        ii. The only permitted encumbrances on the Land is that certain first mortgage in the outstanding approximate amount of $308,000.00 recorded in Official Records Book 2966 Page 980, of the public records of Monroe County, Florida ("First Mortgage").

            a. Borrower shall not perform any act that would constitute a violation of the First Mortgage or result in a default of the First Mortgage.

        iii. The Parties agree that intangible stamp taxes shall be affixed to the second mortgage modification based upon the future advance amount of $400,000.00.

5. **Security for the Current Loan:**

    a. **Right of First Refusal/Option to Purchase.**

        i. A Restated Option Agreement shall be executed by Homemakers Real Estate, LLC, and recorded in the public records of Brevard County, FL, granting several option rights unto Lender in and to the right to purchase a total of twenty-five (25) units at the Cape Crossing Resort in Merritt Island, Fl, in accordance with the following.

           1. Lender has an existing right in and to eight of the subject units as part of its security on the Existing Indebtedness. In exchange for the Current Loan, the Restated Option Agreement will secure additional properties, and amend the terms of the existing option agreement.

           2. The Restated Option Agreement executed herewith shall amend and restate the previously executed agreement regarding this matter.

3

3. The term of the Restated Option Agreement shall continue for the term of the Current Loan. Upon satisfaction of the Current Loan, this Restated Option Agreement shall terminate.

ii. An Option Agreement in substantially the same form shall be executed by IMQA Investments, Incorporated granting option rights unto Lender in and to the right to purchase a total of two (2) units at the Cape Crossing Resort in Merritt Island, Florida.

iii. The legal description for the twenty-seven (27) properties to be encumbered by this right of first refusal and option to purchase contemplated hereunder are attached hereto as Exhibit B, made a part hereof, and may be referred to as the "Option Property."

b. **Participation Fee**. Borrower shall pledge a fee equal to ONE PERCENT (1%) of the total value of the contract for the project known and referred to as Cherry Hill Villages in Homestead, FL – Renovation Project.

i. Borrower represents and warrants that the total value of said construction project is Seven Million Dollars ($7,000,000.00).

ii. Borrower shall pay directly to Lender its proportionate share upon Borrower's receipt of each construction draw made by Borrower.

iii. The Participation Fee shall be paid to Lender within 48 hours of Borrower's receipt of revenue on each draw, continuously, for the term of the Current Loan.

c. **ROGOS Collateral**. The Parties agree that the ROGOS collateral shall secure the Current Loan as a result of the cross-collateralization of the Existing Indebtedness and the New Loan.

i. The Parties acknowledge that this is a condition of the Current Loan, and hereby agree to take any action that may be deemed reasonably necessary to effectuate the cross-collateralization of the ROGOS Collateral, and to ensure that it acts as security for the term of the Current Loan.

ii. Notwithstanding, the ROGOS Collateral shall also continue to secure the Existing Indebtedness.

d. **Assignment of Jetton Mortgage**. Lender shall receive an assignment of the following mortgage: Mortgage recorded in the Official Records of Brevard County, Florida, Book 8176 Page 930 ("Jetton Mortgage").

i. The Assignment of the Jetton Mortgage shall not be recorded in the ordinary course as the other instruments being executed pursuant to this Agreement. In lieu of recordation, it shall be held in trust by Alison Pitkanen, Esquire in

4

accordance with the terms of the escrow agreement executed of even date herewith.

ii. The Assignment of the Jetton Mortgage shall be executed by IMQA Investments, Incorporated.

e. **Security Documents.** Any documents contemplated hereunder that may be required to perfect the security interest of the Current Loan shall be executed contemporaneously herewith, or from time to time, as the Lender may reasonably request.

The Existing Security Documents shall remain in full force and effect unless specifically modified hereunder. Any reference herein to Security Documents shall also include the Existing Security Documents, unless specifically stated otherwise.

The Parties shall cooperate to fulfill all of the obligations hereunder, and this covenant shall survive this Agreement.

6. **IMQA and Homemakers.** IMQA Investments, Incorporated and Homemakers Real Estate, LLC shall each sign a joinder to this Agreement, acknowledging that in exchange for the benefit they shall receive from the extension of credit to Borrower, they have agreed to acknowledge the terms of this Agreement, and shall do whatever may be reasonably necessary to fulfill their limited obligations hereunder. Borrower understands that this is a condition precedent of the Current Loan.

7. **Cross Collateralization.** The Parties agree and acknowledge that a condition precedent of the Current Loan is the cross-collateralization of the Existing Indebtedness and Existing Security Documents. Borrower hereby irrevocably grants, conveys, and assigns to Lender the Existing Security Documents to secure to Lender payment of the Current Loan and performance of the covenants and agreements contained in any of the loan documents executed in conjunction herewith, as well as to secure to Lender payment of the Current Loan and performance of the covenants and agreements contained in any of the related loan documents. This provision shall specifically survive the closing of the Current Loan.

Borrower, Company, MTF and Guarantor are jointly and severally liable for the payment of the Total Indebtedness. Lender, at its option, may treat the Current Loan and the Existing Indebtedness as separate and independent obligations of Borrower, or may treat some or all of the debt, and all or any part of the Total Indebtedness, as a single, integrated indebtedness of Borrower.

8. **Purchase of Credit Line.** Borrower has requested and Lender has agreed to deliver the Current Loan Amount as follows: Lender shall purchase a CD in Lender's name from First State Bank of the Florida Keys in the amount of One Million Dollars ($1,000,000.00), so that a letter of credit can be obtained on behalf of Sherwood Construction, Inc.

9. **Consolidated Note.** Interest shall be charged and repaid in accordance with the Note, which shall include but not be limited to the following terms:

5

a. The Note shall be consolidated to represent the total amount of funds being loaned on this date, which shall consist of the following:

   o The Future Advance amount of $400,000, which is secured by the Land, and
   o The Current Loan in the amount $600,000, which is secured by the Option Property, and additional collateral set forth above.

b. The Interest Rate on the Note shall be 12% per annum. Monthly payments based upon monthly interest rate of ONE PERCENT (1%) based on the outstanding principal balance of the Loan shall be due on the 1st of each consecutive month.

c. The Loan Fee of TWO PERCENT (2%) shall be paid at closing.

d. The Term of the Loan shall be twelve (12) months.

10. **Representations and Warranties**. Borrower, Company and MTF, when applicable, hereby represent and warrant to the Lender as follows:

   a. <u>Compliance and Authority.</u> Each party is in compliance with all laws, regulations, ordinances and have the full power and authority to consummate the transactions herein.

   b. <u>Organizational Documents.</u> All documents reflecting the organization of the Borrower (that have been given to Lender) have not been modified or amended and the organizational documents will not be in any manner materially changed, modified or altered without the prior written consent of Lender.

   c. <u>Other Agreements.</u> Neither party is a part of any agreement or instrument adversely affecting, to a material degree, its present or proposed business, properties, assets, operation or condition, financial or otherwise, and neither party is in default of the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument.

   d. <u>Other Financing</u>. Except for the First Mortgage, the Borrower has not received any other financing for the Land. Except for the First Mortgage, and the approximate outstanding balance thereon as of the date hereof, Borrower shall not obtain any additional financing for the Land, and shall not allow any liens or encumbrances of any kind to be filed against the Land.

   e. <u>No Event of Default</u>. No Event of Default exists under this Agreement, the Existing Security Documents, or the First Mortgage and no event has occurred and is continuing which, with notice or the passage of time or either, would constitute a default under any provision thereof. The Jetton Mortgage is expressly excluded from this provision.

11. **Affirmative Covenant.** Borrower, Company and MTF, when applicable, hereby covenant and agree that, from the date hereof and until all indebtedness and obligations incurred in connection with the Existing Indebtedness and the Current Loan shall have been paid, performed and discharged in full, Borrower, MTF and Company, when applicable, will:

6

a. <u>Payment of Costs and Taxes</u>. Promptly pay all costs and taxes incurred in connection with the Land when the same become due and payable.

b. <u>Performance of Obligations.</u>  Duly pay, perform and discharge all of its obligations hereunder, under the Security Documents.

c. <u>Compliance with Laws.</u> Promptly and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations and requirements or every governmental authority.

d. <u>Existence.</u>  Do all things necessary to preserve and maintain in full force and effect the existence as a company under the laws of the State of Florida.

e. <u>Hold Harmless.</u>  Defend, at its own cost, and hold Lender harmless from any action, proceeding or claim affecting the Land, the Option Property, the ROGOS Collateral, or other collateral held by Lender for the Loan.

12. **Negative Covenant.** Borrower, Company and MTF, when applicable, further covenant and agree that, from the date hereof and so for long as any of the Existing Indebtedness or the Current Loan shall not have been paid in full, as to both principal and interest, it will not:

a. <u>Other Financing.</u>  Obtain other financing in connection with the Land or the Option Property without the prior consent of Lender.

b. <u>Security Documents</u>.  Create, incur, assume or permit any assignment, lien, pledge or other encumbrance upon any of the Security Documents or any interest or equity therein, other than to Lender.

c. <u>Breach of Any Contract</u>. Commit any act, suffer or permit any act to occur which would, in any manner, give rise to the material breach of any term, covenant or condition on Borrower's part to be performed under any contract to which it is bound.

d. <u>Judgments.</u>  Permit any judgment obtained against Borrower or Company or MTF to remain unpaid for a period of thirty (30) days following the entry thereof.

13. **Default.** Events of Default.  The occurrence of any of the following shall constitute an Event of Default hereunder:

a. <u>Default in Payment.</u>  Borrower shall fail to make any payment required by the Note executed herewith or any Security Documents, without notice or demand.

b. <u>Performance of Covenants.</u>  Borrower and/or Company and/or MTF shall default in the due observance or performance of any covenant or agreement made by Borrower hereunder or under any other agreement between Borrower and Lender related to the Loan, including the Security Documents (other than payment of money) and such default shall continue for a period of fifteen (15) days after written notice thereof from the Lender to Borrower; or

7

c. <u>Breach of Warranty.</u> Any representation or warranty made by Borrower and/or Company and/or MTF hereunder, under any statement, instrument or certificate delivered by Borrower and/or Company, to Lender pursuant to the provisions hereof, under any other agreement between the Borrower and Lender, including the Security Documents, or otherwise, shall be determined by Lender to have been false or misleading in any material respect as of the date on which the same was made; or

d. <u>Default under Mortgage.</u> An event of default under the 650 Mortgage or any modification thereof shall occur and be continuing; or Borrower fails to timely pay the First Mortgage or performs any act in violation of the First Mortgage that would cause a default thereunder; or

e. <u>Failure to Pay Other Debts.</u> The Borrower fails to pay any other debt related to the Loan in a timely manner; or

f. <u>Execution of Security Agreements.</u> The Borrower executes any conditional bill of sale, chattel mortgage or other security instrument in favor of anyone other than Lender covering any of the collateral identified and secured hereunder.

14. <u>Remedies.</u> If an Event of Default shall occur and be continuing, Lender may, at its option:

a. <u>Acceleration.</u> Declare all amounts previously advanced to Borrower hereunder and under the Note, and all interest accrued and unpaid thereon, and all other amounts due under the Note and this agreement to be immediately due and payable without presentment, demand, protest or further notice of any kind (all of which hereby are expressly waived) and Lender may thereupon institute proceedings to collect the same and/or foreclose the 650 Mortgage.

b. <u>Enforcement of Security.</u> Exercise its rights and remedies under the Note, and any other agreement between Borrower and Lender, including the Security Documents, in accordance with the respective terms thereof.

## 15. <u>ADDITIONAL TERMS</u>

a. <u>Loan Expenses.</u> Borrower shall pay all costs and expenses in connection with the Loan including, but not limited to, broker's fees and commissions, attorneys' fees, documentary, intangible and other taxes, recording costs and expenses.

b. <u>Further Assurances.</u> Borrower and Lender agree that at any time, and from time and time, after the execution and delivery of this Agreement, it shall, execute and deliver such further documents and do such further acts and things in order to more fully effectuate the purposes of this Agreement.

c. <u>Governing Law.</u> This Agreement shall be governed by and be construed in accordance with the laws of the State of Florida.

**d.** <u>Severability</u>. In case any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity of the remaining provisions shall be in no way affected, prejudiced or disturbed thereby.

**e.** <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one agreement.

**f.** <u>Entire Agreement.</u> This Agreement contains the entire agreement between Lender and Borrower with respect to the subject matter hereof and supersedes and cancels any prior understandings and agreements among Lender and Borrower with respect to the subject matter hereof.

**g.** <u>Gender.</u> The use of any gender shall include all other genders. The singular shall include the plural and vice versa.

**h.** <u>Survival of Provisions.</u> All covenants, agreements, representations and warranties made in this Agreement and the documents delivered in support of the Loan shall be deemed to have been material and relied on by the Lender and shall survive the execution and delivery to the Lender of the Note, the Security Documents and the disbursement and advance of funds pursuant to the Loan.

**i.** <u>Conflict with Notes and Security Documents.</u> In the event of any conflict between the terms of the Note, the Security Documents, any documents representing the Existing Indebtedness, and this Agreement, the terms of this Agreement shall control and govern in all respects. Whenever possible, the provisions of this Agreement shall be deemed supplemental to and not in derogation of the Note and Security Documents.

**j.** <u>Exhibits.</u> All of the following exhibits annexed hereto are incorporated herein by reference and form a part of this Agreement.

    **i.** <u>**Exhibit A:**</u> Land
    **ii.** <u>**Exhibit B:**</u> Option Property

**k.** <u>Related Documents.</u> The following documents have been referenced herein, and shall be executed herewith. The Parties agree that the following documents are incorporated herein by reference and form a part of this Agreement.

    **i.** Second Modification of Mortgage (future advance of $400,00)
    **ii.** Note (representing the Current Loan Amount of $1,000,000)
    **iii.** Restated Option Agreement (27 Properties–Homemakers/IMQA signature)
    **iv.** Assignment of Jetton Mortgage (IMQA signature)

**l.** <u>Headings.</u> The headings of the articles, sections and subsections of this Agreement are for convenience and reference only and shall not be considered a part hereof nor shall they be deemed to limit or otherwise affect any of the terms or provisions hereof.

<div align="center">9</div>

**(Signature lines on following page)**

10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

| | |
|---|---|
| Signed, sealed and delivered | **BORROWER:**<br>**SHERWOOD CONSTRUCTION, INC.** |
| in our presence: | |

Printed name: David Ruiz

Printed name: Jeff N. Povlach

By: Martin C. Flynn, President

Signed, sealed and delivered
in our presence:

**650 85th LLC**

Printed name: David Ruiz

Printed name: Jeff N. Povlach

By: Martin C. Flynn, Member

Signed, sealed and delivered
in our presence:

**MTF Holdings, LLC**

Printed name: David Ruiz

Printed name: Jeff N. Povlach

By: Martin C. Flynn, Member

11

Signed, sealed and delivered
in our presence:

**GUARANTOR**

Printed name: David Kviz

Printed name: Joe N Provenza

By: Martin C. Flynn, individually

**ACKNOWLEDGED AND AGREED BY LENDER**

**LENDER: PEDIXON LLC**

By: Kenneth G. Dixon, Manager

12

EXHIBIT A – LAND
(Monroe County)

Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.

13

## EXHIBIT B
## OPTION PROPERTY
(consisting of 27 condominium and/or townhomes)

The land referred to herein below is situated in the County of BREVARD, State of FL, and described as follows:

Condominium Unit 103, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 104, CAPE CROSSING, a Condominium, together with an undivided Interest in the time elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 107, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 202, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 203, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 204, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 205, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 207, CAPE CROSSING, a Condominium, together with an undivided Interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

14

Condominium Unit 303, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 305, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 307, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 402, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 403, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 404, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 407, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 503, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 504, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 505, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded in Official Record

15

Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Condominium Unit 507, CAPE CROSSING, a Condominium, together with an undivided interest in the common elements, according to the Declaration of Condominium thereof recorded In Official Record Book 8418, Page 1832, as amended from time to time, of the Public Records of BREVARD County, Florida.

Building #2 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows: Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 58.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 121.30 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 52.67 feet; thence S79°58'00"W, a distance of 21.00 feet; thence N10°02'00"W, a distance of 70.00 feet; thence N79°58'00"E, a distance of 12.33 feet; thence S10°02'00"E, a distance of 17.33 feet; thence N79°58'00"E, a distance of 8.67 feet to the Point-of-Beginning.

Building #2 Unit 102

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, Public Records of Brevard County, Florida, and being more particularly described as follows: Commence at the intersection of the Westerly right-of-way line of North Courtenay Parkway and the South Property Line of the Canaveral Port Authority (described as the Point-of-Beginning in Official Records Book 6212, Page 2393, aforesaid Public Records); thence S79°58'00"W, along the South line of the Canaveral Port Authority, a distance of 79.85 feet; thence S10°02'00"E, perpendicular to said South line of the Canaveral Port Authority, a distance of 103.97 feet to the Point-of-Beginning; thence continue S10°02'00"E, a distance of 70.00 feet; thence S79°58'00"W, a distance of 20.67 feet; thence N10°02'00"W, a distance of 52.67 feet; thence N79°58'00"W, a distance of 8.33 feet; thence N10°02'00"W, a distance of 17.33 feet; thence N79°58'00"E, a distance of 12.33 feet to the Point-of-Beginning.

16

Building # 5 Unit 101

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, page 2520 Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the Intersection of the Westerly Right-of-Way line of North Courtenay Parkway and the South property line of the Canaveral Port Authority (Described as the Point of Beginning in Official Records Book 6212, page 2393, aforesaid Public Records); thence South 79°58'00" West, along the South line of the Canaveral Port Authority, a distance of 172.97 feet to a Point; thence continuing along said South property line, South 82°14'00" West, a distance of 289.71 feet; thence South 07°46'00" East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the Point of Beginning; thence continue South 07°46'00" East, a distance of 52.67 feet; thence South 82°14'00" West, a distance of 21.00 feet; thence North 07°46'00" West, a distance of 70.00 feet; thence North 82°14'00" East, a distance of 12.33 feet; thence South 07°46'00" East, a distance of 17.33 feet; thence North 82°14'00" East, a distance of 8.67 feet to the Point of Beginning.

Building # 5 Unit 103

A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, page 2520 Public Records of Brevard County, Florida, and being more particularly described as follows:

Commence at the intersection of the Westerly Right-of-Way line of North Courtenay Parkway and the South property line of the Canaveral Port Authority (Described as the Point of Beginning in Official Records Book 6212, page 2393, aforesaid Public Records); thence South 79°58'00" West, along the South line of the Canaveral Port Authority, a distance of 172.97 feet to a Point; thence continuing along said South property line, South 82°14'00" West, a distance of 331.38 feet; thence South 07°46'00" East, perpendicular to said South line of the Canaveral Port Authority, a distance of 148.30 feet to the Point of Beginning; thence continue South 07°46'00" East, a distance of 52.67 feet; thence South 82°14'00" West, a distance of 20.67 feet; thence North 07°46'00" West, a distance of 70.00 feet; thence North 82°14'00" East, a distance of 12.33 feet; thence South 07°46'00" East, a distance of 17.33 feet; thence North 82°14'00" East, a distance of 8.33 feet to the Point of Beginning.

Building #7 Unit 101
A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows: Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 199.41

17

feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

Building #7 Unit 103
A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows: Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 157.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 131.33 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 52.67 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 70.00 feet; thence S00°27'47"E, a distance of 12.33 feet; thence N89°32'13"E, a distance of 17.33 feet; thence S00°27'47"E, a distance of 8.67 feet to the point-of-beginning.

Building #8 Unit 101
A parcel of land lying in Section 11, Township 24 South, Range 36 East, Tallahassee Base Meridian, Brevard County, Florida, being a part of the lands as described in Official Records Book 6890, Page 2520, public records of Brevard County, Florida, and being more particularly described as follows: Commence at the Southwest corner of aforesaid Section 11, Township 24 South, Range 36 East (Department of Natural Resources Certified Section Corner No. 22981 C); thence N00° 27'47"W, along the West line of said Section 11, a distance of 126.39 feet to a 5/8 inch iron rod stamped D.O.T marking the intersection of the North right-of-way line of Marine Harbor Drive at the Southwest corner of the lands as described in Official Records Book 6890, Page 2520, aforesaid public records of Brevard County, Florida; thence continue N00°27'47"W, along said West line of Section 11, a distance of 121.74 feet; thence N89°32'13"E, perpendicular to said line, a distance of 114.00 feet to the point-of-beginning; thence continue N89°32'13"E, a distance of 70.00 feet; thence N00°27'47"W, a distance of 21.00 feet; thence S89°32'13"W, a distance of 52.67 feet; thence S00°27'47"E, a distance of 8.67 feet; thence S89°32'13"W, a distance of 17.33 feet; thence S00°27'47"E, a distance of 12.33 feet to the point-of-beginning.

18

**Building 8 Unit 104**

A PARCEL OF LAND LYING IN SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST, TALLAHASSEE BASE MERIDIAN, BREVARD COUNTY, FLORIDA, BEING A PART OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHWEST CORNER OF AFORESAID SECTION 11, TOWNSHIP 24 SOUTH, RANGE 36 EAST (DEPARTMENT OF NATURAL RESOURCES CERTIFIED SECTION CORNER NO. 22981 C); THENCE N00° 27'47"W, ALONG THE WEST LINE OF SAID SECTION 11, A DISTANCE OF 126.39 FEET TO A ⅝ INCH IRON ROD STAMPED D.O.T MARKING THE INTERSECTION OF THE NORTH RIGHT-OF-WAY LINE OF MARINE HARBOR DRIVE AT THE SOUTHWEST CORNER OF THE LANDS AS DESCRIBED IN OFFICIAL RECORDS BOOK 6890, PAGE 2520, AFORESAID PUBLIC RECORDS OF BREVARD COUNTY, FLORIDA; THENCE CONTINUE N00° 27'47"W, ALONG SAID WEST LINE OF SECTION 11, A DISTANCE OF 59.41 FEET; THENCE N89° 32'13"E, PERPENDICULAR TO SAID LINE, A DISTANCE OF 131.33 FEET TO THE POINT-OF-BEGINNING; THENCE CONTINUE N89° 32'13"E, A DISTANCE OF 52.67 FEET; THENCE N00° 27'47"W, A DISTANCE OF 21.00 FEET; THENCE S89° 32'13"W, A DISTANCE OF 70.00 FEET; THENCE S00° 27'47"E, A DISTANCE OF 12.33 FEET; THENCE N89° 32'13"E, A DISTANCE OF 17.33 FEET; THENCE S00° 27'47"E, A DISTANCE OF 8.67 FEET TO THE POINT-OF-BEGINNING.

CONTAINING 1319.8 SQUARE FEET, MORE OR LESS, AND BEING SUBJECT TO ANY EASEMENTS AND/OR RIGHTS-OF-WAY OF RECORD.

19

Filed and Recorded in Official Records of MONROE COUNTY KEVIN MADOK 02/06/26    Page 105 of 112
ElectronicallyREC: $35.50  Mtg Doc Stamp $1,400.00 Intangible Tax $800.00

Case 6:26-bk-00399-LVV    Doc 81    Filed 05/19/26    Page 246 of 267

Prepared By and Return To:
Alison Pitkanen, Esquire
10524 Moss Park Road, Suite 204-101
Orlando, FL 32832

## MORTGAGE MODIFICATION AGREEMENT

### (Future Advance in the amount of $400,000.00)

THIS AGREEMENT (referred to hereafter as the "Agreement"), made effective as of the 14th day of December 2022 ("Effective Date"), by and between 650 85TH LLC, a Florida limited liability company (referred to as the "Mortgagor") and PEDIXON LLC, a Florida limited liability company (the "Mortgagee").

Pedixon LLC may be herein referred to as the Lender, and 650 85TH LLC may be herein referred to as Obligor.

WITNESSETH:

**WHEREAS,** all recording references contained in this Agreement are to the Public Records of Monroe County, Florida; and

**WHEREAS,** Mortgagor executed a mortgage recorded in Official Records Book 3158, Page 183, and a subsequent mortgage modification recorded in Official Records Book 3199 Page 1140 (collectively referred to herein as the "Mortgage"), encumbering certain real property ("Property") located in Monroe County, Florida, and more particularly described as follows:

> **Lot 9, SUNNY ISLE, according to the plat thereof, as recorded in Plat Book 4, Page 52, Public Records of Monroe County, Florida.**

**WHERAS,** said Mortgage is security for a credit accommodation represented by that Loan Agreement dated January 28, 2022, representing a loan in the amount FIVE HUNDRED THOUSAND DOLLARS AND NO/CENTS, together with all other related loan and security documents executed of even date therewith (the "Credit Accommodation").

**WHERAS,** Mortgagor is an Obligor under the Credit Accommodation and is responsible for the repayment of that certain original promissory note dated January 28, 2022, in the original principal amount of $500,000.00, and that certain Future Advance Allonge evidencing an advance of funds in the amount of $250,000 (collectively the "Note").

**WHEREAS,** Mortgagor is the owner of the Property encumbered by the Mortgage, and Lender is the owner and holder of the Credit Accommodation, the Note and Mortgage, and is the secured party under the Credit Accommodation and the related loan and security documents, including but not limited to the loan agreement, executed on January 28, 2022.

**WHEREAS,** the total outstanding balance of the Note, as of the date hereof, is $600,000.00.

**WHEREAS,** Lender has agreed to provide a **future advance** under the terms of the Mortgage in the amount of FOUR HUNDRED THOUSAND DOLLARS AND NO/CENTS **($400,000.00)** which shall be evidenced by a promissory note and security and cross-collateralization of the Credit Accommodation on this date.

1



EXHIBIT

G

## AGREEMENT:

**NOW, THEREFORE,** in consideration of the covenants and agreements hereinafter set forth and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and legal sufficiency of which each party acknowledges, the parties hereto do hereby agree as follows:

1.       The recitals hereinabove contained are true and correct, affirmed and are made a part hereof and incorporated herein by reference.

2.       This Agreement evidences a future advance made by the Lender pursuant to the future advance provision of the Mortgage. It is agreed that this future advance is evidenced by the loan and security documents executed on this date, and shall relate back to recordation of the Mortgage.

3.       The Obligor agrees to pay the indebtedness in accordance with the terms of the loan documents executed of even date herewith, and any renewals, modifications, extensions or consolidations thereof.

4.       That, as of the Effective Date, the relevant terms of the Mortgage are modified accordingly, and in exchange, therefore, the related loan documents have been executed on this date.

5.       Obligor agrees that all documentary stamp taxes, intangible taxes, title insurance premiums, title search and examination charges, recording fees, and all other costs whatsoever incurred with respect to this Loan, or the subject matter hereof, shall be paid by Obligor promptly and on demand; and if at any time the State of Florida shall determine that the intangible tax or documentary stamp tax paid in connection with this Loan, as modified hereby, or any documentation executed in connection therewith is insufficient for any reason whatsoever, Obligor shall pay for same upon such determination, together with all interest and penalties imposed in connection therewith.

6.       Obligor does hereby for itself and each of them and for their respective legal representatives successors, predecessors and assigns (jointly and severally "Releasors"), waive any claim or defenses which they or any of them now have or might hereafter have with respect to the Note and Mortgage, as hereby modified, or by virtue of any claims or defenses in any civil proceedings or otherwise, brought or asserted by Lender or Releasors or by a third party in each case by reason of any act, matter, contract, agreement, or thing whatsoever from the beginning of time up, and to and through the date of the Agreement, as of the date this Agreement is notarized as to the last signatory hereto.

7.       Obligor hereby represents and warrants to Lender that all representations and warranties previously made by Obligor in connection with the Mortgage and Note are true and correct, and incorporated herein by this reference.

8.       Obligor hereby ratifies and confirms that all the terms, covenants, conditions, warranties, representations and agreement contained in the Mortgage and the Loan Documents as modified herein, and shall remain in full force and effect as modified by this Agreement.

9.       Obligor represent and warrants to Lender that Obligor has filed no petition for an order for relief under Title 11 of the U.S. Code, as amended, and that, to the best of Obligor's knowledge, Obligor is not the subject of any petition for an order for relief under any applicable bankruptcy or insolvency laws; and Obligor has not made any assignments for the benefit of creditors under any applicable state laws.

10.       Any misrepresentation or breach of warranty or covenant of Obligor contained under this Agreement or any of the Loan Documents shall constitute a default under the terms of each of the Loan Documents.

11.       All the terms, covenants and conditions herein contained are and shall be binding on, and shall enure to the benefit of Lender and its successors and assigns.

12.       All covenants, agreements, acknowledgements, waivers and/or releases herein made or granted by Obligor shall be binding upon Obligor and its successors and assigns and the terms of this Agreement shall inure to the benefit of Obligor and its permitted successors and assigns.

2

13. This Agreement shall be construed under Florida law and shall not be construed more strictly against one party than against the other merely by virtue of the fact it may have been prepared by counsel for one of the parties, it being recognized that this is a negotiated document and that the parties have each contributed materially to the content hereof.

14. In the event any provision, paragraph, sentence, clause, phrase or word is deemed invalid or unenforceable, then to the extent that the remaining portions of this Agreement and such provision, paragraph, sentence, clause, phrase or word is valid and enforceable, it shall remain in full force and effect.

15. That, in the event of any default under the terms and conditions of this Agreement or any other instrument referred to herein or contemplated hereby, the entire principal balance amount represented by the Loan Documents together with all accrued interest and charges, shall, at Lender's option, become immediately due and payable.

16. That the terms, liens and operations of the Note and Mortgage are ratified and confirmed in all other respects not inconsistent with the provisions of this Agreement and shall continue in full force and effect, except as specifically modified by the terms hereof.

17. Any notice, demand or request which any party may be required or may desire to give hereunder shall be deemed duly given if personally delivered or sent by United States certified mail, return receipt requested, postage prepaid, and delivered or addressed to the respective party at the addresses set forth below:

PEDIXON LLC  
1627 East Vine Street, Suite E  
Kissimmee, FL 34744

650 85TH LLC  
518 South Magnolia Ave., Suite 110  
Orlando, Florida 32801

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

MORTGAGOR:

650 85TH LLC, a Florida limited liability company

WITNESSES:

Printed name: David Ruiz

By: Martin C. Flynn, Jr., Member

Printed name: _____

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, this 14th day of December 2022 by Martin C. Flynn, Jr., as Member of 650 85th LLC, a Florida limited liability company, who is personally known to me or produced _____License_____ as identification.

SEAL

Notary Public-State of _Florida_

Janelle Morea
Notary Public
State of Florida
Comm# HH077342
Expires 1/5/2025

**DOCUMENTARY STAMPS ON THE NOTE AND INTANGIBLE TAX ON THE MORTGAGE IN THE AMOUNTS REQUIRED BY LAW HAVE BEEN PAID IN FULL UPON THE OCCASION OF THE MAKING OF THE ORIGINAL NOTE AND IN CONNECTION WITH THE RECORDATION OF THAT CERTAIN MORTGAGE RECORDED IN O.R. BOOK 3158 AT PAGE 183 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA.**

**DOCUMENTARY STAMPS ON THE FUTURE ADVANCE ALLONGE AND INTANGIBLE TAX ON THE MORTGAGE MODIFICATION REFLECTING A FUTURE ADVANCE AMOUNT OF $400,000.00 SHALL BE AFFIXED HERETO.**

4

**ALISON PITKANEN LAW FIRM LLC**
**1980 N. Atlantic Ave, Suite 328, Cocoa Beach, FL 32931**
**Phone: (407) 449-0037**
**Email: alisonpitkanen@gmail.com**

December 20, 2023

Tiered Capital, Inc.

Sent Via Email to: Martin C. Flynn, Jr., Horton S. Johnson and Yaniv Amar
martyf@sherwoodconstruction.net; wjohnsonbbf@gmail.com; yamarllc@gmail.com

RE: PEDIXON LLC ("PEDIXON") loan to Tiered Capital, Inc. ("Tiered") as consolidated in September 2023 (the "Consolidated Loan") for a total loan amount of Ten Million Six Hundred Twenty-Five Thousand Dollars and No/Cents ($10,625,000) (the "Total Loan Amount").

Dear Gentlemen:

This shall serve as notice that the Consolidated Loan, and all its underlying loans, are currently in default. Please be advised that the following individuals are each **personally liable** for payment of the Total Loan Amount: Martin C. Flynn, Jr. ("Flynn"), Horton S. Johnson ("Johnson") and Yaniv Amar ("Amar").

There have been several defaults under the Consolidated Loan regarding non-payment of indebtedness, termination of the leases and management of the depository accounts. Ultimately, Tiered has failed to pay PEDIXON the November 2023 and the December 2023 payments; and all of the payments made with the rents generated from Cape Crossing Vacations Rentals, LLC since November 1, 2023 are an express violation of the Consolidated Loan.

IMQA Investments Incorporated ("IMQA") has been notified as a guarantor under the Consolidated Loan, and it has agreed to work with PEDIXON in its efforts to enforce the Consolidated Loan.

Consequently, from this date forward, PEDIXON will have exclusive control over the income generated from Beachside Vacation Rentals, LLC ("Beachside") for its rental of the twenty-seven condominiums and townhomes subject to the Consolidated Loan. Beachside has already been notified, and it has agreed to deliver all rental monies directly to Alison Pitkanen Law Firm for the benefit of PEDIXON. All Tiered agents and employees should be notified immediately to ensure there is no longer any apparent confusion over the management of the rental monies generated from these units.

In addition, please be advised that PEDIXON is further exploring all options under the Consolidated Loan, which include, but are not limited to the following remedies. You will be notified accordingly depending on how PEDIXON chooses to proceed.

- Enforcement of Flynn's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Enforcement of Johnson's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Enforcement of Amar's personal guaranty in its collection of the Total Loan Amount of $10,625,000.
- Acceleration of the interest rate to 25%
- Sale of all condominiums and townhomes
- Sale of the real estate of 650 85TH, LLC
- Sale of the stock and the real and personal property of Holly Bluff Marina, Inc.
- Sale of the stock and the real and personal property of Recycled Group of South Carolina, LLC

If you have any questions regarding this matter, please feel free to contact me.

Respectfully,

Alison Pitkanen, Esquire
CAC153A5D9D644D...

cc: IMQA

**EXHIBIT**

H

**From:** Alison Pitkanen
**Sent:** Friday, January 24, 2025 3:55 PM
**To:** Marty Flynn; Woody Johnson; Marty Flynn
**Subject:** PEDIXON loan to Tiered Capital, Inc., et al - Acceleration Notice

Marty C. Flynn, Jr. & Tracy Hester Flynn
14255 Saint Georges Hill Drive
martyf@sherwoodconstruction.net
mcflynn@me.com

Delivered via email and regular mail

Horton S. Johnson
2523 Kissam Court
Belle Isle, FL 32809
wjohnsonbbf@gmail.com

Delivered via email and regular mail

Yaniv Amar
3475 Mystic Pointe Drive, #10
Aventura FL 33180

Delivered via regular mail

January 24, 2025

RE:    PEDIXON LLC and ZPD LLC (collectively, the "Lender") loan to Tiered Capital, Inc., Sherwood Construction et. al. (collectively referred to as "Tiered") and more particularly consolidated in September 2023 and subsequesntly modified in October 2023  (all loans, both separately and consolidated, are individually and collectively referred to as the "Loan")

**EXHIBIT**

1

Gentlemen,

I wanted to reach out with an update regarding this Loan while I am still able to do so.

PEDIXON LLC has accelerated the interest rate under the Loan, effective February 1, 2024.

The outstanding principal balance of the Loa is $8,150,000.
The total amount of accrued unpaid interest is $1,552,376.
The total payoff of the Loan is currently $9,702,376.

I have identified below all of the guarantors and obligors under the Loan.

**Opportunity to Cure.**

My records reflect that default notification was provided in January 2024, and again, in June 2024. Since February 1, 2024, the defaults have continued to accumulate. This correspondence should also serve to provide you with a formal opportunity to cure the defaults under the Loan. The Lender provides you with fifteen days from the date hereof to do so.

As you may recall, in January 2024, Mr. Johnson relinquished control of the membership units in Homemakers Real Estate, LLC; and in exchange therefor, the Lender did not pursue legal action against him personally at the time. It is my understanding that no other steps have been taken to cure any of the defaults since January 2024.

**Defaults.**

There are numerous monetary and non-monetary defaults under the loan. I want to bring your attention to the following most significant defaults:

- Certificate of Deposit. In August 2024, the Lender received notice that Sherwood Construction Inc. allowed First State Bank to seize a significant piece of collateral represented by a One Million Dollar certificate of deposit. The First State Bank correspondence detailing the seizure is attached for reference. This collateral has not been replaced or replenished.

  The Lender has requested that Mr. Flynn (on behalf of 650 85TH LLC) transfer the real property located in Marathon Florida unto the Tiered Land Trust. A good-faith gesture such as this would have shown a willingness to cooperate; but the property was never transferred.

- Association Dues. Crescent Sound Ltd., as Trustee of the Tiered Land Trust, recently received notification from Keystone Management Group requesting payment of delinquent association dues. It is my understanding that payments continue to be delinquent. Attached is the detailed accounting of amounts due.

- Maturity. All Loans, except for the October 2023 Flynn Substitution Loan ($750,000), matured in 2024. The entire unpaid principal balances of the matured loans, including interest and fees, have been due and payable.

Note: The referenced defaults are in addition to numerous other defaults under the Loan.


**Conclusion.**

If you have any interest in resolving this in an amicable manner, please let me know.

I will not be involved in any legal action to foreclose upon or seize assets and properties, personal or otherwise. I have advised the Lender to procure separate legal counsel to enforce its rights and remedies under the Loan; and it is my understanding that it has done so. Notwithstanding, the Lender remains open to resolving this amicably with you.

I urge you to consult with legal counsel as soon as possible before this escalates even further.

**Obligors & Guarantors.** Here is a list of obligors and guarantors under the Loan.

> Horton S. Johnson, individually
> Martin C. Flynn, Jr., individually
> Tracy Hester Flynn, individually
> Tiered Capital, Inc., a Florida corporation
> Sherwood Construction, Inc.
> Horton S. Johnson Revocable Trust dated August 3, 2012
> MTF Holdings, LLC, a Florida limited liability company
> WM Holdings LLC, a Florida limited liability company
> 65 85TH ST LLC, a Florida limited liability company
> Florida Space Coast Resorts, Inc., a Florida corporation
> Canaveral Crossroads, LLC
> A Marine, Inc., a Florida corporation
> Cape Crossing Vacation Rentals, LLC, a Florida limited liability company
> Holly Bluff Marina, Inc,, a Florida corporation
> Recycled Group of South Carolina, LLC, a South Carolina limited liability company
> Canaveral Crossroads, LLC

If you have any questions, please feel free to contact me to discuss. I am happy to answer questions for as long as I can. Once litigation counsel steps in, I will have to defer you to them.

Thank you,
Alison

Alison Pitkanen, Esquire
1980 N. Atlantic Ave, Suite 230-328
Cocoa Beach FL 32931
Cell (407) 449-0037

IMPORTANT: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message.

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR OSCEOLA COUNTY, FLORIDA

PEDIXON LLC, a Florida limited liability company, and ZPD LLC, a Florida limited liability company

    Plaintiffs,

vs.

MARTIN C. FLYNN, JR., MTF HOLDINGS, LLC, a Florida limited liability company, 650 85TH LLC, a Florida limited liability company, SHERWOOD CONSTRUCTION, INC., a Florida corporation, CAPE CROSSING VACATION RENTALS, LLC, a Florida limited liability company, HORTON S. JOHNSON, HORTON S. JOHNSON REVOCABLE TRUST DATED AUGUST 3, 2012, YANIV AMAR, A. MARINE, INC., a Florida corporation, RECYCLED GROUP OF SOUTH CAROLINA, LLC, a South Carolina limited liability company, HOLLY BLUFF, INC., a Florida corporation, and IMQA INVESTMENTS, INCORPORATED, a Florida corporation,

    Defendants.

Case No. _____

## **COMPLAINT FOR DAMAGES FOR BREACH OF GUARANTIES**

Plaintiffs, PEDIXON LLC, a Florida limited liability company ("**PEDIXON**") and ZPD LLC, a Florida limited liability company ("**ZPD**"), by and through its undersigned counsel, hereby sues Defendants, Martin C. Flynn, Jr.

5672071.v1


EXHIBIT
M

("**Flynn**"), MTF Holdings, LLC, a Florida limited liability company ("**MTF**"), 650 85th LLC, a Florida limited liability company ("**650**"), Sherwood Construction, Inc., a Florida corporation ("**Sherwood**"), Cape Crossing Vacation Rentals, LLC, a Florida limited liability company ("**Cape Crossing**"), Horton S. Johnson ("**Horton**"), Horton S. Johnson Revocable Trust dated August 3, 2012 ("**Horton Trust**"), Yaniv Amar ("**Amar**"), A. Marine, Inc., a Florida corporation ("**A. Marine**"), Recycled Group of South Carolina, LLC, a South Carolina limited liability company ("**Recycled Group**"), Holly Bluff, Inc., a Florida corporation ("**Holly Bluff**"), and IMQA Investments, Incorporated ("**IMQA**") (collectively "**Guarantors**"), and alleges:

## Parties, Jurisdiction and Venue

1.    PEDIXON is a Florida limited liability company whose primary place of business is in Osceola County.

2.    ZPD is a Florida limited liability company whose primary place of business is in Osceola County.

3.    Flynn is an individual who resides in Orange County.

4.    MTF is a Florida limited liability company having its principal place of business in Orange County, Florida.

5.    650 is a Florida limited liability company having its principal place of business in Monroe, County, Florida.

2

5672071.v1

6. Sherwood is a Florida limited liability company having its principal place of business in Orange County, Florida.

7. Cape Crossing is a Florida limited liability company having its principal place of business in Orange County, Florida.

8. Upon information and belief Horton is an individual who resides in Orange County, Florida.

9. Horton is the Trustee of the Horton Trust, who upon information and belief resides in Orange County, Florida.

10. Amar is an individual who resides in Miami-Dade County, Florida.

11. A. Marine is a Florida corporation with its principal place of business in Miami-Dade County, Florida.

12. Recycled Group is a South Carolina limited liability company with its principal place of business in Miami-Dade County.

13. Holly Bluff is a Florida corporation with its principal place of business in Volusia County.

14. IMQA is a Florida corporation with its principal place of business in Orange County.

15. This is an action for breach of a guaranty against Guarantors, and the amount in controversy exceeds $50,000.00, exclusive of interest, cost, and attorneys' fees.

3

5672071.v1

16. Jurisdiction and venue is proper in Osceola County, Florida. The parties reside in the State of Florida or conduct business in the State of Florida, the transactions herein occurred in Florida, the relevant loan documents were signed in Florida and venue is proper in Osceola County because that is where the payments were due to be paid and where the breaches accrued.

## The Original Loans

17. In connection with a loan in the principal amount of $500,000 made by PEDIXON to Sherwood, on or about January 28, 2022, Sherwood signed a Promissory Note in the principal amount of $500,000 (the "**Original Sherwood Note**"). In accordance with the First Sherwood Note, PEDIXON loaned to Sherwood $500,000. On or about August 28, 2022, Sherwood, along with Mr. Flynn, individually, and Mrs. Flynn, individually, executed that certain Future Advance Allonge to Promissory Note (the "**Allonge**" and together with the Original Sherwood Note, the "**First Sherwood Note**"). A copy of the First Sherwood Note is attached hereto as **Exhibit "A"**.

18. PEDIXON is the holder of the First Sherwood Note.

19. In connection with a loan in the principal amount of $500,000 made by PEDIXON to Sherwood, on or about October 7, 2022, Sherwood signed a Promissory Note in the principal amount of $500,0000 (the "**Second Sherwood Note**"). In accordance with the Second Sherwood Note, PEDIXON loaned

4

5672071.v1

Sherwood $500,000. A copy of the Second Sherwood Note is attached hereto as **Exhibit "B."**

20. PEDIXON is the holder of the Second Sherwood Note.

21. In connection with a loan in the principal amount of $1,000,000 made by PEDIXON to Sherwood, on or about December 14, 2022, Sherwood signed a Promissory Note in the principal amount of $1,000,0000 (the **"Third Sherwood Note"**). In accordance with the Third Sherwood Note, PEDIXON loaned to Sherwood $1,000,000. A copy of the Third Sherwood Note is attached hereto as **Exhibit "C."**

22. PEDIXON is the holder of the Third Sherwood Note.

23. In connection with a loan in the principal amount of $500,000 made by PEDIXON to Sherwood, on or about February 2023, Sherwood signed a Promissory Note in the principal amount of $500,000 (the **"Fourth Sherwood Note"** and collectively with the First Sherwood Note, the Second Sherwood Note and the Third Sherwood Note, the **"Sherwood Notes"**). A copy of the Fourth Sherwood Note is attached hereto as **Exhibit "D."**

24. PEDIXON is the holder of the Fourth Sherwood Note

25. In connection with a loan in the principal amount of $3,000,000 made by PEDIXON to Florida Space Coast Resorts, Inc. (**"Space Coast"**), on or about June 12, 2023, Space Coast executed a Promissory Note in the principal amount of

5

$3,000,000 (the "**Space Coast Note**"). A copy of the Space Coast Note is attached hereto as **Exhibit "E."**

26.     PEDIXON is the holder of the Space Coast Note.

27.     In connection with a loan in the principal amount of $125,000 made by PEDIXON to Flynn, on or about July 28, 2023, Flynn executed a Promissory Note in the principal amount of $125,000. (the "**Flynn Note**"). A copy of the Flynn Note is attached hereto as **Exhibit "F."**

28.     PEDIXON is the holder of the Flynn Note.

29.     The Sherwood Notes, Space Coast Note, and Flynn Note shall be referred to herein collectively as the "**Initial PEDIXON Notes.**"

30.     In connection with a loan in the principal amount of $1,300,000 made by ZPD to Recycled Group, on or about August 12, 2022, Recycled Group executed a Promissory Note in principal amount of $1,300,000 (the "**ZPD Note**"). A copy of the ZPD Note is attached hereto as **Exhibit "G."**

31.     ZPD is the holder of the ZPD Note.

### The Loan to Tiered Capital, Inc. ("TC")

32.     As of September 2023, each of the loans evidenced by the ZPD Note and the Initial PEDIXON Notes were in default. The borrowers, under the ZPD Note and Initial PEDIXON Notes sought to reinstate their respective loan obligations, and related entities and individuals sought additional funding. On September 14, 2023,

6

5672071.v1

Pedixon, ZPD, and the Guarantors, among other, entered into a Loan Agreement. A copy of the Loan Agreement is attached hereto as **Exhibit "H."**

33.     By way of the Loan Agreement, PEDIXON agreed to make a loan in the principal amount of $750,000 to Tiered Capital, Inc. (the "**TC Loan**"). To induce PEDIXON to make the TC Loan and due to the defaults of the ZPD Note and Initial PEDIXON Notes, the parties, among other things, consolidated all prior loan accommodations and the TC Loan (the "**Tiered Loan**").

34.     In addition, by way of the Loan Agreement, the parties agreed that upon the closing of the Tiered Loan, the outstanding indebtedness under the Tiered Loan as evidenced by the ZPD Note and PEDIXON Notes totaled Eleven Million Seventy-Five Thousand Dollars and No/Cents ($11,075,000). [1]

35.     On or about September 18, 2023, TC executed that certain Promissory Note in the principal amount of $750,000 in favor of PEDIXON as lender (the "**TC Note**"). In accordance with the TC Note, PEDIXON loaned TC $750,000. A copy of the TC Note is attached hereto as **Exhibit "I."**

36.     The TC Note, Sherwood Notes, Space Coast Note, and Flynn Note shall be referred to herein collectively as the "**PEDIXON Notes.**"

---

[1] The Amendments to the Loan Agreement include a "Joinder by Guarantors" signed by Guarantors pursuant to which they jointly and severally agreed to join in the execution of the Amendment, acknowledged they had read the entire Loan Agreement as amended, and were bound by the terms therein relating to them.

7

5672071.v1

37.    Pursuant to the Loan Agreement, TC and Guarantors, jointly and severally, are primarily obligated to timely make the required payments under the Tiered Loan, including the ZPD Note and PEDIXON Notes.

38.    In September 2023, as inducement for PEDIXON and ZPD to make and agree to the terms of the Tiered Loan, Flynn, MTF Holdings, LLC, 650 85th, Cape Crossing Vacation Rentals, LLC, and Sherwood, executed and delivered to Plaintiff a Guaranty Agreement, in which they unconditionally, irrevocably, absolutely, and jointly and severally, guaranteed the full payment to Plaintiff of all indebtedness owed under the Tiered Loan. (the "**Flynn Guaranty**"). A true and correct copy of the Flynn Guaranty is attached hereto as **Exhibit "J."**

39.    In September 2023, as inducement for PEDIXON and ZPD to make and agree to the terms of the Tiered Loan, Amar, A. Marine, Inc., Holly Bluff, Inc., and Recycled Group, executed and delivered to PEDIXON a Guaranty Agreement, in which they unconditionally, irrevocably, absolutely, and jointly and severally, guaranteed the full payment to Plaintiff of all indebtedness owed under the PEDIXON Notes and ZPD Note (the "**Amar Guaranty**"). A true and correct copy of the Amar Guaranty is attached hereto as **Exhibit "K."**

8

5672071.v1

40. In September 2023, as inducement for PEDIXON and ZPD to make and agree to the terms of the Tiered Loan, Homemakers Real Estate, LLC[2], the Horton Trust, and Johnson executed and delivered to PEDIXON a Guaranty Agreement, in which they unconditionally, irrevocably, absolutely, and jointly and severally, guaranteed the full payment to Plaintiff of all indebtedness owed under the PEDIXON Notes and ZPD Note (the "**Johnson Guaranty**" and collectively with the Flynn Guaranty and the Amar Guaranty, the "**Guaranties**"). A true and correct copy of the Amar Guaranty is attached hereto as **Exhibit "L."**

41. On October 24, 2023, the Tiered Loan was modified (the "**Modification**" and along with the Initial Loan Agreement, the "**Loan Agreement**"). Each of the Guarantors (except IMQA – see below) signed the Modification acknowledging they are Obligors and Guarantors of the Tiered Loan. A copy of the Modification is attached hereto as **Exhibit "M."**

42. On September 18, 2023, IMQA executed that certain IMQA Agreement and agreed to guaranty the Tiered Loan. On June 10, 2024, IMQA signed an acknowledgement that the Tiered Loan was in default and that it guaranteed the obligations due thereunder (collectively, with the IMQA Agreement, the "**IMQA**

---

[2] Homemakers Real Estate, LLC, recently filed a bankruptcy petition in the Bankruptcy Court for the Middle District of Florida.

9

5672071.v1

Guaranty"). A copy of the IMQA Guaranty is attached hereto as **Composite Exhibit "N."**

43.     The Tiered Loan fell into default and all of the Guarantors were served with a default notice on December 20, 2023 (the **"Default Notice"**). The defaults identified in the Default Notice were never cured. A true and correct copies of the Default Notice is attached hereto as **Exhibit "O."**

44.     In addition to Tiered Capital defaulting its obligations under the Tiered Loan, the Tiered Loan has fully matured under its own terms.

45.     As of the date of this Complaint, neither the borrowers nor the Guarantors have made the necessary payments to satisfy the amounts outstanding under the PEDIXON Notes or the ZPD Note. As a result, each of the Guarantors are in default of their respective Guaranty obligations.

46.     To date, despite Plaintiff's demands for payment from Guarantors, the outstanding amounts owed by PEDIXON under the PEDIXON Notes and ZPD Note remain outstanding.

47.     Guarantors are jointly and severally liable for the obligations under the Guaranties and are in default of the Guaranties by not paying the indebtedness owed under the PEDIXON Notes and ZPD Note.

48.     PEDIXON and ZPD are the lawful holders of the Loan Agreement (and the Modification) and the Guaranties.

5672071.v1

49.     Upon default, any unpaid indebtedness then evidenced by each of the PEDIXON Notes and the ZPD Note bears interest from the date of default at the maximum default interest rate permitted thereunder and Plaintiff does hereby demand all default interest.

50.     Upon default of each PEDIXON Note, PEDIXON is entitled to accelerate the entire balance due and, to the extent necessary, hereby accelerates and demands the entire amount due and the Guarantors are liable for this amount under the Guaranty.

51.     Upon default of each ZPD Note, ZPD is entitled to accelerate the entire balance due and, to the extent necessary, hereby accelerates and demands the entire amount due and the Guarantors are liable for this amount under the Guaranty.

52.     All conditions precedent to the maintenance of this action, including the payment of taxes due on the ZPD Note and PEDIXON Notes, have been performed, have occurred or have been waived.

53.     Plaintiffs have retained the law firm of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., agreeing to pay a reasonable fee for legal services rendered.

## COUNT I
### PEDIXON For Breach of Guaranties Against Guarantors

54.     PEDIXON hereby re-alleges paragraphs 1-29, and 32-53 above.

11

5672071.v1

55.    The Guaranties attached hereto as Exhibits are valid contracts between PEDIXON and Guarantors.

56.    The borrowers breached their obligations under the Loan Agreement, including but not limited to the PEDIXON Notes, for their failure to, among other things, make the required payments of the Tiered Loan, including principal, interest, default interest and applicable late charges and fees.

57.    To date, the outstanding amounts owed by the borrowers to Plaintiff under the PEDIXON Notes and guaranteed by Guarantors remains outstanding.

58.    Each of Guarantors defaulted under their respective Guaranty, for their failure to pay the required amounts due under the Tiered Loan and PEDIXON Notes, including the Loan Agreement, Modification, and the Note.

59.    Pursuant to the Guaranties, PEDIXON is entitled to recover its attorneys' fees and costs from the Guarantors.

## COUNT II
### ZPD For Breach of Guaranties Against Guarantors

60.    ZPD hereby re-alleges paragraphs 1-16 and 30-53 above.

61.    The Guaranties attached hereto as Exhibits are valid contracts between ZPD and Guarantors.

62.    TC breached its obligations under the Loan Agreement, including but limited to the ZPD Note, for its failure to, among other things, make the required

12

5672071.v1

payments of the Tiered Loan, including any principal, interest, default interest and applicable late charges and fees.

63.     To date, the outstanding amounts owed by TC to ZPD under the PEDIXON Notes and guaranteed by Guarantors remain outstanding.

64.     Each of Guarantors defaulted under their respective Guaranty, for their failure to pay the required amounts due under the Tiered Loan, the Modification and the ZPD Note.

65.     Pursuant to the Guaranties, ZPD is entitled to recover its attorneys' fees and costs from Guarantors.

WHEREFORE,

(a)     Plaintiff, PEDIXON LLC respectfully requests entry of a judgment against the Guarantors, for damages for breach of the Guaranties, including but not limited to, all amounts owed under the PEDIXON Notes, together with all accrued interest thereon at the rate set forth in the PEDIXON Notes, and all late charges, advances, fees, and costs of enforcement otherwise due and payable pursuant to the terms of the Guaranties, together with an award of attorneys' fees and costs, and such other relief as this Court may deem just and proper.

(b)     Plaintiff, ZPD LLC respectfully requests entry of a judgment against Guarantors, for damages for breach of the Guaranties, including but not limited to, all amounts owed under the ZPD Note, together with all accrued interest

13

5672071.v1

thereon at the rate set forth in the ZPD Notes, and all late charges, advances, fees, and costs of enforcement otherwise due and payable pursuant to the terms of the Guaranties, together with an award of attorneys' fees and costs, and such other relief as this Court may deem just and proper.

DATED this 20th day of August, 2025.

<div style="margin-left:40%;">

*/s/ James A. Timko, Esq.*
JAMES A TIMKO, ESQ.
Florida Bar No. 0088858
Dean, Mead, Egerton, Bloodworth,
 Capouano & Bozarth, P.A.
Post Office Box 2346
Orlando, Florida 32802-2346
Telephone: (407) 841-1200
Fax: (407) 423-1831
Primary E-Mails: jtimko@deanmead.com
Secondary Email: mgodek@deanmead.com
*Attorneys for Plaintiffs*

</div>

14

5672071.v1