UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

**MARTIN CHARLES FLYNN, JR.,**

Debtor.
________________________/

Case No. 6:26-bk-00399-LVV
Chapter 11
Sub-chapter V

# CREDITOR DAVID McPHILLIPS' OBJECTION TO CONFIRMATION OF DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION AND REQUEST FOR EVIDENTIARY HEARING OR CONTINUANCE

Creditor **David McPhillips** (the "Creditor"), an unsecured creditor and party in interest, objects to confirmation of the Debtor's Sub-chapter V Plan of Reorganization dated April 21, 2026 (Doc. 66) (the "Plan"). The Creditor requests that the Court deny confirmation. Alternatively, the Creditor requests that the Court continue the confirmation hearing and require the Debtor to provide reliable valuation, entity level financial, and cash flow evidence before confirmation is considered.

## 1. PRELIMINARY STATEMENT

The Plan proposes a non-consensual Sub-chapter V confirmation while permitting the Debtor to retain and operate material business and real estate interests. The Plan also proposes that holders of allowed general unsecured claims receive pro rata distributions totaling $229,874.00 during the 12 month period beginning on the Effective Date.

The Plan's proposed unsecured distribution is premised on projected Year 1 income of $478,000.00, projected outflows of $248,126.00, and projected net cash flow of $229,874.00.

The Plan does not supply competent, reliable evidence establishing the value, cash flow, liabilities, or equity of the controlled entities from which the Debtor proposes to derive plan funding. Nor does it adequately support the liquidation analysis, the disposable income calculation, or feasibility.

The Plan therefore fails to establish that it satisfies the confirmation requirements imposed by 11 U.S.C. §§ 1129(a) and 1191(b) and (c).

**2. RELEVANT RECORD**

The Debtor schedules ownership interests in WM Holdings Group, LLC (100%), MTF Holdings, LLC (99%), and 650 85th, LLC (100%). WM Holdings is scheduled at $0.00, and MTF Holdings and 650 85th are scheduled as "Unknown."

The schedules identify 650 85th, LLC as owner of real property located at 650 85th Street Ocean, Marathon, Florida.

The schedules also identify a claimed right to receive approximately $305,000.00 from WM Holdings, consisting of approximately $80,000.00 from a 2025 cash flow distribution and approximately $225,000.00 from proceeds of a duplex sale.

The Debtor's Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest states that WM Holdings, MTF Holdings, and 650 85th maintain no formal financial statements. The report provides no balance sheet, income statement, cash flow statement, or equity statement that would permit the Court or creditors to evaluate the Debtor's ownership interests or the reliability of the Plan's funding sources.

The Plan values the distribution to general unsecured creditors at $229,874.00 over one year. Yet the Plan text asserts that a Chapter 7 liquidation would yield $0.00 for general

unsecured creditors, while Exhibit B to the Plan estimates a Chapter 7 distribution of $22,249.29 to general unsecured creditors.

The Plan provides a 15 business day cure period after a written default notice before an allowed claim-holder may seek enforcement relief.

**3. GOVERNING STANDARDS**

A plan may be confirmed under Sub-chapter V only if the applicable requirements of 11 U.S.C. § 1129(a), except § 1129(a)(15), are satisfied. 11 U.S.C. § 1191.

If the Debtor seeks confirmation without acceptance by each impaired class, the Plan must not discriminate unfairly and must be fair and equitable as to each impaired class that has not accepted the Plan. 11 U.S.C. § 1191.

For a non-consensual Sub-chapter V plan, the fair and equitable requirement includes commitment of all projected disposable income received during a three year period, or a longer period not exceeding five years as fixed by the Court, to plan payments; or distribution of property having at least that value. It also requires proof that the Debtor will make all plan payments, or, alternatively, a reasonable likelihood of payment together with appropriate remedies for default. 11 U.S.C. § 1191.

The Debtor bears the burden to establish feasibility with concrete, reliable evidence. A plan cannot rest on unsupported optimism, particularly where projected income depends on a controlled entity whose finances are not substantiated. *Hamilton v. Curiel* (In re Curiel), 651 B.R. 548 (B.A.P. 9th Cir. 2023).

## 4. OBJECTION

### A. THE PLAN DOES NOT DEMONSTRATE COMPLIANCE WITH § 1191(C)(2).

The Plan proposes only a 12 month distribution period for allowed general unsecured claims. It does not provide three year projected disposable income calculations, a three year commitment of projected disposable income, or evidence that the value of property to be distributed over the applicable three year period equals or exceeds projected disposable income.

The Plan's one year projection cannot substitute for the statutory minimum period required for a non-consensual plan. The absence of projections for Years 2 and 3 prevents the Court from determining whether the Debtor is committing all projected disposable income as § 1191(c)(2) requires.

Confirmation should be denied unless and until the Debtor files reliable projections for the applicable statutory period, identifies all projected income and reasonably necessary expenses, and amends the Plan to provide the treatment required by § 1191(c)(2).

### B. THE LIQUIDATION ANALYSIS IS INTERNALLY INCONSISTENT AND INSUFFICIENTLY SUPPORTED.

The Plan's liquidation analysis is material to the best interests inquiry under § 1129(a)(7). It must evaluate, using reliable evidence, what a Chapter 7 trustee could realize from estate assets after deducting valid liens, priority claims, administrative expenses, sale costs, and taxes.

The Plan gives conflicting liquidation recoveries for general unsecured creditors: the Plan text states $0.00, while Exhibit B gives $22,249.29. The Plan does not reconcile that discrepancy.

More importantly, the liquidation analysis does not provide competent valuations for the Debtor's controlling ownership interests in WM Holdings, MTF Holdings, and 650 85th, or for the Marathon real estate held by 650 85th. It likewise does not provide support for its treatment of the anticipated $305,000.00 WM Holdings distribution or its $0.00 treatment of the Debtor's pending litigation claims.

Without entity valuations, debt schedules, operating results, tax returns, bank records, real estate valuations, and evidence concerning the collect-ability of identified litigation claims, the Court cannot determine whether Class 4 creditors will receive at least as much as they would receive in a hypothetical Chapter 7 liquidation.

**C. THE PLAN IS NOT SHOWN TO BE
FEASIBLE UNDER §§ 1129(A)(11) AND 1191(C)(3).**

The Plan's projected cash flow depends on the Debtor's continuing rental property operations and distributions from business interests. Yet the Debtor's controlled entity report discloses no financial statements for the three entities central to that funding.

The absence of those financial records makes it impossible to test: (a) the entities' actual cash flow; (b) restrictions on available cash; (c) inter-company obligations; (d) secured debt; (e) tax liabilities; (f) the value and timing of the duplex sale proceeds; and (g) the Debtor's ability to cause or receive distributions.

The Plan's $229,874.00 annual surplus is therefore unverified. The Debtor has not supplied the concrete evidence needed to prove that he will make all Plan payments, or even that there is a reasonable likelihood he can do so.

The Plan should not be confirmed on a record that omits the financial information necessary to evaluate its central funding source. See *Hamilton v. Curiel* (In re Curiel), 651

B.R. 548 (B.A.P. 9th Cir. 2023) (reversing confirmation where plan funding depended on a business whose finances were not supported by reliable, concrete evidence).

**D. THE PLAN DOES NOT PROVIDE APPROPRIATE REMEDIES FOR THE SUBSTANTIAL RISK OF DEFAULT.**

If the Debtor relies on the reasonable likelihood alternative under § 1191(c)(3)(B), the Plan must provide appropriate remedies to protect claim-holders in the event payments are not made.

The Plan offers only a 15 business day cure period followed by the ability to seek enforcement relief. In light of the missing valuation and financial evidence, that general post default remedy is not shown to adequately protect impaired unsecured creditors from the risk that entity assets or cash flow will be unavailable when needed.

The Plan should not be confirmed without meaningful, tailored default protections. The need for enforceable remedies is part of the fair and equitable showing required for a non-consensual Sub-chapter V plan. See *In re Ellingsworth Residential Community Association, Inc.*.

**WHEREFORE**, Creditor David McPhillips respectfully requests that the Court enter an order:

A. Denying confirmation of the Plan without prejudice;

B. Alternatively, continuing the confirmation hearing for an evidentiary hearing and requiring the Debtor to supplement the record with:

Current and historical balance sheets, income statements, cash flow statements, general ledgers, and bank records for WM Holdings Group, LLC, MTF Holdings, LLC, and 650 85th, LLC;

Current appraisals or other competent valuation evidence for the Debtor’s ownership interests and the real property held by 650 85th, LLC;

Documentation of all entity secured debt, liens, tax liabilities, inter-company claims, restrictions on distributions, and pending obligations;

Documentation supporting the anticipated $305,000.00 WM Holdings distribution, including the duplex sale documents, closing statement, distribution records, and tax consequences;

Current information concerning the Debtor's pending litigation claims, including pleadings, claims asserted, damages calculations, insurance information, settlement communications, and any valuation of expected recoveries;

Revised liquidation analysis supported by admissible evidence and reconciling the Plan's conflicting $0.00 and $22,249.29 estimates for general unsecured creditors;

Revised three year projected disposable income projections, including all income sources, expenses, taxes, priority obligations, administrative expenses, and plan distributions; and

Amended default provisions that provide appropriate creditor protections under § 1191(c)(3)(B), if the Debtor does not prove that he will be able to make all Plan payments;

C. Awarding the Creditor such other and further relief as the Court deems just and proper.

Dated: August 25, 2026.

Respectfully submitted,

**/s/ J. Christopher Crowder**
**J. Christopher Crowder**
**FBN 50562**
**Faro & Crowder, P.A.**
**700 N. Wickham Road**
**Suite 205**
**Melbourne, FL 32935**
**321-784-8158**
**jcrowder@farolaw.com**
**farolawpleadings@gmail.com**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 25, 2026, I served a true and correct copy of this Objection through the Court's CM/ECF system on all registered users and by any other method required by the Court's order scheduling the confirmation hearing.

/s/ J. Christopher Crowder