**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re:**

**MARTIN CHARLES FLYNN, JR.,**

**Debtor.**
______________________________/

**CASE NO.: 6:26-bk-00399-LVV**
**CHAPTER 11**

***Subchapter V Election***

*Emergency Hearing Requested*

**DEBTOR'S EMERGENCY MOTION FOR PROTECTIVE ORDER WITH RESPECT TO MICHAEL McPHILLIPS'S CROSS NOTICE OF DEPOSITION *DUCES TECUM* OF MARTIN C. FLYNN, JR. PURSUANT TO RULE 2004 (DOC. 127)**

*(Emergency Hearing Requested — Document Production Demanded by November 23, 2026; Examination Noticed for December 1, 2026 at 1:00 p.m.)*

**MARTIN C. FLYNN, J.R.** (the "Debtor"), by and through undersigned counsel, and pursuant to Federal Rules of Bankruptcy Procedure 2004, 7026, 9014(c), and 9016, Federal Rule of Civil Procedure 26(c), and Local Rule 2004-1, moves for entry of a protective order prohibiting the examination and document production demanded within *Michael McPhillips's Cross Notice of Deposition Duces Tecum of Martin C. Flynn, Jr. (pursuant to Federal Rules of Bankruptcy Procedure 2004)* (Doc. No. 127) and the document requests attached as Exhibit 1 thereto (together, the "2004 Notice"), served by Michael McPhillips ("McPhillips"). In support, the Debtor states as follows:

## Emergency Basis

Emergency relief is required by Local Rule 2004-1(e), which provides that "[a]n interested party may file, prior to the date of the proposed examination or production of documents or electronically stored information, a motion for protective order stating the reasons for prohibiting, limiting, or rescheduling the examination or production," and that "[a] motion for protective order shall be filed as an emergency motion under Local Rule 9013-1(d)." The 2004 Notice demands

that the Debtor produce documents no later than November 23, 2026 and appear for examination on December 1, 2026 at 1:00 p.m. The 2004 Notice is defective for a number of reasons as noted below and serves as nothing more than an oppressive, harassing and burdensome encumbrance on the Debtor at a critical juncture in his case. The Debtor therefore requests that the Court consider this Motion on an emergency basis prior to the production deadline or, alternatively, enter an interim order staying the production deadline and the examination pending a hearing on this Motion.

## **Background**

1. The Debtor commenced this case by filing a voluntary petition on January 22 2026 (the "Petition Date") which case was first commenced as a Chapter 13 but later converted to Chapter 11 on March 18, 2026.

2. On the Petition Date, Debtor also submitted his initial Schedules which identifies McPhillips with a contingent, unliquidated, and disputed non-priority unsecured claim in an unknown amount. Doc. No. 1 at p. 30.

3. The claims bar date was established in Debtor’s case for May 27, 2026.

4. McPhillips failed to file a proof of claim by the claims bar date.

5. By virtue of the 2004 Notice. McPhillips now claims to be an interested party in this bankruptcy case but is very much so not an interested party. If anything, McPhillips is out of touch with the current posture of this case and the Global Settlement reached by and among a number of parties, including the Debtor, which settlement significantly streamlines the issues for confirmation of Debtor’s Chapter 11 Plan which is set to be amended in accordance with the recent compromises. Instead of reading the room, McPhillips propounded the 2004 Notice with the goal of furthering his efforts in a pending state court matter – not this bankruptcy case in which he retains no claim.

6. With respect to his state court appearances, McPhillips is party to a civil action pending in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2025-CA-013106-XXCA-BC (the "State Court Action"), in which the Debtor was also a party before the automatic stay went into effect.

7. In the State Court Action, McPhillips served a request for production / notice of deposition duces tecum on September 15, 2026 upon Horton S. Johnson (the "State Court Requests"), which appear to have been issued in furtherance of McPhillips's defense of Horton Johnson's motion for summary judgment. A copy of the State Court Requests is attached as **Exhibit "A."**

8. On November 10, 2026, McPhillips filed the 2004 Notice in this case seeking to burden the Debtor with discovery associated with the State Court Action. A copy of the 2004 Notice is attached as **Exhibit "B."** Although captioned as a "Cross Notice" under Rule 2004, no Rule 2004 Notice was pending at the time of McPhillips's 2004 Notice. The 2004 Notice states that it is "being taken for the purpose of discovery, for use at trial, or both," although McPhillips is not a party to any contested matter in the Debtor's bankruptcy case.

9. The 2004 Notice bears features of the State Court Requests which now appear to be recycled for use in this Court. No attempt to conceal the nature of his recycled request was apparently made since the certificate of service recites that it "was submitted for filing by using the Florida Courts E-Filing Portal" and was served "in accordance with Florida Rules of Judicial Administration 2.516." Further, the 2004 Notice's definitions incorporate the meaning of "possession, custody, or control" under "Fla. R. Civ. P. 1.350(a)." The 2004 Notice seeks the production of all witness statements "related to the facts, circumstances, and issues raised in this matter or which relate to the issues, claims, or defenses in this matter"; all documents the Debtor

intends "to use in litigating or disputing this matter, or which [the Debtor] intends to introduce as evidence at trial or any hearing, including all documents for rebuttal or impeachment purposes"; and all documents identified "in any response to any interrogatories or identified or referenced in any pleading herein." 2004 Notice, Ex. 1, Requests 48–51. However, no interrogatories have been served, and no "claims or defenses" or trial are pending on matters between McPhillips and the Debtor in this Bankruptcy Case.

10. The 2004 Notice contains fifty-one (51) separately numbered requests, many with seventeen lettered subparts with a defined "relevant period" of January 1, 2020 to the present and, for numerous requests, reaches back to November 19, 2015— or more than a decade ago. 2004 Notice, Ex. 1, Definition 25 and Requests 24–37.

11. Substantively, the requests are directed at non-debtor entities and third parties and the specific transactions at issue in the State Court Action, including: every communication with Canaveral Crossroads, LLC, Homemakers Real Estate, LLC, Mainstreet Community Bank of Florida, FDRE, Inc., FBC Holdings, LLC, WM Holdings Group, LLC, Cape Crossing Marina, LLC, and MTF Holdings, LLC (Requests 1–8, 12–14); documents concerning the "Crossroads Note," "FDRE Loan," "Crossroads Condo Purchase," "Unit Sale Agreement," "Mainstreet Bank Loan," "406 Condo Transfer," "CCR Sale Agreement," "CCM Sale Agreement," and "Forbearance Agreement" (Requests 15–23); the financial statements, debts, and tax returns of non-debtor Horton S. Johnson, Canaveral Crossroads, LLC, and Homemakers Real Estate, LLC since 2015 (Requests 24–34); organizational documents and ownership records of ten non-debtor entities (Requests 38–39); and every loan application by non-debtors whether or not a loan resulted (Requests 40–47). Why McPhillips believes he can utilize the bankruptcy process to burden the Debtor with discovery requests is a mystery.

**Relief Requested and Basis**

Local Rule 2004-1(e) expressly authorizes an interested party to seek an order "prohibiting, limiting, or rescheduling" a Rule 2004 examination. While the scope of Rule 2004 is broad, it is not without limits. A Rule 2004 examination may not be used for purposes of abuse or harassment and cannot stray into matters not relevant to the permitted basic inquiry, and the party seeking the examination bears the initial burden of demonstrating that the information sought falls within the permissible scope of Rule 2004. *In re Banco Master, S.A.*, 678 B.R. 690 (Bankr. S.D. Fla. 2026). The examining party must also establish "good cause" for the discovery it seeks, which it may do by showing that the examination is needed to establish a claim or that denial of the examination would cause undue hardship or injustice. *In re Defoor Centre, LLC*, 634 B.R. 630, 638 (Bankr. M.D. Fla. 2021). McPhillips cannot carry either burden here.

**A. McPhillips Is Not a Creditor and Has No Legitimate Estate-Related Interest Supporting a Rule 2004 Examination.**

Rule 2004(a) permits the Court to order an examination "[o]n motion of any party in interest." Rule 2004 is a tool for the administration of the bankruptcy estate; its permissible scope is limited to "the acts, conduct, or property or . . . the liabilities and financial condition of the debtor, or . . . any matter which may affect the administration of the debtor's estate, or . . . the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). The parties ordinarily entitled to invoke it—the trustee, creditors, and the United States Trustee—are those whose interests are tied to the administration of the estate and the distribution of its assets.

Self-designation as an "Interested Party" does not make McPhillips a "party in interest" with a cognizable stake in this case, and his interest as a litigant in a separate state court proceeding is not an interest in the administration of the estate. McPhillips also clearly has no claim against the Debtor’s estate. Because McPhillips has no stake in the estate's assets, liabilities, or

distributions, he cannot demonstrate that the examination is "needed to establish a claim" against the estate or that its denial would cause him "undue hardship or injustice" in this case. Absent any such showing, there is no good cause for the 2004 Notice.

**B. The 2004 Notice Is an Improper Attempt by a Non-Party to Use This Court to Circumvent Discovery in the State Court Action.**

It is evident from the recycled nature of the 2004 Notice that its overriding purpose of the is to obtain from the Debtor, and through this Court, the discovery McPhillips seeks in the State Court Action. Courts have long recognized that once litigation is pending in another forum, Rule 2004 may not be used to obtain discovery for that litigation; the "pending proceeding" rule requires that discovery relating to the subject of the pending litigation proceed under the procedural rules and protections that govern that litigation. The rule exists precisely because Rule 2004 examinations lack the procedural safeguards of the Federal Rules of Civil Procedure and their state analogues, and permitting a litigant to substitute a Rule 2004 examination for discovery in the pending action would allow that litigant to evade the limits, objections, and judicial supervision that apply in the forum where the dispute actually lies.

The 2004 Notice also confirms that McPhillips is pursuing litigation discovery rather than discovery related to an estate inquiry. Rule 2004 is not a vehicle for a party to a state court lawsuit to obtain trial evidence for that lawsuit. Since the State Court Action is stayed as to the Debtor by virtue of 11 U.S.C. § 362(a), McPhillips's use of this Court to compel the very discovery he could not obtain in the stayed action is an improper end-run around the automatic stay.

This Court should not permit its processes to be used to circumvent the discovery rules, deadlines, the automatic stay, and judicial oversight governing the State Court Action. Rule 2004 may not be used for purposes of abuse or harassment. *In re Banco Master, S.A.*, 678 B.R. 690, 695 (quoting *In re Washington Mutual, Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009). Forcing the Debtor to

respond to state court litigation discovery under the guise of a Rule 2004 examination—while he is a debtor in bankruptcy, with his time and resources properly directed to this case—is precisely the "annoyance," "oppression," “harassment,” and "undue burden or expense" that Rule 26(c) guards against.

**C. The 2004 Notice Is Grossly Overbroad, Unduly Burdensome, and Untethered to the Administration of the Estate.**

Even if McPhillips had standing and the pending proceeding rule did not apply, the 2004 Notice should be prohibited because its scope bears no reasonable relationship to the "acts, conduct, or property," "liabilities and financial condition" of the Debtor, or the administration of the estate. Fed. R. Bankr. P. 2004(b).

*First*, the temporal scope is unreasonable. The "relevant period" runs from January 1, 2020 to the present, and Requests 24 through 37 extend to November 19, 2015—more than ten years before the Petition Date. 2004 Notice, Ex. 1, Definition 25, Requests 24–37. McPhillips offers no basis for why a decade of records is needed for any estate purpose.

*Second*, the requests target non-debtors, not the Debtor. Requests 24 through 34 demand the financial statements, debts, tax returns, balance sheets, and profit and loss statements of Horton S. Johnson, Canaveral Crossroads, LLC, and Homemakers Real Estate, LLC; Requests 38 and 39 demand the organizational and ownership records of ten separate entities; and Requests 40 through 47 demand every loan application made by non-debtors, whether or not a loan was ever made. The financial affairs of third parties, including confidential tax returns, are not the Debtor's "financial condition" and are not proper subjects of a Rule 2004 examination of the Debtor.

*Third*, the requests are drafted to be limitless. Fourteen requests seek "[a]ll documents, communications, notes, memorandum, reports, or correspondence" exchanged with named entities or individuals, and six of those are multiplied by seventeen lettered subjects each. 2004 Notice,

Ex. 1, Requests 1–14. The definitions expand the requests further: "any" and "all" are to be construed to reach "any information which might be construed [to] relate to the subject matter"; "relate to" is to be read "as requiring and requesting a broader or expanded range of inclusive documents"; and "and" and "or" are to be read to capture "any and all responses that might otherwise be construed to be outside of the respondent's scope." *Id.*, Definitions 10–12. Requests so drafted fail to describe the documents sought with any reasonable particularity.

*Fourth*, the 2004 Notice invades privileged and protected matters. It defines "You" to include the Debtor's "attorneys" and "document" to include materials in the possession of "any of Your attorneys," and it seeks witness statements, notes and summaries of witness statements, and documents the Debtor intends to use "in litigating or disputing this matter." *Id.*, Definitions 1, 2(c)–(g), Requests 48–50. Those requests seek attorney work product and attorney-client communications on their face and would require the Debtor to prepare an extensive privilege log under Instruction 5 in order to protect them.

*Fifth*, the timing is oppressive. The 2004 Notice was filed November 10, 2026 and demands production of fifty-one categories of documents spanning up to eleven years by November 23, 2026—less than two weeks later, and over the Thanksgiving holiday period which in and of itself is unreasonable timing on McPhillips's part.

The cumulative burden of the 2004 Notice is wholly disproportionate to any legitimate need of McPhillips which isn't a secret since he has failed to participate at any level in this bankruptcy case and failed to disguise the 2004 Notice as something other than a discovery requested associated with the State Court Action which is stayed as to the Debtor. Good cause exists to prohibit McPhillips's request in its entirety and to enter an order granted Debtor the fees and costs incurred in association with this Motion.

**WHEREFORE**, the Debtor, Martin C. Flynn, Jr., respectfully requests that this Court enter an order (a) granting this Motion on an emergency basis; (b) entering a protective order prohibiting the examination and production of documents demanded in the *Cross Notice of Deposition Duces Tecum of Martin C. Flynn, Jr.* (Doc. 127); (c) awarding the Debtor his reasonable attorneys' fees and costs incurred in connection with this Motion; and (d) granting such other and further relief as the Court deems just and proper.

Dated: November 23, 2026

/s/ Daniel A. Velasquez
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lathamluna.com
Bknotice1@lathamluna.com
**Latham Luna Eden & Beaudine, LPP**
201 S. Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:26-bk-00399-LVV** |
| | **CHAPTER 11** |
| **MARTIN CHARLES FLYNN, JR.,** | |
| | ***Subchapter V Election*** |
| **Debtor.** | *Emergency Hearing Requested* |
| ______________________________________/ | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2026, a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which will send notice of electronic filing to all parties registered to receive electronic notice, and was further served by email upon counsel for Michael McPhillips, Phil A. D'Aniello, Esq., Fassett, Anthony & Taylor, P.A., 1325 W. Colonial Drive, Orlando, Florida 32804, pdaniello@fassettlaw.com and tsadaka@fassettlaw.com; upon L. Todd Budgen, Esq., todd@c11trustee.com ; J. Christopher Crowder, Esq., jcrowder@farolaw.com and farolawpleadings@gmail.com; and upon the Office of the United States Trustee, Wanda D. Murray, 400 W. Washington Street, Suite 1100, Orlando, Florida 32801, wanda.murray@usdoj.gov.

*/s/ Daniel A. Velasquez*
Daniel A. Velasquez, Esq.

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
FOR BREVARD COUNTY FLORIDA

HORTON S. JOHNSON, individually,

Plaintiff,

vs.

Case No. 05-2025-CA-013106-XXCA-BC

CANAVERAL CROSSROADS, LLC,
a Florida limited liability company,
MARTIN C. FLYNN, JR., an individual, and
MICHAEL McPHILLIPS, an individual,

Defendants,

and

MICHAEL McPHILLIPS, individually,

Counter-Plaintiff,

vs.

HORTON S. JOHNSON a/k/a Woody Johnson,
individually,

Counter-Defendant.

_____________________________________/

**DEFENDANT MICHAEL McPHILLIPS'S NOTICE OF**
**CONTINUED DEPOSITION DUCES TECUM OF HORTON S. JOHNSON[1]**

YOU ARE NOTIFIED that the undersigned counsel for Michael McPhillips, pursuant to Florida Rules of Civil Procedure 1.310(a-b) and 1.350, will take the deposition upon oral examination of the following deponent:

**DEPONENT:** Horton S. Johnson

**PRODUCTION:** By agreement of the parties, Deponent shall produce the documents listed in the attached **Exhibit 1**, on or before **September 3, 2026.**

**PLACE:** VIA ZOOM – link to be provided by Court Reporter

**DATE:** September 10, 2026

**TIME:** 10:00 a.m.

before a court reporter or some other notary public for the State of Florida, or some other officer duly authorized by law to take testimony. This deposition is being taken for the purpose of discovery, for

[1] This continued deposition shall proceed in accordance with and subject to the June 4, 2026 Order Granting McPhillips' Motion to Compel Discovery and Depositions and Sanctions.

use at trial, or both of the foregoing, and for such other purposes as are permitted under the Florida Rules of Civil Procedure and other applicable law.

The oral examination will continue from day to day until testimony shall be completed.

**This continued deposition shall proceed in accordance with and subject to the June 4, 2026 Order Granting McPhillips' Motion to Compel Discovery and Depositions and Sanctions**.

Submitted on August 18, 2026, by

Fassett, Anthony & Taylor, P.A.
1325 W. Colonial Drive
Orlando, FL. 32804
Tel: 407-872-0200

/s/ *Phil A. D'Aniello*
Phil A. D'Aniello, Esq.
Fla. Bar No. 0115525
Primary E-Mail: pdaniello@fassettlaw.com
Secondary E-Mail: tsadaka@fassettlaw.com

**Certificate of Service**

I HEREBY CERTIFY that the foregoing was submitted for filing by using the Florida Courts E-Filing Portal which will send a Notice of Electronic Filing to the Electronic Service Recipients of record indicated below, in accordance with Florida Rules of Judicial Administration 2.516, on August 18, 2026.

/s/ *Phil A. D'Aniello*
Phil A. D'Aniello, Esq.

**Service List**:

Todd K. Norman, Esq.
Alannah L. Shubrick, Esq.
Bryant R. Mondor, Esq
todd.norman@nelsonmullins.com
alanna.shubrick@nelsonmullins.com
bryant.mondor@nelsonmullins.com
Katherine.reynolds@nelsonmullins.com
Shawana.watt@nelsonmullins.com

John P. McDermott, Jr., Esq.
John.mcdermott@nelsonmullins.com
Allison.abbott@nelsonmullins.com

J. Christopher Crowder, Esq.
jcrowder@farolaw.com
farolawpleadings@gmail.com

# Exhibit 1

Michael McPhillips, pursuant to Florida Rule of Civil Procedure 1.310, hereby requests that the Deponent named herein above, appear for deposition and produce documents and materials in accordance with the definitions and instructions below as follows:

1. You will produce the documents described herein in accordance with the general definitions and instructions herein.

2. You are not required to surrender the original items.

3. You may comply with this request by providing legible copies of these items to the attorneys named herein.

4. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.

## Definitions and Instructions

1. The terms "You" and "Your" as used herein and in the Requests below are used interchangeably and shall mean the individual or entity in which this Request is addressed or directed, and if this Request relates to a Notice of Deposition Duces Tecum, shall include the corporate or business entity or entities upon whose behalf the deponent will appear and if this Request is addressed to an entity, agency, or organization, shall include such entity's, agency's, or organization's present or former divisions, departments, subsidiaries, affiliates, predecessors, partners, members, managers, officers, directors, owners, agents, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner. If this Request or the attached or incorporated request, notice, or subpoena is addressed to more than one person or entity on whose behalf You are appearing, the terms "You" and "Your" shall mean each of those persons and/or entities.

2. The term "document" means any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, and shall include the production of documents in the manner in which the documents are ordinarily kept including the following:

(a) All text messages, instant messages, chat room posts, and emails.

(b) Any and all writings, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained, translated, if necessary, through detection devices into reasonably usable form.

(c) Any and all written, typed, recorded, or graphic matter, however produced or reproduced, fixed in a tangible medium of expression, of every kind and regardless where located, and all tangible things from which information can be processed or

transcribed, including all originals and non-identical copies whether differing from the original by reason of any notation made on such copy or otherwise including but not limited to any summary schedule, memorandum, note, message, statement, letter, telegram, telex, bulletin, inter and intra-office communication, report, diary, desk or pocket calendar or notebook, day book chronological date compilation, appointment book pamphlet, periodical, magazine or newspaper articles, advertisement, list, graph, motion, picture, photograph, x-ray or other machine-produced diagnostic picture or depiction of any kind, chart, index, tape, record, drawing, compilation, tabulation, computer printouts, computer-stored memory component or device including but not limited to hard-drives, disks, diskettes, and e-mail, study, analysis, transcript, minutes, books, date sheet, data processing card or tape, phone records, correspondence, ledgers, invoices, worksheets, receipts, returns, prospectuses, financing statements, schedules, affidavits, contracts, canceled checks, checkbooks, check stubs, transcripts, statistics, surveys, releases, aural records or representations of any kind, microfiche, microfilm, mechanical or electric records or representations of any kind, and any other writing or recording in Your possession, custody or control or Your attorney's possession, custody or control (and any and all drafts, alterations, modifications, changes and/or amendments of any of the foregoing).

(d) Any and all files in which any documents are maintained, including file folders or file jackets, and adjacent or related exhibit folders in which any documents are filed or maintained.

(e) Any and all documents contained on hard drives or other electronic media that You or any of Your attorneys have located on the Internet, whether or not You or Your attorneys have yet printed the documents.

(f) Any and all documents located now or in the past on any computer memory device within Your possession, custody, or control, or within the possession, custody, or control of Your attorneys. “Possession, custody, or control” as used herein shall have the same meaning as in Fla. R. Civ. P. 1.350(a) and/or Fed. R. Civ. P. 34(a).

(g) Any and all documents of any kind within Your possession, custody, or control, or within the possession, custody, or control of any of Your attorneys.

3. The term “materials” shall be deemed to include all documents, letters, memoranda, notes and any other written communication and written notes of all oral communications, whether in person or by telephone, and every record of every type, including but not limited to, information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored, and all drafts, notes, or preparatory material concerned with said document, and every additional copy of such record or document where such copy contains any commentary, notations, or other change whatsoever that does not appear on the original or other copy of the document produced. Also included in this definition is any summary of a document or documents called for hereafter.

4. The terms "person", "individual", and "entity" are used interchangeably and each shall mean, but not be limited to: any natural person; or fictitious entity whether or not it is incorporated or registered; or trust; or surety; institution; or government or government agency or political subdivision be it foreign or domestic; or board, committee, group, or organization comprised of any of the foregoing or combination thereof; whether they be now or previously existing.

5. If You claim that the attorney-client or other privilege or the work product doctrine is applicable to any document the production of which is sought by the Requests below, then with respect to each such document, You **must provide a privilege log** which identifies the document by stating the type, date, author(s), addressee(s) and recipient(s), present and previous custodian(s), location, subject matter, and sufficient additional information to explain the claim of privilege and to enable adjudication of the propriety of that claim.

6. If any document the production of which is sought by these Requests has been destroyed, then You **must provide a log** which identifies the document by stating the type, date, author(s), addressee(s) and recipient(s), previous custodian(s) and location, subject matter, and sufficient additional information to explain the date and circumstances of its destruction, and identify the person who destroyed the document and the person who ordered its destruction.

7. If there are no documents responsive to a Request herein, **You must identify which Request(s) that You do not have any responsive documents for**.

8. These definitions and instructions shall apply to any documents referenced herein or attached hereto coextensively with any definitions or instructions contained therein. If the definitions and instructions are in conflict, then those contained herein shall apply.

9. For each and every Request, You shall produce documents in Your possession, custody, or control, which shall include but not be limited to, documents, objects or articles described that are in Your possession or that You have the right to secure the original or a copy from another person or entity.

10. The terms "any" and "all" shall be construed to bring within the scope of this request any information which might be construed relate to the subject matter of the request.

11. The terms "relate to", "refer to", "reflecting", "supports", "evidence", and "indicating", and all derivations thereof, are used interchangeably and shall mean evidencing, referring to, pertaining to, consisting of, reflecting, concerning, or in any way logically or factually connected to the matter requested and are to be read as requiring and requesting a broader or expanded range of inclusive documents and shall not be interpreted or construed to be exclusive in any manner

and shall mean supporting, tending to support, evidencing, tending to evidence, sustaining, maintaining, upholding, or in any way proves, confirms, substantiates, or verifies any fact, issue, or matter.

12. The terms "and" and "or" are used interchangeably and shall mean and be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any and all responses that might otherwise be construed to be outside of the respondent's scope, and are to be read as requiring and requesting a broader and/or expanded range of inclusive documents and shall not be interpreted or construed to be exclusive in any manner

13. The term "**Mainstreet Bank**" shall mean and refer to the entity known as Mainstreet Community Bank of Florida.

14. The term "**Crossroads Note**" shall mean and refer to the $1.2 million Promissory Note dated November 19, 2015 executed by Canaveral Crossroads, LLC to or for the benefit of Horton S. Johnson.

15. The term "**FDRE Loan**" shall mean and refer to the February 20, 2020 Promissory Note and Security Agreement executed by Canaveral Crossroads, LLC in favor of an entity known as FDRE, Inc. for a loan in the amount of $1,512,500 and all documents related to such Promissory Note and Security Agreement.

16. The term "**Crossroads Condo Purchase**" shall mean and refer to the sale, transfer, or purchase of 32 or 33 condominium units from Canaveral Crossroads, LLC to Homemakers Real Estate, LLC or any affiliates of Homemakers Real Estate, LLC or Horton S. Johnson.

17. The term "**Unit Sale Agreement**" shall mean and refer to any contract or agreement entered into by or between Homemakers Real Estate, LLC and/or Canaveral Crossroads, LLC or any other entity with regard to or related to the sale of 32 or 33 condominium units from Canaveral Crossroads, LLC to Homemakers Real Estate, LLC or any affiliates of Homemakers Real Estate, LLC or Horton S. Johnson.

18. The term "**Mainstreet Bank Loan**" shall mean and refer to the loan from Mainstreet Bank to Homemakers Real Estate, LLC or any other person or entity to fund the purchase of 32 or 33 condominium units from Canaveral Crossroads, LLC.

19. The term "**406 Condo Transfer**" shall mean and refer to the sale, transfer, or deed of Unit 406 from Canaveral Crossroads, LLC to FBC Holdings, LLC on about December 18, 2020.

20. The term "**CCR Sale Agreement**" shall mean and refer to the Sale of LLC Interest Agreement dated January 2, 2020 for the sale of FBC Holdings, LLC's membership interests in Canaveral Crossroads, LLC to MTF Holdings, LLC.

21. The term "**CCM Sale Agreement**" shall mean and refer to the Sale of LLC Interest Agreement dated January 5, 2020 for the sale of MTF Holdings, LLC's membership interests in Cape Crossing Marina, LLC to FBC Holdings, LLC.

22. The term "**Johnson Debts**" shall mean and refer to any one or more loans, debts, and/or obligations owed at any time to Horton S. Johnson and/or his affiliates which were used in part or in whole to fund the development and construction of any condominium units and/or the condominium, resort, or marina project located at the Cape Crossing condominiums and marina project in Brevard County Florida commonly known as the Cape Crossing Resort and Marina.

23. The term "**Forbearance Agreement**" shall mean and refer to the Forbearance Agreement allegedly entered into on December 3, 2024 by Canaveral Crossroads, LLC related to the Johnson Note.

24. All other names or terms herein not specifically defined or identified shall have the same meaning as is commonly understood and referred to by and among the parties.

25. Unless otherwise stated in the Requests below, the "**relevant period**" for each and every Request is **January 1, 2020 to the present**.

## DOCUMENTS REQUESTED

### *a. General Documents Related to Parties, Loans, and Transactions*

1. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Canaveral Crossroads, LLC** during the relevant period.

2. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Homemakers Real Estate, LLC** during the relevant period.

3. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Mainstreet Bank** during the relevant period.

4. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FDRE, Inc.** during the relevant period.

5. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FBC Holdings, LLC** during the relevant period.

6. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **WM Holdings Group, LLC** during the relevant period.

7. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Cape Crossing Marina, LLC** during the relevant period.

8. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **MTF Holdings, LLC** during the relevant period.

9. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Michael McPhillips** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement
q. Horton S. Johnson.

10. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Martin C. Flynn, Jr.** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC

c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement
q. Horton S. Johnson.

11. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Horton S. Johnson** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement

q. Horton S. Johnson.

12. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Canaveral Crossroads, LLC** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement
q. Horton S. Johnson.

13. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Homemakers Real Estate, LLC** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer

k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

14. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FDRE, Inc.** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan

b. Canaveral Crossroads, LLC

c. Homemakers Real Estate, LLC

d. Michael McPhillips

e. Martin C. Flynn, Jr.

f. The Crossroads Note

g. The FDRE Loan

h. FDRE, Inc.

i. Crossroads Condo Purchase

j. 406 Condo Transfer

k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

***b. Specific Documents Related to Loans and Transactions***

15. All documents related in any way to the Crossroads Note, including any and all loan applications, financial statements, closing documents, loan or payment history, and correspondence.

16. All documents related in any way to the Mainstreet Bank Loan, including any and all loan applications, financial statements (issued before or after the Mainstreet Bank Loan), closing documents, loan or payment history, and correspondence.

17. All documents related to the Crossroads Condo Purchase, including any sale agreement and all closing documents and any correspondence related to the negotiation of the Crossroads Condo Purchase and/or the negotiation of any sale agreement related to the Crossroads Condo Purchase.

18. All documents related in any way to the Unit Sale Agreement, including but not limited to the agreement or contract itself, any amendments thereto, and all closing documents and any correspondence related to the negotiation of the Unit Sale Agreement and/or the negotiation of the Unit Sale Agreement.

19. All documents related to the financing of the Crossroads Condo Purchase, including any and all loan applications, financial statements, closing documents, and correspondence related to the financing of the Crossroads Condo Purchase exchanged between the lender and any one or more of: Homemakers Real Estate, LLC, Horton S. Johnson, Martin C. Flynn, Jr., and/or Canaveral Crossroads, LLC.

20. All documents related to the 406 Condo Transfer, including any sale agreement and all closing documents.

21. All documents related to the CCR Sale Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the CCR Sale Agreement.

22. All documents related to the CCM Sale Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the CCM Sale Agreement.

23. All documents related to the Forbearance Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the Forbearance Agreement.

***c. Horton S. Johnson***

24. All financial statements of any kind made by or for or on behalf of Horton S. Johnson from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

25. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to pr by Horton S. Johnson from November 19, 2015 to the present.

26. The tax returns for Horton S. Johnson from November 19, 2015 to the present.

***d. Canaveral Crossroads, LLC***

27. All financial statements of any kind made by or for or on behalf of Canaveral Crossroads, LLC from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

28. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Canaveral Crossroads, LLC from November 19, 2015 to the present.

29. The tax returns for Canaveral Crossroads, LLC from November 19, 2015 to the present.

30. All balance sheets and profit and loss statements for Canaveral Crossroads, LLC from November 19, 2015 to the present.

***e. Homemakers Real Estate, LLC***

31. All financial statements of any kind made by or for or on behalf of Homemakers Real Estate, LLC from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

32. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Homemakers Real Estate, LLC from November 19, 2015 to the present.

33. The tax returns for Homemakers Real Estate, LLC from November 19, 2015 to the present.

34. All balance sheets and profit and loss statements for Homemakers Real Estate, LLC from November 19, 2015 to the present.

***f. Martin C. Flynn, Jr.***

35. All financial statements of any kind made by or for or on behalf of Martin C. Flynn, Jr. from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

36. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Martin C. Flynn, Jr. from November 19, 2015 to the present.

37. The tax returns for Martin C. Flynn, Jr. from November 19, 2015 to the present.

### *g. __Organizational and Internal__*

38. All organizational documents and annual reports, including any and all Shareholder Agreements, Operating Agreement, Bylaws, Articles of Organization, Articles of Incorporation, and any amendments thereto for any of the following:

a. Canaveral Crossroads, LLC
b. MTF Holdings, LLC
c. Cape Crossing Marina, LLC
d. Homemakers Real Estate, LLC
e. JLALF, Inc.
f. Tiered Preferred, LLC
g. Tiered Capital, Inc.
h. Cape Crossing Resort Management, LLC
i. Tiered Preferred, LLC
j. WM Holdings Group, LLC.

39. All documents, including shareholder or member certificates, resolutions or consents indicated the members or shareholders for the relevant period for any of the following:

a. Canaveral Crossroads, LLC
b. MTF Holdings, LLC
c. Cape Crossing Marina, LLC
d. Homemakers Real Estate, LLC
e. JLALF, Inc.
f. Tiered Preferred, LLC
g. Tiered Capital, Inc.
h. Cape Crossing Resort Management, LLC
i. Tiered Preferred, LLC
j. WM Holdings Group, LLC.

### *h. __Other Loans and Debts__*

40. All documents related to or referencing any other loan entered into or obtained by or on behalf of Canaveral Crossroads, LLC during the relevant period.

41. All documents related to or referencing any other loan application or request made by or on behalf of Canaveral Crossroads, LLC during the relevant period (regardless of whether such application resulted in a completed loan transaction).

42. All documents related to or referencing any other loan application or request made by or on behalf of Homemakers Real Estate, LLC during the relevant period.

43. All documents related to or referencing any other loan application or request made by or on behalf of Homemakers Real Estate, LLC during the relevant period (regardless of whether such application resulted in a completed loan transaction).

44. All documents related to or referencing any other loan application or request made by or on behalf of Horton S. Johnson during the relevant period.

45. All documents related to or referencing any other loan application or request made by or on behalf of Horton S. Johnson during the relevant period (regardless of whether such application resulted in a completed loan transaction).

46. All documents related to or referencing any other loan application or request made by or on behalf of Martin C. Flynn, Jr. during the relevant period.

47. All documents related to or referencing any other loan application or request made by or on behalf of Martin C. Flynn, Jr. during the relevant period (regardless of whether such application resulted in a completed loan transaction).

***i. Statements and Exhibits***

48. All statements by any witness related to the facts, circumstances, and issues raised in this matter or which relate to the issues, claims, or defenses in this matter.

49. All notes, summaries, or reports of any statements made by any witness related to the facts, circumstances, and issues raised in this matter or which relate to the issues, claims, or defenses in this matter.

50. All documents You intend to use in litigating or disputing this matter, or which You intend to introduce as evidence at trial or any hearing, including all documents for rebuttal or impeachment purposes.

51. All documents You identify or reference in any response to any interrogatories or identified or referenced in any pleading herein.

# EXHIBIT "B"

Case 6:26-bk-00399-LVV Doc 127 Filed 11/10/26 Page 1 of 15

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

MARTIN C. FLYNN, JR. Case No. 6:26-bk-00399-LVV

Debtor,
_______________________/

**INTERESTED PARTY MICHAEL McPHILLIPS'S CROSS**
**NOTICE OF DEPOSITION DUCES TECUM OF MARTIN C. FLYNN, JR.**
(pursuant to Federal Rules of Bankruptcy Procedure 2004)

YOU ARE NOTIFIED that the undersigned counsel for Interested Party Michael McPhillips, pursuant to Federal Rules of Bankruptcy Procedure 2004, 7030, 7034, and/or 9014(c) and Federal Rules of Civil Procedure 30 and 34, and Local Rules 2004-1, 7026-1, and/or 7030-1, as follows:

**DEPONENT:** Martin C. Flynn, Jr.
14556 Sain Georges Hill Drive
Orlando, FL 32828

**PRODUCTION:** Deponent shall bring the documents listed in the attached **Exhibit 1**

**PLACE:** Faro & Crowder, PA
700 N. Wickham Road, Suite 205
Melbourne, FL 32935

**DATE**: December 1, 2026

**TIME:** 1:00 p.m.

before a court reporter or some other notary public for the State of Florida, or some other officer duly authorized by law to take testimony. This deposition is being taken for the purpose of discovery, for use at trial, or both of the foregoing, and for such other purposes as are permitted under the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, and other applicable law.

The oral examination will continue from day to day until testimony shall be completed.

The deponent shall bring to the deposition or produce in advance of the deposition the documents and materials detailed in **Exhibit 1** attached hereto in accordance with the Definitions and Instructions therein.

The accompanying Exhibit 1 constitutes a request to the Debtor under Rule 34. Debtor shall produce responsive and nonprivileged documents and electronically stored information no later than **November 23, 2026**, at 5:00p.m. Eastern Time, at the office of Fassett, Anthony & Taylor, P.A. 1325 West Colonial Drive, Orlando, Florida 32804 for inspection and copying.

Case 6:26-bk-03999-LVV Doc 127 Filed 11/10/26 Page 2 of 15

Submitted on November 10, 2026 , by

Fassett, Anthony & Taylor, P.A.
1325 W. Colonial Drive
Orlando, FL. 32804
Tel: 407-872-0200

/s/ *Phil A. D'Aniello*
Phil A. D'Aniello, Esq.
Fla. Bar No. 0115525
Primary E-Mail: pdaniello@fassettlaw.com
Secondary E-Mail: tsadaka@fassettlaw.com

**Certificate of Service**

I HEREBY CERTIFY that the foregoing was submitted for filing by using the Florida Courts E-Filing Portal which will send a Notice of Electronic Filing to the Electronic Service Recipients of record indicated below, in accordance with Florida Rules of Judicial Administration 2.516, on November 10, 2026.

/s/ *Phil A. D'Aniello*
Phil A. D'Aniello, Esq.

**Service List:**
L. Todd Budgen, Esq.
todd@c11trustee.com
ltbudgen@ecf.courtdrive.com
bnc@mybankruptcyfirm.com

J. Christopher Crowder, Esq.
jcrowder@farolaw.com
farolawpleadings@gmail.com

Mailing Matrix (attached)

**Exhibit 1**

Michael McPhillips, pursuant to Federal Rules of Bankruptcy Procedure 2004, 7030, 7034, and/or 9014(c) and Federal Rules of Civil Procedure 30 and 34, and Local Rules 2004-1, 7026-1, and/or 7030-1, hereby requests that the Deponent named herein above, appear for deposition and produce documents and materials in accordance with the definitions and instructions below as follows:

1. You will produce the documents described herein in accordance with the general definitions and instructions herein.

2. You are not required to surrender the original items.

3. You may comply with this request by providing legible copies of these items to the attorneys named herein.

4. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.

**Definitions and Instructions**

1. The terms "You" and "Your" as used herein and in the Requests below are used interchangeably and shall mean the individual or entity in which this Request is addressed or directed, and if this Request relates to a Notice of Deposition Duces Tecum, shall include the corporate or business entity or entities upon whose behalf the deponent will appear and if this Request is addressed to an entity, agency, or organization, shall include such entity's, agency's, or organization's present or former divisions, departments, subsidiaries, affiliates, predecessors, partners, members, managers, officers, directors, owners, agents, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner. If this Request or the attached or incorporated request, notice, or subpoena is addressed to more than one person or entity on whose behalf You are appearing, the terms "You" and "Your" shall mean each of those persons and/or entities.

2. The term "document" means any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, and shall include the production of documents in the manner in which the documents are ordinarily kept including the following:

(a) All text messages, instant messages, chat room posts, and emails.

(b) Any and all writings, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained, translated, if necessary, through detection devices into reasonably usable form.

(c) Any and all written, typed, recorded, or graphic matter, however produced or reproduced, fixed in a tangible medium of expression, of every kind and regardless where located, and all tangible things from which information can be processed or transcribed, including all originals and non-identical copies whether differing from the original by reason of any notation made on such copy or otherwise including but not limited to any summary schedule, memorandum, note, message, statement, letter, telegram, telex, bulletin, inter and intra-office communication, report, diary, desk or pocket calendar or notebook, day book chronological date compilation, appointment book pamphlet, periodical, magazine or newspaper articles, advertisement, list, graph, motion, picture, photograph, x-ray or other machine-produced diagnostic picture or depiction of any kind, chart, index, tape, record, drawing, compilation, tabulation, computer printouts, computer-stored memory component or device including but not limited to hard-drives, disks, diskettes, and e-mail, study, analysis, transcript, minutes, books, date sheet, data processing card or tape, phone records, correspondence, ledgers, invoices, worksheets, receipts, returns, prospectuses, financing statements, schedules, affidavits, contracts, canceled checks, checkbooks, check stubs, transcripts, statistics, surveys, releases, aural records or representations of any kind, microfiche, microfilm, mechanical or electric records or representations of any kind, and any other writing or recording in Your possession, custody or control or Your attorney's possession, custody or control (and any and all drafts, alterations, modifications, changes and/or amendments of any of the foregoing).

(d) Any and all files in which any documents are maintained, including file folders or file jackets, and adjacent or related exhibit folders in which any documents are filed or maintained.

(e) Any and all documents contained on hard drives or other electronic media that You or any of Your attorneys have located on the Internet, whether or not You or Your attorneys have yet printed the documents.

(f) Any and all documents located now or in the past on any computer memory device within Your possession, custody, or control, or within the possession, custody, or control of Your attorneys. "Possession, custody, or control" as used herein shall have the same meaning as in Fla. R. Civ. P. 1.350(a) and/or Fed. R. Civ. P. 34(a).

(g) Any and all documents of any kind within Your possession, custody, or control, or within the possession, custody, or control of any of Your attorneys.

3. The term "materials" shall be deemed to include all documents, letters, memoranda, notes and any other written communication and written notes of all oral communications, whether in person or by telephone, and every record of every type, including but not limited to, information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored, and all drafts, notes, or preparatory material concerned with said document, and every additional copy of such record or document where such copy contains any commentary, notations, or other change whatsoever that does not appear on the original or other

copy of the document produced. Also included in this definition is any summary of a document or documents called for hereafter.

4. The terms “person”, “individual”, and “entity” are used interchangeably and each shall mean, but not be limited to: any natural person; or fictitious entity whether or not it is incorporated or registered; or trust; or surety; institution; or government or government agency or political subdivision be it foreign or domestic; or board, committee, group, or organization comprised of any of the foregoing or combination thereof; whether they be now or previously existing.

5. If You claim that the attorney-client or other privilege or the work product doctrine is applicable to any document the production of which is sought by the Requests below, then with respect to each such document, You **must provide a privilege log** which identifies the document by stating the type, date, author(s), addressee(s) and recipient(s), present and previous custodian(s), location, subject matter, and sufficient additional information to explain the claim of privilege and to enable adjudication of the propriety of that claim.

6. If any document the production of which is sought by these Requests has been destroyed, then You **must provide a log** which identifies the document by stating the type, date, author(s), addressee(s) and recipient(s), previous custodian(s) and location, subject matter, and sufficient additional information to explain the date and circumstances of its destruction, and identify the person who destroyed the document and the person who ordered its destruction.

7. If there are no documents responsive to a Request herein, **You must identify which Request(s) that You do not have any responsive documents for**.

8. These definitions and instructions shall apply to any documents referenced herein or attached hereto coextensively with any definitions or instructions contained therein. If the definitions and instructions are in conflict, then those contained herein shall apply.

9. For each and every Request, You shall produce documents in Your possession, custody, or control, which shall include but not be limited to, documents, objects or articles described that are in Your possession or that You have the right to secure the original or a copy from another person or entity.

10. The terms “any” and “all” shall be construed to bring within the scope of this request any information which might be construed relate to the subject matter of the request.

11. The terms “relate to”, “refer to”, “reflecting”, “supports”, “evidence”, and “indicating”, and all derivations thereof, are used interchangeably and shall mean evidencing, referring to, pertaining to, consisting of, reflecting, concerning, or in any way logically or factually

connected to the matter requested and are to be read as requiring and requesting a broader or expanded range of inclusive documents and shall not be interpreted or construed to be exclusive in any manner and shall mean supporting, tending to support, evidencing, tending to evidence, sustaining, maintaining, upholding, or in any way proves, confirms, substantiates, or verifies any fact, issue, or matter.

12. The terms "and" and "or" are used interchangeably and shall mean and be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any and all responses that might otherwise be construed to be outside of the respondent's scope, and are to be read as requiring and requesting a broader and/or expanded range of inclusive documents and shall not be interpreted or construed to be exclusive in any manner

13. The term "**Mainstreet Bank**" shall mean and refer to the entity known as Mainstreet Community Bank of Florida.

14. The term "**Crossroads Note**" shall mean and refer to the $1.2 million Promissory Note dated November 19, 2015 executed by Canaveral Crossroads, LLC to or for the benefit of Horton S. Johnson.

15. The term "**FDRE Loan**" shall mean and refer to the February 20, 2020 Promissory Note and Security Agreement executed by Canaveral Crossroads, LLC in favor of an entity known as FDRE, Inc. for a loan in the amount of $1,512,500 and all documents related to such Promissory Note and Security Agreement.

16. The term "**Crossroads Condo Purchase**" shall mean and refer to the sale, transfer, or purchase of 32 or 33 condominium units from Canaveral Crossroads, LLC to Homemakers Real Estate, LLC or any affiliates of Homemakers Real Estate, LLC or Horton S. Johnson.

17. The term "**Unit Sale Agreement**" shall mean and refer to any contract or agreement entered into by or between Homemakers Real Estate, LLC and/or Canaveral Crossroads, LLC or any other entity with regard to or related to the sale of 32 or 33 condominium units from Canaveral Crossroads, LLC to Homemakers Real Estate, LLC or any affiliates of Homemakers Real Estate, LLC or Horton S. Johnson.

18. The term "**Mainstreet Bank Loan**" shall mean and refer to the loan from Mainstreet Bank to Homemakers Real Estate, LLC or any other person or entity to fund the purchase of 32 or 33 condominium units from Canaveral Crossroads, LLC.

19. The term "**406 Condo Transfer**" shall mean and refer to the sale, transfer, or deed of Unit 406 from Canaveral Crossroads, LLC to FBC Holdings, LLC on about December 18, 2020.

20. The term "**CCR Sale Agreement**" shall mean and refer to the Sale of LLC Interest Agreement dated January 2, 2020 for the sale of FBC Holdings, LLC's membership interests in Canaveral Crossroads, LLC to MTF Holdings, LLC.

21. The term "**CCM Sale Agreement**" shall mean and refer to the Sale of LLC Interest Agreement dated January 5, 2020 for the sale of MTF Holdings, LLC's membership interests in Cape Crossing Marina, LLC to FBC Holdings, LLC.

22. The term "**Johnson Debts**" shall mean and refer to any one or more loans, debts, and/or obligations owed at any time to Horton S. Johnson and/or his affiliates which were used in part or in whole to fund the development and construction of any condominium units and/or the condominium, resort, or marina project located at the Cape Crossing condominiums and marina project in Brevard County Florida commonly known as the Cape Crossing Resort and Marina.

23. The term "**Forbearance Agreement**" shall mean and refer to the Forbearance Agreement allegedly entered into on December 3, 2024 by Canaveral Crossroads, LLC related to the Johnson Note.

24. All other names or terms herein not specifically defined or identified shall have the same meaning as is commonly understood and referred to by and among the parties.

25. Unless otherwise stated in the Requests below, the "**relevant period**" for each and every Request is **January 1, 2020 to the present**.

## <u>DOCUMENTS REQUESTED</u>

### ***a. <u>General Documents Related to Parties, Loans, and Transactions</u>***

1. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Canaveral Crossroads, LLC** during the relevant period.

2. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Homemakers Real Estate, LLC** during the relevant period.

3. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Mainstreet Bank** during the relevant period.

4. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FDRE, Inc.** during the relevant period.

5. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FBC Holdings, LLC** during the relevant period.

6. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **WM Holdings Group, LLC** during the relevant period.

7. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Cape Crossing Marina, LLC** during the relevant period.

8. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **MTF Holdings, LLC** during the relevant period.

9. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Michael McPhillips** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement
q. Horton S. Johnson.

10. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Martin C. Flynn, Jr.** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement
l. CCM Sale Agreement
m. Johnson Debts
n. Unit Sale Agreement
o. The Marina Lease
p. Forbearance Agreement
q. Horton S. Johnson.

11. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Horton S. Johnson** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan
b. Canaveral Crossroads, LLC
c. Homemakers Real Estate, LLC
d. Michael McPhillips
e. Martin C. Flynn, Jr.
f. The Crossroads Note
g. The FDRE Loan
h. FDRE, Inc.
i. Crossroads Condo Purchase
j. 406 Condo Transfer
k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

12. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Canaveral Crossroads, LLC** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan

b. Canaveral Crossroads, LLC

c. Homemakers Real Estate, LLC

d. Michael McPhillips

e. Martin C. Flynn, Jr.

f. The Crossroads Note

g. The FDRE Loan

h. FDRE, Inc.

i. Crossroads Condo Purchase

j. 406 Condo Transfer

k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

13. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **Homemakers Real Estate, LLC** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan

b. Canaveral Crossroads, LLC

c. Homemakers Real Estate, LLC

d. Michael McPhillips

e. Martin C. Flynn, Jr.

f. The Crossroads Note

g. The FDRE Loan

h. FDRE, Inc.

i. Crossroads Condo Purchase

j. 406 Condo Transfer

k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

14. All documents, communications, notes, memorandum, reports, or correspondence exchanged between You or Your employees, officers, managers, and/or agents and **FDRE, Inc.** during the relevant period regarding or related to any of the following:

a. Mainstreet Bank Loan

b. Canaveral Crossroads, LLC

c. Homemakers Real Estate, LLC

d. Michael McPhillips

e. Martin C. Flynn, Jr.

f. The Crossroads Note

g. The FDRE Loan

h. FDRE, Inc.

i. Crossroads Condo Purchase

j. 406 Condo Transfer

k. CCR Sale Agreement

l. CCM Sale Agreement

m. Johnson Debts

n. Unit Sale Agreement

o. The Marina Lease

p. Forbearance Agreement

q. Horton S. Johnson.

***b. <u>Specific Documents Related to Loans and Transactions</u>***

15. All documents related in any way to the Crossroads Note, including any and all loan applications, financial statements, closing documents, loan or payment history, and correspondence.

16. All documents related in any way to the Mainstreet Bank Loan, including any and all loan applications, financial statements (issued before or after the Mainstreet Bank Loan), closing documents, loan or payment history, and correspondence.

17. All documents related to the Crossroads Condo Purchase, including any sale agreement and all closing documents and any correspondence related to the negotiation of the Crossroads Condo Purchase and/or the negotiation of any sale agreement related to the Crossroads Condo Purchase.

18. All documents related in any way to the Unit Sale Agreement, including but not limited to the agreement or contract itself, any amendments thereto, and all closing documents and any correspondence related to the negotiation of the Unit Sale Agreement and/or the negotiation of the Unit Sale Agreement.

19. All documents related to the financing of the Crossroads Condo Purchase, including any and all loan applications, financial statements, closing documents, and correspondence related to the financing of the Crossroads Condo Purchase exchanged between the lender and any one or more of: Homemakers Real Estate, LLC, Horton S. Johnson, Martin C. Flynn, Jr., and/or Canaveral Crossroads, LLC.

20. All documents related to the 406 Condo Transfer, including any sale agreement and all closing documents.

21. All documents related to the CCR Sale Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the CCR Sale Agreement.

22. All documents related to the CCM Sale Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the CCM Sale Agreement.

23. All documents related to the Forbearance Agreement, including any sale agreement and all closing documents and any correspondence related to the negotiation and/or execution of the Forbearance Agreement.

***c. Horton S. Johnson***

24. All financial statements of any kind made by or for or on behalf of Horton S. Johnson from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan,

financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

25. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to pr by Horton S. Johnson from November 19, 2015 to the present.

26. The tax returns for Horton S. Johnson from November 19, 2015 to the present.

### *d. <u>Canaveral Crossroads, LLC</u>*

27. All financial statements of any kind made by or for or on behalf of Canaveral Crossroads, LLC from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

28. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Canaveral Crossroads, LLC from November 19, 2015 to the present.

29. The tax returns for Canaveral Crossroads, LLC from November 19, 2015 to the present.

30. All balance sheets and profit and loss statements for Canaveral Crossroads, LLC from November 19, 2015 to the present.

### *e. <u>Homemakers Real Estate, LLC</u>*

31. All financial statements of any kind made by or for or on behalf of Homemakers Real Estate, LLC from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan, financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

32. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Homemakers Real Estate, LLC from November 19, 2015 to the present.

33. The tax returns for Homemakers Real Estate, LLC from November 19, 2015 to the present.

34. All balance sheets and profit and loss statements for Homemakers Real Estate, LLC from November 19, 2015 to the present.

### *f. <u>Martin C. Flynn, Jr.</u>*

35. All financial statements of any kind made by or for or on behalf of Martin C. Flynn, Jr. from November 19, 2015 to the present, including but not limited to financial statements (or statements of finances, assets, and liabilities) made in connection with the application for a loan,

financing, funding, or grant, or in connection with the servicing, refinancing, or renewal of any loan, financing, funding, or grant.

36. All documents of any kind that state, indicate, reference, show, or relate to any loans or debts owed to or by Martin C. Flynn, Jr. from November 19, 2015 to the present.

37. The tax returns for Martin C. Flynn, Jr. from November 19, 2015 to the present.

### *g. __Organizational and Internal__*

38. All organizational documents and annual reports, including any and all Shareholder Agreements, Operating Agreement, Bylaws, Articles of Organization, Articles of Incorporation, and any amendments thereto for any of the following:

a. Canaveral Crossroads, LLC
b. MTF Holdings, LLC
c. Cape Crossing Marina, LLC
d. Homemakers Real Estate, LLC
e. JLALF, Inc.
f. Tiered Preferred, LLC
g. Tiered Capital, Inc.
h. Cape Crossing Resort Management, LLC
i. Tiered Preferred, LLC
j. WM Holdings Group, LLC.

39. All documents, including shareholder or member certificates, resolutions or consents indicated the members or shareholders for the relevant period for any of the following:

a. Canaveral Crossroads, LLC
b. MTF Holdings, LLC
c. Cape Crossing Marina, LLC
d. Homemakers Real Estate, LLC
e. JLALF, Inc.
f. Tiered Preferred, LLC
g. Tiered Capital, Inc.
h. Cape Crossing Resort Management, LLC
i. Tiered Preferred, LLC
j. WM Holdings Group, LLC.

### *h. __Other Loans and Debts__*

40. All documents related to or referencing any other loan entered into or obtained by or on behalf of Canaveral Crossroads, LLC during the relevant period.

41. All documents related to or referencing any other loan application or request made by or on behalf of Canaveral Crossroads, LLC during the relevant period (regardless of whether such application resulted in a completed loan transaction).

42. All documents related to or referencing any other loan application or request made by or on behalf of Homemakers Real Estate, LLC during the relevant period.

43. All documents related to or referencing any other loan application or request made by or on behalf of Homemakers Real Estate, LLC during the relevant period (regardless of whether such application resulted in a completed loan transaction).

44. All documents related to or referencing any other loan application or request made by or on behalf of Horton S. Johnson during the relevant period.

45. All documents related to or referencing any other loan application or request made by or on behalf of Horton S. Johnson during the relevant period (regardless of whether such application resulted in a completed loan transaction).

46. All documents related to or referencing any other loan application or request made by or on behalf of Martin C. Flynn, Jr. during the relevant period.

47. All documents related to or referencing any other loan application or request made by or on behalf of Martin C. Flynn, Jr. during the relevant period (regardless of whether such application resulted in a completed loan transaction).

***i. Statements and Exhibits***

48. All statements by any witness related to the facts, circumstances, and issues raised in this matter or which relate to the issues, claims, or defenses in this matter.

49. All notes, summaries, or reports of any statements made by any witness related to the facts, circumstances, and issues raised in this matter or which relate to the issues, claims, or defenses in this matter.

50. All documents You intend to use in litigating or disputing this matter, or which You intend to introduce as evidence at trial or any hearing, including all documents for rebuttal or impeachment purposes.

51. All documents You identify or reference in any response to any interrogatories or identified or referenced in any pleading herein.